James M. Kelley

14390 Douglass Lane
Saratoga, CA 95070
jmadisonkelley@gmail.com

Tel:     (408) 314-6745

PRO SE

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA – DIVISION 5

In Re:

JAMES MADISON KELLEY,

Debtor

Case No.  08-55305 ASW
Chapter 11

---

JAMES MADISON KELLEY

Plaintiff

V.

JPMORGAN CHASE BANK, NA (successor to)

WASHINGTON MUTUAL BANK

---

) COMPLAINT
)
)
) FOR LOAN CONTRACT INVALIDITY
) FOR LOAN CONTRACT RESCISSION
)       FOR DAMAGES
)
)
)
)
)
)
) Adv. Case No._____
)
)
)
)
)
)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………..……………….3

JURISDICTION AND VENUE…………………………………………….…3

PARTIES………………………………………………………………….…………….3

DEFINITIONS…………………………………………………………………….…….3

FACTS RELEVANT TO ALL CAUSES OF ACTION……………………….4

STANDING FACTS………………………………………………………….………5

FIRST LOAN FACTS…………………………………………………….………6

NO LEGAL STATUS TO CONTRACT………………………………....….8

NAMCO…………………………………………………………………………8

RESCISSION LETTERS SENT…………………………………….……….9

THE LOAN FILE………………………………………………………….10

FIRST LOAN NOTICES OF RIGHT TO CANCEL……………………….12

FIRST LOAN'S UNDERSTATED FINANCE CHARGE…………………….13

RUBBERSTAMP APPRAISAL………………………………………….16

SECOND LOAN FACTS………………………………………….……….17

CALIFORNIA STATUTORY CONTRACT INVALIDITY………………….18

GOOD FAITH AND FAIR DEALING………………………………….…20

CLAIMS FOR RELIEF………………………………………………….22

    COUNT  I: Rescission Of The First Loan contract………………….22

    COUNT  II: Rescission Of The Second Loan contract……………….23

    COUNT III: Invalidity of the Loan Contracts…………..………….24

PRAYER FOR RELIEF…………………………………………………….25

SIGNATURE……………………………………………………………….26

# PRELIMINARY STATEMENT

1. This adversary action under the federal **Truth In Lending Act** (**TILA**) for declaration of Rescission and for declaration of loan contract invalidity under California civil code section 1550. Plaintiff asks **TILA** rescission damages and for such other damages allowable under law.

This adversary action is brought with respect to a refinancing package of two loans on the Plaintiff's principle residence at 14390 Douglass Lane Saratoga, CA 95070. The loans are referred to herein as the **First Loan (3018113559-079)** loans made 7/26/2007 and a **Second Loan** (0747861714) made September 18, 2007.

The **First Loan** was purportedly made through **Washington Mutual Bank, FA** (**WMBFA**). The **Second Loan** was made purportedly through **Washington Mutual Bank (WMB)**.

# JURISDICTION AND VENUE

2. This adversary proceeding arises out of the Chapter 11 Case: In re James Madison Kelley, Case No. 08-55305 ASW. This adversary proceeding is brought pursuant to Bankruptcy Rule 7001.

3. This Court has subject matter jurisdiction under 28 U.S.C. 1334(b) and 28 U.S.C. 2201. This is a core proceeding under U.S.C. 157(b)(2)(I), F.R.B.P. 7008(a)

4. Venue is proper in this district pursuant to 28 U.S.C. 1408.

# PARTIES

5. **JPMorgan Chase Bank, NA (Chase)** as Loan Servicer and successor to **Washington Mutual Bank** and purportedly **Washington Mutual Bank, FA (WMBFA)**.

6. There is a related case 1-08-CV-118453 in California court.

# DEFINITIONS

7. **Creditor** is "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness".

8. **WMB, WMBFSB** were **Creditors** within the meaning of Regulation Z.

9. **Chase** is a **Lender** and **Creditor** within the meaning of Regulation Z.

10. A copy of some of the **First Loan** and **Second Loan** documents in **Chase**'s possession were obtained in June 2010 pursuant to a Rule 2004 subpoena. These files are referred to herein as the **Loan File**.

11. Loan agents **Louis Helmonds** and **Rosalie Silva** handled the refinancing. Rosalie Silva acted as a notary on the Deed of Trust for the **Second Loan**. Plaintiff negotiated primarily with Mr. Helmonds.

**FACTS RELEVANT TO ALL CAUSES OF ACTION**

12. Plaintiff realleges and incorporates the previous paragraphs.

13. The **Truth in Lending Act (TILA) First Loan** material disclosure violations are apparent on in the documents contained in the **Loan File**. The **Second Loan** violations are also apparent to anyone who has access to the Loan File.

14. **Consummation** of the **First Loan** occurred under California law on July 26, 2007 when the Plaintiff received the final disclosures and completed escrow.

15. **Consummation** of the **Second Loan** purportedly occurred on the 9/18/07 before the Plaintiff received the all of the initial and final disclosures. There was no escrow.

16. **Washington Mutual Inc.** (WM) was a publicly traded bank holding company with two federal bank subsidiaries by the legal names **Washington Mutual Bank** (WMB) and **Washington Mutual Bank, FSB** (WMBFSB) at the time the loans were made in 2007. WM had 130 other non-bank subsidiaries of record in 2007 according to its **2007 10-K Exhibit 21**.

17. **Quality Loan Service Corp** filed a **Notice of Default** on the **First Loan** in June 30, 2008 with the office of the recorder Santa Clara County.

18. Plaintiff brought suit against **Washington Mutual, Inc, Washington Mutual Bank, FA**, Louis Helmonds, and Does (1-10) in Superior Court, County of Santa Clara in July 2008.

19. Plaintiff filed for chapter 11 bankruptcy in September 2008.

Case: 10-05245    Doc# 1    Filed: 07/15/10    Entered: 07/15/10 14:55:46    Page 4 of 26

20. On September 25, 2008 the **Office of Thrift Supervision** (OTS) put **WMB** and **WMBFSB** into receivership with the **Federal Depository Insurance Corporation** (**FDIC**), which sold substantially all the banks assets to **JPMorgan Chase Bank, NA** (**Chase**) that same day (including the loan servicing business).[1]

21. **WM** declared a chapter 11 bankruptcy in the Delaware federal court September 26, 2007.

