14390 Douglass Lane
Saratoga, CA 95070
jmadisonkelley@gmail.com
Tel:    (408) 402-1915

PRO SE

**FILED**

FEB 2 0 2013

United
San Jose, California Court

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA – DIVISION 5

In Re:

JAMES MADISON KELLEY,

Debtor

Adv. Case No. 10-05245
Bkr. Case No.  08-55305 ASW
Chapter 11

---

JAMES MADISON KELLEY

Plaintiff

v.

JPMORGAN CHASE BANK, NA,

WASHINGTON MUTUAL BANK,

DOES (1-20)

---

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DECLARATION OF

JAMES MADISON KELLEY

EXPERT REPORT ON THE

LOAN DOCUMENTS PRODUCED BY

JPMORGAN CHASE BANK, NA

Honorable Arthur S. Weissbrodt
Date:  February 18, 2013
Courtroom: 3020

Expert Report on Chase Loan Documents                1

# TABLE OF CONTENTS

The Declaration of James M. Kelley   3

The Unquestioned Documents   4

The Questioned Documents   5

    The January 26, 2012 First Loan Collateral File   5

        The January Note   6
        The January Deed of Trust   8

    The August 1, 2012 First Loan Collateral File   10

    The October 18, 2012 Document Examination   11

    The January 11, 2013 Electronic Loan File   15

        The File Metadata   15
        The January 11, 2013 Document Examination   16

    The January 22, 2013 Document Examination   18

    The February 2, 2013 Document Examination   20

The Examiner's Opinion   22

The Declaration of James Madison Kelley   23

Proof of Service   24

Exhibit 1:      Curriculum Vitae   25

Exhibit 2:      The Unquestioned Documents

Exhibit 3      The Questioned January 26, 2012 First Loan Collateral File

Exhibit 4      The Questioned August 1, 2012 First Loan Collateral Documents

Exhibit 5      The Questioned October 18, 2012 Documents

Exhibit 6      The Questioned January 11, 2013 First & Second Loan Files

Exhibit 7      The Questioned January 22, 2013 First & Second Loan Files

Exhibit 8      The Questioned February 2, 2013 First & Second Loan Files

Case: 10-05245    Doc# 271    Filed: 02/20/13    Entered: 02/20/13 17:08:30    Page 2 of 23

## THE DECLARATION OF JAMES M. KELLEY

I, James Madison Kelley, declare as follows:

1. I am a computer expert over the age of eighteen years, am of sound mind, have never been convicted of a felony or crime of moral turpitude; I am competent in all respects to make this declaration. I have personal knowledge of the matters declared herein, and if called to testify to the same, I could and would competently testify thereto.

2. I have studied numerous computer forgeries and have developed scientifically sound methods of distinguishing computer generated signature facsimiles from direct copies of original signatures. A true and correct copy of my relevant Curricula Vitae is attached as **"Exhibit 1"**.

3. I searched for forensic document examiner that was competent in computer generated document forgery because the documents and files produced bore the signs of computer forgery. I found none available after talking to more than 10 forensic examiners.

   It appears that most Forensic examiners are trained to compare questioned signatures with unquestioned signatures but are not trained to recognize computer forgery. Because I have superior computer and science qualifications both by education and experience, I have performed the document examination. I have also been accepted as an Expert Witness on computer forgery in Federal Court.

4. The **First Loan** is Washington Mutual Bank, FA loan number 3018113559. The Second Loan is Washington Mutual Bank loan number 0747861714. The Second Loan is a home equity line of credit (revolving credit).

5. This document examination is a factual inquiry into the authenticity of the documents produced by JP Morgan Chase Bank, NA through its Alvarado Smith PC –its outside lawfirm.

Case: 10-05245    Doc# 271    Filed: 02/20/13    Entered: 02/20/13 17:08:30    Page 3 of 23

**The Unquestioned Documents**

6.  **Exhibit 2.1** is page 6 of the Deed of Trust containing the unquestioned signature of James M. Kelley.  Magnified 24 times the signature is of consistent blue color and was made with a ballpoint pen. There is no sign of the pixilation that is associated with computer-altered signatures. Exhibit 2.2 is an unquestioned document.

7.  **Exhibit 2.1 BE** is a background-enhanced version of Exhibit 2.1. Setting the contrast to 100% and the brightness to –2% enhances the background. There is black ink noise in the background on the page but no color noise as is the case with loan documents printed on a color laser printer.

8.  **Exhibit 2.2** is Form 4600 the Automatic Loan Payment Authorization containing the unquestioned signature of "James M. Kelley" and the date "Sept 18,2007" in blue ink. This was scanned at high resolution with 24-bit color. This document is unquestioned.

9.  I examined **Exhibit 2.2** after magnifying it 24times.  The signature is a remarkably consistent blue color (except where it is covered with yellow was made with a ballpoint pen. The signature has a Cyan ink volumes between 74% and 88%. The signature has Magenta ink volumes between 70% and 85%. The ratio of Cyan to magenta ranges from 1.04 to 1.07.

10.  There is no sign of the pixilation in the signature or the date. There is heavy pixilation in the computer-altered signatures.

