ORIGINAL FILED
NOV 1 2 2013
CLERK
UNITED STATES BANKRUPTCY COURT
SAN JOSE, CALIFORNIA

James M. Kelley
14390 Douglass Lane
Saratoga, CA 95070
jmadisonkelley@gmail.com
Tel: (408) 402-1915

PRO SE

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA – DIVISION 5

| In Re:<br>JAMES MADISON KELLEY,<br><br>Debtor | Chapter 11<br><br>Adversary Case No. 10-05245 |
|---|---|
| JAMES MADISON KELLEY<br><br>Plaintiff<br><br>v.<br><br>JPMORGAN CHASE BANK, NA,<br><br>DOES (1-20) | Request for Judicial Notice of Judge Schack's Judicial Opinion in the case of JP Morgan Chase Bank, N.A. v. Frederick Butler, et al.<br><br>and<br><br>Declaration of James Madison Kelley in Support of the Request for Judicial Notice<br><br>(Proof of Service Included) |
| | Honorable Arthur S. Weissbrodt<br><br>Courtroom: 3020 |

Request for Judicial Notice of the Butler Opinion    1                Adversary Case 10-05245
& Declaration                                                          Bkr. Case 08-55305 ASW

**REQUEST FOR JUDICIAL NOTICE**

Pursuant to Federal Rule of Evidence 201, Plaintiff- James Madison Kelley hereby requests that the Court take judicial notice of the Judicial Opinion of Judge Arthur M. Schack of the Supreme Court of New York, Kings County obtained from LexisNexis (1686/10 Supreme Court of New York, Kings county 2013 N.Y. Misc. LEXIS 2761; 2013 Slip Op 51050 (U) decided July 5, 2013) and attached hereto as Exhibit 1:

> "JP Morgan Chase Bank, National Association, As Purchaser of the Loans and other Assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA ("the Saving Bank") From the Federal Deposit Insurance Corporation, Acting as Receiver for the Saving Bank and Pursuant to its Authority under the Federal Insurance act, 12 U.S.C. 1821 (d) 3415 Vinson Drive Columbus, OH 43219. Plaintiff, against Frederick Butler, et al., Defendants"

The case will be referred to herein as the Butler Opinion. JP Morgan Chase Bank, NA will be referred to as Chase.

Under Federal Rule of Evidence 201(d), judicial notice may be taken at any stage of the proceeding, including by an appellate court during the pendency of an appeal. Fed. R. Evid. 201(d); *see also Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003); *Bryant v. Carleson*, 444 F.2d 353, 357-58 (9th Cir. 1971); Circuit Advisory Committee Note Seven to Ninth Circuit Rule 27-1. "The Court may take judicial notice of any matter not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The Butler Opinion is a proper subject for judicial notice. The Butler Opinion attached hereto is a true and correct copy from LexisNexis whose accuracy can be accurately and readily determined and cannot reasonably be questioned." Fed. R. Evid. 201(b).

"Federal courts may 'take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the

matters at issue.'" *CactusCorner, LLC v. U.S. Dept. of Agric.*, 346 F.Supp.2d 1075, 1092 (E.D. Cal.2004) (quoting *United States ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.1992)).

    The Butler Opinion shows that JP Morgan Chase Bank, National Association lied to the New York Supreme Court stating that it owned the Butler mortgage and note for two years at the request of the owner of the Note (Fannie Mae). This is relevant to the adversary case in that the Plaintiff asserts that the Chase does not own the loans at issue while Chase maintains it does. Thus, the judicial opinion of Judge Schack is relevant to Plaintiff's claim that Chase lacks standing (and is lying about its standing) by proving that Chase lies at the instigation of the owner of the loan. Fed. R. Evid. 401(a)

    A federal court must take judicial notice of facts "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). Here the necessary information –Butler Opinion- is attached.

DATED: November 11, 2013

Respectfully Submitted by

*/s/ James Madison Kelley/*
James Madison Kelley

Pro Se Plaintiff

Request for Judicial Notice of the Butler Opinion    3    Adversary Case 10-05245
& Declaration                                                                   Bkr. Case: 08-55305 ASW

## DECLARATION OF JAMES MADISON KELLEY

I, James Madison Kelley, declare:

1. I am the Pro Se Plaintiff in the above captioned action. I make this Declaration in support of the Request for Judicial Notice filed herewith. The facts set forth below are within my personal knowledge unless otherwise indicated.

2. I copied the LexisNexis copy of the Judicial Opinion of Judge Arthur M. Schack

    "1686/10 Supreme Court of New York, Kings County
    2013 N.Y. Misc. LEXIS 2761; 2013 NY Slip OP51050 (U)
    July 5, 2013, Decided"

3. The Document attached as Exhibit 1 hereto is believed to be a true and correct copy of the LexisNexis document titled as follows:

    "JP Morgan Chase Bank, National Association, As Purchaser of the Loans and other Assets of Washington Mutual Bank, formerly known as Washington Mutual Bank, FA ("the Saving Bank") From the Federal Deposit Insurance Corporation, Acting as Receiver for the Saving Bank and Pursuant to its Authority under the Federal Insurance act, 12 U.S.C. 1821 (d) 3415 Vinson Drive Columbus, OH 43219. Plaintiff, against Frederick Butler, et al., Defendants"

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 11, 2013 at Saratoga, California.

*James Madison Kelley* (signature)

James Madison Kelley

Pro Se Plaintiff
14390 Douglass Lane
Saratoga, CA 95070

```
(408) 402-1915
jmadisonkelley@gmail.com
```

## PROOF OF SERVICE

I, James Madison Kelley, under penalty of perjury attest that I mailed the following documents to the parties named below:

"Request for Judicial Notice of Judge Schack's Judicial Opinion in the case of JP Morgan Chase Bank, N.A. v. Frederick Butler, et al.

and

Declaration of James Madison Kelley in Support of the Request for Judicial Notice"

By US mail to the following people:

S. Christopher Yoo, esq.
John M. Sorich, esq.
Thomas Van, esq.

AlvaradoSmith, PC
1 MacArthur Place, #200
Santa Ana, CA 92707

Dated at Saratoga, California, this 11[h] day of November 2013

By: *James Madison Kelley*
James Madison Kelley

Request for Judicial Notice of the Butler Opinion    5        Adversary Case 10-05245
& Declaration                                                  Bkr. Case: 08-55305 ASW

# EXHIBIT 1



[**1] JP Morgan Chase Bank, National Association, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (d) 3415 Vinson Drive Columbus, OH 43219, Plaintiff, against Frederick Butler et. al., Defendants.

