1    BY MR. WRUBEL:

2        Q    There's issue as to whether or not you were

3    actually subpoenaed for today or not.  If this matter

4    goes to trial, and it's set in March, I would like to be

5    able to subpoena you to come to trial.  Now, I presume

6    that you don't want to be harassed with a subpoena, but

7    I want to be in a position where I can serve you.  Is

8    there a place where I can serve you with a subpoena, or

9    would you be willing to indicate that the attorneys at

10    GrayRobinson can accept a subpoena for you?

11        MR. SCHWARTZ:  Any subpoenas that are

12    appropriate under the Florida law and applicable to

13    Ms. Riley can be served on me.

14        MR. WRUBEL:  Okay.  That takes care of that.

15        MR. SCHWARTZ:  And we reserve all rights to

16    object to any improprieties as related to the

17    subpoenas.

18        MR. WRUBEL:  Improprieties such as?

19        MR. SCHWARTZ:  To the extent your subpoena form

20    or substance is improper, I reserve the right to

21    object, but you can serve me, yes.

22        MR. WRUBEL:  Okay.  For her.

23        MR. SCHWARTZ:  Yes.

24        MR. WEISS:  Let's just clarify.  He's saying

25    for purposes of an address, service address?

Case: 10-05245   Doc# 330-1   Filed: 11/12/13   Entered: 11/12/13 16:05:05   Page 1
of 23

1        MR. WRUBEL:  No.

2        MR. WEISS:  He said care of Roland Schwartz?

3        MR. WRUBEL:  Right.

4        MR. WEISS:  Whether or not, you know, it's

5     within the subpoena power of the court.  He's not --

6        MR. SCHWARTZ:  That's what I said.

7        MR. WEISS:  He's not waiving the formality --

8        MR. SCHWARTZ:  That's why I said for purposes

9     of the address serve subpoenas on me.  To the extent

10    that there's an impropriety with respect to the

11    subpoena, we reserve the right to object.  But

12    that's a legal issue, obviously.

13       MR. WRUBEL:  Obviously.

14       MR. SCHWARTZ:  But no, you don't need to go to

15    her house to serve her.

16       MR. WRUBEL:  You're authorized to accept for

17    her.

18       MR. SCHWARTZ:  Correct.

19       MR. WRUBEL:  That's all I need.

20       MR. SCHWARTZ:  Okay.  But reserve the rights to

21    still object once -- once I'm served.

22       MR. WEISS:  You're not stipulating --

23       MR. SCHWARTZ:  Correct.

24       MR. WEISS -- that --

25       MR. SCHWARTZ:  Right.

Case: 10-05245    Doc# 330-1    Filed: 11/12/13    Entered: 11/12/13 16:05:05    Page 2
of 23

1          MR. WEISS:  -- that's service --

2          MR. SCHWARTZ:  Right.

3          MR. WEISS:  -- or anything from you.

4          MR. WRUBEL:  I understand.

5          MR. SCHWARTZ:  Can be addressed to me, and then

6      we'll take it from there.

7          MR. WRUBEL:  Okay.

8  BY MR. WRUBEL:

9      Q    For the record, what is the address that you

10  work at?

11     A    7757 Bayberry.

12     Q    7757?

13     A    Bayberry Road.

14     Q    And I take it that's part of Jacksonville

15  proper?

16     A    Yes, it is.

17     Q    Does -- Jacksonville proper is the whole county

18  still?

19     A    I don't think it is.

20     Q    I don't know.  I just remember years ago they

21  did it that way.

22         MR. WRUBEL:  I got nothing else.  You got

23     anything?

24         MR. OROZCO:  No.

25         MR. SCHWARTZ:  Let's take five minutes, and

Veritext Florida Reporting Co.

Case: 10-05245   Doc# 330-1   Filed: 11/12/13   Entered: 11/12/13 16:05:05   Page 3
of 23

1    then we'll have some questions.

2                     CROSS-EXAMINATION

3  BY MR. SCHWARTZ:

4    Q    Ms. Riley, there was some testimony about the

5  fact that you did not directly supervise the employees

6  in South Carolina.  Remember that testimony?

