1  James M. Kelley
   14390 Douglass Lane
2  Saratoga, CA 95070
   jmadisonkelley@gmail.com
3  Tel:    (408) 402-1915

4  PRO SE



5

6

7           UNITED STATES BANKRUPTCY COURT
8     NORTHERN DISTRICT OF CALIFORNIA – DIVISION 5

9  | In Re: | Chapter 11 |
10 | JAMES MADISON KELLEY, | |
11 | Debtor | Adversary Case No. 10-05245 |
12 | | |

13 | JAMES MADISON KELLEY | |
14 | Plaintiff | |
15 | v. | ) Request for Judicial Notice of |
16 | | ) the "WMMSC Servicer Guide Last ) |
   | JPMORGAN CHASE BANK, NA, | ) Update: 01/27/12" |
17 | | ) |
18 | DOES (1-20) | ) and |
19 | | ) |
   | | ) Declaration of James Madison Kelley |
20 | | ) in Support of the Request for Judicial |
   | | ) Notice of "WMMSC Servicer Guide Last |
21 | | ) Update: 01/27/12" |
22 | | ) |
   | | ) (Proof of Service Included) |
23 | | ) |
24 | | ) Honorable Arthur S. Weissbrodt |
25 | | ) |
   | | ) Courtroom: 3020 |
26 | | ) |
27 | | ) |

28

Request for Judicial Notice & Declaration        1        Adversary Case  10-05245
"WMMSC Servicer Guide Last Update: 01/27/12"              Bkr. Case: 08 –55305 ASW

# REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, Plaintiff- James Madison Kelley hereby requests that the Court take judicial notice of the following deposition attached hereto as Exhibit 1:

"WMMSC Servicer Guide Last Update: 01/27/12"

The Plaintiff attests in the accompanying Declaration that the "WMMSC Servicer Guide Last Update: 01/27/12" is a true and correct copy made by him that was downloaded from the Chase -Washington Mutual Mortgage Securities Corporation ("WMMSC") website:

http://wamusecurities.com/ServicerGuides/ServicerGuide.asp

The "WMMSC Servicer Guide Last Update: 01/27/12" is referred to as the "Master Servicer Guide" herein for brevity.

Washington Mutual Mortgage Securities Corporation was formerly a wholly owned non-bank subsidiary of Washington Mutual Bank. After the Receivership (September 25. 2008), WMMSC became a wholly owned subsidiary of JPMorgan Chase Bank, NA ("Chase").

Under Federal Rule of Evidence 201(d), judicial notice may be taken at any stage of the proceeding, including by an appellate court during the pendency of an appeal. Fed. R. Evid. 201(d); *see also Lowry v. Barnhart*, 329 F.3d 1019, 1024(9th Cir. 2003); *Bryant v. Carleson*, 444 F.2d 353, 357-58 (9th Cir. 1971); Circuit Advisory Committee Note Seven to Ninth Circuit Rule 27-1. "The Court may take judicial notice of any matter not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The Master Servicer Guide is a proper subject of judicial notice. The "WMMSC Servicer Guide Last Update: 01/27/12" attached hereto is a true and correct from a source

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 2 of 36

1  whose accuracy can be accurately and readily determined and cannot reasonably be

2  questioned." Fed. R. Evid. 201(b).

3       Here the "WMMSC Servicer Guide Last Update: 01/27/12" unequivocally states

4  the following on page 103-3 (last revised 11/4/10):

5

6  **"B. Records Storage**

  In lieu of retaining copies and originals as required above, the Servicer may
7  maintain its loan files in the form of microfilm, microfiche or electronic media,
  provided that the following requirements are met:

8  1. The copies or electronic media are made in the regular course of business
  pursuant to an established written policy of the Servicer applying to all of its loan
9  files:

  2. The copies or electronic media are made by a process that accurately
10  reproduces or forms a durable medium for reproducing the original;

11  3. The copies or electronic media are clearly marked to indicate the Buyer's
  ownership of the loan and the Buyer loan number assigned to it;

12  4. The Servicer maintains the copies or electronic media in a manner that permits
  ready transfer to legible hard copies of the material relating to the loans serviced
13  for the Buyer;

  5. A reader/copier that can be used by the Buyer representatives is maintained in
14  the same office where the copies are stored; and

  6. The Servicer makes back-up copies and retains them off-site to protect against
15  fire and other hazard losses.

16  The Servicer must bear the entire cost of restoring loan files and related
  documents transferred to microfilm, microfiche or electronic media if the copies
  or electronic media become damaged or lost for any reason, or if legible hard
17  copies are requested by the Buyer."

18  [Emphasis added]

19
     This policy statement is proof that WMMSC –the Master Servicer- permits the
20
 Servicer to use "copies or electronic media" for "reproducing the original". This
21
 document is relevant to the Plaintiff's allegations that the paper loan documents produced
22
 on October 18, 2012, January 21, 2013 and February 1, 2013 are not the original loan
23
 documents but are in fact recreations of the original loan files from digital images made
24
 in 2007. Fed. R. Evid. 401(b)
25

26

27

28  Request for Judicial Notice & Declaration    3         Adversary Case 10-05245
  **"WMMSC Servicer Guide Last Update: 01/27/12"**    Bkr. Case: 08 –55305 ASW

1        A federal court must take judicial notice of facts "if requested by a party and

2 supplied with the necessary information." Fed. R. Evid. 201(d). Here the necessary

3 information is attached as Exhibit 1.

DATED: December 28, 2013

Respectfully Submitted by

James Madison Kelley

Pro Se Plaintiff

## DECLARATION OF JAMES MADISON KELLEY

I, James Madison Kelley, declare:

1. I am the Pro Se Plaintiff in the above captioned action. I make this Declaration in support of the Request for Judicial Notice filed herewith. The facts set forth below are within my personal knowledge unless otherwise indicated.

2. I personally downloaded the "WMMSC Servicer Guide Last Update: 01/27/12" from the following JPMorgan Chase Bank, NA website:

   http://wamusecurities.com/ServicerGuides/ServicerGuide.asp

3. The Document attached as Exhibit 1 to the Request for Judicial Notice is a true and correct copy of the file that I personally downloaded in 2.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 30, 2013 at Saratoga, California.

James Madison Kelley

Pro Se Plaintiff


14390 Douglass Lane
Saratoga, CA 95070
(408) 402-1915
jmadisonkelley@gmail.com

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 6 of 36

# PROOF OF SERVICE

**PROOF OF SERVICE**

I, James Madison Kelley, under penalty of perjury attest that I mailed

Request for Judicial Notice of   the "WMMSC Servicer Guide Last Update: 01/27/1

and

Declaration of James Madison Kelley in Support of the Request for Judicial
Notice of "WMMSC Servicer Guide Last  Update: 01/27/12"

by US priority mail to the following people:

> S. Christopher Yoo, esq.
> John M. Sorich, esq.
> Thomas Van, esq.
>
> AlvaradoSmith, PC
> 1 MacArthur Place, #200
> Santa Ana, CA 92707

Dated at Saratoga, California, this 30th day of December 2013

By: *James Madison Kelley*

James Madison Kelley

All other interested parties served/noticed by PACER

1

2

3

4

5

6

7

8

9

10

11

12

13

14                           EXHIBIT 1

15

16

17

18

19

20

21

22

23

24

25

26

27

Request for Judicial Notice & Declaration          8                    Adversary Case  10-05245
28   **"WMMSC Servicer Guide Last Update: 01/27/12"**                    Bkr. Case: 08 –55305 ASW

Case: 10-05245     Doc# 360     Filed: 01/03/14     Entered: 01/07/14 16:02:35     Page 8 of
36

# WMMSC

## Servicer Guide
### Last Update:   01/27/12

This manual is the property of WMMSC.  No part of this document can be used or
reproduced without permission of WMMSC.
Internal Use Only

# Section 101.  Servicer Eligibility

Servicers who wish to participate in the WMMSC ("Buyer") Servicing program must first complete a Seller/Servicer Application (SSF 010) and submit it to Buyer together with the following required documentation: (i) professional resumes of the principal officers and the individuals responsible for origination, underwriting, accounting, servicing, shipping and final documentation delivery; (ii) the Servicer's audited financial statements for the previous two years and the most current interim financial statements ("YTD Profit and Loss Statement"). If a current YTD Profit and Loss Statement is not available at time of application, then the most recent three years audited financial statements are required; (iii) in the event the Servicer has a parent, the parent's audited financial statements for the previous two years, and the parent's most current YTD Profit and Loss Statement. If a current YTD Profit and Loss Statement is not available at the time of application, then the most recent three years audited financial statements are required; (iv) the most recent audit reports issued with respect to the Servicer by Fannie Mae, Freddie Mac, HUD and any other governmental or quasi-governmental agency with jurisdiction over any of the Servicer's operations; (v) a copy of the Servicer's quality control procedures, for origination and servicing, presently in place, and copies of the three (3) most recent quality control reports to Servicer's senior management and quality control summary reports as submitted to Servicer's senior management; (vi) a copy of the completed servicing questionnaire (application addendum); (vii) a certificate of insurance for each of the Servicer's fidelity bond, errors and omissions, and directors and officers liability insurance policies which meet the requirements of Section 101.04; and (viii) a complete list of all names under which the Servicer is doing business, or has done business in the last five years.

## 101.01  Eligibility Requirements

The following eligibility requirements must be met prior to approval and must be maintained by the Buyer approved Servicers at all times. In addition, the Buyer may request evidence of the Servicer's compliance with each of these provisions at any time. The Buyer may, at its own discretion, allow deviations from these stated requirements if it believes it is in its own best interest to do so.

1. **Experience**: The Servicer must have a minimum existing servicing portfolio of 3,500 mortgages and must have MBS style reporting capabilities (on hard copy or tape) with an institutional investor. The Servicer must have at least two years of experience in servicing conventional residential mortgages and must follow generally accepted practices and prudent servicing practices. If the Servicer has been in existence for less than two years, financial information substantiating the Servicer's capacity to participate in the Buyer's programs is required.

2. **Approvals**: The Servicer must be either a HUD approved mortgagee or a bank or savings and loan which is insured by the Federal Deposit Insurance Corporation (FDIC). The Servicer and its parent company (whether direct or indirect), if applicable, must meet the capital requirements of the FDIC, the Office of Thrift Supervision (OTS), or any other state or federal regulatory agency that regulates the Servicer or its parent company. The Servicer must also be either Fannie Mae (FNMA) or Freddie Mac (FHLMC) approved.

3. **Facilities**: The Servicer must maintain satisfactory facilities in which to service mortgages, including automated servicing capabilities.

4. **Legal Standing**: The Servicer must be duly organized, validly existing, properly licensed, and in good legal standing under the laws of the state of its incorporation and in each state in which the property securing a serviced loan is located, with the power and authority to enter into a Selling and Servicing Agreement (WMMSC 1002) with the Buyer; and its compliance with the terms and conditions of the Selling and Servicing Agreement and this *Servicer Guide* will not violate any of the provisions of its articles of incorporation, charter or by-laws, and any other instrument relating to the conduct of the business or the ownership of property or any other agreement to which it is a party or by which it is bound.

5. **Insurance**: The Servicer must maintain in effect, at all time and at its expense, fidelity bond, errors and omissions insurance, and directors and officers liability policies which meet the Buyer's requirements as defined in Section 101.04.

6. **Good Standing**: The Servicer must be in good standing with all applicable regulatory authorities and not subject to any extraordinary supervision of its operations.

7. **External Audits**: The Buyer requests a copy of external audits be provided if the Servicer is subject to these requirements: (a) USAP reports (servicer); (b) Reg AB attestations and reports; and (c) SAS 60 internal control reports (sellers and servicers).