**STANDING FACTS**

22. **Chase** has filed two Proofs of Claim in this bankruptcy case as successor to **WMB for Second Loan** and WMBFA for the **First loan** in this court. Rescission nullifies these claims as secured loans.

23. **Chase** filed a motion to lift the stay of foreclosure early 2009**.**

24. Plaintiff challenged **Chase's** standing to act in foreclosure of the **First Loan** in February 2009. **Chase** has not replied.

25. Plaintiff filed **Qualified Written Response** (**QWR**) letters to **Chase** under **RESPA** seeking information necessary for the Bankruptcy case. Chase has refused to supply any information relating to its standing in this Court including the chains of ownership of the loans and holders of the deeds of trust. Chase claims this information is proprietary.

26. Plaintiff served Chase with a Rule 2004 subpoena to provide this information. **Chase** delivered the **Loan File** in mid June but claimed that the underwriting and many other files were proprietary and did not deliver them. Plaintiff has objected in writing.

27. Plaintiff rescinded the **Second Loan** after finding the **TILA** violation from documents in the **Loan File**.

28. Chase has not responded to the rescission letters. This is a **TILA** violation.

29. The real parties in interest for the **First Loan** and **Second Loan** are unknown. There is evidence that the **First Loan** was a "pledged loan".

---

[1] Purchase and Assumption Agreement Whole Bank among Federal Deposit Insurance corporation receiver of Washington mutual Bank, Henderson Nevada Federal Deposit Insurance Corporation and JPMORGAN CHASE BANK, National Association September 25, 2008.

Case: 10-05245    Doc# 1    Filed: 07/15/10    Entered: 07/15/10 14:55:46    Page 5 of 26

## FIRST LOAN FACTS

30. The **First Loan Application** was prepared by **WMBFA** and **WMB** agent Helmonds between 7/6/07 and 7/9/07 based on an interview with the agent. Plaintiff was never asked to sign the application. Two acceptance letters (**Form 1375**) dated 7/11/07 and 7/20/07 were sent to Plaintiff.

31. A **Good Faith Estimate of Settlement Charges and Settlement Service Provider Disclosure (GFE)** was issued on **Form 4193**. The estimate stated that the interest rate was 1.775% and the COFFI index was 4.293%, the term 40 years with a loan origination fee of 1%. No prepayment fee was disclosed.

32. An **INTEREST RATE AND LOAN FEE POLICY** disclosure on **Form 1764** was provided which stated that the initial interest rate was 1.775% the Index was COFFI, the Margin was 0% and the loan fee 1% with a lifetime ceiling cap of 0%.

33. The **AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT NOTICE (Form 3662)** does not identify **North American Mortgage Company (NAMCO)** as required by **RESPA**.

34. The **GFE** indicated that **WMBFA** would select particular service providers.

35. **WMBFA** failed to provide as required the **Consumer Handbook on Adjustable Rate Mortgages** for the **First Loan**, which should have been done at application time on or about 7/6/07. 226.19(b), CCC 1921 (b), 24 CFR 3500.6 (3)(i)

36. The **First Loan** Application was presented for signature to Plaintiff at closing 7/26/07. It is not listed on the **Lenders Closing Instructions Form 1159** dated 7/26/07.

37. At the closing, Plaintiff was first presented with a **Prepayment Fee Note Addendum Form 4367** for signature, which levied a 2% penalty for loan payoff within 2 years. **WMBFA** (Helmonds) was not present for the closing.

38. The **First Loan**[2] in the amount of $2,992,265 was a 40-year consumer refinance adjustable rate mortgage (**ARM**) loan with monthly payments.

---

[2] **Washington Mutual Bank, FA** Loan Number 3018113559-079.

Case: 10-05245   Doc# 1   Filed: 07/15/10   Entered: 07/15/10 14:55:46   Page 6 of 26

39. This loan was consummated purportedly with **WMBFA** but actually through a **North American Mortgage Company (NAMCO)** mortgage broker network.

40. Because the **First Loan** was actually placed through **NAMCO** it was not a refinance loan. Plaintiff did not received the required an initial **TILDS**.[3]

41. The **First Loan** was a "**low doc self-employed loan**" as indicated on **Form 3711** dated **07/18/09** obtained from the Loan File.

42. The **First Loan** violated underwriting standards by being based on the value of the residence instead of the verified income of the borrower.

43. A **Commitment Letter** on **Form 2989** for a second loan in the amount of $500,000 dated 8/14/07 was received in U.S. Mail from Louis Helmonds by Plaintiff. The commitment was made in the lender name of **Washington Mutual Bank**. The 8/14/07 **Commitment Letter** is missing from the **Loan File** but Plaintiff retained a copy.

44. The 8/14/07 **Commitment Letter** was sent after the **First Loan** closed and represented a material breach of the understanding reached regarding the Plaintiff's refinancing of his residential loans.

45. The commitment was for an open-ended consumer loan called a Home Equity Line of Credit (HELOC) secured by the Plaintiff's principal residence. The $500,000 **Commitment Letter** materially altered the terms of the refinancing by requiring full documentation -a fact that Mr. Helmonds knew made the $500,000 second loan unobtainable.[4] This resulted in failure of consideration and demonstrates lack of mutual consent under both the common law of contracts, the Cal. Civ. Code 1550, et seq.

46. The **Second Loan**[5] in the amount of $250,000 was an open-ended consumer loan generally called a Home Equity Line of Credit (HELOC) with monthly payments. This loan was consummated on or about September 18, 2007 purportedly with **WMB**.

---

[3] "An obligation refinanced by some other creditor is not a "refinancing" for TILA purposes but a new transaction that requires new disclosures.", United States Bankruptcy court Eastern District of Wisconsin, Madel v. GMAC Mortgage, et al, Case No. 03-32367, Adversary No. 04-2060, July 27, 2005
[4] In fact Mr. Helmonds by phone told the Plaintiff not to accept the **Commitment Letter** of 7/14/07.
[5] **Washington Mutual Bank** Loan Number 0747861714.