11.  I examined Exhibit 2.2 after background enhancement in Photoshop (contrast 97%, Brightness –15%). The results are completely consistent with Exhibit 2.1. There is no evidence of color laser printer residue. The background noise is black dots only.

12.  Exhibits 2.1 and 2.2 returned in an envelope by Washington Mutual Bank without any explanation. They were returned probably because the signature "James M. Kelley" did not conform to the printed name "James Kelley" and was a violation of the Lenders Closing Instructions.  There are additional unquestioned documents.

Kelley Report on Loan Document                    4

## The Questioned Documents

13. I examined the questioned documents and electronic files that were produced on different dates in 2012 and 2013. I examined every page with special attention to the collateral file for the First Loan and the collateral file for the Second Loan.

14. There 6 sets of files to be considered which will be grouped by Exhibit number as follows:

   (1) **Exhibit 3**---- The electronic files for the First Loan produced by Thomas Van on January 26, 2012 that purports to be the First Loan Collateral File;

   (2) **Exhibit 4**----The printed copy of the First Loan Collateral file sent by US Mail on August 1, 2012.

   (3) **Exhibit 5**-----The files scanned by the examiner on October 18, 2012 at Santa Ana pursuant to the Court's order;

   (4) **Exhibit 6**-----The Loan origination and collateral files produced by Thomas Van on January 11, 2013;

   (5) **Exhibit 7**-----The files scanned by the examiner on January 22, 2013 at the San Francisco office of Alvarado Smith PC pursuant to the Court's order;

   (6) **Exhibit 8**----The files scanned by the examiner on February 1, 2013 at the San Francisco office of Alvarado Smith PC pursuant to the Court's order;

## The January 26, 2012 First Loan Collateral File

15. The first set of questioned documents is comprised of two electronic files produced on January 26, 2012 by Thomas Van, esq. of Alvarado Smith PC in Santa Ana California. The two files were sent as email attachments. The two files purport to be scanned copies of the First Loan Collateral files comprising the Adjustable Rate Note, the Deed of Trust, The Adjustable Rate Rider, and the Prepayment Fee Addendum.

16. I examined every page of the two files.

Kelley Report on Loan Document                    5

1  17. I examined the metadata (attached hereto as Exhibit 3-1) -for the Fist Set of files

2     shows that it was created on 1/26/2012 1t 1:30:57 PM with Nuance Communications,

3     Inc software.

4  **The January Note**

5  18.  **Exhibit 3-2** is the signature page (page 6) for the Adjustable Rate Note. The

6     signature page bears the questioned signature of "James M. Kelley" and the

7     questioned "blank endorsement" of "Cynthia Riley" purportedly acting as VP of

8     Washington Mutual Bank FA.

9  19. **Exhibit 3-2** was magnified in Adobe Acrobat to 8X its normal size. The purported

10    signature of "James M. Kelley" is different than the unquestioned signatures in

11    **Exhibit 2.**

12 20. The signature shows variable blue and black ink in "James M". This portion of the

13    signature is also pixilated.

14 21. The signature shows saturated blue ink in period after the "M". Saturated ink is ink of

15    one heavy volume and color.

16 22. The signature further shows three different kinds of construction of the "Kelley"

17    portion of the signature.  The "**K e**" shows as largely pixilated except for the top arm

18    of the "**K**" which is saturated blue ink. The "**l l e**" consists of both highly variable and

19    saturated blue in with groups of black pixils embedded. There is heavy Pixilation

20    except near the saturated blue ink. The "**y**" is similar in composition to the "**l l e**" but

21    also has another color of saturated blue ink in the tail of the "**y**" as well as easily

22    identifiable black pixils embedded. This is indicates that the signature was fabricated

23    on a computer.

24 23.  I examined the signature line, which is not shown as a solid black line as it is pure

25    black ink. It consists of two to three layers of different color ink. Significantly, there

26    is blue ink penetration by the signature into the signature line where there should be

27    none. It is well known that black ink will dominate blue ink even in equal volumes.

28 Kelley Report on Loan Document                6

The black ink volume in the signature is greater than the blue ink volume under
normal circumstances. This penetration is especially noticeable where the "y" cuts
through the signature line. But it also occurs where the lower loop of the "J" cuts the
signature line at two places. This is indicative of ink volume manipulation. This is
indicative of forgery.

24. I examined the purported "blank endorsement" of Cynthia Riley at 8X magnification
in Adobe Acrobat.

25. The blank endorsement shows three different types of black ink in the letters and lines
of the blank endorsement. There is heavy Pixilation of the so-called signature of
"Cynthia Riley", in the letter "W" in "Without" and the letters "t" in "to" and "t" and
"h" in "the". There is also Pixilation in discoloration in the "CYNTHIA RIL" beneath
the signature. The "EY" in "RILEY" is saturated gray ink. This indicates that a
computer generated and applied "stamp". A rubber stamp would have only one color
of ink in the inkpad and there should be little if any Pixilation after scanning a
manually applied stamp.