1686/10

SUPREME COURT OF NEW YORK, KINGS COUNTY

2013 N.Y. Misc. LEXIS 2761; 2013 NY Slip Op 51050(U)

July 5, 2013, Decided

**NOTICE:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

**COUNSEL:** [*1] For Plaintiff: Sarah Feor, Esq., JP Morgan Chase, Garden City NY.

For Defendant: Yolande I. Nicholson, Esq., Brooklyn NY.

**JUDGES:** HON. ARTHUR M. SCHACK, J. S. C.

**OPINION BY:** ARTHUR M. SCHACK

**OPINION**

Arthur M. Schack, J.

Plaintiff, JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (d) [CHASE], commenced the instant foreclosure action

Case: 10-05245   Doc# 329   Filed: 11/12/13   Entered: 11/12/13 16:02:33   Page 7 of 20

Page 2

2013 N.Y. Misc. LEXIS 2761, *; 2013 NY Slip Op 51050(U), **

against defendant FREDERICK BUTLER [BUTLER], for the premises located at 325 Macon Street, Brooklyn, New York (Block 1847, Lot 49, County of Kings). After numerous CPLR Rule 3408 mandatory settlement conferences, first conducted by a Special Referee in the Foreclosure Settlement Part and then personally before me, the instant action for the foreclosure of the subject mortgage became moot, with the sale of the subject premises and the recording of a satisfaction by CHASE. The issue before the Court is the distribution of $490,000.00, deposited by defendant BUTLER with the Kings County Clerk, pursuant [*2] to my June 27, 2011 order authorizing the sale of the premises. This money is claimed by both CHASE and BUTLER. However, CHASE never owned the subject mortgage and note, despite asserting for almost two years that it did, and BUTLER never paid the balance due.

After numerous misrepresentations to the Court by various counsel for CHASE, it is clear that the actual BUTLER mortgage and note, given in 2007 by the defunct WASHINGTON MUTUAL BANK, FA [WAMU], was acquired in 2007 by the FEDERAL NATIONAL MORTGAGE ASSOCIATION [FANNIE MAE] from WAMU. Despite CHASE'S claims, before December 2011, to the Special Referee and the Court that it owned the subject mortgage and note, plaintiff CHASE only purchased the servicing rights to the subject mortgage and note from the FEDERAL DEPOSIT INSURANCE CORPORATION [FDIC] in September 2008, when WAMU was seized by the FDIC.

Plaintiff CHASE, as will be explained, never owned the subject BUTLER mortgage and note. Therefore, CHASE had no right to foreclose on the subject mortgage and note. Moreover, the continued subterfuge by CHASE and its counsel to the Special Referee and Court that it owned the subject BUTLER mortgage and note demonstrated "bad faith" in [*3] violation of CPLR Rule 3408 (f), which requires that "[b]oth the plaintiff and defendant shall negotiate in good faith to reach a mutually agreeable resolution, including a loan modification, if possible."

The Court has before it two orders to show cause by defendant BUTLER. The first order to show cause, dated October 26, 2011, seeks: the release, to defendant BUTLER, pursuant to [**2] CPLR Rule 2606, of the $490,000.00 deposited with the Kings County Clerk; reinstating defendant BUTLER's May 10, 2011 order to show cause which sought dismissal of the instant action with prejudice since plaintiff CHASE was not the holder of the subject promissory note; dismissing the action with prejudice, pursuant to CPLR Rule 3211 (a) (1), (3), (7) and (8); sanctioning plaintiff and plaintiff's counsel, pursuant to 22 NYCRR § 130-1.1; and, declaring the subject BUTLER note to be fully satisfied. Defendant BUTLER's second order to show cause, dated March 29, 2012, seeks leave to amend defendant's February 22, 2010-answer. Plaintiff CHASE, by an amended cross-motion, seeks the release, pursuant to CPLR Rule 2606, of [*4] the $490,000.00 deposited by defendant BUTLER with the Kings County Clerk, to plaintiff CHASE.

This case is troubling because various counsel for CHASE falsely claimed for almost two years, from January 20, 2010 until December 2011, that CHASE was the owner of the mortgage and note. Ultimately, in late 2011, after the subject mortgage had been satisfied, plaintiff CHASE's counsel admitted, in opposition to defendant BUTLER's October 26, 2011 order to show cause, that plaintiff CHASE did not own the BUTLER mortgage and note, but only the servicing rights to it. CHASE's counsel, in its opposition papers, submitted an affidavit, dated December 9, 2011, from Greg De Castro, "Director-Servicing Management" of FANNIE MAE, claiming that FANNIE MAE acquired from WAMU the BUTLER Mortgage and Note and "Chase is the servicer of the loan." Further, Mr. De Castro makes the ludicrous claim, in violation of New York law, that "[a]s Fannie Mae's

servicer, CHASE has authority to commence a foreclosure action on the Loan and to receive and/or collect the proceeds from the sale of the Property."

For reasons to be explained, in applying the Court's equitable powers, the Court grants the October 26, 2011 [*5] order to show cause of defendant BUTLER to the extent that: the Kings County Clerk shall release to defendant BUTLER $55,617.11 from the $490,000.00 deposited with the Kings County Clerk; the Court's declares that the subject BUTLER Note is fully satisfied; and a hearing shall be conducted to (1) determine whether CHASE or FANNIE MAE is entitled to the balance of $434,382.89 deposited with the Kings County Clerk, pursuant to my order and, (2) to give CHASE and its counsel an opportunity to be heard as to whether or not they engaged in frivolous conduct, in violation of 22 NYCRR § 130-1.1, and if so should CHASE and/or its counsel pay any costs and sanctions. The March 29, 2012 order to show cause of defendant BUTLER is denied as moot. The amended cross-motion of plaintiff CHASE for the release of the $490,000.00 deposited with the Kings County Clerk, to plaintiff CHASE, is denied.