7    A    Yes.

8    Q    Okay.  You do know some of the supervisors who

9  oversaw the South Carolina operations, don't you?

10   A    Yes.  We worked together for some time.

11   Q    In Jacksonville?

12   A    No.  They were in Florence.  I was in

13  Jacksonville.

14   Q    Isn't it true that along with some of those

15  supervisors you were involved in developing and

16  implementing note endorsement procedures?

17   A    Yes.  We had procedures on both sides that were

18  developed and put together and followed.

19   Q    And some of the supervisors that were involved

20  in developing those endorsement procedures with you were

21  tasked with overseeing those same procedures in South

22  Carolina?

23   A    That's correct.

24        MR. WRUBEL:  Objection to the form.

25   Q    Who oversaw the procedures of endorsing notes

Case: 10-05245   Doc# 330-1   Filed: 11/12/13   Entered: 11/12/13 16:05:05   Page 4 of 23

1    in South Carolina?

2       A    My counterparts.

3       Q    What were they tasked with?

4            MR. WRUBEL:  Objection to the form.

5       Q    Go ahead.

6       A    Their functions would be the same as mine.

7    There was dual operations in Jacksonville and South

8    Carolina.

9       Q    Okay.  You know for a fact that those

10   endorsement procedures stayed the same --

11           MR. WRUBEL:  Objection.

12      Q    -- once the operations were moved to South

13   Carolina?

14           MR. WRUBEL:  Objection to the form.

15      A    Yes.  I helped move those procedures to South

16   Carolina, and they had the dual operations already in

17   effect.

18      Q    You also testified that you provide -- while

19   you were in Jacksonville from 2004 to 2006 you provided

20   a few sample signatures from which stamps were made; is

21   that fair?

22      A    Yes.

23      Q    Okay.  Let's just --

24           MR. WRUBEL:   Objection to the form of the last

25   question.

Case: 10-05245    Doc# 330-1    Filed: 11/12/13    Entered: 11/12/13 16:05:05    Page 5
of 23

1          MR. SCHWARTZ:  You need to object before I ask

2     the question, but that's fine -- before she answers

3     actually, not before I ask the question.

4          MR. WRUBEL:  It's all right.

5  BY MR. SCHWARTZ:

6     Q    Were you involved in any way, shape, or form in

7  actually manufacturing the stamps?

8     A    No.

9     Q    Do you know which sample signatures were picked

10  for what stamp?

11          MR. WRUBEL:  Objection to the form.

12     A    No.

13     Q    You also testified you were not endorsing notes

14  yourself with a stamp; is that accurate?

15     A    That's correct.  I was not.

16     Q    Do you know for sure that one sample signature

17  was picked for all of the stamps that were made?

18     A    I don't know.

19     Q    So can you be sure that all of the stamps were

20  assigned the same sample signature?

21          MR. WRUBEL:  Objection to the form.

22     A    I don't know that I can be sure of that.  I can

23  be sure it's my signature.

24     Q    Also while in Jacksonville from 2004 to 2006

25  did you endorse notes by hand, yes or no?

Case: 10-05245   Doc# 330-1   Filed: 11/12/13   Entered: 11/12/13 16:05:05   Page 6 of 23

1      A     Yes.

2      Q     Let's go back to Stockton before 2004.  Was

3   there a stamp made with your name to endorse notes while

4   at -- while in Stockton?

5      A     There was a stamp with my name on it, yes,

6   without a signature.

7      Q     Was there -- and you would, then, sign

8   endorsements by hand while in Stockton?

9      A     I would have to sign.

10      Q     Was there one version of the stamp made while

11   in Stockton or more?

12      A     There could -- there were other versions in

13   Stockton.  There were other versions of the stamp, yes.

14      Q     How -- how were the versions different?

15      A     In the case there would be Cindy Riley on a

16   stamp, and in another case it would be Cynthia A. Riley.

17      Q     In both cases it was you?

18      A     It was me.

19      Q     And you would sign that by hand?

20      A     And I would -- there were occasions where I

21   signed by hand, yes.