## 101.02  Required Documentation

Once approved by the Buyer, the Servicer must execute and submit the following documents, correct and complete in all material respects, to Buyer:

- An original, certified copy of the Corporate Resolution (WMMSC 1008);

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 10 of 36

# Section 101. Servicer Eligibility

- A Selling and Servicing Agreement (WMMSC 1002)
- The ACH Debit Authorization (WMMSC 4006);
- The applicable Custodial Account Letter Agreements (WMMSC 4002 and WMMSC 4004 );
- Seller-Servicer Supplemental Information (SSF 011)
- Contact List (SSF 003);
- Lender's Authorization and MI Company and HUD Reference Request (SSF 006);
- Lender's Authorization and Investor Release (SSF 005); and
- Certificates of insurance evidencing the fidelity bond, errors and omissions, and directors and officers liability insurance coverage which meets the Buyer's requirements as outlined in Section 101.04.

Approved Servicers must continue to meet the eligibility requirements as amended from time to time, in order to continue to service loans on behalf of the Buyer.

## 101.03  Corporate Resolution

Upon approval, the Servicer must supply the Buyer with an original, certified copy of the Corporate Resolution. If, at any time, there is a change to the authority provided by the Corporate Resolution or changes to the persons provided with such authority, the Servicer must immediately submit either an amended original, certified copy of the Corporate Resolution reflecting the current information, or an original Corporate Certificate of Authority reflecting new authorities granted. The Buyer will not recognize any change to the Servicer's Corporate Resolution until the original, certified copy of the Corporate Resolution or an original Corporate Certificate of Authority is received.

## 101.04  Fidelity Bond, Direct Bond, and Errors and Omissions Coverage

The Servicer is responsible for maintaining in effect, at all times and at its expense, blanket fidelity bond, errors and omissions, and directors and officers liability insurance coverage. Specific insurance requirements are indicated below. Insurance coverage which does not meet the minimum amount required or an insurance deductible which exceeds the limit allowed must be approved by the Buyer. Servicers must request a waiver of these requirements in writing and provide evidence satisfactory to the Buyer of FNMA's or FHLMC's approval, as applicable, of the Servicer's insurance coverage.

If, at any time, there is a change in coverage, or if coverage has expired, the Servicer must immediately submit evidence of the amended or renewed insurance coverage to Servicing Management. Refer to Appendix B for the current address.

### A.  Amount of Coverage

Coverage for fidelity bond, errors and omissions, and directors and officer's liability insurance must be based on the Servicer's total portfolio (all residential mortgages and commercial loans) which the Servicer serviced for itself and all other investors, including the Buyer, during the preceding 12 months. The amount of coverage for fidelity bond, errors and omissions, and directors and officer's liability insurance is calculated as follows:

| Total Portfolio | Minimum Coverage Required |
|---|---|
| $100 million or less | $300,000 |
| $100 - $500 million | $300,000 + .15% of total portfolio exceeding $100 million |
| $500 million to $1 billion | $900,000 + .125% of total portfolio exceeding $500 million |
| Over $1 billion | $1,525,000 + .1% of total portfolio exceeding $1 billion |

The amount of coverage required for a direct surety bond may be based on the total servicing portfolio the Servicer is servicing on behalf of the Buyer, provided that such surety bond relates solely to such portfolio.

### B.  Scope

The fidelity bond, errors and omissions, and directors and officer liability coverage must insure the Servicer against losses resulting from dishonest, negligent or fraudulent acts committed by employees of the Servicer, including, but not limited to, any person employed under a permanent or temporary employment agreement, any person acting as an agent or representative of the Servicer, any employees of outside firms that provide data processing services for the Servicer, each director and officer who has control over or access to cash, securities or other property of the association, and persons employed as student interns. The coverage must also protect against dishonest, negligent or fraudulent acts by the Servicer's principal owner, if the Servicer's insurance writer provides that type of coverage.

Servicers must obtain errors and omissions coverage that under the terms of the policy or by separate rider; (i) provides that the insurer will name the Buyer, as an investor, as loss payee on payment drafts issued by the insurer for losses to the Buyer resulting from acts or omissions covered by the insurance and (ii) gives the Buyer, as an investor, the right to file a claim directly with the insurer, should the Servicer fail to do so, for losses to the Buyer resulting from acts covered by the insurance.

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 11 of 36

# Section 101.  Servicer Eligibility

## C.  Deductible

The deductible for fidelity bond, directors and officer's liability, and direct surety coverage may be no more than $100,000 or 5% of the bond's face amount, whichever is greater.  The deductible for errors and omissions coverage may be no greater than 5% of the liability coverage per occurrence.

## D.  Cancellation

The insurance certificate issued must indicate the insurance broker's or agent's agreement to notify the Buyer of any cancellation or reduction of coverage within 10 days of such reduction or cancellation.

## 101.05  Annual Certification, Annual Statement of Compliance and Accountants' Statement

On or before March 1st of each year, the Servicer must deliver to the Buyer:

(1) an Annual Certification (WMMSC 1007)
(2) an Annual Statement of Compliance (WMMSC 31477);
(3) an Accountants' Statement;
(4) Regulation AB:  17CFR 229.1100, 1122 and 1123 Attestation;
(5) SAS 60 internal reports.

The Annual Certification must include certifications from an authorized corporate officer that (i) the servicing eligibility requirements set forth in this *Servicer Guide* have been reviewed, (ii) the Servicer is in full compliance with such servicing eligibility requirements, (iii) a review of the activities of the Servicer during the preceding calendar year and of performance under this *Servicer Guide* and the Selling and Servicing Agreement through such year has been made under such officer's supervision, and (iv) to the best of such officer's knowledge, based on such review, the Servicer has fulfilled all of its obligations under this *Servicer Guide* and the Selling and Servicing Agreement through such year. (If there has been a default in the fulfillment of any such obligation, the Annual Certification shall include a description of each such default, specifying the nature and status thereof.)  If so requested by the Buyer, the Servicer must provide any documentation necessary to substantiate the certifications contained in the Annual Certification.  A copy of any recent third party audits (FNMA, FHLMC, HUD, etc.) will be reviewed by the Buyer to verify there are no disciplinary actions taken by any of the agencies, including either suspension or termination of the applicant.  A copy of any recent rating agencies reviews (Fitch, Moody's, S&P, etc.) will be reviewed by the Buyer to notate any weaknesses found within said review.

The Accountants' Statement required to be delivered under this *Servicer Guide* must be prepared by a firm of independent public accountants that is a member of the American Institute of Certified Public Accountants and shall contain a statement to the effect that, based on an examination conducted by such firm, the Servicer is in compliance with the minimum servicing standards identified in the Uniform Single Attestation Program for Mortgage Bankers ("USAP").  On or after January 1, 2006, the Servicer will also be required to submit an Attestation in accordance with  Regulation AB: 17 CFR 229.1100, 1122 and 1123, as such regulations may be amended from time to time, the assertion of management of the Servicer that it has complied with the minimum servicing standards identified in the USAP or Section 1122 of Regulation AB is fairly stated in all material respects, except for (i) such exceptions as such firm shall believe to be immaterial, and (ii) such other exceptions as shall be set forth in such statement.

The Company shall also cooperate fully with WMMSC to deliver to WMMSC, and to any of its assignees or designees in the format specified in this *Servicer Guide*, any and all statements, reports, certifications, records and any other information necessary, in WMMSC's good faith determination, to be required to permit WMMSC or its assignees/designees to comply with the provisions or Regulation AB 17 CFR 229.1100, 1122 and 1123, together with such disclosures relating to the Company acting in its capacity as Seller, the Company acting in its capacity as Servicer, the Mortgage Loans, or the Company acting in its capacity as Servicer servicing the Mortgage Loans reasonably believed by WMMSC, its assignee or its designee to be required for such transaction.

Each of the updated, audited financial statements, certificates, reports and other documentation required under this *Servicer Guide* must be sent to the address noted on Appendix B in this Guide.

## 101.06  Periodic Audit

The Buyer reserves the right to conduct periodic audits of the Servicer's books and records relating to any mortgage serviced by the Servicer or on behalf of the Buyer and of the Servicer's mortgage servicing practices and procedures.  The Servicer must cooperate with such audits and provide access to the Buyer and its agents to the Servicer's offices, books and records at reasonable times during the Servicer's normal business hours.  In addition, if so requested by the Buyer at any time during the year, the Servicer will provide the Buyer with

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 12 of 36

# Section 101.  Servicer Eligibility

evidence of its current compliance with all eligibility requirements as described in Section 101.01.

## 101.07 Agency Audit Reporting Requirements

In the event the Servicer is audited by an agency such as FNMA, FHLMC, HUD, etc., and any rating agency such as Fitch Ratings, Inc., Standard &Poor's Rating Services, or Moody's Investor Services; the Servicer must cause the Buyer to receive copies of the audit report within 15 calendar days of the Servicer's receipt of the audit report from the applicable agency and/or rating agency.

In the event disciplinary action is taken by such agency, including either suspension or termination of the Servicer, the Buyer must be notified in writing within 3 business days of Servicer's receipt of such notice.

## 101.08 Termination of Servicing Privileges

Without limiting the Buyer's right to take whatever action it deems appropriate to protect its interests and enforce its rights, the Buyer may suspend or terminate a Servicer's privileges as set forth below.

### A. Servicing Termination for Cause

For any of the following reasons, the Buyer may, at its discretion, declare an immediate termination and forfeiture of a Servicer's servicing privileges:

- Any failure by the Servicer to deliver or cause to be delivered the Annual Certification, an Annual Statement of Compliance, or the Accountants' Statement required pursuant to Section 101.05 of this *Servicer Guide.*

- Any failure by the Servicer to deliver or cause to be delivered, any requested documentation, which the Buyer has determined to be required to comply with Regulation AB: 17 CFR 229.1100, 1122 and 1123 as required pursuant to Section 101.05 of this *Servicer Guide.*

- Any failure by the Servicer to deliver or cause to be delivered the SOX Certification/Officer's Certificate – Backup 302 Certification.

- Any failure by the Servicer to deliver or cause to be delivered the SAS 60 internal reports.

- Any failure by the Servicer to deliver or cause to be delivered a coy of the balance sheet, income statement and changes in financial position for the Seller and its parent company, if any, covering the most recent fiscal year which, in each case, have been audited by independent public accountants recognized in the geographic area in which the Seller operates.

- The Servicer's fidelity bond and/or errors and omissions insurance is canceled and no replacement coverage is obtained.

- The Servicer fails to remit the appropriate funds or make the appropriate funds available for ACH withdrawal by the Buyer on any date which funds are due from the Servicer.

- The Servicer fails in four consecutive months to forward required pool accounting reports to the Buyer by the date on which such reports are due.

- The Servicer fails to follow specific instructions from the Buyer regarding the servicing of a particular mortgage.

- The Buyer discovers the Servicer has misrepresented facts related to the Eligibility Requirements set forth in Section 101.01 in its initial application for approval as a Servicer or in any information related to its Annual Certification.

- The Servicer is found to have acted with conscious disregard or in a negligent manner with respect to the Buyer's or its assignee's interests in a mortgage.

- The Buyer considers such suspension or termination necessary to protect its interest or enforce its rights.

- The Servicer fails to meet any of the eligibility requirements set forth in Section 101.01.

- The Servicer sells, transfers, subcontracts, pledges, collateralizes, or encumbers any portion of its servicing rights hereunder without prior approval from the Buyer.

- The Servicer has breached any representations, warranties, or obligations set forth in the *Servicer Guide.*

- The Servicer has pledged, sold, transferred or encumbered any servicing fee income or rights without the prior written consent of the Buyer, in violation of Section 102.03.

- The Servicer's insolvency, the adjudication of the Servicer as a bankrupt, the appointment of a receiver for the Servicer, the Servicer's execution of a general assignment for the benefit of its creditors, or any other change in the Servicer's financial status that, in our opinion, materially and adversely affects its ability to provide satisfactory servicing of the mortgages. (If any of these events should occur, no interest in any mortgage or pool of mortgages shall be deemed an asset or liability of the Servicer's successors or assigns, nor shall any interest pass by operation of law without our consent.)