47. **Deeds of Trusts** (**Deed**) filed with the Santa Clara County Recorders Office secured both loans. The **First Loan** in the name of "**Washington Mutual bank, FA**" and the **Second Loan** in the name of "**Washington Mutual Bank**".

48. **WMBFA** (Helmonds) in order to induce the Plaintiff to accept the **Second Loan** represented that it could be increased to $500,000 after the Plaintiff's **FICO** reached 690 or above.

**NO LEGAL STATUS TO CONTRACT**

49. "**Washington Mutual Bank, FA**" was named as the creditor on disclosure documents pursuant to the origination of the **First Loan**. However, "**Washington Mutual Bank, FA**" was not the legal name of any subsidiary of **Washington Mutual Inc**. in 2007 according to the **WM Securities Exchange Commission (SEC)** filings including **Exhibit 21**.

50. The **FDIC** and the **WM SEC** filings show that **WMBFA** merged with **WMB** in 2005 and ceased to have any legal existence by that name.

51. **Washington Mutual Bank, FA** had no corporate existence as a Federal Association in 2007 and therefore no **articles of incorporation** authorizing it to make loan contracts with the Plaintiff and therefore lacked the legal capacity to make the **First Loan**.

**NAMCO**

52. "**North American Mortgage Company**" (**NAMCO**) was not the legal name of any subsidiary under **WM** at the time the **First Loan** was made in July 2007.

53. **NAMCO** emerges as the entity to which the original loan application was made in a disclosure document given Plaintiff at escrow July 26, 2007. The **NAMCO** disclosure has been removed from the **Loan File**.[6]

54. **WMBFA** was required to disclose its business arrangement and provide written estimate of the charge or range of charges generally made by **NAMCO** at the time the

---

[6] Plaintiff retained a copy from escrow.

Case: 10-05245    Doc# 1    Filed: 07/15/10    Entered: 07/15/10 14:55:46    Page 8 of 26

**Good Faith Estimate** was made and did not do so. 12 USC 2604, 2607 ( c)(4)(iii)

55. **North American Mortgage Company (NAMCO)** was bought purportedly by **Washington Mutual Bank FA** on 12/13/2007 after the **First Loan** was made to the Plaintiff. After that time **NAMCO** was known as **Washington Mutual Bank FA. NAMC to WMB** but did business as **North American Mortgage Company.** 226.23

56. **NAMCO** was the Loan Originator and not **WMBFA.** Failing to state the correct name of the Creditor is a **TILA** violation. 226.23

57. **NAMCO** was not a direct lender but did business through a network of brokers and banks. **NAMCO** apparently was using **WMB**'s loan processing software to broker loans.

58. **WMBFA** (Helmonds) did not disclose that the **First Loan** was being placed through **NAMCO**'s mortgage broker network (or that it would be sold as a security) or how much **NAMCO** or **WMBFA** would be paid for their services or in placing and or selling the loan as required.[7] 12 USC 2607( C)(4)

59. It is undisclosed whether **NAMCO** paid **WMBFA** (Helmonds) or **WMBFA** paid **NAMCO** or whether both **NAMCO** and **WMBFA** split a fee from the purchaser of the **First Loan**. It is clear that **WMB** retained the loan servicing rights and income.

60. It seems that **WMBFA** (Helmonds) submitted the **Loan Application** to **NAMCO** and **NAMCO** was an affiliate under **RESPA.** 12 USC 2602(8)

61. **WMBFA** was required to disclose that **NAMCO** was an affiliate at the time the **Good Faith Estimate** was made and did not. **WMBFA** may be liable for treble damages. 12 **USC** 2607( C)(4)(A)(ii)

**RESCISSION LETTERS SENT**

62. **Chase** does not claim to be the owner of the **First Loan** but does claim to be the **Loan Servicer** according to its reply to Plaintiff's **Qualified Written Response**.[8]

63. Plaintiff rescinded the **First Loan** by letter dated August 2009 to **Chase** and purported successor and its attorneys for the **Truth in Lending Disclosure (TILDS)**

---

[7]

[8] This is taken form **Chase**'s response to a **Qualified Written Request** , 1/20/2010.

violations as specified herein. 226.8(b)(5), 226.6(c), 226.23, 226.23 (a) (3).

64. The **Loan File** received from **Chase** contains a copy of the Plaintiff's rescission letter for the **First Loan. Chase** is informed of TILA rescission.

65. Plaintiff rescinded the **Second Loan** on June 24, 2010 based on information contained in the **Loan File**, which showed that the last **TILDS** was dated 9/20/07 and that the proper **Expiration Date** for **Notice of Right to Cancel** was 9/24/07. Plaintiff never received the final **TILDS** disclosure statement. This is a material **TILA** disclosure violation. 226.23, 226.23 (a) (3)

66. Both rescission actions are well within the three-year statute of repose for **TILA**.[9]

**THE LOAN FILE**

67. The **Loan File** is the documentary archive of the **First** and **Second Loans** obtained from **Chase** by a Rule 2004 subpoena. **Chase** has selectively removed 25 pages of **underwriting information** from the **Loan File**. **Chase** has selectively removed 50 pages of **product information** from the **Loan File**. **Chase** has selectively removed 22 pages of **internal information** from the **Loan File**. Other closing documents are missing from the **Loan File** that are material to this case.

68. The **Loan File** delivered by **Chase** has many missing documents and many documents that were withheld by Chase under the claim that they are proprietary. The documents withheld include the loan underwriting files, the identity of the real parties, the chain of holders and owners, the records of insurance, inter alia. In addition, documents supporting Plaintiff charges in the related case have are missing from the file.

69. The **Loan File** delivered by **Chase** contains 3 different <u>unsigned</u> and <u>undated</u> copies of **Form 1764 (INTEREST RATE AND LOAN FEE POLICY)**[10] never given to the Plaintiff disclosing a variety of loan terms for the **First Loan**.

    a.   Initial interest rate 1.675 %, margin 3.688 %, Lifetime ceiling cap 10.438%, term 360 months. There are two copies.