26. I loaded **Exhibit 3-2** (page 6 Note) into Adobe Illustrator. Adobe Illustrator is a
computer program that enables an artist to construct drawings using images on
multiple layers. It is well known that it is easier to make complex documents in
layers. When the drawing is complete the different layers can be merged into a single
image.

27. Black and white copies of signatures and initials are available to be used in the
fabrication of "blue ink" loan documents because the banks and escrow companies
scan the loan files in black and white and archive the files. Signatures and initials as
well as blank endorsements, notary seals and printed dates and names can be
reproduced as "originals" which are likely to deceive traditional forensic handwriting
experts, the courts. It is necessary to examine the document to identify this type of
forgery.

Case: 10-05245    Doc# 271    Filed: 02/20/13    Entered: 02/20/13 17:08:30    Page 7 of
23

28. Adobe Illustrator shows that the Exhibit 3-2 is composed of 6 different images. These images are designated Exhibit 3-2-1 through Exhibit 3-2-6.

29. Exhibit 3-2-1 is the tail of the "y" in the signature "Kelley".

30. Exhibit 3-2-2 is comprised of different parts of "Kelley" that have the same saturated blue ink and the period after the "M".

31. Exhibit 3-2-3 is comprised of "to the order of" portion of the blank endorsement.

32. Exhibit 3-2-4 is comprised of "ithout Recourse" … WASHINGTON MUTUAL BANK, FA", …"By" … "C  , EY", and "VICE PRESIDENT" portions of the blank endorsement.

33. Exhibit 3-2-5 is comprised of the text of Page 6.

34. Exhibit 3-2-6 is comprised of the portions of the signature of "James M Kelley", the signatures lines and a portion of the Cynthia Riley blank endorsement.

35. The signature is assembled by enabling Exhibits 3-2-1, 3-2-2 and 3-2-6 in Illustrator.

36. The blank endorsement is assembled by enabling Exhibits 3-2-3, 3-2-4 and 3-2-6.

37. The foregoing demonstrates how the signatures and blank endorsement on Exhibit 3 page 6 were systematically fabricated and assembled in a computer program.

**The January Deed of Trust**

38. **Exhibit 3-3** is page 9 of the Deed of Trust. The initials "JMK" at the bottom of the page show that the colon "**:**" has been colored blue, the initial line has been dissolved and discolored, the bottom of the last loop of the "M" and the last loop of the "K" are pure black.

39. Adobe Illustrator shows that the initials are comprised of 3 separate images (called groups). **Exhibit 3-3-1** is the group 2 image that shows that the bottom of the last loop of the "M" and the last loop of the "K" are pure black along with the black text on the page.

40. **Exhibit 3-3-2** is the group 3 image that shows most of the initial "JMK" in isolation. At 8X magnification, there is pixilation and the remnants of the signature embedded

Case: 10-05245    Doc# 271    Filed: 02/20/13    Entered: 02/20/13 17:08:30    Page 8 of 23

1     in the image and the blue coloration is highly variable with small regions of black

2     pixils embedded.

3 41. **Exhibit 3-3-1** and **3-3-2** show the assembly of the initials "JMK" from image layers

4     by computer.

5 42. **Exhibit 3-4** is page 3 of the Deed of Trust. The initial "JMK" at the bottom of the

6     page shows that the top leg and bottom leg of the "K" are black ink. Illustrator shows

7     that there are two images comprising this page. The black portions of the "K" are in

8     the group1 image Exhibit 3-4-1. Most of the "JMK" is in group 2 Exhibit 3-4-2.

9     When group1 and group2 are enabled in Illustrator the recreate Exhibit 3-4 which is

10     page 3 of the Deed of Trust.

11 43. **Exhibit 3-5** is page 11 of the Deed of Trust. Page 11 shows that the initials "JMK"

12     were colorized to a saturated blue color and that this colorization also recolored the

13     initials line and the "**s**" in "Initials". **Exhibit 3-5-1** shows that the initials "JMK" and

14     the "s" are in the group1 image. Black Text is in the group 2 image. This

15     demonstrates that the black ink was colorized with blue ink.

16 44. **Exhibit 3-6** is the signature page (page 14) of the Deed of Trust. It is composed of

17     three images.

18 45. **Exhibit 3-6-1** is the group 1 image which consists of portion of the signature of

19     James M. Kelley" in uniformly saturated blue color. The Text image (not shown) is

20     the group 2 image.

21 46. **Exhibit 3-6-2** is the group 3 image that is comprised of the signature lines and

22     portions of the signature of "James M. Kelley". The signature contains black at the

23     boundary of the top loop of the "J". The blue color is mixed with black.

24     **Exhibit 3-6-3** shows the assembled signature of "James M. Kelley".

25 47. **Exhibit 3-7** is the notary page for the Deed of Trust. Exhibit 3-7 is composed of 7

26     images (groups).

27

28

48. **Exhibit 3-7-1** shows a portion the initials "JMK" at the bottom of the page comprised of the lower loop of the "J" and the extreme tail of the "K" all in a uniformly saturated shade of blue.

49. **Exhibit 3-7-2** shows the upper loop of the "J" in the initials "JMK" in a darker uniformly saturated blue. This image is in group 3.