Background

Defendant's parents, William Butler and Louisa Butler, purchased the subject premises in 1966 (Reel 224, Page 471 of the New York City Register for Kings County). On July 12, 2002, the subject premises were deeded to defendant BUTLER by Louisa Butler, the surviving spouse of William Butler (Reel [*6] 5727, Page 1870 of the New York City Register for Kings County). Defendant BUTLER, on January 30, 2007, refinanced his home by executing a note and mortgage with WAMU for $450,000.00, recorded in the Office of the City Register of the City of New York, at CRFN 2007000123607, on March 7, 2007. Also, on January 30, 2007, Mr. Butler received a home equity line of credit with WAMU, recorded in the Office of the New York City Register, at CRFN 2007000123608, on March 7, 2007. [**3]

The Automated City Register Information System (ACRIS) does not show any assignments of the WAMU mortgage to FANNIE MAE or CHASE. However, a CHASE representative, Yvonne Brooks, "Home Loan Senior Research Specialist," in her December 8, 2011-affidavit attached to plaintiff's cross-motion, claims, in ¶ 6, that FANNIE MAE, in April 2007, purchased the BUTLER loan and WAMU retained the servicing rights. Exhibit D of the cross-motion contains a computer printout, dated April 20, 2007, showing this. Thus, plaintiff CHASE ultimately acknowledged that FANNIE MAE is the "Wizard of Oz," operating behind the curtain, and the real owner of the subject BUTLER note and mortgage.

> In 2008 there was a dispute between WAMU and defendant [*7] BUTLER about a $10.00 late payment on BUTLER's home equity line of credit. According to defendant BUTLER, WAMU ultimately acknowledged its error and promised defendant BUTLER that the error would be promptly corrected. However, in the interim, WAMU had defendant BUTLER's home equity line of credit rescinded and injured his credit rating by reporting erroneous information to credit bureaus.

Then, on September 24, 2008, WAMU failed and its deposits and assets were seized by the federal government. On September 25, 2008, the Office of Thrift Supervision, a now-defunct federal agency, named the Federal Deposit Insurance Corp. (FDIC) as Receiver for WAMU.

WAMU had not corrected its errors by re-instituting Butler's line of credit and correcting the erroneous reporting to credit bureaus before it was seized by the FDIC. CHASE, despite its assertions to the contrary for almost two years in the instant action, purchased the servicing rights to WAMU's mortgages and notes, not the actual mortgages and notes.

In a letter, dated October 10, 2008, CHASE advised BUTLER that WAMU was closed by the Office of Thrift Supervision and the FDIC was named Receiver. It then states that CHASE "acquired certain [\*8] assets of Washington Mutual Bank from the FDIC, including the right to service your loan."

Plaintiff CHASE's counsel, then Steven J. Baum, P.C., commenced the instant foreclosure action on the subject premises, with the filing of a summons, complaint and notice of pendency on January 20, 2010. In the first paragraph of the complaint, Steven J. Baum, P.C., "alleges upon information and belief" that plaintiff CHASE is "the owner and holder of a note and mortgage being foreclosed."

After plaintiff CHASE filed a Request for Judicial Intervention, an initial CPLR Rule 3408 mandatory settlement conference was held on March 22, 2010, followed by at least nine additional conferences, before Special Referee Deborah Goldstein. Defendant BUTLER appeared *pro se* except for the last conference, when he was represented by Yolande I. Nicholson, Esq. At the conclusion of the April 7, 2011-settlement conference, Special Referee Goldstein ordered that "Plaintiff is directed to appear by Sarah Feor, the attorney of Baum with knowledge of the standing and litigation issues. Production of all title and ownership documentation, including the note and all assignments are required to be produced in accordance [\*9] with [CPLR] 3408 (e) at the next conference on 4/11/11 and Sarah Feor, Esq. must appear with a Chase rep."

In her April 14, 2011 order, Special Referee Goldstein noted that plaintiff Chase and its counsel "failed to abide by my last directive requiring a Chase representative to be present with a [\*\*4] copy of the Note. In addition, Plaintiff appeared by two different law firms, Baum and Cullen & Dykman LLP, and they cannot agree on who is authorized to appear and negotiate on behalf of Chase." Moreover, Special Referee Goldstein noted that the payoff letters provided by CHASE's counsel included attorneys' fees for settlement conferences. Therefore, Special Referee Goldstein required plaintiff to provide defense "with a clear payoff reflecting only principal and capitalized arrears on or before 4/21/11," and to "produce a copy of the Note and all documents reflecting the transfer of title from WAMU to Chase at the next conference on 5/2/11."

The next conference was held before me on May 2, 2011. Counsel were present from both Baum and Cullen & Dykman for plaintiff, as well as counsel for defendant. CHASE'S new counsel, Cullen & Dykman, finally presented to the Court for its inspection the [\*10] original note to WAMU executed by BUTLER. Plaintiff's counsel from both Baum and Cullen & Dykman represented to the Court that CHASE was the holder of the note. However, the WAMU note was not endorsed by the FDIC as Receiver or any other entity and ACRIS does not show any assignment of the mortgage. The conference did not result in a settlement.

Several days later, defendant BUTLER received in his home mailbox from the Baum law firm a J. P. Morgan Payment History on his loan, No. 3012577379, for the subject premises. The computerized printout received by defendant BUTLER states that there was full settlement on "5/22/10" and that the loan was "REMOVED LOSS MITIGATION." The printout shows that on "5-22-10" a transaction for "$454,337.35" took place, of which "$434,382.89" is listed as

Page 5

2013 N.Y. Misc. LEXIS 2761, *; 2013 NY Slip Op 51050(U), **

"PRINCIPAL" and "$19,954.46" is listed as "INTEREST." This is no reference as to who paid the $454,337.35. Sarah Feor, Esq., then of the Baum firm, in her December 12, 2011 affirmation attached to plaintiff's cross-motion, states, in ¶ 28:

> On or about April 29, 2011, our office [Baum's] received the previously requested loan payment history from Plaintiff. As the borrower was previously appearing *pro se* [*11] and had only recently retained counsel, the payment history was *inadvertently* [*emphasis added*] sent to the Defendant directly by a legal assistant from Plaintiff's counsel office. The loan history was sent in an effort to comply with a prior directive of Referee Goldstein.