22      Q     Were you authorized by your employer to sign

23   notes by hand?

24            MR. WRUBEL:  Objection.  Form.

25      A     Yes, I had authorization.

Case: 10-05245    Doc# 330-1    Filed: 11/12/13    Entered: 11/12/13 16:05:05    Page 7
of 23

1    Q   Did you authorize other people to use stamps

2  with your name on it?

3    A   Yes.

4      MR. WRUBEL:  Objection.  Form.

5    Q   Did your employer authorize you to allow other

6  name -- stamp your name on notes?

7      MR. WRUBEL:  Objection.  Form.

8    A   I don't understand the question actually.

9    Q   The whole process of stamping the name on

10  notes, did that come from your supervisor?

11      MR. WRUBEL:  Objection.  Form.

12    A   Yes.  It was the procedures that we used, and

13  there was authorization.

14    Q   Was there any secrecy or fraud about it?

15    A   No.

16      MR. WRUBEL:  Objection.  Form.

17    Q   Was it all in the open?

18      MR. WRUBEL:  Objection.  Form.

19    A   It was all in the open.

20    Q   Your employers received communication from

21  supervisors as far as policies and procedures --

22      MR. WRUBEL:  Objection.  Form.

23    Q   -- as far as what policies and procedures to

24  follow?

25    A   Yes.

Case: 10-05245   Doc# 330-1   Filed: 11/12/13   Entered: 11/12/13 16:05:05   Page 8 of 23

1     Q    And they followed those policies and

2   procedures?

3     A    Absolutely.

4          MR. WRUBEL:  Objection.  Form.

5     Q    Is it -- the Exhibit 1 that was presented to

6   you during this deposition, is that your signature on

7   the note?

8     A    Yes, it is.

9          MR. SCHWARTZ:  You go ahead.  I'll think.

10         MR. WEISS:  Okay.

11         MR. WRUBEL:  I'm going to object to you asking

12     any questions, Mr. Weiss.  You're not a party to

13     this litigation.

14         MR. WEISS:  Okay.

15         MR. SCHWARTZ:  We can take a two-minute break.

16     I mean, we can short-circuit this, but that's no

17     problem.

18         (Break taken.)

19  BY MR. SCHWARTZ:

20    Q    Ms. Riley, when you were in Jacksonville from

21  2004 to 2006, as a matter of business practice how soon

22  would notes get endorsed after the deed of closing?

23         MR. WRUBEL:  Objection.  Form.

24    A    The notes after closing occurred were shipped

25  into our office, and we would go through the note review

Case: 10-05245   Doc# 330-1   Filed: 11/12/13   Entered: 11/12/13 16:05:05   Page 9
of 23

1  process, endorse them, send them to the custodian.  And

2  that would just be a matter of days.

3      Q     So the endorsement would be placed on the note

4  within days after closing as a matter of business

5  practice?

6      A     Yes.

7          MR. WRUBEL:  Objection to the form.

8          MR. SCHWARTZ:  This is what I'll show Ms. Riley

9  next (tenders document).

10          MR. WRUBEL:  I'd like a chance to review it

11  before you show her.

12          MR. SCHWARTZ:  Fine.

13          MR. WRUBEL:  Okay.

14          MR. SCHWARTZ:  Okay.  We'll call this -- what

15  are we doing, numbers or letters?  We'll call this

16  Plaintiff's Exhibit 1 to the deposition.  It says A,

17  so we'll just change it.

18          Do you want to mark it before I ask questions?

19          (Plaintiff's Exhibit 1 was marked for

20  identification.)

21  BY MR. SCHWARTZ:

22      Q     Ms. Riley, on top of what's been marked as

23  Plaintiff's Exhibit 1 on top of Page 1 it has a

24  reference to foreclosure hamlet.

25      A     Yes.

1      Q    Have you heard of foreclosure hamlet before?

2      A    I have, yes.

3      Q    How so?

4      A    In -- on the Internet with association with my

5  name.

6      Q    Do you recognize this as a printout from that

7  website?