- The finding by a court of competent jurisdiction that the Servicer, or any of its principal officers, has committed an act that constitutes civil fraud, or the conviction of the Servicer or its officer(s) for any

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 13 of 36

criminal act that is related to the Servicer's mortgage servicing activities, if the Buyer believes that such act materially and adversely affects the Servicer's reputation or the reputation or interests of the Buyer.

If the Buyer declares a forfeiture of servicing rights for any of the reasons set forth above, no compensation will be paid to the Servicer and such servicing privileges shall immediately terminate and revert to the Buyer without further action by any party, or, at the Buyer's discretion, the Servicer shall, without compensation, transfer its servicing portfolio to a Buyer-approved Servicer within 60 days of notification of termination.

In the event of a termination under this Section 101.08 A, the Servicer shall promptly deliver all documents, files, records (including computerized records), and monies (e.g., escrow funds) to the Buyer or its designee.

## B.  Other Servicing Terminations

The Buyer may terminate a Servicer's servicing rights for cause for reasons which are considered less serious than those set forth in Section 101.08 A.  In addition, the Buyer may terminate a Servicer's servicing rights without cause.  In each of these situations, once the Buyer notifies the Servicer that its Selling and Servicing Agreement is being terminated; the Servicer has 60 days in which to sell the Buyer's servicing portfolio to a Buyer approved Servicer.  The Buyer's written approval of the transaction must be obtained before the transfer.  The Servicer is responsible for all costs incurred by the transfer and may retain any fees involved in the transaction.

If the Servicer does not arrange a voluntary transfer, the Buyer and Servicer will mutually determine the current fair market value of the servicing being terminated.  The fair market value is the purchase price for the involuntary transfer and sale of servicing to the Buyer.

If the Buyer and Servicer cannot agree on a fair market value, then each one will select an unaffiliated, nationally recognized servicing broker, and those two brokers will independently estimate the current fair market value.  The average of the estimates provided by the brokers will be used as the current fair market value.  The fair market value is the purchase price for the

involuntary transfer and sale of servicing to the Buyer.  The Buyer and Servicer will be responsible for the cost of their respective broker's valuation solicited by such party.

In the event of a termination under this Section 101.08 B, the servicer shall promptly deliver all documents, files, records (including computerized records), and monies (e.g., escrow funds) (i) to the Buyer-approved servicer to whom the terminated Servicer has transferred the servicing privileges, if such a transfer has occurred within the prescribed time period or (ii) to the Buyer or its designee, if the servicing privileges have not been transferred by the terminated Servicer within the prescribed time period.

## C.  Remedies Cumulative

All rights and remedies provided to the Buyer in this *Servicer Guide* are in addition to any other right or remedy available to the Buyer under the Selling and Servicing Agreement or afforded by law or equity, and may be exercised concurrently with, independently of, or in succession to, such other rights, and such rights and remedies shall inure to the benefit of the Buyer, its successors and assigns.  The failure of the Buyer to exercise any of its remedies does not constitute a waiver of that remedy in the future in connection with the same or any other breach or default by the Servicer.

## D.  No Right To Damages

Our decision to terminate a Servicer's servicing privileges, or the entire Selling and Servicing Agreement does not entitle the Servicer to recover any exemplary, punitive, or consequential damages.  If appropriate we may offset any monies the Servicer owes us at the time of the termination against any applicable servicing compensation, purchase proceeds, or other funds we owe the Servicer, all as further provided in Section 403.03.

## E.  Compliance

Any Servicer who is not in compliance with the request for documentation as part of the periodic review may be subject to suspension/termination.

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 14 of 36

# Section 102.  Compensation and Subcontracting

## 102.01  Servicer Compensation

As compensation for servicing the Buyer's loans, the Servicer retains servicing fees, late charges, assumption fees, and some fees charged for special services. These fees are payable to the Servicer from the time the Buyer purchases a loan until it is paid in full, as long as the Servicer collects the mortgage payments. Servicing fees at liquidation are payable only from interest collected at liquidation. Refer to Section 301.02 for full details on accounting of servicing fees.

### A. Servicing Fees

For each fixed rate loan serviced for the Buyer, the Servicer retains a servicing fee from interest actually collected with respect to such loan made up of the difference between the mortgage interest rate and the net rate to the Buyer. Such fee is also payable when liquidation funds are received from the borrower, whether derived from a foreclosure sale, mortgage insurance proceeds, or a third party sale. The net rate is defined as the rate of interest payable to the Buyer on each loan and will be agreed at the time the commitment to purchase the loan is entered into by the Buyer. The servicing fee will be established at the time the mortgage loan is sold by the Seller to the Buyer and may be subsequently changed as agreed upon by the Buyer and the Servicer.

With respect to most adjustable rate mortgages (ARMs), the servicing fee is the difference between the gross margin stated in the mortgage Note and the net margin to the Buyer agreed upon at the time the commitment to purchase the loan is entered into by the Buyer. The servicing fee for an ARM loan will be retained by the Servicer from interest actually collected with respect to such loan. The servicing fee will be established at the time the mortgage loan is sold by the Seller to the Buyer and may be subsequently changed as agreed upon by the Buyer and the Servicer. However, if an adjustable rate loan converts to a fixed rate loan, the servicing fee may not exceed the original servicing fee on the ARM Note.

If the mortgage interest rate includes primary mortgage insurance premiums, the minimum servicing fee must not include these premium amounts.

### B. Late Charge Provision

The Servicer is authorized to collect and retain late charges provided for in the note or security instrument which comply with applicable state law. If the state law does not permit the charge provided for in the Note or Security Instrument, the maximum amount allowable pursuant to state law should be used. The late charge should be computed only on the principal and interest installment, not on the full monthly payment. Late charges must be collected from the borrower, and may not be collected from

the escrow account, deducted from a monthly installment, or capitalized.

## 102.02  Subcontracting or Transfer of Servicing

A Servicer may not outsource or subcontract any servicing function, sell, pledge or transfer its responsibility for servicing any loan serviced on behalf of the Buyer in whole or in part without prior written approval from the Buyer. With respect to outsourcing or subcontracting of any servicing function to any vendor or other provider, the Servicer must identify the party that will be performing the servicing function, describe the scope of its responsibilities and provide such other information as the Buyer may request, including without limitation information necessary to determine whether such party's certification of compliance with servicing criteria may be required in connection with certain transactions. Any request for subcontracting or the transfer of servicing must specify the reason for the request, be accompanied by a Trial Balance Report (WMMSC 4018) and a copy of the Request for Transfer of Servicing (WMMSC 3008) providing information on the qualifications of the proposed transferee. This notification should be received by the Buyer 60 days prior to the proposed transfer or subcontractor's commencement of subcontracting activities, as applicable. The proposed Servicer must meet all of the Buyer's eligibility requirements as stated in Section 101.01 and have executed a WMMSC Selling and Servicing Agreement.

All outstanding obligations of the Servicer to the Buyer must be satisfied prior to any transfer. The Servicer will be advised of the Buyer's decision and any other conditions to be met for approval. If the request is approved, the Servicer and the proposed transferee must execute the Request for Transfer of Servicing, the Servicing Agreement signed by the Servicer and the proposed transferee, the original Custodial Account Forms (4002, 4004, 4006 and 4014 for buydowns); and consummate the transfer according to the Buyer's specifications within 60 days of the approval date. A $500 transfer fee is due the Buyer immediately upon the Buyer's approval of the transfer.

An approved Servicer will not be relieved of its obligations pursuant to its original contract with the Buyer by establishing a subcontracting relationship with another party. Any transfer or subcontracting without the Buyer's written consent may result in suspension or termination of the Servicer's privileges and forfeiture of servicing rights for existing loans.

As a condition to approving any request to transfer servicing, the Buyer will require the transferee to assume all of the Servicer's servicing warranties and obligations and all of the Seller's representations, warranties and

Case: 10-05245   Doc# 360   Filed: 01/03/14   Entered: 01/07/14 16:02:35   Page 15 of 36

# Section 102.  Compensation and Subcontracting

obligations and will require the transferee to enter agreements which evidence the assumption of such representations, warranties and obligations.

The Servicer and the transferee will also be obligated, jointly and severally, to indemnify and hold harmless, the Buyer, its successors and assigns against all losses, claims, costs and expenses (including reasonable attorney's fees) that may arise against the Buyer, its successors and assigns, from the failure to comply with applicable laws and regulations related to the transfer of servicing.

## 102.03  Pledge or Transfer of Servicing Income

The pledge, sale, transfer, or encumbrance of any servicing fee income or rights without the prior written consent of the Buyer is prohibited.  Any purported sale, transfer or pledge is grounds for an immediate termination of servicing rights for cause pursuant to Section 101.08 and shall be ineffective to confer upon any purported transferee, pledge or other right, title or interest in such income or servicing.

## 102.04  Merger or Consolidation of Servicer

Any entity into which the Servicer is merged or consolidated, or any corporation resulting from any merger, consolidation or conversion to which the Servicer is a party shall be deemed the successor to the Servicer and shall succeed to all of the Servicer's rights and obligations under the Selling and Servicing Agreement, provided that the successor meets the eligibility criteria set forth in Section 101.01 and complies with the transfer of servicing requirements, as specified in Section 102.02 of this *Servicer Guide*.  The Buyer, in its sole discretion, may reject any such successor and may terminate the Servicer's servicing privileges hereunder as of the effective date of such merger or consolidation.  Such termination shall be deemed a termination for cause under Section 101.08 A hereof, and the Buyer shall not be obligated to compensate the Servicer or its successor for such termination.

## 102.05  Notification of Significant Changes

The Servicer must send the Buyer written notice of any contemplated major changes in its organization, including with such notice copies of any filings with, or approvals from, its regulators.  The Buyer requires notice of, among other things, the following significant changes relating to the Servicer:

1.  any mergers, consolidations or reorganizations;

2.  any direct or indirect substantial change in ownership; An "indirect change in ownership" includes any change in the ownership of the Servicer's parent, any owner of the parent, or any beneficial owner of the Servicer that does not own a direct interest in the Servicer;

3.  any change in corporate name;

4.  any change from a federal charter to a state charter (or vice versa) if the Servicer is a savings and loan association or a bank;

5.  a material adverse change in financial condition; and

6.  the sale of all, or substantially all, of the Servicer's assets or a line of business.

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 16 of 36

# Section 103.  Administrative Responsibilities

## 103.01   Internal Audit Controls

The Servicer is responsible for maintaining accurate records and books of account and an adequate system of audit and internal controls.  The Servicer must promptly notify the Buyer in writing of any material adverse change in the financial condition of the Servicer and of any facts or circumstances which could adversely affect the prospects for timely remittance of principal and interest payments on any loan or the ability of the Servicer to service any loan.

For adjustable rate mortgages, the Servicer must ensure it has systems and procedures in place which can adequately support the ongoing servicing requirements of any adjustable rate mortgage program of Buyer under which it services.  Because of many variables and options permitted under the Buyer's adjustable rate mortgage programs, the Servicer must closely monitor these loans.  It is the Servicer's responsibility to enforce each adjustable rate loan according to its terms.  This includes making accurate changes to the interest rate and monthly payment amount and communicating these changes on a timely basis to the borrower and to the Buyer on the ARM Adjustments Report (WMMSC 4013).  This also includes accurate calculation of the net rate to the Buyer following each adjustment date.

## 103.02   Maintenance, Custody and Ownership of Loan Files

For all loans sold to the Buyer, the Seller will have sent to the appropriate Custodian the following original documents within 120 days of purchase:

- Original note evidencing the obligation of the borrower, or a lost note affidavit accompanied by a certified copy of the lost note and an agreement by the Servicer to indemnify and hold the Buyer harmless from any loss (including reasonable attorney's fees) suffered by the Buyer due to the lack of the original note
    - Original recorded security instrument and all applicable riders or a fully recorded legible reproduction thereof originally certified to by the applicable recording office
    - Original recorded assignment of the security instrument or a fully recorded legible reproduction thereof originally certified to by the applicable recording office
    - Original recorded intervening assignment(s), if applicable or a fully recorded legible reproduction thereof originally certified to by the applicable recording office

- Original or an originally certified  copy of a final title insurance policy and any required waivers or attorney's opinion
- Original recorded assumption, modification, consolidation, extension or substitution agreements, including any modification agreement converting an adjustable rate mortgage to a fixed rate mortgage, if applicable or a fully recorded legible reproduction thereof originally certified to by the applicable recording office.