---

[9] Beach, 523 U.S. at 419, 140 L.Ed. 2d at 574, 118 S.Ct. at 1413.
[10] The initial disclosure came with the GFE. The **Form 1764** Disclosures are all different.

b.      Initial interest rate 1.675 %, margin 3.738 %, Lifetime ceiling cap 10.438%, term 360 months.

c.      Initial interest rate 1.775 %, margin 3.758 %, Lifetime ceiling cap 10.538%, term 480 months.

The **Form 1764**'s all contain the same pricing package expiration date of 9/18/07, which is stated to be 60 days from the date, the agreement is accepted by the lender. This implies all the different **Form 1764**'s was created on the same date July 21, 2007.

70. The **Loan File** contains one signed copy of a **Form 1764 (INTEREST RATE AND LOAN FEE POLICY)** for the **First Loan** purportedly signed by the Plaintiff but dated 7/26/07 by someone else and not countersigned by that person.

This **Form 1764** has the same pricing package expiration date of 9/18/07, which implies that this fourth **Form 1764** was also created as the others. The form discloses an Initial interest rate 1.775 %, margin 3.788 %, Lifetime ceiling cap 10.538%, term 480 months.

71. The **ADJUSTABLE RATE RIDER (Form 32842)** first disclosed at closing on July 26, 2007 for the **First Loan** contradicts the **INTEREST RATE AND LOAN FEE POLICY (Form 1764).**

The "initial interest rate" of 1.775 % disclosed on the **Form 1764** is not the "initial" interest rate disclosed on **Form 32842**. This contradiction is in favor of the Creditor and it causes an overcharge. The magnitude of the overcharge is $662.48 – $145.51 = $516.97.  This is a material overcharge because of the $35 finance charge tolerance. In fact, the **HUD-1 Final Settlement Statement** dated 8/19/07 shows at item 901 a charge of $662.48.  226.6(a)

72. The **LENDER"S CLOSING INSTRUCTIONS – Form 1159-** given to the Plaintiff at closing on 7/26/07 discloses only an interest rate of 1.775%.

73. A creditor must comply with the **TILA** in all credit transactions and a "misleading disclosure is as much a violation of the **TILA** as a failure to disclose at all".[11]  These misleading interest rate disclosures were sprung on the Plaintiff at the close on 7/26/07. 226.8(b)(5), 226.6(c).

---

[11] Barnes, 370 F.3d at 174

Case: 10-05245    Doc# 1    Filed: 07/15/10    Entered: 07/15/10 14:55:46    Page 11 of 26

74. The **TILA** requires that disclosures be "conspicuous and clear". The conflict between these documents is a violation of these requirements because the initial interest and interest rate have multiple conflicting disclosures at close. 226.6(a)

75. The **TILDS**, the **INTEREST RATE AND LOAN FEE POLICY**, and the **ADJUSTABLE RATE RIDER** were not disclosed until consummation of the loan in violation of Regulation Z. Under Regulation Z, the foregoing disclosures were required to be made available "before consummation of the transaction". 226.17 (b)

76. Plaintiff's right to receive a copy of the **TILDS** a day before closing on 7/25/07 was effectively denied by **WMBFA** because the **TILDS** on 7/26/07 was changed for the **TILDS** that had been created on 7/25/07 (showing an increased interest rate increase).

77. The **Loan File** contains a computer printout that shows that the **First Loan** is a "PLGD-LN", i.e., a pledged loan which means that the **First Loan** is collateral for a mortgage backed security and that the original **Lender or Creditor** has already been paid for the **First Loan**. The form containing this information is "**I9081-721 Washington Mutual Bank, F.A. Loan History Y-T-D INV.. page 74246**".

**FIRST LOAN NOTICES OF RIGHT TO CANCEL**

78. **WMB** and **WMBFA** failed to provide properly completed **Notice of Right of Cancellation Forms** (Form 3257) for each loan. 226.23 (h)(1)(ii).

79. For the **First Loan**, **WMBFA** provided two **Notices of Right to Cancel** that failed to specify date the rescission period ended or any other date. This is a material TILA disclosure. 226.23 (b)(1)(v), 226.15 (b)(5)

80. The **Loan File** contains a **Notice of Right to Cancel** (Form 3257) filled in with the correct dates and initialed by the Plaintiff. However, this only creates the presumption that the Plaintiff received two properly filled in Notices of right to Cancel. The fact that two notices retained by the Plaintiff are not filled in rebuts that presumption.

81. The **Loan File** does not contain the initial **Truth in Lending Disclosure** required by **TILA** 15 USC 1601 and **Reg. Z** 226.19(a)(1)(i).

Case: 10-05245    Doc# 1    Filed: 07/15/10    Entered: 07/15/10 14:55:46    Page 12 of 26

82. **Chase** has failed to reply to the loan rescission letters within the allowed time of 20 days. **TILA** required that **Chase** respond in 20 days to a notice of rescission. Each failure is a timely **TILA** violation.

### FIRST LOAN'S UNDERSTATED FINANCE CHARGE

83. The **First Loan TILDS** falsely states the **payment schedule** by not including the initial loan payment of $662.48 caused by the **Adjustable Rate Rider**. This is a material **TILA** disclosure violation.

84. The **TILDS** falsely states the **Total of Payments** by not including the initial loan interest payment of $662.48 dictated by the **Adjustable Rate Rider**. This is a material **TILA** disclosure violation.

85. **The TRUTH IN LENDING WORKSHEET (TILWS) Form 3374** attached to the **TILDS** (7/26/07) states an **AMOUNT FINANCED** of $2,961,150.87 which contradicts the **AMOUNT FINANCED** of $2,991,073.52 stated on the **TILDS (Form 1475).** The conflict between these documents makes them both unclear and misleading. . 226.6(a)

The **Uniform Residential Loan Application (URLA)** signed 7/26/07 states that the **Interest Rate** is **1.775%** which contradicts the **AN, ARR and IRLF** signed the same day. The conflict between these documents makes them both unclear and misleading. . 226.6(a)

86. **WMBFA** appointed **Stewart Title of California** as settlement agent generally pursuant to **Form 4193** items no.1101 and 1108 of the **Good Faith Estimate of Settlement Charges and Settlement Service Provider Disclosure (GFE)** (7/9/2007) and then failed to subtract the $250 charge from the **Amount Financed** as required by 226.2, 226.4(b).[12]

87. **Stewart Title of California** has not produced the record of money paid into and out of the **WMBFA** loan escrow account pursuant to **Rule 2004 subpoena**.