50. **Exhibit 3-7-3** shows the most of the initials "JMK" along with the initials line. This is contained in image 7 of the file. Exhibit 3-7-3 also contains parts of the notary signature and part of the notary seal.

51. This initials "JMK" are composed of image 1, image 3 and image 7.

52. **Exhibit 3-7-4** is a composite of images 1, 3, 4, 5 and 7 that shows the assembly of the notary's signature and seal. The date "July 26. 2007" and printed name of "Teri Espinoza, notary public" are in image 4.

53. **Exhibits 3-7** show the systematic fabrication and assembly of the notary page text, date, notary signature, notary seal and the initials "JMK" using a computer program.

54. There are more examples of the fabrication of the collateral file for the first loan.

**The August 1, 2012 First Loan Collateral File**

55. The Second Set of questioned documents is comprised of printed copies of the purported original collateral files comprising the Adjustable Rate Note, the Deed of Trust, The Adjustable Rate Rider, and the Prepayment Fee Addendum for the First Loan.

56. This collateral file production was made pursuant to a qualified written request under the Dodd Frank Act. The documents were delivered via the US Mail on or about August 1, 2012.

57. I examined pages 3, 9, 11, 14 and 15 of the Deed of Trust and found them to have the same defects reported previously for the January 26, 2012 version in addition to the laser printer problems reported above. (not shown as unnecessary)

Case: 10-05245    Doc# 271    Filed: 02/20/13    Entered: 02/20/13 17:08:30    Page 10 of 23

1  58. I examined pages page 6 of the Adjustable Rate Note and found it to have the same

2      defects reported previously for the January 26, 2012 version in addition to the laser

3      printer problems reported above. (not shown as unnecessary)

4  59. **Exhibit 4.1** is a copy of the signature page 14 of the First Loan Deed of Trust

5      scanned from the printed copy sent by Mr. Van.

6  60. Exhibit 4.1 was compared with Exhibit 3.6 at 400 % magnification. Exhibit 4.1 shows

7      that defects obvious in the signature on January 26, 2012 are removed from the

8      August 1 printed copy.  The two black groups of pixels in the signature have been

9      removed from bottom of the upper loop of the "J". The smudging of "blue" in the

10     lower left loop of the "J" has been altered to produce a sharp vertical line. The color

11     of the ink has changed

12 61. **Exhibit 4-2-BE** is a background-enhanced version of page 9 of the Deed of Trust.

13     Background-enhancement is accomplished by increasing the contrast and reducing

14     the brightness of an image. Page 9 was loaded into Adobe Photoshop and the contrast

15     set to 75% and the brightness to –47%. It reveals a multicolored line running from the

16     top of the page to the bottom that consists color laser toner residue. Page 9 shows a

17     laser toner residue scattered across the document. The pixels are colored cyan,

18     magenta, yellow and black.

19 62. The August 1st printed copy of the First Loan Collateral file has been altered by the

20     removal of the foregoing evidence of forgery.

21 **The October 18, 2012 Document Examination**

22 63. I examined the Third Set of questioned documents in Santa Ana on October 18, 2012.

23     The First Loan collateral file was examined and scanned using my equipment. There

24     are 26 pages comprising the scan of the First Loan collateral documents and 5 pages

25     comprising the scan of the Second Loan file.  The Second Loan collateral file was not

26     available for inspection.

27

28 Kelley Report on Loan Document                         11

64. During the examination, I noticed that all the files that I inspected had a slightly dirty appearance. The reason for this was unknown at the time.

65. I examined each of the 31 scanned pages collected using computer programs.

66. **Exhibit 5.1** is the signature (page 14) of the First Loan Deed of Trust for the. Exhibit 5.1 has a slightly dirty appearance. The purported signature of "James M. Kelley" in blue is on one of the signature lines.

67. I compared the signatures in Exhibit 5.1 and Exhibit 3.6. Exhibit 5.1 is significantly different than Exhibit 3.6. This can be seen at 100% magnification in Adobe acrobat. The upper loop of the "J" in Exhibit 3.6 is comprised of a single blue color. The bottom of the upper loop of the "J" in Exhibit 3.6 shows a block of black pixels. There are many different colors in the lower loop of the "J" in Exhibit 3.6. "James" is pixilated in Exhibit 3.6. "M" is comprised of saturated blue terminating in a different color and is pixilation in Exhibit 3.6. "Kelley" is variably colored black and blue and pixilated throughout in Exhibit 3.6. "Kelley" appears to be blurred from Pixilation at 100% magnification in Exhibit 3.6.

68. Exhibit 5.1 (signature page) shows that the Pixilation, blue-black and pure black variable coloring observed in Exhibit 3.6 has been removed. Exhibit 5.1 has also significantly changed the blue color of the signature. Exhibit 5.1 shows a thin cloud of smudge extending over the entire page that is not present in Exhibit 3.6.

69. When the blue color of Exhibit 3.6 is compared with the Exhibit 5.1 –the October 18, 2012 page 14 - the blue colors are not the same. Exhibit 5.1 shows a ratio of 1.02 cyan-to-magenta while Exhibit 3.6 shows a ratio of 1.1 cyan–to magenta. The eye can easily see such a large difference ink ratios.