Defendant's counsel, as a result of this payment history, moved by an order to show cause, dated May 10, 2011, for, among other things: dismissal of the instant action based upon plaintiff's lack of good faith in that "plaintiff had received payment on May 22, 2010 for the amount specified" as owing in the complaint [$434,382.89]; and, awarding costs and sanctions against plaintiff because "plaintiff withheld material information, including the May 22, 2010 payment from the Court." In the May 10, 2011 order to show cause, I directed plaintiff to provide the Court with detailed information as to "the entity or third party that made the payment to it on May 22, 2010 that is specified in the payment history it delivered to defendant on May 4, 2011 . . . which payment resulted in plaintiff marking its loan payment history records fully settled,' in its opposition papers to be filed and served by June 13, 2011." Plaintiff [*12] failed to comply with this order and at the June 27, 2011 hearing before me made an application to extend the time to identify the May 22, 2010 payor. I denied this request.

In my June 27, 2011 decision and order, I granted defendant BUTLER's May 10, 2011 order to show cause to the extent that he could close on a long-sale of the subject premises and deposit [**5] $490,000.00 of the proceeds with the Kings County Clerk, pursuant to the CPLR § 1006 (g). Further, I directed that a certified copy of this order be filed with the City Register and that at the closing on the sale of the subject premises the title company could accept no proceeds on behalf of plaintiff CHASE. The parties could then move for distribution of the $490,000.00 deposited with the Kings County Clerk, after the closing of title on the subject premises.

The closing on the sale of the subject premises, for $839,000.00, took place on July 18, 2011. $490,000.00, pursuant to my order, was deposited with Kings County Clerk on that day. As per my June 27, 2011 order, CHASE issued a satisfaction of the subject BUTLER mortgage on September 7, 2011 and recorded it on September 26, 2011, in the Office of the City Register of the City [*13] of New York, at CRFN 2011000340485

In her August 25, 2011 order, Special Referee Goldstein referred the instant action back "to Part 27 for all purposes when they [the parties] reached an impasse regarding production of the original note."

The parties then made the orders to show cause and cross-motion now pending before the Court. Cullen & Dykman, in its opposition to defendant's instant order to show cause and in support of its cross-motion for the release of the $490,000.00 deposited with the Kings County Clerk to plaintiff CHASE, asserts that CHASE is entitled to receive the funds, on page 2 of its December 9, 2011-memorandum of law because "Chase, the servicer of the loan made by Washington Mutual Bank,

Page 6

2013 N.Y. Misc. LEXIS 2761, *; 2013 NY Slip Op 51050(U), **

N.A. andnow owned by Fannie Mae, is the designated entity to collect and receive the pay-off funds to satisfy the mortgage on the Property." In his December 9, 2011-affidavit, Greg De Castro, "Director-Servicing Management," for FANNIE MAE states, in ¶ 3, that "Fannie Mae acquired from Washington Mutual Bank, F.A. . . . ownership of the loan executed by Frederick Butler in the principal amount of $450,000.00 which is secured by a lien on the Property . . . Chase is the servicer of [*14] the Loan." Further, in ¶ 5, Mr. De Castro claims that "[a]s Fannie Mae's servicer, CHASE has authority to commence a foreclosure action on the Loan and to receive and/or collect the proceeds from the sale." CHASE, Mr. De Castro and FANNIE MAE must be unaware that in New York "[t]o establish a prima facie case in an action to foreclose a mortgage, the plaintiff must establish the existence of the mortgage and mortgage note, *ownership of the mortgage*, and the defendant's default in payment [*emphasis added*]." (*Campaign v Barba*, 23 AD3d 327, 805 N.Y.S.2d 86 [2d Dept 2005]). Further, *"foreclosure of a mortgage may not be brought by one who has no title to it."* (*Kluge v Fugazy*, 145 AD2d 537, 538, 536 N.Y.S.2d 92 [2d Dept 1988]). Moreover, "[p]laintiff's attempt to foreclose upon a mortgage in which he had no legal or equitable interest was without foundation in law or fact." (*Katz v East-Ville Realty Co.*, 249 AD2d 243, 672 N.Y.S.2d 308 [1d Dept 1998]). It is clear, that after almost two years of its bad faith assertions to the contrary, CHASE never owned the subject mortgage and note. Therefore, CHASE lacks authority to be the plaintiff in the instant action. "The foreclosure of a mortgage cannot be pursued by one who has no demonstrated [*15] right to the debt." (*Bank of New York v Silverberg*, 86 AD3d 274, 280, 926 N.Y.S.2d 532 [2d Dept 2011]).

Yvonne Brooks, CHASE's Home Loan Senior Research Specialist, in her December 8, 2011-affidavit, admits, in ¶ 6, that FANNIE MAE, in April 2007 "purchased the loan from Washington Mutual . . . However, Washington Mutual retained the servicing rights." Then, Ms. Brooks, in ¶ 7 of her affidavit, states that on September 25, 2008 WAMU was placed into [**6] receivership by the FDIC and CHASE purchased certain assets, "including mortgage servicing rights." She then states, in ¶ 8, "[d]ue to the Chase's purchase of Washington Mutual's servicing rights, Chase took over the servicing obligations of the Loan."

Ms. Brooks, in ¶ 13 of her affidavit, alleges that the Fannie Mae 2006 Servicing Guide, VIII, 102, "Initiation of Foreclosure Proceedings [exhibit H of cross-motion]," allows CHASE to be the plaintiff in the instant action. A reading of this FANNIE MAE regulation demonstrates the lengths to which FANNIE MAE evaded its responsibility to be the real plaintiff in interest in the instant action or other foreclosure proceedings. It demonstrates the "unclean hands" of FANNIE MAE and its servicer, CHASE. It is FANNIE [*16] MAE'S roadmap of how to inveigle and deceive a court. This FANNIE MAE regulation states, in relevant part:

> *Fannie Mae is at all times the owner of the mortgage note*, whether the note is in our portfolio or whether we own it as trustee for an MBS trust. In addition, Fannie Mae at all times has possession of and is the holder of the mortgage note, except in the limited circumstances expressly described below. We may have direct possession of the note or a custodian may have custody of the note for us. If we possess the note through a document custodian, the document custodian has custody of the note for our exclusive use and benefit. In most cases, a servicer will have a copy of the mortgage note that it can use to begin the foreclosure process. However, some jurisdictions require that the servicer produce the original note before or shortly after initiating foreclosure proceedings. If our possession of the note is direct because the custody documents are