8      A    It appears to be, absolutely.

9      Q    If you go to Page 6 of this exhibit, the

10  comment in the middle of the page that's dated June 10th

11  of 2010, do you see that?

12      A    Yes.

13      Q    At 12:56 p.m.?

14      A    Yes.

15      Q    In the middle of that paragraph that starts

16  with, Riley is not one of the corporate executives, you

17  see that?

18      A    Yes.

19      Q    She's just a low-level secretary now being used

20  to take away homes.  I've been quietly watching her for

21  over seven months.  Then down below it says, They're

22  trying to hide her, but for how long?  She's on the run.

23  Let's run her down and run her out of breath.

24      Does this provide you with a feeling of safety

25  and security?

Case: 10-05245   Doc# 330-1   Filed: 11/12/13   Entered: 11/12/13 16:05:05   Page 11 of 23

1    A    Absolutely not.

2    Q    Do you feel like you're being hunted and

3  watched by someone out there?

4    A    Yes.

5    Q    When you said that you had no concerns with

6  what you said today during your deposition, did you mean

7  you had no reservations how you did your job at

8  Washington Mutual?

9         MR. WRUBEL:  Objection to the form.

10   A    I have no reservations about my job at

11  Washington Mutual and what I did, correct.

12   Q    And instead your reservation comes from people

13  like this, misconstruing what you did and putting it in

14  a threatening fashion; is that correct?

15        MR. WRUBEL:  Objection to the form.

16   A    Absolutely what's on here is -- is very

17  threatening.

18   Q    On the same chain in this exhibit, which is a

19  blog chain, on Page 2, do you see -- the first entry at

20  6:24 p.m., do you see the name of Eduardo Orozco in the

21  same chain?

22   A    Yes.

23   Q    Is that the borrower in this case?

24   A    Yes.

25   Q    In fact, is that the gentleman sitting in front

1  of you today?

2      A    Yes.

3      Q    Do you have reservations about people

4  misconstruing what you did and making it a matter of

5  public report?

6           MR. WRUBEL:  Objection to the form.

7      Q    Go ahead.

8      A    Absolutely, yes.

9      Q    Do you get unanimous calls today?

10     A    I get unanimous calls.  Yes, I do.

11     Q    When was the most recent call?

12     A.   I had a call just last week.  Somebody calling

13  up asking where 7757 was located.

14     Q    What did you say?

15     A    I asked who was calling.  They would not

16  identify themselves initially.  Then they'd claim to be

17  60 Minutes and -- and that they were looking to find the

18  location.  And I -- I did not help them with that, and

19  the call was ended.

20     Q    Have you had people calling you and telling you

21  that your career's going to go down the toilet?

22          MR. WRUBEL:  Objection to form.

23     A    I've had a number of calls, and that was one of

24  them where it was -- he kept calling back, and he called

25  back several times.  Finally he left a message that

Case: 10-05245   Doc# 330-1   Filed: 11/12/13   Entered: 11/12/13 16:05:05   Page 13 of 23

1   said, This is what's going to happen with your career,

2   and it's going down the toilet, yes.  That's happened as

3   well.

4       Q   Does this seem -- these calls, these

5   threatening, unanimous call, is there any end in

6   sight --

7          MR. WRUBEL:  Objection to the form.

8       Q   -- as far as you know?

9       A   It doesn't seem like it, no

10       Q   Have they decreased over time in frequency?

11          MR. WRUBEL:  Objection to the form.

12       A   No.  They've -- actually I've been getting more

13   recently.

14       Q   Are they pleasant?

15       A   No.  I generally screen the calls now.

16          MR. WRUBEL:  Form.

17       A   If I don't recognize the area code on the phone

18   or the phone number, I let it go to message.

19       Q   Do you want them to stop?

20       A   Of course I do.

21          MR. WRUBEL:  Form.

22       Q   Would you wish what's in Exhibit -- in

23   Plaintiff's Exhibit 1 upon somebody?

24       A   Absolutely not.

25       Q   Did you do anything wrong?

Case: 10-05245   Doc# 330-1   Filed: 11/12/13   Entered: 11/12/13 16:05:05   Page 14 of 23

1          MR. WRUBEL:  Objection to form.

2     A    I did not do anything wrong.

3     Q    Do you know if someone used your stamp without

4 authority?