The Final Documentation Transmittal (WMMSC 2009) must be completed and stapled on top of the documents.

Additional original documents may be required to be maintained in the Buyer's files per specific mortgage programs.

## A.  Individual Loan Files

The Servicer must maintain an individual file for each loan it services for the Buyer.  The file must include any papers or records which are required to service the loan properly and any documents which attest to the validity of the loan.

The file should include, but is not limited to, these documents:

1. All credit file documentation (FNMA forms referenced as industry standard, however, forms equivalent to FNMA's may be substituted):

    - Underwriting Approval Certificate or the pool insurance certificate from a Buyer approved pool insurer.
    - Transmittal Summary (FNMA 1008)
    - Uniform Residential Loan Application (FNMA 1003) typewritten (signed and dated by the borrower if loan is closed)
    - Statement of Assets and Liabilities (FNMA 1003A) typewritten, if applicable
    - Original handwritten Uniform Residential Loan Application (FNMA 1003) signed and dated by the borrower
    - Complete mortgage payment history
    - Verification of payment history on previous mortgage, if applicable
    - Verification of rent, or copies of 6 month's canceled rent payment checks (front and back), if applicable
    - Residential Mortgage Credit Report
    - Verification(s) of Deposit (FNMA 1006)
    - Verification(s) of Employment (FNMA 1005)
    - Verification(s) of Previous Employment (FNMA 1005), if applicable

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 17 of 36

# Section 103. Administrative Responsibilities

- Copy of most recent YTD paystub(s), if applicable
- Copies of W2s for the last 2 years, if applicable
- Copies of signed personal Federal Income Tax Returns (1040s) for last two years with all supporting schedules, if applicable
- Self-employed Income Analysis (FNMA 1084) for self-employed borrowers, if applicable
- Year-to-Date Profit and Loss Statement and a balance sheet if more than three months have passed since the end of the last tax year, if applicable
- Business Credit Report, if applicable
- All applicable signed tax returns for self-employed borrowers or commissioned employees including, but not limited to, 1040s with all schedules, K-1s, partnership returns and corporate returns
- Agreement of Sale, Sales Contract, or Purchase and Sales Agreement, and Escrow Instructions, including amendments
- Certification of Completion and Value, either as a letter or as a form which provides the necessary information, if applicable
- Uniform Residential Appraisal Report (FNMA 1004) or Appraisal Report - Individual Condominium or PUD Unit (FNMA 1073) or Appraisal Report - Small Residential Income Property (FNMA 1025)
- Recertification of Appraisal Report, if applicable
- Certification and Statement of Limiting Conditions (FNMA 1004B)
- A street map showing the location of the subject property and of all comparables used
- An exterior building sketch of the improvements indicating the dimensions. A floor plan sketch is not required unless the floor plan is functionally obsolete, resulting in a limited market appeal for the property in comparison to competitive properties in the neighborhood. For units in condominium or cooperative projects, interior perimeter unit dimensions are required instead of exterior building dimensions
- Original color photographs of the front, street, and rear views of the subject property
- Original color photographs of the front view of each property used as a comparable
- Single-Family Comparable Rent Schedule (FNMA 1007) or Operating Income Statement (FNMA 216), for two-family properties, if applicable

- Copy of the canceled earnest money check (front and back), if applicable
- Any other data - as an attachment or addendum to the appraisal report form - necessary to provide an adequately supported estimate of market value
- Borrower's Certification and Authorization Letter (WMMSC 406, or FNMA equivalent)

2. All closed loan documentation (FNMA forms referenced as industry standard, however, forms equivalent to FNMA's may be substituted):

- Mortgage Submission Voucher (Freddie Mac 13SF ) completed in full
- Bailee Letter/Trust Receipt, if applicable
- Underwriting Approval Certificate, original copy which was returned to the Seller after underwriting, or the pool insurance certificate from a Buyer approved pool insurer.
- Evidence that all underwriting conditions of loan approval have been satisfied, if any existed (original and one copy of each condition is required)
- Copy of the note and any applicable riders/addenda
- Copy of any assumption, modification, consolidation, extension or substitution agreements, including any modification agreement converting an adjustable rate mortgage to a fixed rate mortgage, if applicable
- Copy of the security instrument and any required riders/addenda
- Copy of the assignment of the security instrument and intervening assignment(s), if applicable
- Copy of the title insurance policy
- Signed copy of the original ARM disclosure, if applicable
- Certified copy of the signed Settlement Statement (HUD-I) or, in escrow states, the Escrow Agent's Estimated Settlement Statement which is executed by the borrower and certified as a true and correct copy of the original
- The original survey/plat drawing. (If not customary, an endorsement to the title policy insuring against circumstances which would have been shown on a survey is required.) If an approved Master Title Policy is used with this endorsement, no survey will be required
- Signed, certified copy of the original Good Faith Estimate of closing costs

Servicer Guide: Loan Administration

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 18 of 36

- Signed, certified copy of the original Truth-in-Lending, Right of Rescission statement
- Original mortgage insurance certificate and endorsements, signed by the Seller, if applicable
- Original recorded power of attorney or certified true and correct copy of the power of attorney, if applicable
- Copy of the temporary buydown schedule, if applicable

3. Documentation showing when and by whom the loan was approved and the terms and conditions of such approval.

4. Documentation showing the date, amount, purpose, and recipient of every disbursement of the proceeds of such loan, whether such disbursements are made directly by the Servicer or through escrows or other persons or concerns.

5. Documentation covering all modifications of the original mortgage contract and showing the appropriate approval of each such modification.

6. Documentation covering all releases of any portion of the collateral supporting the loan, showing: the part of the premises involved; the consideration, if any, to such institution; and a record of appropriate approval of each such release.

7. Water or irrigation company stock certificates.

8. Ledger sheets.

9. Payment records.

10. Insurance claim files and correspondence.

11. Collection, Foreclosure/REO files and correspondence.

12. Current and historical computerized data files, whether generated by the Servicer or by a service bureau.

13. Originals or copies of all disclosures required by state and federal law and regulation.

All loan papers and documents necessary to document or properly service any of the Buyer's loans will remain the Buyer's property or the property of the Buyer's designee or assignee at all times. Records in the Servicer's possession are retained in a custodial capacity only. These records should be maintained for six (6) years after the loan has liquidated.

Upon the Buyer's written request, the Servicer must immediately deliver all mortgage records and documents to the Buyer or the Buyer's designee. This delivery must be accompanied by a list identifying each loan by its Buyer loan number. The Buyer will not be required to execute trust receipts or to participate in the delivery of the records and documents. If the Servicer has microfilmed or otherwise condensed any of the mortgage records and documents, the Servicer must promptly reproduce any or all such mortgage records at no cost to the Buyer, or its designee or assignee, upon request.

## B. Records Storage

In lieu of retaining copies and originals as required above, the Servicer may maintain its loan files in the form of microfilm, microfiche or electronic media, provided that the following requirements are met:

1. The copies or electronic media are made in the regular course of business pursuant to an established written policy of the Servicer applying to all of its loan files;

2. The copies or electronic media are made by a process that accurately reproduces or forms a durable medium for reproducing the original;

3. The copies or electronic media are clearly marked to indicate the Buyer's ownership of the loan and the Buyer loan number assigned to it;

4. The Servicer maintains the copies or electronic media in a manner that permits ready transfer to legible hard copies of the material relating to the loans serviced for the Buyer;

5. A reader/copier that can be used by the Buyer representatives is maintained in the same office where the copies are stored; and

6. The Servicer makes back-up copies and retains them off-site to protect against fire and other hazard losses.

The Servicer must bear the entire cost of restoring loan files and related documents transferred to microfilm, microfiche or electronic media if the copies or electronic media become damaged or lost for any reason, or if legible hard copies are requested by the Buyer.

## C. Mortgage Account Records

Permanent mortgage account records, trackable by the assigned Buyer loan number, must be maintained for each loan. The Buyer does not specify the particular system or forms to be used for the mortgage account records, but requires the system be capable of producing, at any time for any Buyer loan, an account transcript itemizing the following sequence:

1. The date, amount, and distribution of each installment by due date,

2. Other transactions affecting the amounts due from or to the borrower, and

3. The latest outstanding balances of principal and interest, escrow accounts for taxes and insurance, buydown accounts, and unapplied payments.

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 19 of 36

The system must also provide for prompt disclosure of any overdraft in the account balance of deposits for the payment of taxes and insurance.

The account records on the Buyer's loans should be maintained according to sound and accepted accounting practices and in a way which will permit the Buyer's representatives to examine and audit the account records upon request.

## D. Request for Data

The Buyer reserves the right to request loan level information for loans being serviced. Information that is housed on the Servicers' system of record should be provided as requested by fax, mail, or email within 3 business days or within a reasonable amount of time based on the quantity and complexity of the data requested.

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 20 of 36

# Section 201.  Loan Servicing

## 201.01    Servicing Overview

This section briefly outlines the Servicer's responsibilities when servicing loans for the Buyer. For full instructions on servicing and loan accounting, refer to the appropriate sections of this Guide. The use of the Buyer's forms will also be explained in those sections and detailed instructions are included on some forms.

1. The Servicer must service the loans according to industry standards, the terms of the mortgage note and security instrument and applicable state and federal law and regulation.

2. Payments must be collected and applied according to the amortization schedule and the escrow requirements of each loan. Application of partial payments is not allowed unless a pre-approved relief plan is involved. Generally, the Buyer purchases only interest-in-arrears loans, repayable in equal monthly payments, except for the last payment, based on a 30-day month/360-day year, reducing the principal balance to zero at the end of the term. Any form of capitalization is not allowed under the Buyer's purchase programs.

3. The Servicer must establish and maintain separate custodial accounts for (i) principal and interest (the "P&I Custodial Account"), and (ii) taxes and insurance (the "T&I Custodial Account"). Unless otherwise approved in writing by the Buyer, the funds in these accounts must be kept separate from the Servicer's general assets. The Servicer's records must clearly show the respective interests of the Servicer and the Buyer in all accounts and of each individual borrower in the tax and insurance accounts.

4. The accounting period cutoff date is the calendar month-end, and the Servicer must submit accounting reports no later than the fifth (5th) business day of the following month. The remittance withdrawal is originated by the Buyer via the Automated Clearing House (ACH) network on the 20th calendar day of each month or on the preceding business day. The monthly withdrawal by the Buyer will include:

   - All scheduled principal and interest payments due the first day of the current month. Delinquent payments are included even if they have not been collected from the borrower. Prepaid payments are not included until they are due.

   - All additional principal and interest collected in the previous calendar month representing exception activity (e.g., liquidations of any type or partial prepayments of principal) as reported to the Buyer via the accounting report.

   - Collection of unscheduled principal must be properly applied to the outstanding mortgage loan principal balance or the related mortgage loan may not properly amortize. Servicers must calculate and apply a curtailment to ensure that the unpaid principal balance of the mortgage loans properly amortizes.

5. The Servicer must notify the Buyer of the status of all loans 90 days or more delinquent. Information regarding such mortgage loans must be provided by the Servicer to the Buyer electronically, no later than the fifth (5th) business day of the month.

6. The Servicer must provide the Buyer with responses to all delinquency, foreclosure bankruptcy and REO exception reports via electronic format no later than the tenth (10th) business day of the month.

7. The Servicer must ensure that each property securing a loan is covered by a hazard insurance policy at all times.

8. The Servicer must maintain tax records and forward timely tax payments to the respective taxing authorities, if applicable.

9. The Servicer must maintain records of all loans which carry primary mortgage insurance and flood insurance. It must also ensure timely payment of the premiums for these insurance coverages.