---

[12] Plaintiff was given no choice of appraiser.

88. **WMBFA** chose to delay payoff of the old **WMBFA** Loan intentionally increasing interest cost to the Plaintiff by $1,065.24, which should have been subtracted from the **Amount Financed**. Essentially **WMBFA** was paying itself interest and penalizing the Plaintiff.

Payment of funds is instantaneous by wire and funding was accomplished on 7/31/07 making it possible to wire funds for payoff of the old loans on 8/1/07. However, this was not done to the Plaintiffs significant detriment. 229.10 (a)

89. **WMBFA** also chose to delay payoff of the old **Countrywide Loan** increasing the interest cost to the Plaintiff by $230.08 and that should have been subtracted from the **Amount Financed**. 229.10 (a)

90. **WMBFA** failed to subtract the non bona fide appraisal fee $895 from the amount financed. **WMBFA** did not charge these fees to all applicants. 226 (1)

91. **WMBFA** failed to subtract the **Loan Origination Fee** ($29,922.65) from the **Amount Financed**. **Forms 3374** and **1475** 7/26/07.

92. **WMBFA** deceived the Plaintiff by burying the **Loan Origination Fee** in a previously undisclosed **Margin** (3.788 %).[13] Plaintiff's existing loan had a 2.7% margin. 226.8(b)(5), 226.6(c)

93. The **GFE Form 1764** supplied on or about 7/9/07 failed to disclose the **APR** as required. This made comparison shopping for loans (which is one of the main purposes of TILA) using the **APR** misleading and impossible. The **GFE Form 1764** discloses a **Margin** of **0%**, which implies that the interest rate was 4.293 %.[14] [15] 226.8(b)(5), 226.6(c)

94. This Margin deception greatly decreased the **Amount Financed** and the increased negative amortization of the loan by **$35,324.13** in year one and **$84,060.69** by the end of year two.

---

[13] Plaintiff margin on his existing WMBFA loan was 2.7%.
[14] This supports the "bait and switch" claims in the related state case.
[15] Typical Margin in May 2007 was **1.95%** for loans with a **FICO** score 660 or greater.

Plaintiff was never offered the option to pay the "now you see it now you don't" **Loan Origination Fee** to obtain a lower interest rate. 226.23 (h)(1)(i). Had Plaintiff been offered this option he would have paid the **Loan Origination Fee** in return for the lower interest rate.

95. **WMBFA** while asserting requirements for specific service providers pursuant to **Form 4193** failed to designate them by name and instead hired them without comment.

96. **WMBFA** did not pay the minimum 2% simple interest on tax and insurance fund collected and impounded as required by California Civil Code 2954.8 and Cal. Fin. Code 22200. The escrow impounds should have been reduced by the 2% interest rate (minimum) to be collected. The over charge should been added to the finance charge. The overage is at least $303.16.

97. **WMBFA** failed to pay the 2% interest required by California Civil Code 2954.8 and Cal. Fin. Code 22200 on the $2,992,265 from 7/31//07 until 8/3/07 when the **Countrywide Loan** and the old **WMBFA** Loan were purportedly paid. At 2% minimum interest this amounts to $2,623.36 in overcharges.[16]

98. Thus **WMBFA** understated the **Finance charge**[17] by more than $35 for the First Loan for the additional reasons specified as follows. This is a material **TILA** disclosure violation. 226.23 (h)(2)(i).

99. Summary of hidden Finance charges

| FINANCE CHARGE UNDERSTATEMENTS | |
| --- | --- |
| Initial Interest rate overcharge | $516.97 |
| Stewart Title Fee | $250.00 |
| WMBFA Delayed Payoff | $1,065.24 |
| Countrywide delayed payoff | $230.08 |
| Non Bona Fide Appraisal | $895.00 |
| Loan Origination Fee | $29,922.65 |
| Over Escrow of Impounds | $303.16 |
| Failure to Pay 2% Interest on Escrow | $2,623.36 |
| **Total Understatement (estimated)** | **$35,806.46** |

[16] "If funds are "disbursed" into a qualifying escrow during the rescission period, interest may accrue during that period.", Department of Justice, Consumer Protection Division, May 7, 1999

[17] Charges imposed by third parties are finance charges if the bank requires use of the third party.

Case: 10-05245    Doc# 1    Filed: 07/15/10    Entered: 07/15/10 14:55:46    Page 15 of 26

**RUBBERSTAMP APPRAISAL**

100.    **Fidelity National Financial Co** owns **Lender Services Inc. (LSI). Lenders Services, Inc** was doing business as **Northwest LSI**.

101.    **WMBFA** engaged in prohibited appraisal acts under Reg. Z 226.34, by informing the **Northwest LSI** appraisers of the value needed to approve the loan.[18]

  a.  On 7/7/07, Rosalie Silva issued a Form 30008 **Change Request Form** changing the estimated value of the residence from $4,900,000 to $4,400,000.

  b.  On 7/9/07, an appraisal was ordered through Washington Mutual Pleasanton Retail LFC by Louis Helmonds and Erralyn Cabrera.

  c.  On 7/12/07 an appraisal was ordered from **LSI** a report of which was made on 7/17/07 reporting an appraised value of $ 4,400,000. The **Work Order** included the amount of the loan being applied for $2,993,900.

  d.  The appraisal reported the **Change Request Form** value of the residence as the appraised value to the penny ($4,400,000).

  e.  **LSI Tech Service desk** confirmed the original estimate without change.

102.    **LSI** employed a local appraiser William Reese who performed the appraisal. Kayla Packard at **LSI** billed the actual work out at $700 on 7/16/07 on invoice #85369990.