70. **Exhibit 5.1 BE** is a background-enhanced version of Exhibit 5.1. The background enhancement is accomplished by setting the contrast at 100% and the Brightness at – 7%.

Case: 10-05245    Doc# 271    Filed: 02/20/13    Entered: 02/20/13 17:08:30    Page 12 of 23

71. **Exhibit 5.1 BE** shows laser roller stripes extending in lines vertically from the top of the paper to the bottom. The vertical lines are in cyan, magenta, yellow and black corresponding to a 4-color laser toner cartridge.

72. **Exhibit 5.1 BE** shows that the cause of the dirty appearance of the scanned pages is C, M, Y, K colored pixels scattered over the entire page 14.

73. I compared pages 3, 9, and 11 of the October Deed of Trust with the January 26, 2012 Exhibits 3.4, 3.3 and 3.5 respectively.

The black ink has been removed from the top and bottom of the "K" in the initials "JMK" on page 3.

The black ink has been removed from the bottom loop of the "K" in the initials "JMK" on page 9.

The "saturated blue" has been removed from the signature line and the letter "s" in initials "JMK" on page 11.

74. I examined the other 30 pages that were scanned in October and found the same characteristics of laser toner residue distributed over the entire page including the black and white text portions of each page where there is otherwise no color except black and white.

75. I examined the unquestioned documents Exhibits 2.1 and 2.2 given to me on or about September 18, 2007 to determine if they were possibly printed on a color laser printer. I also examined the unexecuted forms for the First given to me at escrow on July 26, 2007 for evidence of color laser printer residue. None of the unquestioned documents has any sign of color laser printer residue.

76. **Exhibit 5.2** Form 3257 is a Notice of Right to Cancel (img027) which has the initials "JMK" and the date "9-18-2007" in blue.

77. I examined **Exhibit 5.2** with background enhancement. **Exhibit 5.2 BE** is the background-enhanced version of Exhibit 3.10 (contrast 100%, brightness −17%).

Case: 10-05245    Doc# 271    Filed: 02/20/13    Entered: 02/20/13 17:08:30    Page 13 of 23

Exhibit 5.2 BE shows the color laser residue extending from the top of the page to the bottom in the CMYK colors. This confirms that Exhibit 5.3 is not an original document. It is a laser copy.

78. **Exhibit 5.3** is another Form 3257 Notice of Right to Cancel with the blue initials "JMK" and the blue Date "9-18-2007". **Exhibit 5.3 BE** is the background-enhanced version of Exhibit 3.10 (contrast 100%, brightness −17%).

Exhibit 5.3 BE shows the color laser residue extending from the top of the page to the bottom in the CMYK colors. This confirms that Exhibit 5.3 is not an original document. It is a laser copy.

79. Exhibit 5.2 and Exhibit 5.3 have opening date "9-18-07 " and "9-21-07" written in black by a third party. This violates the signing instructions and normal protocol that require that the loan documents be executed in blue ink. This fact is further evidence that the 31 pages produced on October 18, 2012 are colorized versions of black and white archival copies.

80. **Exhibit 5.4** is Form 33127 –the Occupancy Affidavit- for the Second Loan that bears the blue signature "James Kelley".

81. **Exhibit 5.4 BE** is the background-enhanced version of Exhibit 5.3. It shows that the Second Loan was printed on the same color laser printer as the First Loan documents.

82. **Exhibit 5.5** is page 6 of the Adjustable Rate Note produced on October 18. I compared Exhibit 5.5 with Exhibit 3.2 (January 26 version) to determine if the signature and blank endorsement are changed. The comparison shows that the blank endorsement has a different color and that the evidence of assembly by layered images removed. In addition the blue signature color has been changed and the Pixilation removed. It is reasonable to infer that Exhibit 5.5 is a "do over" of Exhibit 3.2.

83. All the documents inspected and copied on October 18 were printed on color laser printer. None of the documents inspected are original documents including the First

Case: 10-05245     Doc# 271     Filed: 02/20/13     Entered: 02/20/13 17:08:30     Page 14 of 23