Page 7

2013 N.Y. Misc. LEXIS 2761, *; 2013 NY Slip Op 51050(U), **

at our document delivery facility, to obtain the note or any other custody documents that are needed, the servicer should submit a request to our Custody Department . . . the servicer should specify whether the original note is required [*17] or whether the request if for a copy. In some jurisdictions, only the "holder" of the note may conduct a foreclosure. *In any jurisdiction in which our servicer must be the holder of the note in order to conduct the foreclosure, we temporarily transfer our possession of the note to our servicer, effective automatically and immediately before commencement of the foreclosure proceeding. When we transfer our possession, our servicer becomes the holder of the note during the foreclosure proceedings.* If the borrower reinstates the loan or the servicer ceases to service the loan for Fannie Mae for any reason, then possession of the note at that time automatically reverts to Fannie Mae and the note must be returned to the document custodian. At that time, Fannie Mae also resumes being the holder, just as it was before the foreclosure proceedings. The transfer of our possession, and any reversion of possession to us are evidenced and memorialized by our publication of this paragraph. *This Guide provision may be relied upon by a court to establish that the servicer conducting the foreclosure proceeding has possession, and is the holder, of the note during the foreclosure proceeding,* [**7] *unless* [*18] *the court is otherwise notified by Fannie Mae. [Emphasis added]*."

Thus, it appears to the Court that the delay by CHASE in producing the subject BUTLER Note was to give Baum and/or Cullen & Dykman ample time to temporarily borrow the BUTLER Note from FANNIE MAE for its May 2, 2011 presentation to the Court. Despite its December 2011 admission that FANNIE MAE owned the subject BUTLER mortgage and note, CHASE, prior to this, continuously presented its ownership subterfuge to Special Referee Goldstein and the Court. The Court cannot countenance the deceptive behavior of CHASE, the alleged owner of the subject BUTLER mortgage and note, its counsel, and FANNIE MAE, the real owner of the subject BUTLER mortgage and note. FANNIE MAE's Servicing Guide, with its deceptive practices to fool courts, does not supercede New York law.

Further, Ms. Brooks explains the May 22, 2010 transaction, in ¶ 14 of her affidavit, as "an automatic cashless Fannie Mae transaction . . . which reclassifed the loan from being a schedule/schedule loan to an actual actual/actual remittance loan mortgage. *See Fannie Mae 2006 Servicing Guide I, 208.06: Reclassification of Certain MBS Pool Mortgages attached hereto as* [*19] *Exhibit "H* [sic]." This regulation, in its version of Orwellian *Nineteen Eighty-Four* "Newspeak," states:

> Rather than requiring the servicer to repurchase certain delinquent MBS pool mortgages that are serviced under the special servicing option - those for which we have the entire foreclosure loss risk and those for which Fannie Mae and the servicer share the foreclosure loss risk with Fannie Mae having the responsibility for marketing the acquired property - we will automatically reclassify a mortgage that satisfies our selection criteria as an "actual/actual" remittance type portfolio mortgage. Generally, we will select mortgages that have at least three payments past due for reclassification in the month when the fourth payment is delinquent.

Page 8

2013 N.Y. Misc. LEXIS 2761, *; 2013 NY Slip Op 51050(U), **

Ms. Brooks, based upon the reclassification of the Butler mortgage, alleges in ¶ 16 of her affidavit, that the BUTLER loan "reclassification presents as FULL SETTLEMENT 5/22/10' on defendant's loan history and does not represent a payment [exhibit G of cross-motion]."

Discussion

In analyzing the instant orders to show cause and cross-motion, the Court is cognizant that, with the sale of the subject premises and the $490,000.00 of the proceeds deposited [*20] with the Kings County Clerk, the instant BUTLER foreclosure action is now moot. However, the Court must deal with the aftermath, namely: the issue of bad faith by CHASE, its counsel and FANNIE Mae; the distribution of the $490,000.00 on deposit with the Kings County Clerk; and, whether the bad faith by CHASE and its counsel is frivolous conduct.

"A foreclosure action is equitable in nature and triggers the equitable powers of the court (*see Notey v Darien Constr. Corp.*, 41 NY2d 1055, 1055-1056, 364 N.E.2d 833, 396 N.Y.S.2d 169 [1977]). Once equity is invoked, the court's power is as broad as equity and justice require.' (*Norstar Bank v Morabito*, 201 AD2d 545, 607 N.Y.S.2d 426 [2d Dept 1994])." (*Mortgage Elec. Registration Sys., Inc. v Horkan* (68 AD3d 948, 890 N.Y.S.2d 326 [2d Dept 2009]). (*See Jamaica Sav. Bank v M.S. Inv. Co.*, 274 NY 215, 8 N.E.2d 493 [1937]). "Since it is the plaintiff lender who seeks equitable relief from this court, the onus is upon the lender to satisfy the requisites of equity and come to this court with clean hands.' (*Junkersfeld v Bank of Manhattan Co.*, 250 App Div 646, 295 N.Y.S. 62 [1d Dept 1937])." ( [**8] *M & T Mtge. Corp. v Foy*, 20 Misc 3d 274, fn 1, 858 N.Y.S.2d 567 [Sup Ct, Kings County 2008]). (*See Wells Fargo Bank, N.A. v Hughes*, 27 Misc 3d 628, 634, 897 N.Y.S.2d 605 [Sup Ct, Erie County 2010]).

A [*21] principal of equity is that "[a] wrongdoer should not be permitted to profit from his or her wrong (*see Kirschner v. KPMG LLP*, 15 NY3d 446, 464, 938 N.E.2d 941, 912 N.Y.S.2d 512 [2010]; *Campbell v Thomas*, 73 AD3d 103, 116-117, 897 N.Y.S.2d 460 [2d Dept 2010]; *Beaumont v American Can Co.*, 215 AD2d 249, 626 N.Y.S.2d 201 [1d Dept 1995])." (*Norwest Bank Minn. N.A. v E.M.V. Realty Corp.*, 94 AD3d 835, 836, 943 N.Y.S.2d 113 [2d Dept 2012]).