5          MR. WRUBEL:  Objection to the form.

6     Q    Go ahead.

7     A    I don't believe anybody used my stamp without

8 authority.

9     Q    And if you knew about it, you would have not

10 authorized it; right?

11         MR. WRUBEL:  Objection.

12    A    It would not be authorized in any manner.

13    Q    All you did was follow the process, didn't you?

14         MR. WRUBEL:  Same.  Form.

15    A    I followed the procedures in the department.

16         MR. SCHWARTZ:  By the way, not that we're

17 stipulating to your objection.  Jonathan couldn't

18 testify.  But I would like to know what that

19 objection is for the record so that we can preserve

20 it for the Judge, if necessary.

21         MR. WRUBEL:  He's not a party to the

22 litigation.  There's no reason for him to be, you

23 know, asking questions.  If he wants to protect her

24 with regards to the questions that I ask, that's

25 fine.  But as far as him being involved in this

Case: 10-05245    Doc# 330-1    Filed: 11/12/13    Entered: 11/12/13 16:05:05    Page 15
of 23

1       litigation, I see no reason for it.

2            MR. SCHWARTZ:  Thanks for stating that on the

3       record.

4   BY MR. SCHWARTZ:

5       Q    Do you -- do -- these Internet postings and

6   phone calls, does that affect your personal life in any

7   way once you go home?

8            MR. WRUBEL:  Objection to the form.

9       A    Well, it does in that I've had a server come to

10  the door.  I walk out the building looking around to see

11  if somebody is lurking in the parking lot.  I'm

12  screening my phone calls.  It's upsetting that my name

13  is on the Internet like this.  Having -- I did my job.

14  I followed the procedures.  And this kind of stuff on

15  the Internet is very disturbing.

16      Q    Do you sometimes take it out on your husband?

17           MR. WRUBEL:  Objection to the form.

18      Q    Go ahead.  Go ahead.

19      A    My husband -- I certainly have said things

20  like, Can you believe this?  And so I have had

21  discussions with him about -- I called him the other day

22  and said, Somebody called and asked for my address.

23      Q    So you share your angst with him?

24      A    I do, absolutely.

25      Q    Oh, have you had borrowers' lawyers call you at

Case: 10-05245   Doc# 330-1   Filed: 11/12/13   Entered: 11/12/13 16:05:05   Page 16
of 23

1   work?

2           MR. WRUBEL:  Objection to the form.

3       A   I had a law office -- I had a phone call.

4   They -- the number popped up.  They hung up.  I said,

5   What is this about?  I called them back, and it turned

6   out to be a law office.

7       Q   Did they tell you what the call was about?

8       A   They called a second time --

9           MR. WRUBEL:  Wait a minute.  Let her finish.

10      A   They called a second time on a number that

11  wasn't recognized then, and I called them back.  And I

12  said, Did you just call me?  And it was in fact a law

13  office, yes.

14      Q   And you recognized that as being one of the

15  borrower's counsel?  Not in this case but --

16      A   Not in this.  Yeah, I -- I don't remember now

17  whose counsel it was, but it was a law office related

18  to --

19      Q   Did they give you a reason as to why they

20  called --

21          MR. WRUBEL:  Objection to form.

22      Q   -- when you called them back?

23      A   No.  They wouldn't talk to me.

24          MR. SCHWARTZ:  No more questions.

25          (Break taken.)

Case: 10-05245   Doc# 330-1   Filed: 11/12/13   Entered: 11/12/13 16:05:05   Page 17 of 23

1           MR. WRUBEL:  We've got no questions.

2           Ms. Riley, you're allowed to read this

3       deposition.

4           MR. SCHWARTZ:  We'll read.

5           MR. WRUBEL:  Pardon me?

6           MR. SCHWARTZ:  We'll read it.

7           MR. WRUBEL:  Okay.  We're done.

8           (Witness excused.)