10. The Servicer is obligated to advance principal and interest funds if a loan becomes delinquent, escrow funds if there is an escrow shortage, and funds for emergency repairs, as necessary.

11. When a reasonable effort to cure a defaulted loan is unsuccessful, the Servicer must recommend liquidation under accepted servicing procedures. Liquidation may be accomplished by foreclosing on the property, by accepting a deed-in-lieu of foreclosure, or through a preforeclosure sale. The Buyer must be provided with written notification for all loans in which the Servicer initiates a foreclosure referral. Principal and interest

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 21 of 36

advances must continue through foreclosure and REO until the mortgaged property has been fully liquidated and removed from the pool.

12. Shortly after the Buyer purchases a loan, it is placed into a mortgaged-backed pool.   The Servicer may not waive, modify or vary the maturity date, loan interest rate or other terms of a Note/Mortgage on any loan sold to the Buyer without the Buyer's approval.

13. Upon receipt of liquidation funds or notification of foreclosure referral, the Buyer will release the original documents (if documents are needed for foreclosure, the Buyer will release the mortgage documents upon full reinstatement of loan or certification from officer that documents are no longer needed).

14. The Servicer must include the WMMSC assigned servicer number on all reports and correspondence sent to the Buyer in order to identify the loans being serviced.

15. All correspondence, loan accounting and loan servicing reports should be sent to the appropriate address, as listed in Appendix B.

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 22 of 36

# Section 202. Tax and Insurance Escrows

## 202.01  Borrower's Escrow Account

### A.  Establishing the Account

When consistent with the Servicer's normal servicing practices and not prohibited by law, the Servicer must establish an escrow account into which the borrower deposits monthly amounts sufficient to pay estimated mortgage and hazard insurance premiums, including renewal premiums, taxes, ground rents, special assessments, premiums for mortgage life or disability insurance and other charges as they become due. These items will then be paid from this account.

If the Servicer collects and disburses additional funds for the payment of other insurance premiums, such as life, major medical, disability, mortgage cancellation, or other assessments which the Buyer does not require as part of the borrower's monthly installment, the Servicer must ensure:

- The borrower's monthly installment payment is not returned if the borrower fails to remit the additional funds.
- Funds from the borrower's escrow account are not used to make up any shortages caused by the borrower's failure to pay the additional funds.
- The borrower's monthly billing or coupon distinguishes between the amount of the monthly installment required by the Buyer and the amount of the additional funds.
- Funds paid by the Servicer are not capitalized.

The Servicer is solely responsible for the administration of the borrower's escrow account.

### B.  Maintaining the Escrow Account

The Servicer must promptly pay all bills for escrow items. The Servicer holds the Buyer, its successors and assigns, harmless from all penalties, losses, or damages resulting from the Servicer's failure to fulfill this responsibility.

For any mortgage loan which has amortized down so that the LTV is 80% or less, the Servicer may waive the borrower's future obligation to deposit amounts in the tax and insurance reserve provided:

- The unpaid principal balance of the note divided by the lesser of the original appraised value of the property or the sales price is 80% or less;
- The mortgage is at least 12 months old; and
- The mortgage has not been more than 30 days delinquent during the preceding 12 months.

If the Servicer waives the right to collect escrows, the Buyer's right to enforce the requirement if the borrower fails to act responsibly must be retained. For specific details on waiving primary mortgage insurance, refer to Section 203.04 A.

### C.  Non-Escrowed Loans

If the Servicer does not collect escrow funds on a mortgage loan, the Servicer must require proof of payments of all taxes, ground rents, assessments, insurance or other charges, or use other means commonly used in the mortgage industry to satisfy itself that such items are paid on a timely basis. The Servicer's Errors and Omission Policy must also insure the Servicer in the event losses are incurred if taxes or insurance premiums are not paid when due. The Servicer must notify the Buyer immediately of any item not paid on a timely basis and recommend to the Buyer a course of action under such circumstances. The Buyer retains the right to enforce the tax and insurance reserve requirements if the borrower fails to act responsibly.

### D.  Escrow Advances

When funds held in an escrow account are insufficient to pay taxes, assessments, ground rents, or other charges which are or may become a lien on the mortgaged property, primary mortgage insurance premiums, hazard insurance premiums, water or irrigation company stock assessments or charges, the Servicer must advance its own funds to the individual borrower's account. The Servicer must disburse the necessary funds from the borrower's escrow account even if the disbursement causes a deficit balance for the individual borrower.

### E.  Responsibility for Paying Interest

The Servicer is responsible for paying any interest on the borrower's escrow account as required by state law. The Buyer will not reimburse the Servicer for any interest or earnings paid to the borrower or credited to the borrower's account.

### F.  Analysis of the Account

If an escrow account is established, the Servicer must determine the amount of the monthly deposit to be made by the borrower and provide him or her with an analysis of this account at least annually. If a surplus exists in a borrower's escrow account, such excess may be taken into consideration in fixing the amount to be collected for the account for the following year or a refund to the borrower may be made if the loan is current. If the surplus is sufficient or is supplemented by an additional collection, it may be used to pay one or more full installments of principal and interest or an additional principal payment, provided such actions are consistent with the terms of the loan documents and the wishes of the borrower.

Case: 10-05245   Doc# 360   Filed: 01/03/14   Entered: 01/07/14 16:02:35   Page 23 of 36

# Section 202. Tax and Insurance Escrows

The Servicer may retain a surplus in the borrower's escrow account to the extent permitted by the loan documents and all applicable laws. An average escrow balance must be reflected on the annual analysis and provided to the borrower upon request.

## G. Annual Statement to the Borrower

At the end of the calendar year, the Servicer must send the borrower an annual statement of the borrower's account, including the following:

- The balance of the escrow account at the beginning of the year,
- The total amount deposited into the escrow account by the borrower during the year,
- The total amount applied to the principal,
- The total amount applied to interest,
- The amount and nature of disbursements made during the year (including all taxes paid on the borrower's behalf), and;
- The final balance of all accounts at year-end.

Upon the borrower's request, the Servicer must also provide a detailed ledger analysis of all transactions affecting the borrower's mortgage payment record and deposit account, showing individual dates, amount and purposes of each debit and credit to the accounts, including the beginning and ending balances.

## 202.02 Taxes, Ground Rents, Assessments, and Related Charges

The Servicer must maintain accurate records on taxes, ground rents, assessments and other charges which are or could become a lien on properties securing loans serviced for the Buyer. The Servicer should pay such charges before any penalty date and in time to secure the maximum discounts available. The Servicer is responsible for the timely payment of all such bills and must pay all penalties, losses, or damages resulting from it failure to discharge this responsibility. Similarly, penalties for the late payment of taxes cannot be passed on to the borrower unless the borrower directly contributed to the imposition of the penalty.

## 202.03 Water or Irrigation Stock Certificates

If a property is dependent on a supply of water furnished by a water or irrigation company to its stockholders, the stock certificate must be endorsed by the borrower and retained by the Servicer. The Servicer should pay the assessments or charges for services furnished to the property from the borrower's escrow account if this practice is customary in the locality. Otherwise, the Servicer must annually determine whether the items have been paid by the borrower and, if not, should require the borrower to make the payment. If the borrower does not make the payment, however, the Servicer must advance the necessary funds and may create an escrow requirement for future installments. In the event a stock certificate is lost, the Servicer must take whatever action is necessary to obtain a replacement certificate. All fees and expenses will be the sole responsibility of the Servicer.

## 202.04 Insurance Reserves

If the borrower fails to maintain the required hazard insurance coverage, the Servicer must obtain the required coverage and must cause the policy to remain in force as long as the Servicer services the loan.

If the Servicer acted as a broker or agent in placing insurance coverage not required by the Buyer, the Buyer will not be responsible for any attorney's fees and costs resulting from disputes with carriers of such insurance.

Case: 10-05245     Doc# 360     Filed: 01/03/14     Entered: 01/07/14 16:02:35     Page 24 of 36

# Section 203.  Insurance Requirements

## 203.01  General

The Servicer must verify that the following insurance coverages are in place at all times for each mortgage:

- Hazard, flood, condominium and PUD insurance in accordance with the terms of this *Servicer Guide*.
- Primary mortgage insurance in accordance with this *Servicer Guide*.

All claims arising under such insurance coverage must be settled or otherwise disposed of by the Servicer, and all such insurance must be maintained at no expense to the Buyer.

### A.  Evidence of Insurance

For each mortgage, the Servicer must maintain the following documentation:

1. For one- to four-family dwellings, an original of the hazard insurance policy, flood insurance policy (if applicable), and any related endorsement(s).
2. For properties covered under a blanket PUD or condominium association policy, an original of the blanket policy, any flood insurance policy, and any related endorsement(s).

In lieu of a policy, the Servicer may maintain a certificate or other evidence of insurance showing at least the following information:

1. Name of insured and mortgagee (name of insured owners' association, unit owner, and unit owner mortgagee if a PUD or condominium unit);
2. Address of mortgaged property;
3. Type, amount and effective dates of coverage;
4. Deductible amount;
5. Any endorsement or optional coverage obtained and made part of the original policy;
6. Insurer's agreement to provide at least ten (10) days' prior notice to the mortgagee (or applicable unit owner mortgagee if for a PUD or condominium unit) before any reduction in coverage or cancellation of the policy; and
7. Signature of an authorized representative of the insurer, if required by law.

The Policy Declarations page of a National Flood Insurance Program (NFIP) policy is acceptable evidence of flood insurance.

The Servicer must possess a specimen of each policy and endorsement for which a certificate or other evidence of insurance is maintained in lieu of the policy or endorsement.

### B.  Indemnity of WMMSC

In addition to all other remedies of the Buyer provided for in the Selling and Servicing Agreement and this *Servicer Guide*, the Servicer will indemnify the Buyer for any loss the Buyer sustains on the property.

### C.  Insurance Charges

Premiums for insurance covering the property will be paid when due by borrowers or the Servicer if the Servicer collects escrow funds for such purposes.

Premiums for insurance obtained by a PUD or condominium owners association for the benefit of the PUD or condominium project will be paid by the association as a common expense assessable to all unit owners.

### D.  Changes in Insurance Requirements

The Servicer must require the borrower to obtain appropriate insurance coverage in accordance with the terms of the security instrument when either of the following conditions exists:

1. The Servicer becomes aware that existing coverage does not adequately protect the property; or
2. The area where the property is located was not subject to flood insurance requirements at inception of the mortgage or when the Buyer purchased the mortgage, but has now been classified as a Special Flood Hazard Area and the Servicer has become aware of such classification.

The Servicer must verify that adequate coverage has been obtained and remains in force. If the borrower does not obtain such coverage, the Servicer must do so. The Servicer will then adjust the borrower's escrow payments accordingly or bill the borrower to recover the advance if the Servicer does not maintain an escrow account for the borrower. If the borrower refuses to reimburse the Servicer, the Servicer may recommend acceleration to the Buyer for the borrower's default under the terms of the security instrument.

If the additional coverage cannot be obtained, the Servicer must immediately make appropriate recommendations to the Buyer.

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 25 of 36

# Section 203.  Insurance Requirements

The Servicer may authorize the borrower to discontinue flood insurance coverage upon verification of map revision or receipt of a Letter of Map Amendment from the Federal Emergency Management Agency (FEMA).

## E.  Insurance Loss Settlements

Upon notification of loss or damage to the property, the Servicer will monitor and coordinate the claim process with the borrower and the insurer.  The Servicer must take appropriate action to:

1. Verify the extent of the loss or damage;
2. Ensure judicious disbursement of insurance proceeds for the necessary repairs;
3. Protect the priority of the security instrument by obtaining waivers of materialsman's or mechanic's liens;
4. Have a system for the control and disposition of insurance loss drafts, clearly identifying the individual borrower's account through the T&I Custodial Account.  (The Buyer **must not** be named as a payee on any insurance loss draft.  The Servicer **must be** named on all drafts in excess of $1,000.)
5. Obtain appropriate borrower affidavit reflecting their satisfaction with the quality of the repair work;
6. Document completion of the repairs; and
7. Loss draft funds received must be held in a custodial account (passbook accounts are **not** acceptable).