103.    **LSI** purportedly paid appraiser Steven Riley to review Reese's work. Riley did no discernible work other than check boxes on a Freddie Mac Form 1032.Riley added $195 to the appraisal cost invoice # 85562867 on 7/17/07.

104.    Plaintiff called the appraiser William Reese in February 2009 regarding the $895 appraisal charge. Plaintiff was given the figure of $600 for the appraisal.

105.    The **LSI** appraisal charges were not bona fide appraisal charges for bona fide appraisal services and the appraisal fees were split in a manner not disclosed by the HUD-1, WMBFA or Stewart Title.

---

[18] The appraiser reported the stated value as the appraised value on his appraisal.

Case: 10-05245    Doc# 1    Filed: 07/15/10    Entered: 07/15/10 14:55:46    Page 16 of 26

**SECOND LOAN FACTS**

106.    **WMB** (Helmonds) on or about 9/12/07 initiated the **Second Loan**. There is no signed application in the **Loan File** on 9/12/07.

107.    The **Loan File** contains is an unsigned **Commitment Letter** (**Form 2989**) for the $250,000 **Second Loan** dated 9/13/07. Plaintiff never received this **Commitment Letter**. It discloses an "**Initial Variable Annual Percentage Rate (APR)**" of 8.65% with an index of 8.25% and a margin of .400%.

108.    The **APR** was not disclosed because there is no signed **Commitment Letter** (**Form 2989**) in the **Loan File** and Plaintiff did not receive a **Commitment letter**. **Form 2989** containing the **APR**.

109.    No home equity brochure was provided to the Plaintiff. 226.5b(e)

110.    The **Form 31583 SIGNING INSTRUCTIONS** for the **Second Loan** (0747861714) dated 9/17/07 states that the documents listed must be completed by the signing date and that no alterations may be made to the documents during signing on or about 9/18/07. This procedure was not followed by **WMB** personnel who significantly deviated from this procedure at consummation and thereafter.

111.    An unsigned **FITILD** was created on 9/14/07 but it was never delivered to the Plaintiff. It is materially different than the 9/20/07 **FITILD** disclosure.

112.    The **FINANCED ITEMIZATION TRUTH-IN-LENDING DISCLOSURE (FITILD) Form 30885** was materially changed on 9/20/07 directly violating the **Form 31583** instructions. Further, Plaintiff never received the corrected **FITILD** and **Notice of Right to Cancel** forms. This is an additional material **TILA** violation giving rise to a 3 year extended right of rescission. 226.15 (a)(3)

113.    **Second Loan** closing took place 9/18/07.

114.    For the **Second Loan**, **WMB** gave two **Notices of Right to Cancel** that contain the wrong expiration date (9/22/07). The correct date is 9/24/07 because the last **FITILD** was created on 9/20/07. This is a material **TILA** disclosure violation giving rise to a 3

year extended right of rescission.226.23 (b)(1)(v), 226.15 (b)(5)

115.    The **Loan File** also contains an entirely new set of disclosures created on **9/20/07**. None of these documents are signed and none were delivered to Plaintiff.

116.    The **Second Loan Deed of Trust** was not recorded with the Santa Clara County Recorder until 10/3/07. There is no commented explanation for the delay.

117.    **Deed of Trust  (Form 4360)** for the **Second Loan** purports to have Plaintiff's signature and a date of 9/18/07.  An examination of the **Loan File** copy of **Form 4360** (page 6) shows that someone other than the Plaintiff wrote in the date.

A comparison with the **original document** retained by the Plaintiff from the closing shows that no date was entered on the original document.

Further, the signature on the page 6 of the **Loan File** copy does not match the signature of the Plaintiff on the retained document.

The signature height is larger on the **original** Deed of Trust than it is on the **Loan File** copy, which is otherwise the same size (8.5X11) as the original.  Also, the signature on the original is "**James M. Kelley**" while the signature on the copy is "**James Kelley**".

The height size difference is what would be expected if a 14-inch document containing the signature to be copied were reduced to 11.5 inches before copying. There is no discernible shrinkage in the horizontal measurement of the signature. The lack of horizontal shrinkage is consistent with the signature being copied by reduction from an 8.5 X 14 document. Therefore, the signature appears to have been copied from another standard 8.5 X 14 document and affixed to the **Deed of Trust.**

**CALIFORNIA STATUTORY CONTRACT INVALIDITY**

118.    Contract formation is governed by California Civil Code [19] but corresponds to common law.  Cal. Civ. Code Section 1550 lays out the essential elements of a contract.[20]

---

[19] Cal. Civ. Code sections 1550 et seq.

[20] "It is essential to the existence of a contract that there should be:
  1. Parties capable of contracting;
  2. Their consent;
  3. A lawful object; and,
  4. A sufficient cause or consideration."

Case: 10-05245    Doc# 1    Filed: 07/15/10    Entered: 07/15/10 14:55:46    Page 18 of 26

119. Plaintiff negotiated a <u>low documentation stated income loan refinance</u> from the outset with **WMBFA** (Helmonds). Plaintiff was very clear that the loan would have to be asset based. Plaintiff was clear that he intended to sell the residence after preparing it.

120. Plaintiff was told by WMBFA (Helmonds) that the $500,000 loan would be made after the **First Loan** was closed and that they had to be separate transactions. Plaintiff relied on **WMBFA**'s representations.

121. Once the **First Loan** was closed **WMBFA** (Helmonds) materially changed the conditions of the $500,000 second loan to full documentation from low documentation knowing in advance that this made the loan unobtainable.[21] Plaintiff negotiated the low documentation refinance package at the outset.

122. Plaintiff consented to the **First Loan** with the understanding that the $500,000 second loan would be made available based on **WMBFA** representations (Helmonds).

123. **WMBFA** failed to supply the bargained for consideration -a $500,000 second loan- in the refinance package;[22] [23] [24] [25] [26] The fact that **WMB** reneged on this representation demonstrates <u>lack of mutual consent</u>. The **First Loan** failed contract formation for lack of mutual consent. CCC 1550(2)

124. Helmonds' failure to disclose that the disclosure terms of the $500,000 second loan would not be the same as the **First Loan** but would be materially different so as to make the $500,000 second loan unobtainable is a <u>material failure of consideration</u> in the refinancing.[27]   CCC 1550(4).