| 1 | Loan Adjustable Rate Note and Deed of Trust. The Note and Deed of Trust are |
| 2 | fabricated on a color laser printer and are not original loan documents. |
| 3 | |
| 4 | **The January 11, 2013 Electronic Loan File** |
| 5 | **The File Metadata** |
| 6 | 84. Metadata contains information about the creation of an electronic file. It is useful in |
| 7 | this situation to determine how and when the file was created and whether it was |
| 8 | modified. |
| 9 | 85. **Exhibit 6.1** is the metadata for the First Loan Collateral file that shows that it was |
| 10 | scanned on a Canon iR-ADV 8105 printer October 25, 2012 at 3:32 PM. |
| 11 | 86. **Exhibit 6.2** is the metadata for the First Loan file that shows that it was scanned on a |
| 12 | Canon iR-ADV 8105 printer October 25, 2012 at 3:18:03 PM. |
| 13 | 87. **Exhibit 6.3** is the metadata for the Second Loan Collateral file that shows that it was |
| 14 | scanned on a Canon ScanFront 300 printer January 10, 2013 at 3:14:08 PM. |
| 15 | 88. **Exhibit 6.4** is the metadata for the Second Loan file that shows that it was scanned on |
| 16 | a Canon iR-ADV 8105 printer October 25, 2012 at 3:28:53 PM and that it was |
| 17 | subsequently modified October 25, 2012 at 3:38:03 PM |
| 18 | 89. **Exhibit 6.5** is the metadata for Bates version of the Second Loan Collateral file that |
| 19 | shows that it was modified on a Canon ScanFront 300 printer January 10, 2013 at |
| 20 | 3:29:51 PM. |
| 21 | 90. **Exhibit 6.6** is the metadata for Bates version of the First Loan file that shows that it |
| 22 | was scanned on a Canon iR-ADV 8105 printer October 25, 2012 at 3:01:26 PM and |
| 23 | modified at 3:25:45 PM. |
| 24 | 91. **Exhibit 6.7** is the metadata for Bates version of the Second Loan file that shows that |
| 25 | it was scanned on a Canon iR-ADV 8105 printer October 25, 2012 at 3:28:53 PM and |
| 26 | modified at 3:40:32 PM. |
| 27 | |
| 28 | Kelley Report on Loan Document                    15 |

92. **Exhibit 6.8** is the metadata for Bates version of the First Collateral file that shows that it was scanned on a Canon iR-ADV 8105 printer October 25, 2012 at 3:01:26 PM and modified 3:25:45 PM.

93. The **Canon 8105 printer** is a color scanner in a black and white printer. The **Canon ScanFront 300** is a color scanner/printer.

94. (Chase) Employee U894283 (Baker) on prepared the Second Loan file on 10/11/2012 per the coversheet.

95. (Chase) employee Carla F. Washington) prepared the First Loan file on 3/7/2012 per the coversheet.

96. It is not known who prepared the collateral files. There are no cover sheets for the collateral files.

**January 11, 2013 Document Examination**

97. I examined the First Loan file and the First loan Collateral file in Adobe Illustrator. Both files to determine if the pages were composed from multiple image layers. The January 26, 2012 file was layered. The January 11, 2013 files are layered.

98. I examined the First Loan Collateral file to determine what changes if any were made between October 18, 2012 and October 25, 2012.

99. **Exhibit 6.9** is page 6 of the Note.

100.    I examined Exhibit 6.9 to see if the color laser printer residue trails has been removed. The laser color trails have been removed and the page background has been changed.

101.    I examined Exhibit 6.9, which has 4 groups to see if the layers that assemble the signature and the blank endorsement have changed from Exhibit 3.2, which had 6 groups. They have been changed. There is one layer for the signature and 3 layers for the blank endorsement.

102.    The blank endorsement is different from Exhibit 5.5.

Case: 10-05245    Doc# 271    Filed: 02/20/13    Entered: 02/20/13 17:08:30    Page 16 of 23

1   103.    I examined the signature on Exhibit 6.9. It is a lighter blue than the signature from

2        October. The October signature is less pixilated but also shows defects.

3   104.    I examined pages 3, 9 and 11 of the Deed of Trust.

4   105.    Page 3 shows the black ink has been replaced with blue on the "K" in the initials

5        "JMK" as was the case October.

6   106.    **Exhibit 6.10** is page 9 of the First Deed of Trust. **Exhibit 6.10** shows that the

7        initials line a, the initials "JMK", and the"**l s :**" of "Initials:" has been colored a

8        saturated monotone blue. This is a direct indication of document alteration.

9  Second Loan Collateral File

10  107.    **Exhibit 6.10** is the signature page for the Credit Agreement that bears the

11       purported signature of "James Kelley" and the blank endorsement of "Cynthia A.

12       Riley" as vice president of Washington Mutual Bank.

13  108.    Exhibit 6.10 is set to a higher brightness than the 8 preceding pages which

14       washing out the background of the page. This obscures the Pixilation.

15  109.    Close inspection of the blank endorsement shows that the letters "**t**" and "**o**", "**t**"

16       and "**h**", "**o**" and "**r**", "**e**" and "**r**" and "**o**" and "**f**" are fused in "Pay to the order of".

17  110.    Close inspection of the blank endorsement shows that the letters "**i**" and "**t**" ,

18       "**e**"and "**c**", and "**s**" and "**e**" are fused in "Without Recourse".

19  111.    Close inspection of the blank endorsement shows that the letters "**B**" and "**a**", and

20       "**n**"and "**k**" are fused in "Washington Mutual Bank".

21  112.    The blank endorsement is an electronically applied stamp.

22  113.    The "K" in the signature of "James Kelley" was not made by made by me. The

23       large loop around the main leg of the "K" is atypical of my signature. The line

24       coming from the bottom of the leg of the "K" going towards and connecting with the

25       top arm of the "K" is unnatural and atypical of my signature.