CHASE, in the instant action, committed a fraud upon the Court by claiming to be the plaintiff. FANNIE MAE should have been the plaintiff as the owner of the note and mortgage when the BUTLER foreclosure action commenced. Thus, CHASE went to numerous CPLR Rule 3408 mandatory settlement conferences with unclean hands, falsely alleging that it was the plaintiff owner of the BUTLER mortgage and note. Recently, the Court in

*Wells Fargo Bank, N.A. v Meyers* ( AD3d , 2013 NY Slip Op 03085 at* 1-2 [2d Dept, May 1, 2013]) instructed:

> CPLR 3408 provides for mandatory settlement conferences in certain residential foreclosure actions (*see* former CPLR 3408). In 2009, shortly after the passage of the Subprime Residential Loan and Foreclosure Laws, the Legislature amended a number of the recently enacted statutes, including CPLR 3408 (*see* L 2009, ch [*22] 507). The purposes of the amendments were to allow more homeowners at risk of foreclosure to benefit from consumer protection laws and opportunities to prevent foreclosure; to establish certain requirements for plaintiffs in foreclosure actions obligating them to maintain the subject properties; to establish protections for tenants living in foreclosed

Page 9

2013 N.Y. Misc. LEXIS 2761, *; 2013 NY Slip Op 51050(U), **

properties; and to strengthen consumer protections aimed at defeating "rescue scams" (Governor's Mem, Bill Jacket, L 2009, ch 507, at 5). The 2009 amendments include a provision requiring that "[b]oth the plaintiff and defendant shall negotiate in good faith to reach a mutually agreeable resolution, including a loan modification, if possible" (CPLR 3408 [f]). While CPLR 3408 (f) requires the parties at a settlement conference to negotiate in good faith, that section "does not set forth any specific remedy for a party's failure" to do so (Hon. Mark C. Dillon, *The Newly-Enacted CPLR 3408 for Easing the Mortgage Foreclosure Crisis: Very Good Steps, but not Legislatively Perfect*, 30 Pace L. Rev 855 at 875 [2010]).

The Chief Administrator for the Courts promulgated 22 NYCRR 202.12-a, the rules for CPLR Rule 3408 mandatory settlement conferences. [*23] 22 NYCRR 202.12-a (c) (4) provides that: [**9]

> The parties shall engage in settlement discussions in good faith to reach a mutually agreeable resolution, including a loan modification if possible. The court shall ensure that each party fulfills its obligation to negotiate in good faith and shall see that conferences not be unduly delayed or subject to willful dilatory tactics so that the rights of both parties may be adjudicated in a timely manner.

In *HSBC Bank, USA v McKenna* (37 Misc 2d 885, 905-906, 952 N.Y.S.2d 746 [Sup Ct, Kings County 2012]), the Court provides a lengthy discussion as to the meaning of "good faith," finding:

> Generally, "good faith" under New York law is a subjective concept, "necessitat[ing] examination of a state of mind." (*See Credit Suisse First Boston v Utrecht-America Finance Co.*, 80 AD3d 485, 487, 915 N.Y.S.2d 531 [1d Dept 2011], quoting *Coan v Estate of Chapin*, 156 AD2d 318, 319, 549 N.Y.S.2d 16 [1d Dept 1989]). "Good Faith" is an intangible and abstract quality with no technical meaning or statutory definition." (*Adler v 720 Park Ave. Corp.*, 87 AD2d 514, 515, 447 N.Y.S.2d 727 [1d Dept 1982], quoting *Doyle v Gordon*, 158 NYS 2d 248, 249 [Sup Ct, New York County 1954]). "It encompasses, among other things, an honest belief, the absence [*24] of malice and the absence of a design to defraud or to seek an unconscionable advantage." (*Doyle v Gordon*, 158 NYS2d at 259-260; *see also* UCC 1-201 [19] ["Good Faith' means honesty in fact in the conduct or transaction concerned."] "Good faith is . . . lacking when there is a failure to deal honestly, fairly, and openly." (*Matter of CIT Group/ Commerical Servc., Inc. v 160-09 Jamaica Ave. Ltd. Partnership*, 25 AD3d 301, 303, 808 N.Y.S.2d 187 [1d Dept 2006] [internal quotation marks and citation omitted]; *see also Southern Indus. v Jeremias*, 66 AD2d 178, 183, 411 N.Y.S.2d 945 [2d Dept 1978]). "In New York, as elsewhere, good faith' connotes an actual state of mind--a state of mind motivated by proper motive." *Plotti v Fleming*, 277 Fed 864, 868 [2d Cir 1960]). In the context of negotiations, the absence of agreement does not itself establish the lack of good faith. (*See*

Page 10

2013 N.Y. Misc. LEXIS 2761, *; 2013 NY Slip Op 51050(U), **

*Brookfield Indus. v Goldman*, 87 AD2d, 752, 753, 448 N.Y.S.2d 694 [1d Dept 1982]). [**10] Usually, a finding of lack of good faith in CPLR Rule 3408 settlement conferences has been determined from the conduct of the mortgagee/plaintiff. "Conduct such as providing conflicting information, refusal to honor agreements, unexcused delay, unexplained charges, and misrepresentations have [*25] been held to constitute "bad faith." (*Flagstar Bank, FSB v Walker*, 37 Misc 3d 312, 318, 946 N.Y.S.2d 850 [Sup Ct, Kings County 2012]). (*See Wells Fargo Bank, N.A. v Ruggiero*, 39 Misc 3d 1233 (A), at * 6 [Sup Ct, Kings County 2013]; *One W. Bank, FSB v Greenhut*, 36 Misc 3d 1205 (A), at * 4-5 [Sup Ct, Westchester County 2012]). In the instant action, it is obvious that plaintiff CHASE and its counsel provided conflicting information, unexplained charges and misrepresentations. Clearly, CHASE and its counsel engaged in bad faith, with its "failure to deal honestly, fairly, and openly."