9           (Deposition concluded at 12:23 p.m.)

10                        - - --

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case: 10-05245    Doc# 330-1    Filed: 11/12/13    Entered: 11/12/13 16:05:05    Page 18 of 23

1          CERTIFICATE OF OATH

2

3    STATE OF FLORIDA)

4    COUNTY OF DUVAL )

5

6                                              I,

7    Samantha Cordova, FPR, and a Notary Public, State of

8    Florida, certify that CYNTHIA RILEY personally appeared

9    before me on January 15, 2013, and was duly sworn.

10                                        WITNESS

11   my hand and official seal on this 18th of January 2013.

12

13

14

15

     Samantha Cordova, FPR

16

17

18

19

20

21

22

23

24

25

Case: 10-05245    Doc# 330-1    Filed: 11/12/13    Entered: 11/12/13 16:05:05    Page 19 of 23

```
 1                    REPORTER'S CERTIFICATE

 2

 3    STATE OF FLORIDA)

 4    COUNTY OF DUVAL )

 5

 6                                              I,

 7    Samantha Cordova, FPR, certify that I was authorized to

 8    and did stenographically report the deposition of

 9    CYNTHIA RILEY; that a review of the transcript was

10    requested; and that the foregoing transcript, pages 1

11    through 92, is a true record of my stenographic notes.

12                                              I further

13    certify that I am not a relative, employee, attorney, or

14    counsel of any of the parties, nor am I a relative or

15    employee of any of the parties' attorney or counsel

16    connected with the action, nor am I financially

17    interested in the action.

18

19                                              DATED on

20    this 18th of January, 2013, Jacksonville, Duval County,

21    Florida.

22

23

24

                                               Samantha

25    Cordova, FPR
```

1    In re:   JP MORGAN CHASE BANK, N.A. vs. EDUARDO OROZCO,
     et al, 09-29997 CA (11)

2

     DEPOSITION OF CYNTHIA RILEY

3

     TAKEN - 01/15/2013

4

     DATE SENT TO WITNESS:  January 18, 2013

5

6    TO:   CYNTHIA RILEY
           c/o Mr. Jonathan Weiss

7           Simpson, Thacher & Bartlett, LLP
           1999 Avenue of the Stars

8          29th Floor
           Los Angeles, California  900067

9

     Dear Mr. Weiss:

10

          The referenced transcript has been completed and
11   awaits reading and signing.

12        Please arrange to have Ms. Riley read and sign the
     transcript.  The transcript is 92 pages long, and you

13   should allow her sufficient time.

14        Please complete by February 18, 2013.

15        The original of this deposition has been forwarded
     to the ordering party, and your Errata Sheet, once

16   received, will be forwarded to all ordering parties as
     listed below.

17

          Thank you.

18

19

20

21

22                                              Samantha
     Cordova, FPR

23

24

25   cc:  ROLAND E. SCHWARTZ, Esquire
          MICHAEL J. WRUBEL, Esquire

1
2

E R R A T A   S H E E T

3        DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES

4    In Re:  JP MORGAN CHASE BANK, N.A. vs. EDUARDO OROZCO,
     et al, 09-29997 CA (11)

5

     DEPOSITION OF CYNTHIA RILEY

6

     TAKEN - 01/15/2013

7

     PAGE NUMBER                                          LINE

8    NUMBER
     CHANGE/REASON

9
10
11
12
13
14
15
16
17
18
19
20
21
22

23   Under penalties of perjury, I declare that I have read
     the foregoing document and that the facts stated in it

24   are true.

25

Case: 10-05245    Doc# 330-1    Filed: 11/12/13    Entered: 11/12/13 16:05:05    Page 22 of 23

1    Date

     CYNTHIA RILEY

2

     cc: SAMANTHA CORDOVA

3        ROLAND E. SCHWARTZ, Esquire

         MICHAEL J. WRUBEL, Esquire

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case: 10-05245    Doc# 330-1    Filed: 11/12/13    Entered: 11/12/13 16:05:05    Page 23 of 23