The Servicer must be named as loss payee on insurance drafts in excess of $1,000 and must comply with any applicable law and, where applicable, any requirement of the mortgage insurer.  Details concerning the loss or damage and disposition of the insurance proceeds must be recorded in the loan file. The Servicer must obtain the Buyer's approval for use of any outsourcing firm or vendor for the purpose of hazard insurance claims review and settlement.

The Servicer need not submit a report and related recommendations to the Buyer unless:

- The security instrument is in foreclosure or the property has been acquired by the Servicer through foreclosure or deed-in-lieu of foreclosure;
- Property damage exceeds $5,000 and the loan is 60 or more days delinquent;
- The property has suffered a total or near total loss;
- The Servicer wishes to apply insurance proceeds to the mortgage instead of repairing the property; or
- Insurance proceeds exceed the amounts required to restore the property to its original condition.

## F.  Notice of Loss-Condominiums and PUDs

The owners' association of a condominium project must agree in writing to notify the Servicer whenever

i) damage to a single unit covered by a mortgage purchased by the Buyer exceeds $5,000; and

ii) damage to common areas and related facilities exceeds $10,000.

For PUD projects, the owners' association must agree in writing to notify the Servicer whenever damage to common areas or related facilities exceeds $10,000.

## G.  Natural Disaster Losses

When a natural disaster (earthquake, flood, tornado, etc.) results in losses or damages to the property, the Servicer must promptly:

- Ascertain the number of such properties;
- Determine the extent of the losses or damages;
- Secure any abandoned property against vandalism or the elements;
- Assist the affected borrowers in filing for any disaster relief aid available;
- Assist the affected borrowers through counseling and any appropriate repayment plan; and
- Notify the Buyer and make appropriate recommendations.

If the disaster results in uninsured losses, the Servicer must forward a complete report of the findings to the Buyer and recommend a course of action to protect the interests of the Buyer and the borrower.  The Servicer is authorized to expend up to $2,500 for emergency repairs as specified in Section 204.02.

## 203.02  Hazard Insurance

### A.  Amount of Coverage

For one- to four-family residences and individual PUD units, the amount of hazard insurance coverage must at least equal the lesser of:

1. 100% of the insurance value of the improvements, or
2. The unpaid principal balance of the mortgage provided it equals the minimum amount required to compensate for damage or loss on a replacement cost basis.  If it does not, then coverage which provides the minimum required amount must be obtained.

Coverage for condominium and PUD projects must be 100% of current replacement cost for the project's facilities, including the individual units in a condominium project or in a PUD project where the blanket policy covers the individual units.

The insurance coverage may not be less, however, than the minimum amount required under the terms of

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 26 of 36

# Section 203.  Insurance Requirements

coverage to fully compensate for any damage or loss on a replacement cost basis.

The Servicer must ensure that the property must also be adequately covered even when vacant and, where necessary, must obtain a vacancy permit endorsement.

## B.  Deductible Amounts

Unless a higher maximum amount is required by state law, the maximum deductible must be:

1. For one- to two-family residences and individual PUD units: $1,000 or 1% of the policy face amount, whichever is less.

2. For PUD common areas and condominium projects: $10,000 or 1% of the policy face amount, whichever is less.  If the policy is a blanket policy which also covers the individual PUD units, the deductible related to the individual units should be $1,000 or 1% of the unit's replacement cost, whichever is less.

The deductible may apply to either fire or extended coverage or to both.  For condominium and PUD projects, funds to cover the deductible amounts should be included in the homeowners' association operating reserve account.

## C.  Carrier

The policy must be underwritten by a company currently rated B/II or better in Best's Insurance Reports or the coverage must be underwritten by Lloyd's of London.  In addition, the company must be licensed to do business in the state in which the property is located.

## D.  Mortgagee Clause

The Servicer's name must appear in the mortgagee clause of the hazard insurance policy followed by the phrase, "its successors or assigns."  WMMSC should not appear as mortgagee unless the policy coverage would be impaired.

## 203.03   Flood Insurance

Flood insurance is required at all times for any property located in a Special Flood Hazard Area which has federally mandated flood insurance purchase requirements.  Properties located in Special Flood Hazard Areas designated by symbols A, AE, A1-30, AH, AO, A99, V, VE and V1-30 require flood insurance.

Flood insurance requirements may be waived if i) the improvements are not in a Special Flood Hazard Area even though part of the property (the land) may be, and ii) a letter from the Federal Emergency Management Agency (FEMA) is provided stating the maps have been amended so that the property is no longer in a Special Flood Hazard Area.

## A.  Amount of Coverage

The amount of flood insurance required on all property types is:

1. The lower of the minimum amount required to compensate for any damage or loss on a current replacement cost basis (or the unpaid principal balance of the mortgage if replacement cost coverage is not available), or

2. The maximum insurance available under the appropriate National Flood Insurance Administration.

## B.  Deductible Amounts

For all property types, unless a higher maximum amount is required by state law, the deductible may not exceed $1,000 or 1% of the policy face amount, whichever is less.

For condominium and PUD common areas and each building in a high-rise or vertical condominium project, the deductible may not exceed $5,000 or 1% of the policy face amount, whichever is less.  Funds to cover the deductible amount should be included in the homeowners' association operating reserve account.

## C.  Condominiums

If the property is a condominium and flood insurance is required, the borrower must obtain flood insurance on the individual unit in addition to the insurance which must be maintained by the homeowners' association as part of the project's blanket flood insurance policy.  The only permissible exceptions to this coverage requirement are:

1. Three (3) story condominium projects with five (5) or more units where the condominium is participating in the Condominium Master Policy program which became available on January 1, 1989, and is offered by the NFIP.  Under this policy, the entire building is covered under one policy, including all units within the building and improvements and betterments within the units which are owned in common.

   Under the "Condominium Master Policy" program, the maximum amount of building coverage which can be purchased is the actual cash value of the building or the total number of units (residential plus non-residential) in the building times $185,000, whichever is less.

2. The homeowners' association has insurance coverage on the actual cash value of the building which would sufficiently cover each unit's market value along with all common areas within the complex in the event of a flood.

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 27 of 36

# Section 203. Insurance Requirements

**NOTE**: *Many insuring agents and/or homeowners' associations will insist they are providing sufficient coverage. Even if the project is insured under the new "Condominium Master Policy", the Servicer must obtain a copy of the Declaration page of the condominium project's flood insurance policy to determine that the policy amount is sufficient to cover the market value of all units and common areas.*

*If the coverage is not sufficient, the borrower must obtain flood insurance on the individual unit in addition to the insurance maintained by the homeowners' association.*

## D. PUDs and Townhomes

If the property is in a PUD or is a townhome and flood insurance is required, the borrower must maintain flood insurance on the individual unit unless there are improved common areas such as a clubhouse, tennis courts or pools, in which case, flood insurance must be maintained by the homeowners' association in addition to the borrower's individual unit coverage. If the PUD or townhome project has only improved or limited common areas such as sidewalks, greenbelts or parking lots, the homeowners' association will not be required to maintain a flood insurance policy in addition to the borrower's individual unit policy.

## E. Mortgagee Clause

The Servicer's name must appear in the mortgagee clause of the flood insurance policy followed by the phrase, "its successors or assigns." WMMSC should not appear as mortgagee unless the policy coverage would be impaired.

## 203.04 Mortgage Insurance

The Servicer must maintain the primary mortgage insurance coverage which was required for each loan at the time it was initially underwritten and approved for sale to the Buyer. However, the Servicer should be aware that due to current pool criteria, required coverage may vary.

Primary mortgage insurance must be obtained from companies maintaining at least a AA rating from Standard and Poor's Corporation. When mortgage insurance is required, the Servicer must ensure the mortgage insurer meets the Buyer's criteria.

If the Servicer does not maintain the required amount of insurance coverage, replacement coverage must be obtained by the Servicer at its own expense to conform with the original requirements. The Servicer must send the Buyer evidence of this replacement coverage.

If an insured adjustable rate mortgage is converted to a fixed rate mortgage, the Servicer must ensure the appropriate mortgage insurance coverage is maintained. The Servicer must notify the mortgage insurer of the conversion of any uninsured loan, must obtain any amendment needed to convert from ARM coverage to fixed rate coverage, and must send this amendment to the Buyer. If cancellation occurs due to Servicer error the Buyer reserves the right to request repurchase of the loan.

## A. Cancellation of Primary Mortgage Insurance

The Buyer will consider cancellation of primary mortgage insurance on a case-by-case basis. Approval is in the sole discretion of the Buyer, is not automatic and will be subject to the applicable State's specific laws and regulations. The following documentation is required:

- Loan history verifying that no payment has been:

  - 30 days or more past due in the last 12 months; and

  - 60 days or more past due in the last 24 months.

  - Copy of the original or current appraisal. Use of current appraisal must be approved by Buyer.

  - If the appraisal is the original, the Servicer will warrant that the current value is at least equal to the appraised value.

  - A new appraisal must be based on an inspection of both the interior and exterior of the Property. Servicer will warrant that it has reviewed the appraisal and is satisfied that the opinion of value is both reasonable and adequately supported by market data.

  - The Servicer may charge the borrower for the cost of a new appraisal.

  - Evidence of seasoning. Evidence of two years of seasoning is required.

## 203.05 Condominium Insurance

Prior to the sale to the Buyer of a loan secured by a unit in a condominium, the Servicer must obtain written evidence that the scope and amount of insurance coverage meets or exceeds all local laws, ordinances and regulations covering condominiums and that, in addition, the following minimum requirements for insurance coverage are satisfied:

## A. Scope of Coverage

A multiperil type of policy is required covering the entire condominium project. The policy must provide, at a minimum, fire and extended coverage and all other coverage in the kinds and amounts commonly required by private institutional mortgage investors for projects

Servicer Guide: Loan Servicing

# Section 203.  Insurance Requirements

similar in construction, location and use. Coverage must be on a replacement cost basis for at least 100% of the insurable value based on a replacement cost.

## B.  Boiler Explosion Insurance

If a steam boiler is operating on the property, boiler explosion insurance must be in force. This insurance must be evidenced by the standard form of boiler and machinery insurance policy and must provide, at a minimum, $100,000, per accident per location.

## C.  Special Flood Hazard Insurance

If the condominium project is in an area identified by the Secretary of Housing and Urban Development as having special flood hazards, a "blanket" policy of flood insurance must be maintained on the condominium project in the amount of the aggregate of the outstanding principal balances of the mortgages on the condominium units, or the maximum limit of coverage available under the National Flood Insurance Act of 1968, as amended, whichever is less.

## D.  Name of Insured

The name of the insured stated under each required policy must be similar in form and substance to the following:

> "Association of Owners of the [Name of Condominium] for use and benefit of the individual owners" (designated by name, if required).

## E.  Mortgagee Clause

Each policy must contain the standard mortgagee clause endorsed to provide that any proceeds will be paid to the Association of Owners of the condominium for the use and benefit of mortgagees as their interest may appear, or otherwise endorsed to fully protect the interest of the Buyer.

When a mortgagee clause is not applicable, a certificate must be obtained by the Servicer. This certificate must contain the information required for certificates which is set forth in Section 203.01 A. The certificate must name the Servicer as the certificate holder instead of mortgagee.

## F.  Fidelity Insurance

The condominium owners association must have fidelity coverage against dishonest acts on the part of directors, managers, trustees, employees or volunteers responsible for handling funds belonging to or administered by the condominium owners association. The fidelity bond or insurance must name the condominium owners' association as the insured. The coverage must equal the maximum amount of funds held by the homeowners'

association at any one time and must total at least three (3) months of assessments on the entire project, plus reserves. An appropriate endorsement to the policy to cover any persons who serve without compensation must be added if the policy would not otherwise cover volunteers.