125. The $500,000 **Commitment Letter** is not in the **Loan File** supplied by **Chase**.

---

[21] Helmonds confirmed that he knew this by telling the Plaintiff not to accept the $500,000 full documentation commitment.
[22] Helmonds represented that he could obtain a $500,000 HELOC as part of the finance package to induce Plaintiff to accept the First Loan.
[23] After the First Loan was closed, Helmonds materially changed the disclosure terms of the $500,000 HELOC in the August 14, 2007 Commitment Letter so as to make it unobtainable.
[24] On September 18, 2007 a $250,000 loan HELOC was obtained on the same disclosure terms as the First Loan.
[25] Helmonds to induce Plaintiff to accept this $250,000 HELOC stated that it could be increased to $500,000 after a FICO score of 690 was obtained.
[26] Plaintiff was relying on the $500,000 to adequately capitalize the refinance package and Helmonds knew this amount was required to accomplish the stated purpose of the refinance.
[27] The disclosure terms of the $500,000 HELOC were materially tightened so the loan was made unobtainable.

Case: 10-05245   Doc# 1   Filed: 07/15/10   Entered: 07/15/10 14:55:46   Page 19 of 26

Plaintiff however retained his copy of the 8/14/07 loan **Commitment Letter**.

126.  "**Washington Mutual Bank, FA**" lacked the capacity to legally contract.[28] "**Washington Mutual Bank, FA**" was not a legal subsidiary of **WM** at the time the loans were made.  CCC 1550(1)

127.  "**North American Mortgage Company**" lacked the capacity to legally contract for **WMBFA**.[29] **NAMCO** was not a legal subsidiary of **WM** at the time the loans were made.  It was a separate company. CCC 1550(1)

128.  A shell game has been played and is still being played with corporate names **WM, WMB, WMBFA, WMBFSB, and NAMCO** leading to complete confusion as to the identity of the entity that actually funded the loan -the true creditor(s).

129.  Plaintiff has attempted to identify the true creditors since February 2009. **Chase** has refused to supply the essential information. The inability to identify the true parties to the loan contracts renders the loans void.[30] CCC 1558.

**GOOD FAITH AND FAIR DEALING**

130.  **WMBFA**'s and **WMB** had a duty to act in good faith and deal fairly with the Plaintiff. Their failure to disclosure materially adverse terms prior to closing the **First Loan**, to wit, the requirement for <u>full documentation</u> on the $500,000 second loan was a material violation of the implied covenant of good faith and fair dealing.

> "The covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract."[31]

---

[28] Washington Mutual Bank, FA is not the legal name of any subsidiary of the holding company Washington Mutual, Inc (WMI). Washington Mutual Bank, FA was not a legal person in 2007. NAMCO was not a legal person in 2007.

[29] Washington Mutual Bank, FA is not the legal name of any subsidiary of the holding company Washington Mutual, Inc (WMI). Washington Mutual Bank, FA was not a legal person in 2007. NAMCO was not a legal person in 2007.

[30] "It is essential to the validity of a contract, not only that the parties should exist, but that it should be possible to identify them."

[31] Racine & Laramie, Ltd. v. Department of Parks & Recreation (1992) 11 Cal.App.4th 1026, 1031-1032 ,14 Cal.Rptr.2d 335

The Plaintiff's benefits from the refinancing were frustrated by the reduced amount of the **Second Loan** ($250,000) which disrupted Plaintiff plan, prevented preparation of the residence for the market, prevented sale of the property at fair value, , , derailed Plaintiff's business plans, and led to this bankruptcy.

131.  The late disclosures of interest rate, 2% prepayment penalty, inter alia, all benefited **WMBFA** to the Plaintiff detriment. Plaintiff was put in the position of not being able to refinance out of an unfavorable loan for 2-years with the payments scheduled to more than double at the end of the third year. This prepayment penalty was contrary to the stated purpose of the refinance, which was to prepare the house to sale.

132.  In September 2007, the **Second Loan** was made on low documentation terms identical to the **First Loan**. However, the bargained for consideration was still $250,000 short of adequate and **WMB** failed to follow through on this commitment to secure the full $500,000.

133.  Helmonds misrepresented the reason for the rejection of the $500,000 loan commitment in the documents supporting the **Second Loan** on **Form 4868 "Additional Comments"** stating that the borrower "wanted to wait for improvement in credit score" when in fact the reason was the **WMB**'s unilateral change in terms of the loan from low documentation to full documentation.

134.  The **Credit Investigation Form 2977** shows that the **Countrywide Home Loan** payment as $3,451.00 in September 2007 more than a month after it was to be paid by **WMB**. The Countrywide Home Loan is reported as having been paid off on 8/3/07 on the final **HUD-1**. This negatively impacted the Plaintiff resulting in the 682 **FICO** score reported and could have been removed in 24 hours.

135.  The **"Comment Summary"** beginning 9/12/07 and ending 9/22/07 does not reveal the **"revised" FITILDS** that was created on 9/20/07 and it does not reveal the new loan documentation packages printed out on that date revealing lack of internal control at **WMB.**

Case: 10-05245   Doc# 1   Filed: 07/15/10   Entered: 07/15/10 14:55:46   Page 21 of 26

136.    Contrary to what the **"Comment Summary"** implies on Page 3 bottom, the Plaintiff did not make a separate face-to-face <u>application</u> for the $250,000 **Second Loan**. Plaintiff made only an application for the **First Loan** and that application was prepared by the loan agent (Helmonds) not the Plaintiff.

137.    For the **First Loan** process, The material disclosure violations, non disclosures, late disclosures, prepayment penalty, three increases in the interest rates during the last two days before closing, all accrued to the benefit of **WMBFA** and **WMB** and against the Plaintiff who had little knowledge at the time with respect to of his actual rights with respect to **TILA**, **RESPA**, or state law.