26

27

28

Case: 10-05245   Doc# 271   Filed: 02/20/13   Entered: 02/20/13 17:08:30   Page 17 of 23

114.     I examined the purported "original" Documents that were scanned after a court ordered face-to-face meeting with Mr. Van in the Alvarado Smith PC on January 22, 2012.

115.     **Exhibit 7.1** is a copy of signature page of Form 33366 –The WaMu Equity Plus Agreement that contains the purported "blue ink" signature of "James Kelley" and the purported blank endorsement of "Cynthia A. Riley".

116.     The page was either scanned at a high brightness setting or post processed in a computer program to remove most of the visible background.

117.     **Exhibit 7.1_BE** is a background-enhanced version of Exhibit 7.1. It shows what appears to be a deep blue background emerging from the page. Approximately 6 vertical strips extending from the top of the page to the bottom appear faintly and seemingly intermittently in the background. These are color laser printer trails. Color laser printer trails were first observed in the October 18 document scans as C Y M K trails. In Exhibit 5.1BE, the laser roller residue tracks appear to be dark blue dots in a vertical line pattern.

118.     I magnified the Exhibit 7.1_BE to 3200% in order to determine what the color composition of the apparently dark blue background. The 4 individual pixels within a pixel block were colored sampled. The Cyan composition varied between 19% and 89%, the Magenta composition varied between 29% and 91 %, the ratio of Cyan to magenta (which determined the composite color) varies from 66% to 99%. This indicates that the color blocks are made of multiple colors typical of a laser printer.

119.     Photoshop and GIMP have the ability to create the colored pixel blocks by selecting the appropriate digital filter. This can be done with a single "button push".

120.     Exhibit 7.1_BE at normal size shows a spotlight lighting effect at the left of center at the top of the page. It shows three spot light effects at the bottom right of the page. It shows three spot light effects at the bottom of left of the page. It shows two

1   spotlights at the top of the page off center. The spotlights are angled so as to break the

2   background. The spotlight lighting effects are available in Photoshop and GIMP.

3   GIMP permits positioning of many light sources each with its own intensity. The only

4   useful purpose of the spotlights is to break up the laser color trails on the document.

5   The use of the spotlights is intentional. The use of spotlights does not happen by

6   accident or automatic process.

7   121.   Exhibit 2.1_BE is the background-enhanced version of the unquestioned signature

8         page of Exhibit 2.1. When Exhibit 2.1_BE is magnified in Photoshop it does not

9         show multicolored pixel blocks. It shows black and white pixels in the background.

10        Exhibit 2.1 is part of a black and white form and the only color on the page is in the

11        signature and its vicinity.

12   122.   I compared the yellow color from the marker pen in Exhibit 51 BE with the

13        yellow marker pen in Exhibit 2.1 BE (the unquestioned document and page) at 400%

14        magnification. The yellow ink in the unquestioned page contains black, yellow, red,

15        and green. Each color is uniform with the same composition. This is not true of

16        Exhibit 5.1, which shows the brown, red, gold, and green in a variety of shades. There

17        are no solid black pixels in the Yellow. In addition, the pixel blocks contain a mosaic

18        of smaller pixels, which have definite structures. Exhibit 2.1 and Exhibit 5.1 do not

19        match up.

20   123.   Exhibit 7.1 was scanned from a document to which a digital filter and lighting

21        effects were applied.   Exhibit 7.1 is significantly inconsistent with the Exhibit 2.1.

22        Exhibit 7.1 cannot be the signature page of the "original" Credit Agreement because

23        it is a computer processed and manipulated image.

24   124.   **Exhibit 7.2** is the scan of the first page of the questioned Adjustable Rate Note. It

25        shows an unexplained "worm" stamp top center. The page shows a clouded

26        background and torn top holes. The lighting effects are different than those for the

27        Second Loan.

28   Kelley Report on Loan Document                    19

125.    **Exhibit 7.3** is the scan of signature page 6 of the purported original Adjustable Rate Note. It shows the purported blue ink signature of James M. Kelley and the blank endorsement of Cynthia Riley as vice president of the non-existent Washington Mutual Bank, FA. The top holes are almost invisible due to the intense brightness adjustment applied to the page.

126.    **Exhibit 7.3_BE** is the background-enhanced image of page 6 of the Adjustable Rate Note. It shows laser printer trials in dark blue color on the right side of the page and near the middle of the page. When magnified to 400 %, a mosaic of pixel blocks emerges which is consistent with the preceding results. This indicates digital filtering (probably with the Mosaic Pixelation filter). Lighting effects are present as described for Exhibit 5.1.

127.    Exhibit 7.3 shows a gray cloud streak (about 7 millimeters wide) extending across the bottom quarter of the page. This streak appears on all the pages of the First Loan Collateral Documents showing that they were printed on the same dirty laser printer using the same lighting effects and digital filtering.

128.    There is also a vertical strip extending from the top of the page to the bottom of the page that is 1millimeter wide and set about 1 millimeter from the right edge of the paper. This vertical multicolored strip is consistent with a color laser printer.