The Appellate Division, Second Department, in *Wells Fargo Bank, N.A. v Meyers* at * 7, discussed the remedies that courts may use if foreclosure plaintiffs violated their obligation, pursuant to CPLR Rule 3408 (f), to negotiate in good faith. The Court observed:

> In the absence of specific guidance from the Legislature or the Chief Administrator of the Courts as to the appropriate sanctions or remedies to be employed where a party is found to have violated its obligation to negotiate in good faith pursuant to CPLR 3408 (f), the courts have resorted to a variety of alternatives in an effort to enforce the statutory mandate to [*26] negotiate in good faith. For example, upon finding that foreclosing plaintiffs have failed to negotiate in good faith, courts have barred them from collecting interest, legal fees, and expenses (*see Bank of Am., N.A. v Lucido*, 35 Misc 3d 1211 [A], 950 N.Y.S.2d 721, 2012 NY Slip Op 50655(U) [Sup Ct., Suffolk County 2012]; *BAC Home Loans v Westervelt*, 29 Misc 3d 1224 [A], 920 N.Y.S.2d 239, 2010 NY Slip Op 51992(U) [Sup Ct., Dutchess County 2010]; . . . *Wells Fargo Bank v Hughes*, 27 Misc 3d 628, 897 N.Y.S.2d 605 [Sup Ct., Erie County 2010] . . . [and] imposed a monetary sanction pursuant to 22 NYCRR part 130 (*see Deutsche Bank Trust Co. of Am. v Davis*, 32 Misc 3d 1210 [A], 934 N.Y.S.2d 33, 2011 NY Slip Op 51238(U) [Sup Ct, Kings County 2011]; *cf. BAC Home Loans v Westervelt*, 29 Misc 3d 1224, 920 N.Y.S.2d 239, 2010 NY Slip Op 51992(U).

Further, in *Wells Fargo Bank, N.A. v Meyers* at * 9, the Court instructed:
> In the absence of a specifically authorized sanction or remedy in the statutory scheme, the courts must employ appropriate, permissible, and authorized remedies, tailored to the circumstances of each given case. What may prove appropriate recourse in one case may be inappropriate or unauthorized under the circumstances presented in another. Accordingly, in the absence of further guidance from the Legislature or the Chief Administrator of the Courts, the courts must prudently [*27] and carefully select among available and authorized remedies, tailoring their application to the circumstances of the case. [**11]

Page 11

2013 N.Y. Misc. LEXIS 2761, *; 2013 NY Slip Op 51050(U), **

Therefore, in the instant action, the Court has tailored an equitable remedy to the particular circumstances of the BUTLER foreclosure action, that will determine how the $490,000.00 on deposit with the Kings County Clerk will be distributed. According to the CHASE or FANNIE MAE computerized printout sent to defendant BUTLER, in May 2011, there was full settlement of the BUTLER loan on "5/22/10," with the loan "REMOVED LOSS MITIGATION." The printout shows that on "5-22-10" a transaction for "$454,337.35" took place, of which "$434,382.89" is listed as "PRINCIPAL" and "$19,954.46" is listed as "INTEREST." This is no reference as to who paid the $454,337.35. Therefore, a hearing shall be held to determine whether CHASE, FANNIE MAE or any other entity is entitled to the $434,382.89 settlement of the BUTLER loan. Since CHASE failed to negotiate in good faith, not admitting until December 2011 that FANNIE MAE was the real plaintiff, and numerous CPLR Rule 3408 mandatory settlement conferences were conducted before Special Referee Goldstein and myself, CHASE is barred [*28] from collecting interest, legal fees, and expenses after May 22, 2010. (*See Wells Fargo Bank, N.A. v Meyers* at * 7; *Bank of Am., N.A. v Lucido, supra; BAC Home Loans v Westervelt, supra; Wells Fargo Bank v Hughes, supra*.). $55,617.11, the balance of the $490,000.00 on deposit with the Kings County Clerk, will be distributed to defendant BUTLER. This remedy is necessitated by the bad faith of CHASE in this action. This Court will follow the observations of the Court in *Bank of Am., N.A. v Lucido*, at * 6, that:

> equity will not intervene on behalf of one who acts in an unjust, unconscionable or egregious manner, *York v Searles*, 97 AD 331, 90 N.Y.S. 37 [2d Dept 1907], *aff'd* 189 NY 573 [1907]). This Court cannot, and will not, countenance a lack of good faith in the proceedings that are brought before it, especially where blatant and repeated misrepresentations of fact are advanced, neither will it permit equitable relief to lie in favor

of one who so flagrantly demonstrates such obvious bad faith. Further, the Court needs to determine if the bad faith of CHASE and its counsel, Cullen & Dykman is frivolous conduct. 22 NYCRR § 130-1.1 (a) states that "the Court, in its discretion may impose financial sanctions [*29] upon any party or attorney in a civil action or proceeding who engages in frivolous conduct as defined in this Part, which shall be payable as provided in section 130-1.3 of this Subpart." Further, it states in 22 NYCRR § 130-1.1 (b), that "sanctions may be imposed upon any attorney appearing in the action or upon a partnership, firm or corporation with which the attorney is associated."

22 NYCRR § 130-1.1(c) states that:

For purposes of this part, conduct is frivolous if:

(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;

(2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or

(3) it asserts material factual statements that are false.

It is clear that CHASE's representations that it was the plaintiff in the instant action "is [**12] completely without merit in law" and "asserts material factual statements that are false."

Several years before the drafting and implementation of the Part 130 Rules for

costs and sanctions, the Court of Appeals (*A.G. Ship Maintenance Corp. v Lezak*, 69 NY2d 1, 6, 503 N.E.2d 681, 511 N.Y.S.2d 216 [1986]) observed that "frivolous [*30] litigation is so serious a problem affecting the

proper administration of justice, the courts may proscribe such conduct and impose sanctions in this exercise of their rule-making powers, in the absence of legislation to the contrary (*see* NY Const, art VI, § 30, Judiciary Law § 211 [1] [b])."

Part 130 Rules were subsequently created, effective January 1, 1989, to give the

courts an additional remedy to deal with frivolous conduct, along with Appellate Division disciplinary case law against attorneys for abuse of process or malicious prosecution. The Court, in *Gordon v Marrone* (202 AD2d 104, 110, 616 N.Y.S.2d 98 [2d Dept 1994], *lv denied* 84 NY2d 813, 647 N.E.2d 453, 623 N.Y.S.2d 181 [1995]), instructed that:

Conduct is frivolous and can be sanctioned under the court rule if it is completely without merit . . . and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; *or* . . . it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another" (22 NYCRR 130-1.1[c] [1], [2] . . . ).

In *Levy v Carol Management Corporation* (260 AD2d 27, 33, 698 N.Y.S.2d 226 [1st Dept 1999]) the Court stated that in determining if sanctions are appropriate the Court must [*31] look at the broad pattern of conduct by the offending attorneys or parties. Further, "22 NYCRR 130-1.1 allows us to exercise our discretion to impose costs and sanctions on an errant party . . ." *Levy* at 34, held that "[s]anctions are retributive, in that they punish past conduct. They also are goal oriented, in that they are useful in deterring future frivolous conduct not only by the particular parties, but also by the Bar at large."