## G.  Public Liability Insurance

The condominium owners association must have a comprehensive policy of public liability insurance covering all of the common elements, commercial spaces and public ways in the condominium project. The insurance policy must contain a severability of interest endorsement precluding the insurer from denying the claim of a condominium unit owner because of negligent acts of the condominium owners association or other business unit owners. Coverage must include all other coverage in the kinds and amounts required by private institutional mortgage investors for projects similar in construction, location and use. Liability coverage must be for at least $1 million per occurrence for personal injury and/or property damage.

## 203.06    PUD Insurance

Except as provided in the following sections all coverage in the kinds and amounts required for mortgages in this *Servicer Guide* is also required for mortgages secured by Planned Unit Development (PUD) and de minimus PUD units.

## A.  Blanket Insurance Coverage

In lieu of maintaining an individual hazard insurance policy on each PUD unit, the PUD corporation, homeowners' association, or trust may maintain blanket hazard insurance providing, at a minimum, fire and extended coverage and all other coverage in the kinds and amounts commonly required by private institutional mortgage investors for developments similar in construction, location and use. The coverage must be in an amount equal to the full replacement value of all of the PUD units without deduction for depreciation or coinsurance, including the structural portions and fixtures owned by the PUD unit owners. Insurance premiums from any blanket insurance coverage must be a common expense of the PUD corporation, homeowners' association, or trust and be included in the regular common assessments of the PUD unit owners. The coverage must name the PUD corporation, homeowners' association, or trust as the insured for the benefit of the PUD unit owners.

## B.  Common Property Coverage

The PUD corporation, homeowners' association, or trust must have fire and extended coverage for at least 100% of the replacement cost of the insurable PUD common

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 29 of 36

property.  The insurance must name the PUD corporation, homeowners' association, or trust as the insured for the benefit of the PUD unit owners.  No mortgagee clause in favor of the PUD unit mortgagees is required by the Buyer on insurance covering common property.

When a mortgagee clause is not applicable, a certificate of insurance must be obtained by the Servicer.  This certificate must contain the information required for certificates that is set forth in Section 203.01 A.  The certificate must name the Servicer as the certificate holder instead of the mortgagee.

## C.  Fidelity Insurance

The PUD corporation, homeowners' association, or trust must have fidelity insurance covering losses resulting from dishonest or fraudulent acts on the part of the directors, managers, trustees, employees or volunteers responsible for handling funds collected and held for the benefit of the PUD unit owners.  The fidelity bond or insurance must name the PUD corporation, homeowners' association, or trust as the insured.  The coverage must equal the maximum amount of funds held by the homeowners' association at any one time and must total at least three (3) months of assessments on the entire project, plus reserves.  An appropriate endorsement to the policy to cover any persons who serve without compensation must be added if the policy would not otherwise cover volunteers.

*NOTE: This section does not apply to deminimus PUDs.*

## D.  Public Liability Insurance

The PUD corporation, homeowners' association, or trust must have a comprehensive policy of public liability insurance covering all of the PUD common property.  The insurance policy must contain a severability of interest clause or endorsement precluding the insurer from denying the claim of a PUD unit owner because of negligent acts of the PUD corporation, homeowners' association, or trust, or other unit owners.  Coverage must include all other coverage in the kinds and amounts commonly required by private institutional mortgage investors for projects similar in construction, location and use.  Liability coverage must be for at least $1 million per occurrence for personal injury and/or property damage.

## E.  Mortgagee Clause

Each policy must contain the standard mortgagee clause endorsed to provide that any proceeds will be paid to the *[Name of PUD corporation, association, or trust]* for the use and benefit of mortgagees as their interest may appear, or otherwise endorsed to fully protect the interest of the Buyer.

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 30 of 36

# Section 204.  Protecting the Property

It is the Servicer's responsibility to act in the most timely, efficient and responsible manner to safeguard the Buyer's interest in loans being serviced for the Buyer. In addition to promptly paying property taxes to avoid possible tax liens and maintaining adequate insurance to cover damage from hazard losses, the Servicer must:

- Make periodic property inspections to forestall undue deterioration which might result from neglect or vandalism,
- Promptly notify the Buyer and undertake appropriate action to offset the effects of a borrower's bankruptcy, insolvency or death, condemnations or other legal action, and
- Follow any other procedures required to protect the Buyer's rights and the rights of the Buyer's assignees in the mortgage obligation and the mortgaged property.

## 204.01  Inspection of Properties

The Servicer must ensure mortgaged properties are occupied and are being properly maintained.  Under certain circumstances this will require inspection of the property.  The Servicer must certify, at the end of each year that any required inspections were completed in accordance with the guidelines contained herein, and the Servicer must furnish an Officer's Certificate to that effect to the Buyer.  Said Officer's Certificate is to be received by the Buyer within 10 business days of the end of each calendar year.  Property inspection schedules and related procedures are discussed below.

When possible, the Servicer's inspection should include the interior of the property.  All inspections, regardless of purpose, must be documented in a property inspection report or equivalent, and be made part of the individual loan file but need not be forwarded to the Buyer, except as described below.  The costs of property inspections are not reimbursable by the Buyer.

### A. Current Loans

Property securing a current loan should be inspected immediately when the Servicer learns the property may be vacant and/or believes it is necessary to preserve the value of the security or the Buyer's interest in a property may be jeopardized due to negligence or default on the part of a borrower in any of the terms of the loan other than delinquency.

When an inspection indicates repairs are unnecessary, minor, or will not cause deterioration, action need not be taken.   However, if the inspection indicates deterioration is occurring, or repairs of an urgent nature are required to properly restore the property to a habitable condition or to correct a condition which might lower the value of the property, the borrower must be reminded of the obligation to make such repairs.  In addition, when a code violation notice is received, the Servicer should immediately contact the borrower and make arrangements for repairs necessary to fulfill the code requirements.  In either case, the Servicer should document the loan files regarding any contacts with the borrower and any arrangements made.

The Servicer must follow up until the repairs are completed or the borrower's refusal or inability to make the repairs is established.  In the latter case, the Servicer should send the Buyer a property inspection report with pictures and a recommendation.  If emergency repairs are required, the Servicer must make the repairs, subject to the limitations which appear in Section 204.02.

### B. Vacant or Abandoned Properties

Whenever a mortgaged property is found to be vacant or abandoned, the Servicer must:

1. Attempt to locate the borrower and determine the reasons for the abandonment or vacancy.
2. Arrange for the protection of the property from vandalism or damage by the elements, including "winterizing" where necessary.
3. File the appropriate notice with the mortgage insurer, if any, as soon as the Servicer has established, by a thorough investigation, that the property has been abandoned by the borrower.  Full details of the Servicer's investigation and conclusions must be reported immediately on a property inspection report with a recommendation. One option available for delinquent loans when the property has been abandoned may be commencing foreclosure.  Refer to Section 206 for a full discussion on foreclosure methods.
4. Notify the hazard insurance carrier to ensure the proper endorsement is made so that coverage is maintained.

### C. Delinquent Loans

Refer to Section 205.01 C for a discussion of property inspection requirements on delinquent loans.

## 204.02  Advances  for  Emergency Repairs

If an inspection of the property indicates emergency repairs are required, the Servicer is authorized to spend up to $2,500 for each property.  Sums in excess of $2,500 for any property require the Buyer's prior approval.

Case: 10-05245   Doc# 360   Filed: 01/03/14   Entered: 01/07/14 16:02:35   Page 31 of 36

# Section 204.  Protecting the Property

When requesting reimbursement for advances, the Servicer must submit a property inspection report with photos and a Statement of Expenses Form (WMMSC 3001). All invoices and statements must accompany the Statement of Expenses. The Servicer must verify the mortgage insurer approved all advance expenditures before they were incurred whenever such prior approval is required.

## 204.03 Notice of Liens and Other Actions

The Servicer must always diligently act to prevent the attachment of any liens superior to the lien of the mortgage and must promptly notify the Buyer whenever it receives notice or otherwise becomes aware that any such lien is claimed. In addition, the Servicer must also notify the buyer in cases of bankruptcy, condemnation, death, probate proceedings, tax sales, partitions, local ordinance violations, landmark designation proceedings, or other events affecting any borrowers or mortgaged properties.

## 204.04 Partial Releases of Property

Prior approval by the Buyer is required for any partial release of property securing a loan serviced hereunder.

### A. Request for Partial Release

The request for partial release should contain the following:

- Mortgagor's name and address
- WMMSC loan number
- Servicer loan number
- Type of release
- Reason for release
- Any necessary legal documents
- Legal description
- Plat map outlining the section to be released
- Recent appraisal indicating the value of the property before and after the release
- Certified copy of escrow instructions
- Recommendation
- Loan Analysis Form
- Written evidence of the mortgage insurer's approval, if applicable

When a partial release is requested by the borrower, the Servicer must also submit an acceptable residential appraisal report indicating the value of the property before and after the release, a certified copy of the escrow instructions, a recommendation, and an analysis of the loan. The Servicer must also comply with the provisions of the loan.

The Servicer must ensure that the remaining property adequately covers the unpaid principal balance and accrued interest of the mortgaged loan. The Servicer must prepare all required documentation and deliver executed documents to all concerned parties. The Servicer is also responsible for recording any necessary release documents in order to preserve the priority of the lien.

If a partial release involving over $500 is requested by the borrower, the Servicer must also submit an acceptable residential appraisal report indicating the value of the property before and after the release, a certified copy of the escrow instructions and a recommendation. The Servicer must comply with the provisions of the loan.

### B. Use of Proceeds

The Buyer requires the cash consideration paid to be at least equal to the reduction in the value of the mortgaged property. The Servicer must apply any proceeds to the principal in accordance with the terms of the loan and the requirements of the mortgage insurer, if applicable. This applies to both voluntary and involuntary (condemnation, easements, eminent domain, etc.) releases.

The Buyer may permit the Servicer to reimburse the borrower for the cost of obtaining the release from any proceeds and to pay the borrower for any amount by which the proceeds exceed the reduction in the value of the mortgaged property.

The Buyer may permit a partial release without cash consideration if the remaining property will be enhanced in value by the release.

### C. Advice to Tax Assessors

The Servicer should notify the tax collector or assessor of the release of any portion of a property which will subsequently affect the amount of taxes to be levied against a property. If required by local law or practice, the Servicer must obtain the consent of any junior lien holder and confirmation by the title insurer that no loss in the priority of the lien is incurred.

## 204.05 Assignments and Recordations of Mortgages

The Servicer must complete at its own expense all assignments, recordations, or related actions necessary to protect the Buyer's lien priority, to conform to local practice and state law, or to fulfill a request from the Buyer. The Servicer should inform the Buyer of any material changes to these requirements as they occur.

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 32 of 36

# Section 204.  Protecting the Property

## 204.06  Property Address Change

The Servicer's records should indicate any change in property identification, such as streets renamed or renumbered, and the Servicer should obtain any necessary insurance endorsements.

## 204.07  Assumptions, Due-on-Sale

The security instrument must contain a due-on-sale clause. However, an assumption may be allowed for the mortgage if a change in ownership occurs and state or federal law prohibits enforcement of the due-on-sale clause or the loan is an adjustable rate mortgage (ARM) and the transferee meets occupancy and current Buyer credit guidelines. If there is a release of liability, the Servicer must also send the complete credit package to the Buyer, including the mortgage insurer's approval before closing the transaction. In all circumstances, the Servicer may not waive, modify or vary the maturity date, loan interest rate or other terms of a Note/Mortgage on any loan sold to the Buyer without the Buyer's approval.

The Servicer is responsible for determining the assumability of any loan submitted to the Buyer under the individual mortgage program, enforcing any due-on-sale clauses, and determining the creditworthiness of the assumptor/transferee.

In certain situations, the Servicer may not accelerate the maturity of the debt upon transfer of the property when the property is occupied by the mortgagor. Those situations include:

1.  The creation of a lien or other encumbrance subordinate to the security instrument, which does not relate to a transfer of rights of occupancy in the property, provided that such lien or encumbrance is not created pursuant to a contract for deed.