138.    The **Second Loan** process started with no application or **APR** disclosures and ended with last minute changes to the **FITILDS** along with a complete failure to disclose the changes and correct the **Notices of Right to Cancel**. The end result of this is a 3-year right of rescission. 226.23 (a)(3), 226.17 (a)(1), 226.17(d), 226.23 (a)(1)

139.    Plaintiff has not addressed underwriting and other possible violations because **Chase** has refused to turn over the files.

## CLAIMS FOR RELIEF

The following causes of action are asserted without prejudice to any rights the Plaintiff (Debtor) may have, or which this Court may grant to the Plaintiff, to assert additional causes of action or allegations based on facts disclosed in documents or other information made available to the Plaintiff in the future or developed as a result of discovery or otherwise.

### COUNT I: Declaration of Rescission Of The First Loan contract

140.    The Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 105 above.

141.    **WMBFA** failed to issue the initial disclosures including the **Annual Percentage Rate** as required thereby giving rise to the 3 year extended right of rescission.

142.    The Plaintiff was given two **Notices of Right to Cancel** that did not have the "date the rescission period expires" or any other date thereby giving rise to the 3 year extended right of rescission.  Regulation Z 226.23(a)(3), 226.23(b)(1)(v)

143. The **Finance Charge** was understated by more than $35 on the **Truth in Lending Disclosure Statement** giving rise to the 3 year extended right of rescission. 15 USC 1635, 226.18(d)(i)

144. The **Truth in Lending Statement** is deceptive, unclear and misleading in light of the **Truth in Lending Worksheet** attached thereto.    226.23(a)(3)

145. Multiple disclosures provided at escrow were in conflict as to <u>interest rate</u>, <u>initial interest rate</u>, <u>change date</u> and <u>first payment</u> and were not made clearly and conspicuously as required thereby extending the right of rescission. 15 USC 1632(a), 226.17(a)(1)

146. The Plaintiff timely and properly rescinded the **First Loan**. Reg. Z 226.23 (a)(2)

147. **Chase** failed to take the required rescission actions within 20 days after notice of cancellation giving rise to statutory liability in the amount of $4,000 plus interest thereon to the date of payment and the costs of this action. 15 USC 1635(b); Reg. Z 226.15(d)(2), 226.23(d)(2)

### COUNT II: Rescission Of The Second Loan contract

148. The Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 30 and 105-117 above.

149. **WMB** prepared the **Second Loan** without an application from the Plaintiff. There is no application in the **Loan File** and Plaintiff has no copy of any application. 226.5(b)(b)

150. The required home equity brochure was not provided to the Plaintiff. 226.5b(e)

151. Plaintiff did not receive initial disclosure of the **Annual Percentage Rate** of the **Second Loan** as required. Plaintiff did not receive a loan **Commitment letter** which would have stated the **annual percentage rate** from **WMB**. 226.5 b(d)(12)

152. The **Second Loan** was purportedly signed on 9/18/07 but changes were made on 9/20/07 to the **FITILDS** such that new disclosures were required. The required material disclosures were never made by **WMB** to the Plaintiff and the right of rescission was extended to 3 years. 226.23(a)(3)

153. The changes made on 9/20/07 made the **expiration date** on the **Notices of Right to Cancel**  (9/22/07) incorrect and the new date was 9/24/07 extending thereby the right of rescission to 3 years.

Case: 10-05245    Doc# 1    Filed: 07/15/10    Entered: 07/15/10 14:55:46    Page 23 of 26

154. **WMB** failed to deliver all the material disclosures (226.18) including the final **FITILD** disclosure of 9/20/07 extending the right of rescission to 3 years. 226.23(a)(3)

155. Plaintiff rescinded the **Second Loan** by letter in June 2010 well within the 3year window for rescission.

156. **Chase** failed to take the required rescission actions within 20 days after notice of cancellation giving rise to statutory liability in the amount of $4,000 plus interest thereon to the date of payment and the costs of this action. 15 USC 1635(b); Reg. Z 226.15(d)(2), 226.23(d)(2)

### COUNT III: Declaration of Invalidity of the Loan Contracts

157. The Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs I through 30 and 118-139.

158. **WMBFA** was not capable of contracting because it had no legal existence and lacked the capacity to contract in that name. CCC 1550 (1)

159. **NAMCO** originated the **First Loan** not **WMBFA**. **NAMCO** lacked the capacity to contract in the name of **WMBFA**. CCC 1550 (1), CCC 1558

160. **NAMCO** originated the loan for an as yet unknown creditor. CCC 1558

161. **WMBFA** and Plaintiff did not arrive at mutual consent. **WMBFA** did not intend to honor the $500,000 **Second Loan** commitment on the same terms as the **First Loan** and did not make this known to the Plaintiff.   CCC 1550 (2)

162. It was understood throughout the refinance that a $500,000 second loan was sufficient for the purposes of the refinance. The $250,000 Second Loan was to be increased to $500,000 upon achieving a 690 FICO. This was not done causing a failure of sufficient consideration. CCC 1550(4)

163. **WMBFA** breeched the implied covenant of good faith and fair dealing by not disclosing the true conditions, actual lenders and creditors, the initial annual percentage rate, hidden charges, and other initial disclosures as required by **TILA** and **RESPA**.

Case: 10-05245   Doc# 1   Filed: 07/15/10   Entered: 07/15/10 14:55:46   Page 24 of 26

## PRAYER FOR RELIEF

Wherefore Plaintiff prays for the following relief:

    A.  An Order declaring the **First** and **Second Loan** Contracts invalid due to failure of contract formation under California statute C.C.C. 1550, et seq;

    B. In the alternative, an Order rescinding the **First** and **Second Loan** contracts for the Truth in Lending violation of failing to deliver the correct **material disclosures** and proper **Notices of Right to Cancel** as required by Regulation Z;

    C.  Attorney's Fees and Costs for Rescissions;

    D.  Statutory Damages, Costs, and Attorney's Fees for Chase's Failure to acknowledge Rescission;

    E.  Award pre-judgment and post-judgment interest;

    F.  Grant such other and further relief to the Plaintiff as may be just and proper.

Dated at Saratoga, California, this _15 th_ day of July 2010.

By: _James Madison Kelley_
James Madison Kelley