**The February 2, 2013 Document Examination**

129.    A document examination was performed in San Francisco February 3. 2013. The scan was performed with an Epson WF-7520 capable scanning 8.5 X 14 documents with photographic resolution. The scan was performed at the San Francisco office of Alvarado Smith PC- the outside counsel for JP Morgan Chase Bank, NA.

130.    **Exhibit 8.1** is the questioned Form 4600 –Automatic Loan Payment Authorization for the Second Loan. Exhibit 8.1 is a clear example of document alteration. The Signature of "James Kelley" is shown in black ink while date is shown

Case: 10-05245    Doc# 271    Filed: 02/20/13    Entered: 02/20/13 17:08:30    Page 20 of 23

1  in blue ink as though executed by James Kelley. This shows that the black and white
2  date was converted to simulate the "blue ink" of an original.

3  131.  When the **Exhibit 8.1** background is enhanced it does not match with the
4  unquestioned pages Exhibits 2. It does match with Exhibit 5.2.

5  132.  **Exhibit 8.2** is questioned Form 30790 –Automatic Loan Payment Authorization
6  for the Second Loan. The Signature of "James Kelley" is shown in blue.  The
7  background-enhanced version does not match with the unquestioned pages.

8  133.  The "blue" signature in Exhibit 6.2 ( C/M ratio ~ 1.03) does not match the "blue"
9  color in the ink of Exhibit 2.1 ( C/M ratio ~1.11) the unquestioned document.

10  134.  **Exhibit 8.3** is the questioned document Form 3074 Authorization for Release of
11  Information. It shows a "black" colored check mark followed by the "blue" signature
12  of "James Kelley". The checkmark on an original document would be blue not black.
13  This appears to be a botched forgery. This is confirmed by the fact that the blue color
14  of the Exhibit 6.3 signature (C/M ratio = 1.01) does not match the "blue ink" of the
15  unquestioned document Exhibit 2.1 (C/M ratio ~1.11).

16  135.  **Exhibit 8.4** is Form 3257- the questioned Notice of Right to Cancel. The blue
17  color of the signature on the page does not match the unquestioned color of the blue
18  ink signature on the unquestioned Exhibit 2.1. In addition, the dates "9-18-07" and 9-
19  21-07" are in black; the dates would be blue if Exhibit 8.4 is a copy of an original
20  document.

21  136.  **Exhibit 8.5** is Form 32691 –Closing Documents Checklist. It is dated
22  "9/17/2007". It is purportedly signed in blue by Rosalie Silva whose name is also
23  printed in blue with the blue date "9-18-07". The blue color matches the signatures of
24  "James Kelley" in the Exhibits 8.1 through 8.3 but does not match blue ink color of
25  Exhibit 2.1 the unquestioned original signature does.

26  137.  The background of 8.5 has been digitally filter resulting in minute black specks
27  distributed throughout the page at contrast 100% and brightness –7%. (not shown)

28  Kelley Report on Loan Document                21

1  Curiously the post processing of the image has resulted vertical lines being inserted

2  on the image. In particular, one of these processed lines goes through the top right

3  paper hole where there is no paper.

4  138.  When Exhibit 8.5 is magnified in Adobe Acrobat to 1200%, the texture of "N" is

5  characteristic a color laser printer (laser printers fuse toner not ink). I took color

6  samples of the pixels in the "N" in Photoshop. The samples show many colors within

7  the "N" of "Notice" at the top right as follows:

8

| Cyan | 62 | 64 | 71 | 66 | 71 | 61 | 56 | 3 |
| Magenta | 68 | 70 | 67 | 69 | 68 | 65 | 58 | 3 |
| Yellow | 66 | 66 | 61 | 61 | 56 | 63 | 99 | 28 |
| K (black) | 65 | 77 | 64 | 65 | 54 | 54 | 55 | 0 |

11

## The Examiner's Opinion

13  139.  It is the examiners opinion that none of the collateral files produced for the First

14  and Second Loans are the original documents.

15  140.  It is the examiners opinion that the collateral files were printed on color laser

16  Printers from layered electronics files fabricated with computer programs such as

17  Adobe Photoshop, Illustrator, and GIMP.

18  141.  It is the examiners opinion that each collateral file produced in January 2012,

19  August 1, 2012, October 18, 2012, January 11, 2013, January 22, 2013 and February

20  2, 2013 have been successively changed in order to correct the defects in each prior

21  edition.

22  142.  It is the examiners opinion that the signatures in many file other than the collateral

23  files have been altered to appear as though they are blue ink signatures.

24  143.  It is the examiners opinion that after four years (February 2009 to February 2013),

25  it is clear that JP Morgan Chase Bank, NA does not possess the original collateral

26  files for the First and Second Loan and is relying on fabricated collateral files to

27  create the illusion of standing in the Bankruptcy and Adversary case.

28

**The Attestation**

144.   I, James Madison Kelley, declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct to the best of my knowledge and that this declaration was executed on January 18, 2013 in Saratoga, California.


Further the Declarant Sayeth Naught.


Executed on this 18th day of February 2013 at Saratoga, California.


James Madison Kelley, PhD

jmadisonkelley@gmail.com
14390 Douglass Lane
Saratoga, California 95070