The Court, in *Kernisan, M.D. v Taylor* (171 AD2d 869, 567 N.Y.S.2d 794 [2d Dept 1991]), noted that the intent of the Part 130 Rules "is to *prevent the waste of judicial resources* and to deter vexatious litigation and dilatory or malicious litigation tactics (*cf. Minister, Elders & Deacons of Refm. Prot. Church of City of New York v 198 Broadway*, 76 NY2d 411, 559 N.E.2d 429, 559 N.Y.S.2d 866; *see Steiner v Bonhamer*, 146 Misc 2d 10, 549 N.Y.S.2d 340) [*Emphasis added*]." The instant action, with CHASE, the improper plaintiff, engaging in bad faith is "a waste of judicial resources."

This conduct, as noted in *Levy*, must be deterred. In *Weinstock v Weinstock* (253 AD2d 873, 678 N.Y.S.2d 349 [2d Dept 1998]), the Court ordered the maximum sanction of $10,000.00 for an attorney who pursued an appeal "completely without merit," and holding, at 874, that [*32] "[w]e therefore award the maximum authorized amount as a sanction for this conduct (*see,* 22 NYCRR 130-1.1) calling to mind that *frivolous litigation causes a substantial waste of judicial resources* to the detriment of those litigants who come to the Court with real grievances [*Emphasis added*]." Citing *Weinstock*, the Appellate Division, Second Department, in *Bernadette Panzella, P.C. v De Santis* (36 AD3d 734, 830 N.Y.S.2d 200 [2d Dept 2007]), affirmed a Supreme Court, Richmond County $2,500.00 sanction, at 736, as "appropriate in view of the plaintiff's *waste of judicial resources* [*Emphasis added*]." [**13]

In *Navin v Mosquera* (30 AD3d 883, 817 N.Y.S.2d 705 [3d Dept 2006]), the Court instructed that when considering if specific conduct is sanctionable as frivolous, "courts are required to

Page 13

2013 N.Y. Misc. LEXIS 2761, *; 2013 NY Slip Op 51050(U), **

examine whether or not the conduct was continued when its lack of legal or factual basis was apparent [or] should have been apparent' (22 NYCRR 130-1.1 [c])." The Court, in *Sakow ex rel. Columbia Bagel, Inc. v Columbia Bagel, Inc.* (6 Misc 3d 939, 943, 792 N.Y.S.2d 321 [Sup Ct, New York County 2004]), held that "[i]n assessing whether to award sanctions, the Court must consider whether the attorney adhered to the standards of a reasonable attorney (*Principe v Assay Partners*, 154 Misc 2d 702, 586 N.Y.S.2d 182 [Sup Ct, NY County 1992])."

Therefore, [*33] the Court will examine the conduct of plaintiff CHASE and plaintiff's counsel, in a hearing, pursuant to 22 NYCRR § 130-1.1, to determine if plaintiff CHASE and plaintiff's present counsel, Jennean Rogers, Esq. and her firm, Cullen & Dykman LLP engaged in frivolous conduct, and to allow plaintiff CHASE and plaintiff's present counsel, Jennean Rogers, Esq. and her firm, Cullen & Dykman LLP a reasonable opportunity to be heard.

Conclusion

Accordingly, it is

ORDERED, that the order to show cause of defendant FREDERICK BUTLER, dated October 26, 2011, is granted to the extent that: the Kings County Clerk shall release to defendant FREDERICK BUTLER $55,617.11, made payable to him, from the $490,000.00 deposited with the Kings County Clerk; the Court's declares that the subject BUTLER Note is fully satisfied; and a hearing shall be conducted to (1) determine whether plaintiff JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE [*34] ACT, 12 U.S.C. § 1821 (d) or the FEDERAL NATIONAL MORTGAGE ASSOCIATION is entitled to the balance of $434,382.89 deposited with the Kings County Clerk, pursuant to my June 27, 2011 decision and order and, (2) to give plaintiff JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (d) and its present counsel, Jennean Rogers, Esq. and her firm, CULLEN & DYKMAN LLP an opportunity to be heard as to whether or not they engaged in frivolous conduct, in violation of 22 NYCRR § 130-1.1, and if so should plaintiff JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (d) [**14] and/or its present counsel, Jennean Rogers, [*35] Esq. and her firm, CULLEN & DYKMAN LLP pay any costs and sanctions; and it is further

ORDERED, that the order to show cause of defendant FREDERICK BUTLER, dated March 29, 2012, is denied as moot; and it is further

Page 14

2013 N.Y. Misc. LEXIS 2761, *; 2013 NY Slip Op 51050(U), **

ORDERED, that the amended cross-motion of plaintiff JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (d), for the release of the $490,000.00 deposited with the Kings County Clerk, to plaintiff JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (d), is denied; and it is further

ORDERED, that: (1) to determine the distribution of the $434,832.89 balance on deposit with the Kings County Clerk; [*36] and (2) it appearing that plaintiff JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (d), plaintiff's present counsel Jennean Rogers, Esq. and her firm, CULLEN & DYKMAN LLP engaged in "frivolous conduct," as defined in the Rules of the Chief Administrator, 22 NYCRR § 130-1 (c), and that pursuant to the Rules of the Chief Administrator, 22 NYCRR § 130.1.1 (d), "[a]n award of costs or the imposition of sanctions may be made . . . upon the court's own initiative, after a reasonable opportunity to be heard"; this Court will conduct a hearing in Part 27, on Thursday, September 12, 2013, at 2:30 P.M., in Room 277, 360 Adams Street, Brooklyn, NY 11201; and it is further

ORDERED, that Ronald David Bratt, Esq., my Principal Law Clerk, is directed to serve this order by first-class mail, upon: Jamie Dimon, Chairman and Chief Executive Officer of plaintiff, JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, [*37] 270 Park Avenue, New York, New York 10017; Jennean Rogers, Esq., CULLEN & DYKMAN LLP, 100 Quentin Roosevelt Boulevard, Garden City, New York 11530; CULLEN & DYKMAN LLP, 100 Quentin Roosevelt Boulevard, Garden City, New York 11530; and Yolande I. Nicholson, Esq., 26 Court Street, Suite 602, Brooklyn, New York 11242.

This constitutes the Decision and Order of the Court. [**15]

ENTER

HON. ARTHUR M. SCHACK J. S. C.