2.  The creation of a purchase-money security interest for household appliances.

3.  A transfer by devise, decent or operation of law upon the death of a joint tenant or tenant by the entirety.

4.  The granting of a leasehold interest on the property with a term of three (3) years or less without an option to purchase.

5.  A transfer in which the transferee occupies, or will occupy the property and that is one of the following:
    - A transfer to a relative, resulting from the mortgagor's death;
    - a transfer wherein a spouse or a child becomes an owner of the property;
    - a transfer resulting from a decree of dissolution of a marriage, a legal separation agreement, or

from an incidental property settlement by which the spouse becomes an owner of the property.

6.  A transfer into an inter vivos trust in which the mortgagor is, and remains, the beneficiary and occupant of the property unless, as a condition precedent to the transfer, the mortgagor refuses to provide the Servicer with reasonable means acceptable to the Servicer by which the Servicer will be assured of timely notice of any subsequent transfer of the beneficial interest or change in occupancy.

The Servicer must evaluate the transferee's credit and financial capacity according to the current underwriting guidelines set forth in this *Servicer Guide*. Once the Servicer has approved the transferee, the Servicer must obtain approval from the mortgage insurer before completing the transfer. It is the Servicer's responsibility to ensure all required endorsements of the insurance policies are properly executed so that coverage remains in effect. The Servicer must also prepare all required documentation and deliver executed documents to all concerned parties. The Servicer is also responsible for recording any assumption/release agreements required in order to preserve the priority of the lien and providing all notices and disclosures required by law or regulation.

The Buyer will not permit a change in the maturity date, interest rate, monthly payment, or if applicable, margin specified in the note upon transfer of a property.

Any fee the Servicer charges in connection with an assumption may not exceed the lesser of its customary assumption fee or the amount allowed under any applicable law or regulation. The Servicer may retain the entire fee.

### A. Fixed Rate Mortgages

Any conventional fixed rate mortgages owned in whole or in part by the Buyer must be accelerated upon the transfer, or prospective transfer, of title to the underlying property if the security instrument has an enforceable due-on-sale clause, except for transfers listed in items 1 through 6 of Section 204.07. When this situation occurs, the Servicer must submit a Foreclosure Recommendation/Individual Delinquency Report (WMMSC 3003) stating the situation and the Servicer's recommendation of acceleration. Upon receiving the Buyer's approval of such acceleration, the Servicer must immediately commence foreclosure action.

If a security instrument does not have a due-on-sale clause, or a security property is located in a window period state and the originating Servicer is subject to window period restrictions, the Buyer will allow a mortgage to be assumed at the original note rate by a creditworthy transferee.

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 33 of 36

## B.  Adjustable Rate Mortgages

Any ARM owned in whole or in part by the Buyer may be assumed subject to the following conditions:

1. The loan has not been converted to a level payment, fixed rate mortgage,
2. The original loan terms and conditions survive the assumption transaction,
3. The Servicer represents and warrants the assumptor/transferee meets all of the credit guidelines used at the time the original loan was sold to the Buyer, and,
4. The Servicer has obtained the Buyer's prior written approval of the assumption when so required by the Buyer for a specific loan or group of loans. This condition may arise if a subsequent investor has additional requirements not specified in the Buyer ARM program. The Buyer will notify the Servicer in writing of any such additional requirements.

Whether or not there is to be a release of liability, the Servicer must send the complete credit package and must receive the Buyer's approval before closing. The package should be reviewed and approved by the Servicer and the insuring agent before it is submitted to the Buyer. The Buyer will review the assumption package and notify the Servicer with the Buyer's approval/denial within five business days of receipt of the package.

## C.  FHA/VA Mortgages

Any FHA or VA mortgage owned in whole or in part by the Buyer may be assumed provided the Federal Housing Administration or Veterans Administration approves of such transfer and the appropriate guaranty or insurance is maintained.

The Servicer must comply with the appropriate agency's application and notification requirements and may charge fees for the assumption as indicated by that agency's regulations. The Servicer may retain the entire fee, unless otherwise indicated by government regulations. The Servicer may not, however, change the interest rate, except as required in the original mortgage note of an ARM.

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 34 of
36

# Section 205. Delinquencies

## 205.01 Servicing Delinquencies

The Servicer's personnel must be sufficiently skilled in financial counseling and loan servicing techniques to assist borrowers in bringing their loans current and protecting their equity and credit rating while protecting the interests of the Buyer. The purpose of all collection efforts is to bring the account current in the shortest period of time. Discussions with the borrower should include a determination of the cause of the delinquency and an attempt to obtain a definite commitment from the borrower to bring the account current. If the account cannot be brought current immediately and the borrower's circumstances and past record justify it, the Servicer should attempt to cure the delinquency as quickly as possible by employing the relief provisions discussed in Section 205.02. The Buyer requires that the Servicer adhere to industry standards as identified by Fannie Mae Servicer Guidelines. To the extent an issue relative to delinquency, foreclosure, bankruptcy, loss mitigation or REO servicing is not specifically addressed within this *Servicer Guide*, the matter should be addressed according to the directive(s) associated with the applicable Fannie Mae guidelines.

The Servicer should treat each delinquency individually. The collection effort should be based on the Servicer's knowledge of the borrower's credit history, employment situation, individual circumstances, property and the extent of the delinquency. The Servicer is expected to use notices, letters, telegrams, telephone calls, face-to-face contact, and other responsible collection techniques employed by prudent loan servicers. The Servicer is encouraged to vary its collection techniques to fit the individual circumstances and to avoid establishing a fixed routine which may be ineffective for dealing with borrowers who are repeatedly delinquent. The Servicer should recognize that efficient servicing of a delinquent mortgage primarily depends on personal contact, both on the telephone and face-to-face, with the borrower. Form letters and notices, while having a place in any servicing program, generally are not as effective as personal contact and should not be used exclusively.

The following is an example of an adequate servicing program during the first 45 days of delinquency:

1. Identification of a delinquent loan should be made by the 15th day of delinquency.
2. A late notice should be mailed between the 16th and 18th day of delinquency.
3. Attempts to contact the borrower by telephone should commence by the 20th day of delinquency.
4. If satisfactory arrangements to bring the account current have not been made by approximately the 45th day of delinquency, a face-to-face interview with the borrower should be conducted.

5. If satisfactory response is not obtained, the Servicer should continue to follow up with notices, letters, telephone contacts, face-to-face interviews, etc., until the loan has been brought current or the Servicer determines that a notification of foreclosure action, short sale, deed-in-lieu of foreclosure, or other loss mitigation action is deemed appropriate to resolve the delinquency. The Servicer must ensure that attorney referral to initiate foreclosure action be made no later than the 120th day of delinquency, or sooner if required by the mortgage insurer. All appropriate and breach letters must be sent prior to submitting the recommendation.

The Servicer must maintain delinquency rates on the Buyer loans at a level below or comparable with the industry norm for loans of the same type in the same geographic area. Excessive Delinquency Notification Letters are issued to Servicers whose overall delinquency performance fails to compare satisfactorily with the industry norm. Servicers are required to review and respond with a complete explanation for the excessive delinquency ratio, and provide an outline of the business strategy they have adopted to achieve an acceptable percentage. Said response must be received within 10 business days of the date of the letter.

The following sections present detailed servicing requirements for dealing with delinquencies on loans in which the Buyer has an interest. The Servicer is encouraged to employ its own collection procedures to best meet these servicing requirements. These procedures must be adequate and efficient for dealing promptly with delinquencies.

### A. New Borrowers

Particular attention should be paid to delinquency on the part of a new borrower. During the first few months of payment, the account should be monitored to assure the development of good paying habits. The reasons for delinquency by a new borrower vary and may include the borrower's misunderstanding of payment requirements. The Servicer should make personal contact with a new borrower by the tenth day of delinquency to determine the cause of the delinquency and to emphasize the importance of payment on or before the due date.

### B. Monthly Servicer Delinquency, Foreclosure, Bankruptcy and REO Reporting

For each loan which is 90 or more days delinquent that has not been liquidated, the Servicer must fully document and submit all collection activities, reasons for nonpayment, actions being taken to cure the default, property inspection results, and all bankruptcy, loss mitigation, foreclosure and REO activity in an electronic

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 35 of 36

report format. The data contained within the report should be inclusive of, but not limited to, the following information: reason for delinquency, repayment plan information, date of attorney referral, loss mitigation type and status, date of the first legal action, date of judgment entered, date of publication, estimated date of foreclosure sale, actual date of foreclosure sale, confirmed sale date, occupancy status, date of most recent property inspection, condition of property, eviction status, bankruptcy chapter and status, updated appraised value, date of updated appraised value, brokers price opinion value, date of brokers price opinion, list price amount, list price date, list price expiration date, and required repairs, offer date, offer amount, estimated date of closing, actual date of closing, and estimated loss.

When a borrower is chronically delinquent and the Servicer has exhausted all reasonable means of inducing the borrower to pay on time and all loss mitigation efforts have failed, the Servicer must notify the Buyer of the commencement of foreclosure action. The notification of said action must be submitted to the Buyer in electronic format and include the foreclosure referral date, reason for default, occupancy status, condition of property, date of last property inspection and most current broker's price opinion if available.. Refer to Section 206 for a full discussion of foreclosure methods.

## C. Servicer Penalty Assessments

In the event of the assessment of default servicing related penalties to the Servicer as identified in this Section 205, or in any of Sections 206, 207, and 305 the Buyer shall issue correspondence to said Servicer detailing the reason for the penalty and dollar amount assessed. If the Servicer elects to appeal all or a portion of the penalty assessed, the Servicer must submit a written response to the Buyer to be received within seven business days of the date of the Buyer's correspondence detailing the reason for the appeal, the amount being appealed, and the facts supporting the Servicer's position. In addition, the Servicer must submit all applicable material evidence such as system documentation, related documents/correspondence and other information as required for the Buyer's review and determination. The Buyer shall issue a final determination in response to the Servicer within 10 business days from the date of receipt of the Servicer's letter of appeal. Said report must be received by the Buyer no later than the 5th business day of each month and must represent the status of each loan as of the previous month's close of business. After receipt of the monthly report from the Servicer, the Buyer will contact the Servicer via email with any missing delinquency information. For loans in a delinquency, foreclosure, bankruptcy and REO status,

these requests require review and response by the Servicer. The Servicer's detailed response to each loan in question must be received within 2 business days. Failure to comply with the specified time frames identified for either of these required submissions will subject the Servicer to a penalty assessment as provided for in Section 305.

## D. Property Inspections

The Buyer must be notified of the property inspection and condition via the Monthly Delinquency Report for all loans 90 or more days delinquent. From then on, the Servicer must send monthly updates via report on Property Inspection necessary to protect the Buyer's interest or upon Buyer's request. For a property located in an area with a high incidence of vandalism and neglect, the Servicer should conduct subsequent inspections at least once every 30 days until the delinquency is cured or the loan liquidated.

At the initial inspection, the Servicer should attempt a face-to-face interview with the borrower to establish:

- The reason for delinquency
- Whether the reason is temporary or permanent in nature
- The attitude of the borrower toward the debt
- The length of time necessary to cure the default

If a borrower has been granted relief provisions for curing a delinquency, property inspections should be made on a frequent and continuing basis during the period of relief. If an inspection reveals repairs are necessary, the Servicer should advance the required funds according to guidelines in Section 204.02. The borrower's relief plan may be modified to spread the repayment of the advance over the period covered by the plan, if the borrower is financially able to assure the additional monthly obligation immediately, or to call for the repayment of the advance at the end of the relief period.

## E. Abandonment

The Servicer should attempt to locate the borrower and ascertain the reasons for abandonment. The Servicer must take all actions necessary to protect the property from waste, damage, and vandalism. The Servicer must report the full results of the investigation immediately and make a recommendation regarding the action which should be taken. The Servicer must also notify the hazard insurance carrier of the vacancy so the proper policy amendment may be made to ensure coverage. The Servicer shall provide notification to the Buyer via monthly report.

Servicer Guide: Loan Servicing

Case: 10-05245    Doc# 360    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 36 of 36