# Section 205. Delinquencies

## F. Mortgage Insurance Requirements

The Servicer should be familiar with and satisfy all applicable requirements of the mortgage insurer. The Servicer is expected to have adequate controls to assure timely filing of all notices to the mortgage insurer. Copies of routine notices sent to the mortgage insurer or the borrower need not be sent to the Buyer unless specifically requested. Copies of the Notice of Delinquency must be sent to the Buyer with the Foreclosure Recommendation/Individual Delinquency Report.

If the primary mortgage insurance policy was issued by PMI Mortgage Insurance Co., the Servicer must inform PMI when the loan first becomes delinquent that the policy covers a loan purchased by the Buyer.

If any of the Servicer's actions cause invalidation of a claim, the Servicer will be responsible for the loss, including any primary and pool insurance claims which may be denied. In the alternative, the Servicer may be required to repurchase the loan. If a loan is covered by a pool insurance policy, the Buyer will be responsible for the filing of any claim.

## G. Use of Temporary Buydown Funds

Any funds remaining in the buydown account of a loan in foreclosure must be disposed of according to the terms of the buydown agreement. The funds may not be used to reinstate the loan or cure any default of the borrower on which the foreclosure proceedings are based.

## 205.02   Borrower Relief Options

The Buyer grants Servicers discretion to extend appropriate relief to borrowers who encounter hardship, but are cooperative and have proper regard for their obligations. The Servicer must be readily available to the borrower to offer skilled financial counseling and advice. The Servicer should make personal contact with a delinquent borrower as often as necessary to achieve a solution which will bring the loan current as quickly as possible. The Servicer must be familiar with all the forms of relief discussed in this section and will employ such relief whenever appropriate, rather than recommending termination of the loan. However, no such relief should be granted to any borrower unless there is a reasonable expectation that the relief granted will result in bringing the loan current and maintaining it in a current status.

Before granting relief, the Servicer should inspect the property and ascertain the reason for the default and that the attitude and circumstances of the borrower justify the relief action contemplated. The Servicer is responsible for satisfying all applicable mortgage insurance requirements and obtaining all necessary approvals with respect to the relief granted. The Servicer is responsible for collecting any recording or similar costs incidental to the granting of relief from the borrower. When relief is appropriate, the Servicer should determine whether the relief should be one of the following:

- A liquidating plan giving the borrower a definite period in which to reinstate the loan by immediately commencing payments in excess of the regular monthly installment.
- A special forbearance relief agreement reducing or suspending the regular monthly installments for a specified period of time.
- A military indulgence.

## A.   Liquidating Plan

If appropriate, the Servicer is authorized to enter into a liquidating plan to repay the total delinquency within the shortest time possible. The repayment period must not exceed 12 months from the date of execution of the plan without the Buyer's approval. If the Servicer wishes to enter into a liquidating plan in which the repayment period exceeds 12 months, the Buyer must approve the plan in advance and the plan must be set forth in writing (with specific amounts and dates, including the year for the repayment plan) and must be signed by the Servicer and the borrower. The Servicer must report the terms of any liquidating plan (with specific amounts and dates, including the year for the repayment plan) to the Buyer and send the Buyer a signed copy.

## B.   Special Forbearance Relief Agreement

A special forbearance relief agreement is a written agreement to reduce or suspend regular mortgage payments for a forbearance period of up to 12 months. These agreements are rare and usually reserved for situations beyond the borrower's control, such as, an uninsured medical problem. At the conclusion of this special forbearance relief period, regular mortgage payments must be resumed and satisfactory arrangements made to repay the amount suspended.

The Buyer must approve any special forbearance relief agreement in advance. The Servicer must also obtain any necessary approval from the mortgage insurer before executing such an agreement. After approval of the terms, the Servicer must prepare the agreement; have it executed by all parties and forward copies of the completed agreement to all concerned.

If the borrower fails to satisfy the terms of the special forbearance relief agreement, the Servicer must immediately recommend one of the following to the Buyer:

- A new forbearance agreement, provided the aggregate forbearance period does not exceed 12 months, or

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 1 of 35

# Section 205. Delinquencies

- Foreclosure or, preferably, acceptance of a deed-in-lieu of foreclosure.

Approval of a special forbearance plan by the Buyer does not relieve the Servicer from continuing to remit scheduled principal and interest payments.

## C. Military Indulgence

For purpose of this section, a Borrower claiming entitlement to military relief is referred to as a "servicemember". A servicemember serving on active military service, or a Reservist or National Guardsman called to active military service may be entitled to benefits under the Servicemembers Civil Relief Act of 1940, as amended (the "Act"), and/or various State relief statutes which may entitle the servicemember to certain benefits. The Servicer must be familiar with all requirements of the Act and any State statues and ensure they comply with all requirements. The Act covers the following servicemembers:

1. Career members of the United States Navy, Marine Corps, Army, Air Force, or Coast Guard.
2. Members of a reserve component of the armed services volunteering for or called to active service.
3. Members of the National Guard volunteering for or called to active service.

Compulsory or Annual Training that Reservists are required to undergo periodically to maintain membership in the reserve components of the armed services or the National Guard is not considered active service for military relief purposes:

1. **Interest Rate Cap:** The Act caps interest at six (6%) percent per year on a servicemember's Mortgage obligations. Escrows for insurance, property taxes and other assessments are not affected and must be paid in accordance with contractual terms. The difference between the contractual rate of interest and six (6%) percent is forgiven, not deferred.

2. **Eligible Mortgages:**

   a) The Mortgage must be the contractual obligation of the servicemember as Borrower or co-Borrower under the Note or as obligor under a written agreement by which the servicemember assumes the Borrower's liability under the Note and the Borrower is released from such liability.

   b) The servicemember must have executed the Note or the assumption agreement before the reporting date or effective date of the servicemember's active service as shown in the military orders.

3 **Request Submission:** The rate cap request may be made by the servicemember or a representative, such as:

- The spouse of the servicemember
- The co-Borrower of the servicemember
- An attorney of the servicemember
- Any person authorized to act on behalf of the servicemember by power of attorney *that the Servicer has duly verified. A copy of the power of attorney must be maintained in the Mortgage file.*

The servicemember or a representative must submit a written request and copies of the military orders for the entire time period for which the interest rate cap is requested. If the requestor is other than the servicemember, the requestor's identity and contact address must be established and maintained in the Mortgage file.

The Servicer is authorized to grant all appropriate relief to which an eligible borrower is entitled under the Act and any applicable State relief statutes, but the terms of such relief and related information should be promptly reported to the Buyer within three (3) business days of receipt by the Servicer. If interest rate reduction is required, the Servicer must notify the Buyer thereof by submitting to Buyer a written notice detailing the relevant facts, together with (a) the written request from the servicemembers or the servicemember's representative, and (b) a copy of the servicemember's orders calling him/her to active duty. The Servicer will be required to remit to the Buyer at the original interest rate and P&I and the Servicer will be reimbursed the difference of the original interest rate and the reduced interest rate on a monthly basis. The Servicer will apply all P&I payments in accordance with the following calculation method, WMMSC will only reimburse Servicers if the following calculation method is used:

## Example of the Act Monthly Interest Rate Differential Credit

This example illustrates the calculation of Servicer monthly interest rate differential credit for a Borrower's payment that was reported by Servicer in January, 2011.

### Example Loan Level Detail

| | |
|---|---|
| Unpaid Principal Balance (UPB) of a 30 year Mortgage (as of 01/2011 cycle): | $50,000 |
| Original Rate: | 10.375% |
| Adjusted Interest Rate under the Act: | 6.000% |
| Loan Status | Active |
| Monthly remittance (draft) cycle: | 20th of the month |
| P&I | $452.70 |

Servicer Guide: Loan Servicing

# Section 205.  Delinquencies

<u>Calculation</u>

1. Interest at original rate = UPB X Original Rate / 12

   $= \$50,000 \text{ X } 10.375\% / 12 = 432.29$

2. Principal applied to loan = P&I − Interest at Original Rate

   $= \$452.70 − 432.29 = \$20.41$

3. Interest at the Act Rate = UPB X Act Rate / 12

   $= \$50,000 \text{ X } 6\% / 12 = \$250$

4. Amount due to servicer (Interest Subsidy) − Interest at Original Rate − Interest at the Act Rate

   $= \$432.29 − 250 = \$182.29$

For this Example, Servicer would receive a wire in the amount of $182.29 from the Buyer.

If the servicemember's active military service exceeds the timeframe outlined in the original orders provided by the Servicer, the Servicer shall request a copy of the new orders and shall provide them to the Buyer. Reimbursement will be made for only that portion of time the servicemember is recalled to active duty and is supported by the servicemember's military orders. The Servicer should contact the borrower at least semi-annually during the period of active military service to determine the borrower's current status and the anticipated duration of military service.

## D. Forbearance, Relief from Foreclosure

Under the Act or State statutes, servicemembers who are serving or have served on active duty may be entitled to additional and varied forms of protection from creditors' enforcement of contractual terms.

Such protection is usually based on hardship caused by military service and may remain in effect even after a protected servicemember is released from active duty. A court order may be required to activate such protection or to deny it. This protection may include:

1. Deferral and/or restructuring of payments
2. Restrictions on foreclosure action
3. Extension of redemption periods for completed foreclosures

The Servicer must be familiar with applicable law as it relates to the particular circumstances of a servicemember.

If foreclosure is allowed to proceed and Mortgage Insurance claim is eventually filed, you must notify the mortgage insurer (MI) that the Mortgage was subject to military relief so that:

1. Interest for the Act-capped payments due but unpaid by the servicemember is claimable at the Note rate, not at the Act-capped rate.
2. Claimable interest will not be curtailed by the (MI) for a delay which was caused solely

by the Servicer's compliance with the applicable military relief law.

**Late Charges:** All late charges resulting from Mortgage payments deferred, restructured or rate-capped under the Act or applicable State law must be waived.

**Credit Reporting:** All servicemembers who are receiving protection under the Act or applicable state law must be reported as "paying as agreed" to the credit repositories.

**Documentation:** All communications, correspondence, and documentation to or from servicemembers seeking Mortgage relief for hardship caused by active service must be maintained.

**Transfers of Servicing:** When a Transfer of Servicing to a Special Servicer includes Mortgages whose interest rates are capped under the Act, the Transferor must identify each such Mortgage to the Transferee before transferring the Mortgage files to the Transferee.

## 205.03  Advancing Responsibility

The Servicer is obligated to advance its own funds for the loans serviced on the Buyer's behalf. Such advances are intended to provide a regular flow of funds on the loans and to protect the value of the loan and the underlying property. If an advance for principal and interest or for approved expenses cannot be recovered from related borrower payment, liquidation or insurance payments, the Buyer will reimburse the Servicer, ensuring that such advances do not become expenses to the Servicer. It is the Servicer's responsibility to continue to advance its own funds until the loan is fully liquidated by payment-in-full, foreclosure sale to a third party or the REO disposition sale.

## 205.04  Servicing Bankrupt Accounts

The Servicer must treat all loans of bankrupt borrowers it services for the Buyer in the same manner it treats loans that it owns, unless otherwise indicated in this section. The Servicer must always comply with the terms and conditions set forth by the mortgage insurer. The Servicer should act with the advice of legal counsel with a thorough knowledge of bankruptcy law.

The Servicer must complete and forward a claim on each bankruptcy within the time limitation placed by the bankruptcy court and in the manner normal for the district in which the bankruptcy is filed.

If the borrower wishes to reconfirm the debt, the Servicer must proceed with this action immediately and may do so without the Buyer's prior approval. The Servicer must obtain the Buyer's approval before refusing to reaffirm a debt for any loan which the Buyer owns in whole or in part.

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 3 of 35

# Section 205.  Delinquencies

If any loan involved in a bankruptcy becomes delinquent, the Servicer must report the delinquency and bankruptcy information as provided in Section 205.01 B.

The following information should be included in the report: case number, date of filing, confirmation hearing date, 1st meeting of the creditors, confirmation of the plan, pre and post petition due dates, motion for relief filed, consent order enters, bk type, and discharge/dismissal date. If the loan is not delinquent and does not become delinquent during the term of the bankruptcy, it is not necessary to notify the Buyer of the bankruptcy filing unless some situation occurs which might place the Buyer's interest in the property in jeopardy.

## A.  Chapter 7 and Chapter 11

If a borrower files for bankruptcy under Chapter 7 or Chapter 11 of the Bankruptcy Reform Act of 1978, Title 11 of the United States Code, and the loan becomes two months delinquent, the Servicer must forward correspondence to the attorney, or to the bankruptcy trustee if there is no attorney involved in the case, demanding that the loan be brought to a current status and maintained on a monthly basis. The Servicer must make a drive-by inspection of the property to verify occupancy at this time and every month thereafter until the loan is again current. If no acceptable action or arrangement occurs in the 30 days following the demand letter and the loan becomes three months delinquent, the Servicer must immediately seek relief from the automatic stay and reporting must occur as provided in Section 205.01B.

Once the stay is lifted on the Chapter 7 or Chapter 11 bankruptcy, the Servicer must comply with all state and local laws and regulations, and insuring and guaranty agency regulations before commencing foreclosure. The Servicer must immediately forward a letter to the borrower's attorney or to the bankruptcy trustee, if there is no attorney involved in the case, demanding that the loan be brought current immediately and maintained current. Upon obtaining relief from the automatic stay from the bankruptcy court, the Servicer must initiate or continue with foreclosure action and property disposition as provided in Sections 206 and 207 within sixty days of the filing of the order to lift the stay. The Servicer must continue to report the status of the loan as provided in Section 205.01B.

If the borrower files under Chapter 7 or Chapter 11 when the loan is already 60 or more days delinquent or in foreclosure status, the Servicer must cease all collection or foreclosure activity immediately. If the loan is 60 days or more delinquent, but not in foreclosure, the Servicer must immediately forward a letter to the borrower's attorney or to the bankruptcy trustee if there is no attorney involved in the case, requesting that the loan be brought current immediately. A drive-by inspection of the property should be conducted immediately and every month thereafter.

If no acceptable arrangement or action occurs within 30 days of the demand letter, the Servicer must immediately seek relief from the automatic stay. If the loan is in foreclosure at the time of filing of the bankruptcy action, the Servicer must immediately seek relief from the automatic stay and must report the status of the loan as provided in Section 205.01B. If the loan is not in foreclosure status at the time of the filing of the bankruptcy action, the Servicer must submit a completed Foreclosure Recommendation/Individual Delinquency Report (WMMSC 3003) for notification purposes.

## B.  Chapter 13

If a borrower files bankruptcy under Chapter 13, the Servicer must review the repayment plan and must reject the plan if the Servicer can substantiate that the plan is not reasonable. If the Servicer determines the bankruptcy repayment plan is unreasonable, counsel retained by the Servicer should file an objection to the plan. If the plan is reasonable, the Servicer must approve the repayment plan.

If the loan becomes two months delinquent outside of the plan or the borrower fails to make payments as agreed within the plan, the Servicer must forward correspondence to the borrower's attorney, or to the bankruptcy trustee requesting the loan be brought to current status under the Chapter 13 repayment plan and maintained there throughout the term of the plan. The Servicer must make a drive-by inspection of the property to verify occupancy at this time and every month thereafter until the loan is brought to a current status under the plan. Refer to Section 205.01 for further details. If no acceptable action or arrangement occurs in the 30 days following the demand letter, the Servicer must immediately seek relief from the automatic stay. Each month, the Servicer must report its actions on the Monthly Delinquency Report provided in Section 205.01 B.

Once the stay is lifted on the Chapter 13 bankruptcy, the Servicer must comply with all state, local, and insuring and guaranty agency regulations before commencing foreclosure. Upon obtaining relief from the automatic stay through the applicable court action, the Servicer must initiate or continue with foreclosure action and property disposition as provided in Section 206 and 207 within sixty days of the filing of the order. If the loan is in a foreclosure status at the time of the filing of the bankruptcy action, the Servicer must continue to report the status of the loan as provided in Section 205.01B. If the loan is not in a foreclosure status at the time of filing of the bankruptcy action, the Servicer should send the required breach letters to the mortgagor and refer to the

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 4 of 35

attorney for Foreclosure action once the demand expires. Servicer should notify Buyer with referral date information. Refer to Section 205.01B for further details.

If the loan is in foreclosure, the Servicer must report the status of the loan as provided in Section 205.01B.

## C.  Compliance with Laws and Regulations

In all cases where a bankruptcy is involved, the Servicer shall comply with all state, local, and insuring and guaranty agency regulations, as well as with all laws set forth under the existing bankruptcy code and any revisions thereto.  Should the Servicer have any difficulty in adhering to these regulations and laws, as well as to the servicing requirements set forth above, the Servicer must contact the Buyer.

## 205.05  Adjustable  Rate  Mortgage Delinquencies

It is the Servicer's responsibility to enforce each ARM according to its terms.  This includes making accurate changes to the interest rate, the monthly payment amount and communicating these changes to the borrower regardless of delinquency status.  If the Servicer fails to make either timely or accurate interest rate or payment changes, the Servicer must use its own funds to satisfy any shortage until the next scheduled change date.  The amounts advanced must reflect any changes in the interest rate and monthly payment amount.  Any overage must be returned to the borrower.

If an ARM is delinquent, in foreclosure or in REO status and is scheduled for an interest rate change or payment change, the Servicer must track any change on its accounting records and report this information to the Buyer on the ARM Adjustments Report (WMMSC 4013).  The Servicer must notify the borrower of any payment change according to the terms of the Note even when the loan is delinquent or in foreclosure, following the same procedures as for a current loan.  However, if the loan is in REO status, no such notification is required.

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 5 of 35

# Section 206.  Foreclosure

## 206.01  Servicer's Notifications

Notification of the foreclosure referral date should be submitted to the Buyer electronically. The notification of said action must be in electronic format and include the foreclosure referral date, reason for default, occupancy status, condition of property, date of last property inspection and most current broker's price opinion if available. If collection and loss mitigation efforts have exhausted, the servicer should ensure the initiation of foreclosure action occur no later than the 120th day of delinquency. The Servicer must also submit all notices promptly to the primary mortgage insurer as required. A copy of the notice need not be sent to the Buyer but should be made part of the foreclosure records. Failure to initiate and/or complete the foreclosure action in accordance with the time frame specified in Section 205.01 will result in a per diem interest penalty assessment at the note rate.

During the time that the loan remains in a foreclosure status, the Servicer must provide monthly updates of information as provided in Section 205.01B.

## A.  Assignment to the Mortgage Insurer

A Servicer may not make arrangements for the assignment of a delinquent loan to the mortgage insurer without the Buyer's prior approval. If an assignment is approved, the Servicer will complete the transaction and file the claim. If the insurer declines the assignment of a delinquent loan, the Servicer must request the Buyer's approval before taking any alternative action.

## B.  Deed-In-Lieu of Foreclosure

A deed-in-lieu of foreclosure is usually preferred to foreclosure. If the borrower is willing to execute a voluntary deed-in-lieu of foreclosure, the Servicer should recommend acceptance by the Buyer if the Servicer determines:

- Such action is in the Buyer's best interest.
- Full benefits of any mortgage insurance will be received.
- Marketable title, free from any liens, will be obtained.
- The property will be vacant at the time of conveyance.

The following documentation is required when requesting the Buyer's approval of the acceptance of a deed-in-lieu of foreclosure:

1. Hardship letter
2. Loss Analysis sheet showing benefit of approving deed in lieu versus foreclosure sale
3. Broker's price opinion

4. Primary mortgage insurer's approval, if applicable

Upon receipt of the Buyer's written approval, the Servicer or the Servicer's counsel should prepare any documents necessary to process the deed-in-lieu of foreclosure, following Fannie Mae guidelines to ensure reimbursement of the attorney's fees and costs. The Servicer must arrange for conveyance of the property. The borrower must agree to assign and transfer to the Buyer all rents due and to become due. In general, the Servicer should not take title to the mortgaged property until it is vacant. If hardship exists, the Servicer may take title provided the date of possession is agreed upon in advance.

The Servicer must email the buyer once the conveyance documents have been sent for recording. Title should be conveyed directly from the borrower to the Buyer's assignee.

## C.  Preforeclosure Sale

The Servicer should pursue a preforeclosure sale when a borrower is required to sell his or her home in time of financial hardship, and if it is foreseen that it will be difficult to sell, as the current market value is less than the amount required to satisfy the loan and any sales costs.

The Servicer is responsible to inform the borrower that they are required to maintain the property until it is sold. The Buyer may require the borrower to contribute funds if the sale proceeds do not satisfy the loan. Any escrow funds will not be reimbursed to the mortgagor.

The following documentation must be submitted to the Buyer **prior** to any preforeclosure sale:

- Copy of primary mortgage insurer's approval, if applicable
- Interior broker's price opinion or appraisal
- Loss Analysis sheet showing benefit of approving short sale offer versus REO sale.
- Estimated HUD-1 settlement statement

The following documentation must be submitted to the Buyer **after** the preforeclosure sale:

- Copy of proceeds check or wire confirmation
- Copy of HUD-I settlement statement
- Copy of primary claim, if applicable
- Copy of explanation of benefits form once MI has settled

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 6 of 35

## D. Modifications

The loan modification process is to provide struggling Borrower's who have demonstrated a willingness and ability to repay, with an opportunity to change the original terms of their loan based on a demonstrated need to achieve an affordable and sustainable payment. Affordability may be achieved through the capitalization of the arrearage, interest rate reduction, step rate or an amortization terms extensions creating a balloon when the loan reaches its maturity date.

The Servicer needs to complete the WMMSC Modification Request (WMMSC 4020). The form needs to be filled out in its entirety in order for WMMSC to provide a decision. The form should be submitted to wmmsc.default@chase.com for review. The broker's price opinion must be submitted within 90 days of the date the request is being submitted.

Please be advised that not all modifications are allowed. Some pooling and servicing agreements (PSAs) have restrictions and conditions limiting what can be done for a loan in the deal. If you are unsure of what you can offer to the borrower, you may email wmmsc.default@chase.com to see if there are any restrictions the loan may have.

WMMSC verifies the proposed modification terms requested from the servicer complies with the investor guidelines.

## 206.02    Institution of Foreclosure

Acceleration of the maturity of a loan must be accomplished in accordance with the terms of the mortgage instrument and applicable law. The Buyer must be provided with written notification of all foreclosure actions as provided in Section 206.01. The Servicer should not recommend foreclosure until every reasonable effort has been made to cure the delinquency, as discussed above. Once the Servicer determines no other course of action will cure the default, the Servicer should promptly refer the file to the attorney to commence foreclosure which should be done no later than the 120th day of the delinquency. The Servicer should actively continue all efforts to cure the default and mitigate losses to the Buyer until the Servicer can no longer legally do so under the terms of the mortgage instruments and federal, state or other applicable governing law or agency requirements. The Servicer should prepare and forward with the foreclosure notification any necessary papers for the Buyer's execution and, when appropriate should ask the Buyer to return the security instrument. If the security instrument is sent to the Servicer, the Servicer will hold it on behalf

of, and for the benefit of, the Buyer and its successors and assigns, and must ensure its safe storage and return it to the Buyer promptly when foreclosure is discontinued. The Buyer's execution of any document submitted by the Servicer does not imply that the Buyer has reviewed such document for legal compliance. The Servicer maintains this responsibility.

On a FHA/VA reconveyance, the Servicer is responsible for preparing the necessary documents and forwarding them to the Buyer for execution. This should take place no later than two weeks prior to the expected foreclosure sale date. The Servicer shall monitor the foreclosure process to ensure that no unnecessary delays occur.

The Servicer will be assessed a per diem interest penalty at the note rate for any late foreclosure referral and for any unnecessary or unsupported delays in the foreclosure process.

## A. Foreclosure Processing

The Servicer should take appropriate action during the foreclosure process to protect the property. The Servicer must obtain the Buyer's approval in advance for any expenditure to protect the property which exceeds $2,500. In any situation where delaying protection action might result in impairment of the property, the Servicer should call the Buyer for approval of any expenditure in excess of $2,500. The Buyer will send the Servicer a confirmation of the cost and nature of the protective action approved.

The Servicer should retain the borrower's escrow funds and all other unapplied funds. The Servicer should obtain bills for, and pay all expenses due under the loan, including taxes, special assessments, ground rents, and other charges which are or may become first liens upon the property as well as hazard and mortgage insurance premiums. If the borrower's escrow funds are insufficient to pay these items as they become due during the foreclosure, the Servicer must advance funds for the payment of such expenses to protect the Buyer's interest. Reimbursement for all approved expenses may be requested on the Statement of Expenses (WMMSC 3001) at the time of final property disposition.

- The Servicer must inspect the property at least once a month and more frequently when circumstances warrant.

Notifications of sale results are required within 24 hours after the sale.

## B. Attorney's/Trustee's Fees

Servicer should adhere to FNMA guidelines for foreclosure fees and costs allowed. Any exceptions require the Buyer's approval

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 7 of 35

# Section 206. Foreclosure

All fees discussed in this section are to be paid by the Servicer and will be reimbursed by the Buyer after the final settlement of the sale of the property and all insurance claim proceeds have been paid. If foreclosure proceedings are discontinued, all fees and costs incurred are to be collected from the borrower unless prohibited by law. In jurisdictions where the collection of attorney's fees or costs from the borrower is prohibited, the Buyer will share such expenses with the Servicer in proportion to the Buyer's interest in the loan.

In deed-of-trust jurisdictions, it is the Servicer's responsibility to ensure a proper individual or entity, free from any conflict of interest, serves as trustee or substitute trustee. The Buyer may select the foreclosure counsel or request substitution of a trustee to whom the case is to be referred. The Servicer is expected to work closely with the foreclosure counsel, trustee, or substitute trustee to ensure prompt and efficient completion of the foreclosure proceedings.

## C. Offer of Payment During Foreclosure

If the borrower offers payment of the full delinquency during foreclosure, including advances, legal costs, and other foreclosure expenses, the Servicer should determine the total amount of all foreclosure costs and expenses which will be incurred if the offer is accepted. Such an offer may be accepted by the Servicer if the payment offered will cover all costs and expenses. No offer of full payment may be declined without the Buyer's approval.

If the offer is accepted, after receiving the funds the Servicer must take action to prevent additional foreclosure expenses from being incurred, pay the foreclosure expenses, and apply the remaining funds to the borrower's account and return the debt instrument to the Trustee by certified mail

If the borrower offers to pay an amount less than the full delinquency during foreclosure, the Servicer should determine the total amount of foreclosure costs and expenses which would be incurred if the offer were accepted. The Servicer may decline without requesting the Buyer's approval, but must obtain the Buyer's approval before accepting. The Servicer's recommendation should include an opinion regarding whether the foreclosure action should be suspended or dismissed and how the remaining delinquency will be cured.

## D. Bidding Instructions

The Servicer must issue bidding instructions to its employee, agent, or the attorney attending the foreclosure sale unless the Buyer directs otherwise.

The Servicer must comply with all bidding instructions and requirements of the mortgage insurer, when applicable. The Buyer does not need to approve the maximum bid price if it will recover the total indebtedness, including expenses and costs, or if it is the maximum amount permitted by applicable law. If the mortgagor has substantial assets or earning power and state law allows collection of deficiency amounts, the Servicer must preserve the Buyer's rights to pursue collection and recovery of a deficiency. The Servicer must obtain the Buyer's prior approval of a maximum bid which is insufficient to recover the total indebtedness. If the Buyer's approval of a maximum bid is required, the request for approval must be accompanied by an estimated market value of the property in an "as is" condition at least 14 days prior to the actual foreclosure sale date.

## E. Third Party Acquisitions

If the property is disposed of in a third party transaction at the foreclosure sale, all reasonable expenses advanced by the Servicer during the foreclosure process and approved in writing by the Buyer will be netted against the foreclosure sale proceeds. The Buyer's portion of the proceeds will then be transferred to the Buyer.

## 206.03    Claim Procedures

### A. Filing a Claim

All mortgage insurance claims must be filed within the time required by the mortgage insurer. If a claim cannot be filed with the mortgage insurer within that time, the Servicer must obtain an extension from the mortgage insurer. The Servicer must forward a copy of the mortgage insurer's extension approval to the Buyer and must include a written explanation of the reason for the delay and anticipated date for the claim filing.

The Servicer should complete the claim according to the mortgage insurer's procedures and forward a copy to the Buyer. The mortgage insurer should make settlement checks payable to the Servicer.

If the primary mortgage insurance was issued by PMI Mortgage Insurance Co., the Servicer must inform PMI that the policy covers a loan purchased by the Buyer.

If the mortgage insurer fails to pay the claim within 60 days, the Servicer must make demand upon the mortgage insurer for immediate payment. The Servicer is responsible for reimbursement for any shortfall in insurance coverage.

If the mortgage insurer reduces the claim due to administrative error, the Servicer will reimburse the Buyer for the amount of such reduction. All claim

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 8 of 35

reductions or denials must be brought to the attention of the Buyer along with the Servicer's response to the reduction or denial

## B.  Deposit of Settlement Proceeds

Within 1 business day of receipt of settlement funds, the Servicer should immediately deposit the proceeds into the P&I Custodial Account. The servicer should email or fax a copy of the final signed HUD-1 that must match the proceeds received. Gross proceeds along with MI proceeds if received should be wired to the buyer within 2 business days.  If the loan has MI insurance pending, servicer should not hold funds in their custodial account until the MI claim has been paid. A copy of the explanation of benefits settlement statement should be sent to the Buyer upon receipt of MI funds. Do not delay liquidating a loan due to non receipt of MI proceeds. These can be submitted as a supplemental upon receipt of funds.

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 9
of 35

# Section 207. Acquired Properties

The Servicer's responsibility for the maintenance, security and marketing of the acquired property continues until the final disposition of the property and until all funds are received by the Buyer, unless the Buyer relieves the Servicer of these duties by written notification.

If the Buyer relieves the Servicer of the responsibility for maintenance and marketing of the acquired property for cause, the Servicer shall pay the Buyer the greater of $1,000 or 1% of the unpaid principal balance. Consistent violations may result in termination of the Selling and Servicing Agreement for cause.

The Servicer acknowledges damage suffered by the Buyer due to the Servicer's failure to properly and expediently administer and market the acquired property will be reimbursed to the Buyer by the Servicer. Refer to Section 206.03 for details on claim procedures.

Proper servicing shall include, but not be limited to the following actions:

1. Inspection and maintenance of the property,
2. Paying insurance premiums and taxes when due,
3. Notification of acquisition and providing case files,
4. Property valuation and repair,
5. Expedient marketing of the acquired property,
6. Providing monthly reports according to Buyer requirements,
7. Filing accounting, and
8. IRS reporting.

## 207.01 Inspection and Maintenance

Servicer is required to complete monthly property inspections from the time of acquisition until the close of escrow. These reports should be available upon request by the Buyer. . If at any time the Servicer ascertains any damage to the property, the Servicer must submit a claim for insurance recovery, obtain repair bids and take necessary protective action to prevent any recurrence.

Prior to beginning property repair, the Servicer must contact the Buyer for instructions. The Servicer must ensure settlement of any hazard insurance claim is promptly completed. The Buyer will often have Special Hazard Insurance coverage for losses over and above those covered by primary hazard insurance. This Special Hazard Insurance is not in lieu of primary hazard insurance which must be maintained by the Servicer. Any loss covered by the primary hazard insurance carrier must be reported by the Buyer so a claim under the Special Hazard Insurance Policy may be submitted. Failure to file an insurance claim for claimable damages will result in a penalty being assessed at the time of liquidation for the amount of the cost to repair said damages.

The Servicer may spend up to $2,500 per occurrence for emergency repairs of property security without the Buyer's prior approval. If the required securing or emergency repairs exceed $2,500, contact the Buyer for verbal approval.

For all properties in redemption, confirmation, ratification, or eviction, the Servicer is required to complete a drive-by BPO within 10 days and forward to the Buyer via email. If the property remains occupied after marketable title is obtained, the Servicer, should immediately commence eviction unless the occupancy of the property enhances its marketability. The Servicer must obtain the Buyer's prior approval before allowing continued occupancy or entering into a lease.

## 207.02 Payment of Taxes and Insurance

The Servicer must ensure the following:

1. All property taxes and assessments are paid on time. Penalties for late payment of property taxes or assessments will not be reimbursed to the Servicer.
2. All association dues are paid, if appropriate. The foreclosure action should extinguish any fees which become due prior to acquisition. Penalties for late payment will not be reimbursed to the Servicer.
3. Adequate hazard insurance coverage and, if applicable, flood insurance coverage is maintained at all times.
4. The Servicer must ascertain the benefits of obtaining vandalism coverage and make a recommendation to the Buyer.

## 207.03 Submission of Case and Marketing Files

The Servicer must inform the Buyer of the acquisition of a property within 24 hours of the foreclosure sale even if a redemption period follows the sale. Such notice may be in the form of a letter and should provide the foreclosure sale date, successful bid amount, occupancy status, and any unexplained redemption dates.

The case file is due within 10 days of acquisition and should contain the following documents:

*If 12 monthly payments or less were made on the loan, the Servicer must send the following, along with the complete origination file.*

1. Note or other instrument evidencing indebtedness.
2. Mortgage or Deed of Trust.
3. Original appraisal.
4. Payment history since inception of the loan.
5. Copies of all foreclosure pleadings and evidence of title in the name of a party designated by the Buyer

*Within 30 days of possession, the marketing file should contain the following documents:*

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 10 of 35

# Section 207.  Acquired Properties

1. Current appraisal (reflecting 90-120 day marketing time, including "as-is" and "repaired" values, detailed list of repairs, costs, incremental contributory value and a 30 day quick sale value).
2. Current BPO (reflecting 90-120 day marketing time, including "as-is" and "repaired" values, detailed list of repairs, costs, incremental contributory value and a 30 day quick sale value).
3. Second BPO
   For Properties >= $40,000
   - Servicer shall order an additional BPO when the lowest BPO varies by 10 percent or greater from the appraisal and Servicer is unable to effectively reconcile the values.
   For properties < $40,000:
   - Both values under $40,000: 15 percent variance
   - Both values under $30,000: 15 percent variance
   - Both values under $20,000: 20 percent variance
   - Both values under $10,000: 25 percent variance.

4. List of contractor bids if repairs recommended:
   $0 - $3,500: One bid required
   Over $3,500 up to $10,000: Two bids required
   Over $10,000: Three bids required
5. Recommendation for sales price and marketing strategy.
6. Rental agreements, if approved by the Buyer.

Failure to submit the case and marketing files as described will be considered a breach of the Selling and Servicing Agreement and will subject the Servicer to a per diem interest penalty at the note rate plus any additional damages suffered by the Buyer resulting from the failure. If the case file or marketing file is more than 30 days overdue, the Buyer will request a repurchase of the Buyer's interest.

## 207.04  Marketing of Acquired Properties

The marketing of an acquired property is administered by the Servicer subject to the direction of the Buyer. The properties must be maintained in marketable condition.

Initial Securing and Maintenance Limits (property preservation)

- Servicer has approval up to $2,350 for initial property preservation items (trash-out, re-key, lawn, pool, etc.) Buyer must approve all expenses exceeding $2,350. Buyer is to approve any bids over $2,350.
- Approval will be handled via email unless otherwise specified by Buyer.

*Initial Preservation Limit*: $2,350 for re-key, securing, and the following items:
- Exterior:
  - Remove all personal items from grounds, storage buildings, and garages.
  - Install high-voltage light bulbs in all outlets.
  - Mow, edge, trim shrubbery/trees, and clean all bedding areas.
  - Initial watering of grounds in non-winterized months
  - In-Ground Pool:
    - Clean, secure and make operable (in season).
    - Fence, if needed to comply with local law. $500.
    - Cover per HUD regulations, if applicable. $500.
    - Monthly Maintenance (if operating). $200.
    - Post "KEEP OUT/NO TRESPASSING" at pool area.
    - Provide photos.
    - NOTE: NEVER DRAIN IN-GROUND POOLS.
  - Above-Ground Pool:
    - In most cases these pools should be removed $350.
  - Remove all mail and advertisements
  - Clean gutters and downspouts
- Interior:
  - Remove all non-realty and personal items
  - Remove all exposed nails, hangers, sticker, etc. from walls/ceilings, doors & windows
  - Remove damaged and/or unappealing window treatments
  - Turn on all utilities (winterize when completed, when warranted)
  - Start furnace/heating units
  - Clean all appliances
  - Clean toilets, showers and tubs
  - Clean all windows
  - Clean flooring, including carpet
  - Install high voltage light bulbs at all outlets
- Initial cost limitations:
  - One time janitorial $300
  - One time carpet cleaning $250
  - Initial Pool $500
  - Insect/rodent infestation $250

# Section 207. Acquired Properties

- On-going Preservation:
  - Seasonal grounds maintenance, including mowing, edging, trimming shrubbery/trees, and mulching
  - On-going watering to keep grounds appearing "as occupied"
- On-going cost limitations:
  - Weekly lawn maintenance $50 per occurrence – provide photos.
  - Periodic interior cleaning $65
  - Monthly pool $200
  - Snow removal $50 per occurrence
  - Winterization $200
  - De winterization $150
  - Two smoke detectors or state requirements $60 each
  - Carbon Monoxide detectors, if required, $80 each
  - Subsequent ongoing preservation costs are billed as incurred. Clearly document scope/ reasonableness of all expenses (before photos, bids, etc.); all expenses are subject to audit
- Utilities
  - Servicer will ensure all utilities and water are turned on and in working condition, provided condition and season warrant.

The selection of a broker will be the sole responsibility of the Servicer. The Buyer recommends selecting a broker who is a member of a local Multiple Listing Service, if one exists. The Buyer reserves the right to direct all marketing activities relative to the acquired property in the event the Buyer believes, in its sole discretion, that it would be advantageous to do so. In these instances, the Servicer will continue to administer the reimbursement of expenses and facilitate payment of any applicable taxes, hazard insurance and other items. The Servicer will continue to perform these functions until the property has been liquidated.

The initial list price and terms will be determined by the Buyer. The Servicer will complete and execute the listing agreement.

After 90 days on market, servicer will order a new BPO from an agent other than the listing agent at a cost not to exceed $100.00. All REO properties will be re-valued every 6 months. For properties previously valued below $250,000, this will be in the form of a BPO. For properties previously valued at $250,000 and above, an appraisal should be ordered. .

When an offer is received the following details should be emailed to the REO Asset Manager assigned to the file:

1. Buyer's name
2. Offer Price
3. Concessions
4. Estimated net proceeds
5. Close of escrow date
6. Type of financing
7. Current List price,

The Servicer must contact the mortgage insurer for prior approval if the claim has not yet been settled. The mortgage insurer's instructions must be included with the offer package sent to the Buyer. Upon acceptance of the offer, a copy of the executed contract must be submitted to the Buyer within 10 days of approval.

Once the offer has been accepted, the Servicer must ensure the closing proceeds on schedule. If there is a delay in closing which is not approved by the Buyer, the Servicer may be assessed a per diem interest penalty at the note rate.

The closing documents are to be reviewed by the Servicer to ensure accuracy and compliance with the contract terms. The deed must name the trustee as transferor and be forwarded to the Buyer at least seven days prior to the scheduled closing. The Buyer will obtain the required signatures and will return the documents to the specified closing agent. Preliminary HUD-1 must be approved by Buyer prior to close of escrow. Any changes that reduce the net proceeds by $1,000 after preliminary HUD-1 has been approved need Buyer approval. A copy of the signed final HUD-1 is due to the Buyer within 2 business days of closing.

The Buyer will permit the sale of an acquired property to directors, officers and employees of the Servicer, or any subsidiary of the Servicer, and to spouses and members of the immediate family who reside with any director, officer or employee of the Servicer or a subsidiary of the Servicer (a "Servicer Affiliated Person"), and to the Buyer employees and their immediate families, provided that all of the following conditions are met:

1. The sales price is substantiated by an independent appraisal;
2. The terms of the sale are identical to those that would otherwise be offered to the general public;
3. For a sale to any Servicer Affiliated Person, the transaction is approved in advance by a resolution adopted by a majority of the Servicer's board of directors, with no director having an interest in the transaction voting. If no board of directors exists within the Servicer's organization, the transaction must be approved in advance, by the highest decision-making body within the Servicer's organization, with no person having an interest in the transaction participating in the decision; and
4. For a sale to a Buyer employee or to a member of his or her immediate family, the acquired property

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 12 of 35

must be purchased as the employee's or his or her immediate family member's primary residence.

## 207.05 Repairs

If repairs are approved by the Buyer, The Servicer must maintain close scrutiny of the contractor and must report the progress to the Buyer via the monthly report. Repairs must be completed expediently.  Prior to the payment of the contractor's bill, the Servicer must inspect the property to assure all repairs were completed properly and all the necessary releases have been signed. The Servicer should advance the funds necessary to pay the contractor upon repair completion.

The Servicer shall hold the Buyer harmless for any unpaid mechanics liens, damage to the property or surrounding properties or injury to the workmen.

If advantageous, the Servicer should not delay the marketing of the property pending the completion or repairs. Photos of the completed repairs must be forwarded to the Buyer.

## 207.06  Monthly Reports

Listing agent will complete a Monthly Marketing Report for all listed properties, which are not "under contract". These reports should be reviewed by the Servicer and submitted to the Buyer to support list price reductions, marketing strategy revisions and offers received. .

## 207.07  File Accounting

### A.  Reimbursement of P&I Advances

Claim settlement checks are to be deposited in the Servicer's P&I Custodial Account within 24 hours of receipt. A Liquidation Schedule must be received by the Buyer within 48 hours of deposit. The Servicer may not reimburse itself for expenses or advances from the claim payment. Failure to comply with this requirement will result in a per diem interest penalty calculated at the note rate.

Upon receipt of the final liquidation funds, the Servicer will be reimbursed for any P&I advances. .

### B.  Final Liquidation Proceeds

All funds from the sale of the property should be deposited to the P&I Custodial Account and wired to the Buyer within 48 hours of deposit. The wiring instructions are:

**Bank Name – JP Morgan Chase – New York**
**ABA # 021-000-021**
**Account # 304-652601**
**Account Name: Washington Mutual Mortgage Securities Corp Originator to Beneficiary: Attn REO / WMMSC Loan #**

A Liquidation Schedule along with a copy of the HUD-1 settlement statement, and the wire confirmation must be submitted within 48 hours of deposit.  The Servicer may not reimburse itself for expenses or advances from the sale proceeds.  Failure to comply with this requirement will result in a per diem interest penalty calculated at the note rate.

### C.  Reimbursement of Expenses

Within 30 days after the sale of the property, a Statement of Expenses (WMMSC 3001) must be submitted to the Buyer.  Receipts substantiating all items must be included along with the loan history showing billed disbursements from the escrow account.  In lieu of receipts for tax and insurance disbursements, the Buyer will accept certified copies of loan histories highlighting such disbursements.  A table of transaction codes should also be included.

The Statement of Expenses with all required receipts must be received by the Buyer within 30 days of the sale. Failure to submit the Statement of Expenses will be considered a breach of the Selling and Servicing Agreement.  If it is not received within 30 days, the Buyer reserves the right to subject the Servicer to a penalty of $100.00 per day plus any additional damages suffered by the Buyer resulting from the delay or deny the reimbursement of any servicing expense. Supplemental reimbursement requests for utility bills will be considered on a case-by-case basis.

The Buyer reserves the right to prorate any and all expenses during the time frame that any penalties are assessed.

### D.  Loan Removal

The Buyer will provide written instructions to remove the loan from the Servicer's system along with reimbursement for any outstanding P&I advances and expenses due.

## 207.08  IRS Reporting

Section 6050J of the Internal Revenue Code requires that the owner of a mortgaged property which was foreclosed or abandoned during the previous year file an information return (IRS Form 1099A) with the IRS. Servicers which have serviced acquired properties during the year must submit form 1099A to the IRS and furnish the Buyer with a copy.  The borrower's portion of Form 1099A must be furnished to the borrower on or before January 31st of the year following the acquisition. If the Servicer has no acquired properties, the Buyer must receive written confirmation of this to ensure compliance with IRS regulations.  The Buyer will furnish the tax identification number to the Servicer.

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 13 of 35

### 207.09 Primary and/or Pool Insurance

The Servicer must submit to the Buyer a copy of the primary and/or pool mortgage insurance claim as required by the insurer and in accordance with the terms of the Master Policy. The Servicer must diligently follow up with the mortgage insurer to ensure that the claim has been perfected and no additional documentation is required to settle the claim. Any delays in receiving payment which occur as a result of the Servicer's failure to perfect the claim will be assessed upon final settlement at a per diem interest penalty at the note rate. Upon receipt of payment of the primary or pool mortgage insurance claim, a copy of the Explanation of Benefits received from the mortgage insurance must be forwarded to the Buyer.

Case: 10-05245     Doc# 360-1     Filed: 01/03/14     Entered: 01/07/14 16:02:35     Page 14 of 35

# Section 208. Conversion Process: Adjustable Rate Mortgages

For adjustable rate mortgages (ARMs) with conversion options, the borrower may, in accordance with the terms of the applicable note, convert the loan to a fixed rate, level payment, fully amortizing loan for the remainder of the original 30-year term. In most cases, the borrower may exercise the option to convert at any time during the first five years of the loan term or at such time during the second, third, fourth or fifth year of the loan term, according to the loan documents, which result in the effective conversion date occurring prior to the fifth anniversary date of the loan's origination.

It is the Servicer's responsibility to make any necessary disclosure to the borrower regarding the terms and conditions of the 30-year loan to which the borrower is converting the ARM and to ensure all of the procedures and requirements set forth in the loan documents and applicable federal, state, and local law are strictly followed. It is also the Servicer's responsibility to ensure any converted loan retains its first lien status.

## 208.01  Variations in Loan Documents

The Servicer must service each ARM according to the terms of the note, security instrument, disclosures and any riders and addenda to those documents. Except for the security instrument, which must be the standard FNMA/FHLMC security instrument for the state in which the property is located, the Buyer may change the loan documentation requirements in accordance with program changes.

Should the borrower wish to convert to a fixed rate loan using a lower, unpaid principal balance, the curtailment must be remitted, reported and passed through before the conversion is registered.

The Servicer is responsible for enforcing each ARM according to its terms and should ensure that the note, security instrument, program disclosure, and any addenda or riders meet the requirements of the Buyer.

## 208.02  Eligibility

In order to exercise the conversion option, the Servicer must comply with the terms of the mortgage documents. For conversion eligibility purposes, a delinquent payment is defined as any payment not made within the month it was due. The conversion does not require any requalification of the borrower.

## 208.03  Conversion Fee

At the time of a conversion request, the borrower must pay a non-refundable conversion fee, as stated in the mortgage documents, as of the effective conversion date. The Servicer should retain its portion of the conversion fee (25%, or as contracted).

## 208.04  New Mortgage Interest Rate

The new fixed mortgage interest rate will be calculated; i) according to the mortgage loan documents, ii) as the rate effective as of the registration date, and iii) the sum of the required yield, plus the Servicer's servicing fee. The servicing fee must be no greater than the servicing fee charged on the ARM but no less than .25%.

## 208.05  Effective Conversion Date

The effective conversion date is the date on which the new fixed interest rate becomes effective. This date occurs on the first day of the second month following the conversion registration date. For example, if the conversion is registered any time in January, the new mortgage interest rate will become effective on March 1, the "effective conversion date," and the new payment amount will become effective on April 1, the new "first fixed rate payment date."

## 208.06  First Fixed Rate Payment Date

The first fixed rate payment date is the date on which the first payment based on the new fixed mortgage interest rate is due. This date will always occur one month after the effective conversion date, on the first day of the month.

## 208.07  Mortgage Insurance Requirements

When an insured ARM is converted to a fixed rate loan, the Servicer must ensure the appropriate mortgage insurance coverage is maintained. The Servicer must notify the mortgage insurer of the conversion of any insured loan, must obtain any required amendment or endorsement (if it is the insurer's policy to convert from ARM to fixed rate coverage), and must forward this amendment or a copy of the notification to the mortgage insurance company to the Buyer.

## 208.08  Step-by-Step Conversion Procedures:

1.  The borrower must contact the Servicer for a quote on the current mortgage interest rate and conversion fee.

2.  For the current mortgage interest rate, the Servicer will quote from the current day's posting, according to the mortgage documents, plus the Servicer's servicing fee. The Servicer must also explain that the actual rate will only be locked in once the conversion fee is received.

3.  For the conversion fee, the Servicer will quote the amount (percentage of principal balance or fixed amount) as stated in the mortgage documents. The

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 15 of 35

Servicer must explain that this quote is valid until the end of the current month and that the conversion fee is non-refundable.

4. If the borrower elects to convert at the quoted rate and fee, the Servicer must:

   Ensure that all terms of the conversion option according to the mortgage documents have been satisfied, and

   After verifying the borrower's compliance with these requirements, the Servicer will instruct the borrower to submit the required conversion fee.

5. After registering the conversion, the Servicer will prepare the Modification Agreement and all disclosures required by law and will mail them to the borrower.  Documents must be mailed to the borrower no later than the third business day following the Conversion Registration Date.

6. The borrower will complete and sign the Modification Agreement, have it notarized and returned to the Servicer within the time frame specified in the mortgage documents. If the Servicer does not receive the complete package within the required time frame, the conversion is canceled.

7. If the ARM has primary mortgage insurance coverage, the Servicer must notify the mortgage insurer of the conversion, obtain any required amendments or endorsements (if it is the insurer's policy to convert from ARM to fixed rate coverage), and forward this amendment or endorsement to the Buyer.

8. The Servicer represents and warrants the criteria listed in item 2 above have been met.  If the Buyer determines at any time after conversion that a violation existed at the time of conversion, the Servicer will be required to repurchase the loan.

9. The Servicer will sign the Modification Agreement and return a signed copy to the Buyer. If the signed original must be recorded to perfect the first lien, the Servicer must notify the Buyer of this fact, and forward a copy of the recorded Modification Agreement to the Buyer.

10. The Servicer will provide the borrower with written notice of confirmation or denial of the conversion. If the conversion is denied, the conversion fee is not returned to the borrower.

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 16 of 35

# Section 301. Recordkeeping

The Servicer must maintain accurate accounting and borrower payment records. The Buyer may examine any of the records and accounting reports associated with any loans serviced on behalf of the Buyer or in which the Buyer holds an interest, the borrower's remittances and any other reports and documentation necessary to establish the Servicer's compliance with the Buyer's purchase program at any reasonable time. The Buyer will:

- Monitor all monthly accounting reports submitted by the Servicer;
- Conduct procedural reviews during periodic visits to the Servicer's place of business;
- Conduct, from time to time, in-depth audits of the Servicer's internal records and operating procedures. Among other things, the Buyer may examine the Servicer's financial records, the borrowers' escrow accounts, and the underwriting standards used by the Servicer; and
- Request individual loan payment histories to ensure proper administration of borrowers accounts.

## 301.01   Mortgage Payment Records

The Servicer must maintain permanent loan account records for each loan. These records may be in the form of hard copy (paper), microfiche, or electronic media and must be maintained for six (6) years after the loan is liquidated. Each loan's account record must identify it as a pooled loan. The Buyer does not mandate the particular system or forms to be used for the mortgage account records, but requires the system be capable of producing an account transcript itemizing the following in chronological order:

- The date, amount, distribution, installment due date or other transactions affecting the amounts due from or to the borrower; and
- The latest outstanding balances of principal, deposits, advances, and unapplied payments.

The system must also provide for the prompt disclosure of any overdraft in the account balance of deposits for the payment of taxes and insurance.

The accounts and records on loans should be maintained according to sound and generally accepted accounting practices and in a way which will permit the Buyer representatives to examine and audit the accounts and records upon request.

## 301.02   Servicer Compensation

For each fixed rate loan serviced for the Buyer, the Servicer retains a servicing fee made up of the difference between the mortgage interest rate and the net rate to the Buyer. The net rate is defined as the rate of interest payable to the Buyer on each loan. This servicing fee must be a minimum of .25% and may not exceed a maximum of 1.00% per annum.

For adjustable rate mortgages (ARMs), the servicing fee is the difference between the gross margin stated in the mortgage Note and the net margin to the Buyer. Depending on the loan amount, the servicing fee for an ARM loan will have a minimum of .25% and no maximum. However, if an ARM converts to a fixed rate loan, the servicing fee may not exceed the original servicing fee on the ARM Note.

No servicing compensation is payable to the Servicer on any loan for any period before the purchase date. Servicing fees at liquidation are payable only in proportion to interest collected at liquidation on the respective loan.

Because sale proceeds include an adjustment for interest and servicing fees from the first day of the month of purchase to the purchase date, full servicing fees are deducted from the first installment due the Buyer. On the purchase date, the Buyer will pay accrued interest at the net rate from the first day of the month of purchase to the purchase date. Therefore, the Servicer remits a full month's interest at the net rate with the first installment due the Buyer.

The Servicer may deduct servicing fees before depositing daily collections in the P&I Custodial Account. If the Servicer decides to deposit gross interest at the mortgage interest rate to the P&I Custodial Account, servicing fees may be withdrawn daily by the Servicer.

If necessary, the Servicer may estimate servicing fees before the calendar month-end. Servicing fees deducted or withdrawn by the Servicer should be reported to the Buyer in the monthly accounting reports.

After each calendar month-end, the Buyer will recompute the servicing fees due to the Servicer and confirm the net interest at the net rate due to the Buyer on the next automatic withdrawal date. The Servicer may have to make a cash adjustment to the P&I Custodial Account for any over or under deduction of servicing fees in the preceding month.

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 17 of 35

# Section 301. Recordkeeping

Any late charges, assumption fees, or other charges provided for in the loan documents with the exception of ARM to fixed rate loan conversion fees as discussed in Section 208, and collected by the Servicer as additional compensation must be accounted for separately from all other payments made by the borrower and must be included in separate account records and reflected in the bank account reconciliation.

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 18 of 35

# Section 302.   Identifying WMMSC Loans

### 302.01   Loan Numbers

Shortly after purchase and prior to the first month end
cutoff date, the Servicer will be notified of the nine digit
Buyer loan number.  The Servicer must include this loan
number on all accounting and servicing reports and
correspondence which relate to a specific loan effective
with the first month of reporting.

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 19
of 35

# Section 303.   Custodial Accounts

The Servicer must establish, maintain, and monitor for the mortgage loans serviced by the Servicer on behalf of the Buyer one or more principal and interest custodial accounts (collectively, the "P&I Custodial Account"), into which all payments of principal and interest shall be deposited, and one or more taxes and insurance custodial accounts (collectively, the "T&I Custodial Account"), into which all payments of taxes and insurance shall be deposited. The P&I Custodial Account shall be maintained separately from the T&I Custodial Account. Unless otherwise authorized by the Buyer in writing, each custodial account must be insured by the Federal Deposit Insurance Corporation ("FDIC").   Funds deposited in a custodial account may not exceed the level insured by FDIC deposit insurance.   Any amount on deposit in a P&I Custodial Account which is not fully protected or insured by the FDIC must be immediately remitted to the Buyer.  Any amount on deposit in a T&I Custodial Account which is not fully protected or insured by the FDIC must be removed from that account and deposited in another fully FDIC-insured T&I Custodial Account established and maintained by the Servicer.

All custodial account records must be maintained in a manner consistent with prudent industry practices and must be readily accessible to the Buyer's representatives at any time.

The depository institutions at which custodial accounts are established and maintained must be assigned the following ratings from two or more of the specified rating agencies:

- "C" or better for TBW
- "125" or better for IDC
- "P3" or better for Moody's
- "A3" or better for Standard and Poor's

It is the Servicer's responsibility to ensure the continued eligibility of the depository institution in which the custodial accounts are maintained. Should a depository institution's rating fall below the above noted minimums, the Servicer is required to move the funds to a depository institution meeting the above requirements, notify the Buyer of the change in accounts and execute new Custodial Account Letter Agreements (WMMSC 4002 for P&I, WMMSC 4004 for T&I, and WMMSC 4014 for Buydowns); and ACH Debit Authorization (WMMSC 4006).

The establishment of any Custodial Account and any changes in an existing account must be communicated to the Buyer in a Letter Agreement prepared by the Servicer.   The Letter Agreements vary according to whether the account is in-house or not and according to the type of account.

Though not required, a Servicer who services loans in more than one pool may establish separate P&I and T&I Custodial Accounts for each one.

As soon as the Buyer purchases a loan, the Servicer must transfer any related funds on deposit to the appropriate custodial account.

The Servicer must establish a reasonable daily work cutoff to ensure that collections are credited to the custodial account no later than the business day following their receipt.

All custodial accounts must be demand deposit accounts and may be interest bearing.

## 303.01   Principal and Interest Custodial Accounts

All funds for the payment of principal and/or interest which are received by the Servicer must be held in trust by the Servicer and deposited to the P&I Custodial Account.    This includes any proceeds from the liquidation of a defaulted loan, from the mortgage pool insurance and primary mortgage insurance, and from any other policies of insurance collected by the Servicer. This also includes any prepayment in part or in whole accompanied by interest to the date of the prepayment. In the case of liquidation, the Servicer should complete and forward the Liquidation Schedule (WMMSC 4009) to the Buyer within 48 hours of deposit of funds.

Each account must clearly indicate the respective interests of the Servicer as trustee and of the Buyer.

The account designation must be:

*[Servicer's Name], as agent, trustee and/or bailee of principal and interest custodial account for, WMMSC its successors and assigns, for various mortgagors and/or various owners of interests in WMMSC mortgage-backed pools.*

As soon as the Buyer purchases any loan, the Servicer must transfer all related principal and interest funds on hand to the P&I Custodial Account.

The Servicer should immediately remit to the Buyer any amount deposited in the P&I Custodial Account that exceeds the insurance limits set by the depository's insurance authority.   Detailed remittance instructions will be published at the time each pool is issued.   The Servicer must also notify the Buyer within 24 hours regarding the amount of this remittance.

Case: 10-05245     Doc# 360-1     Filed: 01/03/14     Entered: 01/07/14 16:02:35     Page 20 of 35

# Section 303.  Custodial Accounts

## ACH DEBIT PROCEDURES

P&I Custodial Accounts will be debited through the Automated Clearing House (ACH). When setting up the P&I Custodial Account, the Servicer must have the ACH Debit Authorization (WMMSC 4006) completed by the institution which houses the account. This institution must be a member of the ACH network or a correspondent of an ACH member. The account may be one of the Servicer's P&I Custodial Accounts or it may be a separate clearing account. Each month on the withdrawal date the Servicer must have on deposit in the P&I Custodial Account, or clearing account, "same day funds" or "good funds" for all sums due the Buyer. The deposit must be sufficient to cover the amount of the debit communicated to the Servicer on the Notice of Automatic Withdrawal. Each month, the Buyer will debit the accounts on the 20th calendar day or on the preceding business day if the 20th day is not a business day through an ACH transaction. If funds are not available on the day of the draft, the Servicer will be assessed a penalty, at the highest prime rate published daily in the *Wall Street Journal* column entitled "Money Rate" plus 2.0%.

## P&I REMIT PROCEDURES

Each month on the date the funds are due to the Buyer, the Servicer must have on deposit in the P&I Custodial Account, or clearing account, "same day funds" or "good funds" for all sums due the Buyer. The Servicer must remit to the Buyer the total amount of the debit communicated to the Servicer on the Notice of Automatic Withdrawal. Each month, the Servicer will remit the required funds per Notice of Automatic Withdrawal on the 20th calendar day or on the preceding business day if the 20th day is not a business day. If funds are not received on the day of the required remittance date, the Servicer will be assessed a penalty, calculated using the highest annual prime rate published daily in the *Wall Street Journal* column entitled "Money Rate" plus 2.0%.

The Servicer may make withdrawals from the account only for the following purposes:

1. To reimburse itself for delinquency advances that have been recovered from subsequent collections from the related mortgagor, or

2. To remove amounts that have been deposited to the account in error, or

3. To remove fees, charges, or other such amounts that are deposited on a temporary basis in the account, or

4. To clear and terminate the account.

The Servicer should not use the P&I Custodial Account as a collection clearing account, but establish a separate account for this purpose. Refer to the discussion of clearing accounts in Section 303.03.

## 303.02  Taxes and Insurance Custodial Account

The Servicer must deposit all collections of taxes, assessments, ground rents, insurance premiums and comparable items to the T&I Custodial Account. The Servicer is responsible for ensuring that the account is maintained and administered in accordance with applicable state and federal laws and regulations. The Servicer will be solely responsible for payment of any interest due to the mortgagor. Withdrawals may be made only to effect the timely payment of borrowers' taxes and insurance premiums, to refund borrower surpluses, to recover servicing advances and comparable items, to remove any amounts deposited in error, and to clear and terminate the account.

At least annually, the Servicer must compute the required escrow payments based on reasonable estimates or assessments and bills to determine that sufficient funds are being collected to meet all escrow payments. If the amount held in the T&I Custodial Account by the Servicer, together with the future monthly installments of escrow payments, exceeds the amount required to pay charges as they become due, plus any cushion permitted under applicable law and regulation, the Servicer must either repay the excess promptly to the borrower or credit the excess to the borrower by a reduction in monthly escrow payments.

If the amount held in the T&I Custodial Account by the Servicer is deemed insufficient to pay charges when due, the Servicer should obtain the necessary additional funds from the borrower before the latest date on which the charges may be paid prior to penalty, lapse of insurance policies, etc. If the borrower fails to remit the deficient amount, or if there is insufficient time to obtain the amount, the Servicer must pay any charges due and reflect the shortage in the borrower's T&I Custodial Account.

The account is to be designated in the name of the Servicer acting as an agent for borrower payments in order to show that the account is custodial in nature.

The account designation must be:

*[Servicer's Name], as agent, trustee and/or bailee of Taxes and Insurance Custodial Account for WMMSC, its successors and assigns for various mortgagors and/or various owners of interests in the Buyer mortgage-backed pools.*

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 21 of 35

# Section 303.   Custodial Accounts

The Servicer must maintain records identifying each borrower's payment and the account into which each payment is deposited.

## 303.03    Clearing Accounts

If the systems and procedures of the Servicer require the use of clearing accounts, these accounts should be governed by the following conditions:

1. The titles of such accounts must reflect that they are custodial in nature and the depository in which the accounts are maintained must be informed in writing that they are Custodial Accounts.

2. A check drawn on the P&I or T&I Custodial Account must be deposited to a disbursement clearing account before or at the same time as any checks on the clearing account are issued.

3. A single clearing account must not be used as both a collection and a disbursement clearing account.

4. The Servicer must maintain adequate records and audit trails to support all credits to and charges from the borrowers' payment records and accounts.

5. The Servicer must deposit its servicing fees into a separate account.

6. Collections deposited to a depository clearing account must be credited to the appropriate Custodial Account no later than the first business day following their receipt by the Servicer.

## 303.04    Interest-Bearing Accounts

The Servicer may use an interest-bearing account as its T&I Custodial Account provided that the requirements specified for the establishment and maintenance of the T&I Custodial Account set forth above and the requirements listed below are met:

1. The account complies with all local, state and federal laws and regulations governing borrowers' escrow accounts and interest-bearing accounts,

2. The Servicer ensures that all interest paid or credited to the account that is not subsequently credited to or paid to the borrowers will be removed from the account within 30 days of receipt of such interest,

3. The Servicer agrees that under no circumstances will it ask the Buyer to advance funds for the payment of taxes, insurance premiums or comparable items because the escrow funds are held in an account not withdrawable on demand and are therefore unavailable, and

4. The Servicer will comply, at its own expense, with all applicable laws, regulations and contracts requiring payment of interest on borrowers' escrow accounts.

## 303.05    Prepayment Fees

If the note or security instrument executed in connection with a mortgage loan requires that the borrower pay a fee or other charge in the event that all or part of the outstanding principal balance of the mortgage loan is prepaid prior to its scheduled due date, the Servicer must collect such fee or other charge from the borrower in accordance with the terms of the note and security instrument, provided that collection of such amounts is permitted under applicable state and federal law.

Prepayment fees must be deposited in the P&I Custodial Account within 24 hours of receipt and remitted to the Buyer along with a copy of the note, rider, and addendums related to the loan, at the time the related prepayment proceeds are remitted to the Buyer. Prepayment fees collected by the Servicer must be properly reflected on the Remittance Reconciliation (WMMSC 4010), Curtailments and Prepaid Installments Report (WMMSC 4007), as well as the Collection Report (WMMSC 4008) for the applicable collection period (comparable system generated reports are acceptable).

If any prepayment fees are remitted in error, a request for a refund must be completed in writing within 30 days of the funds being received by the Buyer. A copy of the note, rider, and addendum must be provided with this request. These funds may not be recaptured by the Servicer by lowering any future remittances.

## 303.06 Buydown funds

All funds for the payment of principal and/or interest that are received by the Servicer in the form of buydown funds will be held in trust by the Servicer and deposited to either the P&I Custodial Account or to a separate buydown custodial account.

Depending on how the buydown fund is calculated, the funds must be deposited as follows:

- Present value discounted buydown funds: The Servicer must deposit buydown funds in an interest-bearing custodial account that has been established exclusively for those funds. The rate of interest earned on this account must be equal to the discount rate used to calculate the original value of the buydown funds.

- Full value buydown funds: The Servicer may deposit buydown funds in either the P&I Custodial Account or in a separate custodial account for buydown funds.

  Neither custodial account may be interest-bearing.

The Servicer is responsible for accurately accounting for all buydown funds. Individual records must be

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 22 of 35

# Section 303.  Custodial Accounts

maintained for each buydown loan and for each Buyer pool. These records must clearly identify the monthly principal and interest amount due from the borrower, the monthly amount of buydown funds and must be balanced to the appropriate custodial account each month.

## A.  Buydown Custodial Account

If a separate buydown custodial account is established, the account must clearly show the respective interests of the Servicer as trustee and of the Buyer as follows:

*[Servicer's Name], as agent, trustee and/or bailee of Buydown Custodial Account for WMMSC its successors and assigns for various mortgages and/or mortgage-backed pools.*

In addition, the Servicer must, by the 20th calendar day of each month, transfer the correct amount of buydown funds to the P&I Custodial Account. The Buyer will not withdraw funds directly from a buydown custodial account. If the Servicer fails to transfer the funds by the 20th day of each month, an overdraft may result in the P&I Custodial Account.

## B.  Buydown Funds in P&I Custodial Account

If buydown funds are held in the P&I Custodial Account, the Servicer must ensure that the buydown funds are applied only as specified in a temporary buydown agreement. The buydown funds may not be used to pay any past due payments, reinstate a loan, or cure any default. In the case of an advance of principal and interest, the advance must not be taken from the buydown funds within the P&I Custodial Account.

## 303.07  Letter Agreements and ACH Debit Authorization

The appropriate custodial account forms must be on file with the Buyer before any loans are purchased. If these forms are not on file with us before a scheduled purchase date, the Buyer reserves the right to suspend purchase until the completed forms are received. However, if none of the loans being purchased is subject to a buydown plan, the Buydown Custodial Account Letter Agreement is not required. The custodial account forms are:

1. Principal and Interest Custodial Account Letter Agreement (WMMSC 4002)

2. Taxes and Insurance Custodial Account Letter Agreement (WMMSC 4004)

3. Buydown Custodial Account Letter Agreement (WMMSC 4014)

4. ACH Debit Authorization (WMMSC 4006)

NOTE:  *Servicers not insured by the FDIC must always establish and maintain Custodial Accounts for WMMSC, at an outside depository insured by the FDIC.*

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 23 of 35

# Section 304.  Loan Accounting

## 304.01   Amortization Method

All loans will amortize with interest-in-arrears reducing the principal balance to zero at the end of the term. Each loan must be repayable in equal monthly installments, except for the last installment, based on a 30-day month/360-day year. Interest-in-advance is never permitted. In addition, only full payments of interest and principal may be applied and capitalization is not allowed. Due dates may only be the first day of the month. Odd due date loans are accepted on an exception basis. Contact a Loan Accounting Specialist in the Servicer Accounting Department for reporting requirements.

## 304.02   Application of Payments

Payments received from a borrower will ordinarily consist of interest, principal, deposits for insurance, taxes, and related charges, and late charges. Accordingly, payments received from the borrower must be applied by the Servicer in the following order:

1.   Escrow deposits for insurance, taxes, etc.

2.   Interest on the loan

3.   Principal on the loan

4.   Late charge and any other fees due to the Servicer

When the full amount of a payment is not received, the following procedure should be followed:

1.   If the deficiency in the required installment (principal, interest, taxes and insurance) is $25 or less, the amount applied to the borrower's escrow account should be reduced, or

2.   If the deficiency exceeds $25 or if the borrower has no escrow account, the Servicer may return the partial payment or deposit it in the P&I Custodial Account until sufficient funds are received.

Whenever deficiencies are treated as unapplied payments, the funds must be held in the P&I Custodial Account as unapplied until sufficient funds have been received to complete the full installment. Under no circumstances should the principal or interest be shorted for the amount of the deficiency. Short payments that are deposited into suspense accounts should be properly accounted for and appear on the borrower's payment history.

### A. Temporary Buydown Funds

A loan with a temporary buydown must be amortized at the note interest rate, not at the bought-down interest rate. This will ensure that payments are collected to properly amortize the loan.

The Servicer must hold any buydown funds in trust and must apply these funds toward the payment of the scheduled monthly interest due on the note only upon receipt of the remainder of the monthly payment from the borrower. The buydown funds may not be used to pay any past due payments, reinstate the loan, or cure any default.

If the loan is paid in full, the remaining buydown funds will be credited to the outstanding balance at liquidation. If the property is sold as a result of foreclosure, the remaining buydown funds will be credited to the outstanding principal balance at the time of sale. In either case, if applicable, the funds will be discounted to a present value at the original discount percentage.

If the property is sold and the loan is assumed by the purchaser, the buydown funds will continue to be applied to reduce the mortgage payment under the original terms of the buydown plan.

### B. Curtailments

A curtailment is any application of additional principal which does not reduce the unpaid principal balance to zero. The Servicer may accept and apply a curtailment to reduce the principal balance only if the loan is current. If a curtailment is received while a loan is not current, and the funds received are insufficient to bring the loan current, the funds must be deposited into the P&I Custodial Account until the loan is brought current.

For delinquent loans, if the funds are sufficient to cover any past due amounts, the funds must be used to bring the loan current. Any funds remaining after the loan is current may be applied by the Servicer as an additional payment of principal.

Funds received in consideration of a partial release of security must be applied to the outstanding principal balance, and only after approval has been received from the Buyer. Funds received when part of the property is taken by eminent domain must be applied to the outstanding principal balance unless the Servicer recommends, and the Buyer approves, other application of the funds.

Approval must be obtained from Buyer for any modifications that reduce the monthly payment due to application of a curtailment.

Curtailments and prepaid curtailments must be reported to the Buyer separately on, or in a format similar to, the Curtailments and Prepaid Installments Report (WMMSC 4007).

Case: 10-05245     Doc# 360-1     Filed: 01/03/14     Entered: 01/07/14 16:02:35     Page 24 of 35

# Section 304.   Loan Accounting

## C.  Curtailment Adjustments

If a curtailment is made with respect to a mortgage loan, the principal balance of the mortgage loan must be reduced to be an amount equal to 1/12 of the product of (i) the curtailment and (ii) the applicable note rate.

If a curtailment is applied to a loan that is more than one month prepaid the curtailment adjustment is applied raising the schedule UPB, to correctly amortize the loan.

## D.  Liquidations

A liquidation is the application of a payment to a loan which reduces the unpaid principal balance to zero. Interest should be calculated on a 365 day per diem basis in the month of liquidation.

Liquidation proceeds must be deposited to the P&I Custodial Account within 24 hours of receipt.   The Servicer must report liquidations on, or in a similar format to, the Liquidation Schedule (WMMSC 4009) which must be received by the Buyer within 48 hours of the deposit.

The Servicer must remit liquidation funds within 48 hours of receipt to the Buyers account.   The remittance amount must agree to the Liquidation Schedule (WMMSC 4009).

The Servicer must also complete and send a Release of Mortgage form.   The Release must be submitted in a timely manner, and any penalties for delays in recording will be the responsibility of the Servicer.   The Release should conform to the one normally used in the state in which the mortgaged property is located.   Any special requirements for that state should be noted by the Servicer for our information.

## 304.03      Advances

### A.  Delinquency Advances

If amounts deposited into the Servicer's P&I Custodial Account are insufficient to cover the amount due to the Buyer on the ACH withdrawal date, the Servicer must advance its own funds with respect to delinquent and foreclosed loans and REO properties.   If the amount on deposit in the P&I Custodial Account for any one pool on the day immediately preceding the withdrawal date is less than the amount of the monthly withdrawal due, the Servicer must have on deposit in the P&I Custodial Account an amount equal to the monthly withdrawal. The amount advanced by the Servicer must be equal to the principal amount plus interest at the net rate for the applicable payment cycle of the delinquent loan(s).

The Servicer may reimburse itself for advances from collection of payments from the borrower.   Monthly

principal and interest advances are not expected to become an expense to the Servicer.   See Section 207 for a further discussion of acquired properties.

## B.  Servicing Expenses

For each loan, the Servicer must advance all servicing costs and expenses as they occur, subject to prior approval from the Buyer when required.   These expenses may include the cost of:

- The preservation, repairs and protection of the property,
- Any enforcement of the note and     security instrument, including foreclosures,
- The management and liquidation of the property if it is acquired in satisfaction of the loan, and
- Advances for tax and insurance.

## C.  Reimbursement of Expenses

Expenses may be recovered from the borrower upon reinstatement from the foreclosure.   In no case may the Servicer recover expenses from the principal and interest payments on another loan or from another borrower's escrow account.

The Servicer must complete and submit a Statement of Expenses (WMMSC 3001) within 30 days of final disposition of the property.   Refer to Section 207.07 C for further details.   Copies of paid receipts or canceled checks must be included for each item listed on the Statement of Expenses.   In lieu of receipts for tax and insurance disbursements, the Buyer will accept certified copies of loan histories highlighting such disbursements.

## 304.04      Adjustable Rate Loans

### A.  Interest or Payment Adjustments

The Servicer must enforce each adjustable rate mortgage according to its terms.   This includes making periodic interest rate and payment adjustments as specified by the note.   The Servicer must establish procedures to monitor the applicable index and to send and receive notices to and from the borrower in order to ensure that the Servicer uses the latest available value for the index in determining an interest rate change and that adjustments to the interest rate are correctly made in a timely fashion. The new monthly principal and interest payment must be sufficient to fully amortize the principal balance as of the adjustment date over the then remaining term of the note at the adjusted loan rate, unless otherwise stated in the note.

If the Servicer's failure to properly make a scheduled interest rate or payment adjustment affects the Buyer's

Case: 10-05245     Doc# 360-1     Filed: 01/03/14     Entered: 01/07/14 16:02:35     Page 25 of 35

# Section 304. Loan Accounting

ability to make future adjustments under the note, repurchase may be required. The Servicer shall indemnify and hold the Buyer harmless against any losses, claims, liabilities, and expenses (including attorney's fees) incurred by the Buyer as a result of the failure to properly adjust the interest rate or payment amount of any loan serviced hereunder.

## B. ARM Indices

Indices published in the Federal Reserve Bulletin H.15 (519) are considered, for the purposes of interest rate adjustment, to be in effect on the date of release.

## C. Required Notices to Buyer

The new interest rate and/or the new principal and interest constant must be reported for adjustable rate loans two (2) months before the new payment amount is effective. For example, if the borrower's interest rate is scheduled to change on January 1 and/or a payment change is effective February 1, the new loan interest rate and the new principal and interest payment will be reported to the Buyer at the accounting cycle period that ends December 31.

## D. Notices to Borrowers

The Servicer must notify the borrower before the effective date of any change in the principal and interest constant. The notice of payment change should always be mailed, in compliance with the mortgage documents, before the new principal and interest payment becomes effective. All notices must include the name, title and telephone number of a person who will be able to answer any inquiries the borrower may have about the notice and must conform to accepted servicing practices and all applicable laws.

## E. Prepaid Installments

Prepaid installments should not be accepted prior to the interest rate or payment change of an adjustable rate loan. The Servicer is required to suspend prepaid installments until the new interest rate and/or P&I constant is known. Once the new P&I constant is determined, the Servicer should apply the prepaid installment. Any excess should be refunded to the borrower or deposited to the escrow account. Any shortages must be collected from the borrower or advanced by the Servicer before the prepaid installment is applied, and reported.

## F. Delinquent Installments

If an adjustable rate loan is delinquent, in foreclosure, or in REO status and is scheduled for an interest change or payment change, the Servicer must track any change on its accounting records and report this information to the Buyer on the ARM Adjustments Report (WMMSC 4013) or equivalent form. The Servicer must notify the borrower of any payment change even when the loan is delinquent or in foreclosure, following the same procedures as for a current loan.

## G. Delinquency Advances

For adjustable rate loans, the amounts advanced monthly for delinquent principal and interest must reflect any changes in the interest rate and monthly payment amount.

Case: 10-05245   Doc# 360-1   Filed: 01/03/14   Entered: 01/07/14 16:02:35   Page 26 of 35

# Section 305.   Reporting to WMMSC

The Servicer is required to report certain compliance items and accounting reports each month on the activity and status of loans purchased by the Buyer, beginning with the month of purchase. Servicers may choose any of the following media for reporting purposes:

- hard copy (paper)
- electronic file sent via email
- other electronic media (e.g., magnetic tape, disk)

The method chosen should be based on loan servicing volume, and implementation must be coordinated through the Buyer's Servicer Accounting and IT Departments. Servicers are required to report electronically for each WMMSC assigned servicer number that contains 100 or more loans. Regardless of the media used for reporting purposes, the format must meet the Buyer requirements. Refer to Appendix E for complete details.

## 305.01   Monthly Reporting Package

The Servicer must submit monthly consolidated accounting reports for all loans serviced in the WMMSC assigned servicer number.

The monthly accounting package must be **received** by the Buyer no later than 5:00 PM EDT on the fifth business day of each month, beginning the month following the purchase of the loans.

The monthly accounting cycle is a calendar month and begins with the month of purchase.

The monthly collection activity is reported on an actual loan detail basis with remittances made on a scheduled basis. The monthly accounting package must contain the following types of reports or be in an automated format:

1. Remittance Reconciliation (WMMSC 4010). This report reconciles all P&I Custodial Account activity for the previous month at Servicer level.

2. Analysis of Custodial Accounts (WMMSC 4011). This report reconciles all T&I Custodial Account activity at Servicer level.

3. Curtailments and Prepaid Installments Report (WMMSC 4007). This report must be completed and submitted whenever additional principal is applied to a loan. Prepaid installments must be reported separately from curtailments. A curtailment is any application of additional principal which does not reduce the unpaid principal balance to zero. Curtailments are permitted only when the loan is current. Prepaid installments are payments received prior to the scheduled due date.

4. Collection Report (WMMSC 4008). This report must include payments collected on all loans including those 30 or more days delinquent as of the end of the previous month.

5. A Trial Balance Report (WMMSC 4018)

6. Delinquency Report  - (WMMSC 3002) Refer to Section 205.01 (B)

7. New Loans Report (WMMSC 4017)

8. Copy of the Liquidation Schedule (WMMSC 4009) Refer to Section 304.02 (D)

9. Loan histories as requested

In addition to the above mentioned accounting package, the Buyer also requires a Foreclosure Recommendation/Individual Delinquency Report (WMMSC 3003) by the fifth business day of the month. As detailed in Section 205, the Buyer requires monthly responses to Exception Turnaround Reports and Excessive Delinquency Notification Letters within stated time frames.

The Servicer is also required to disclose any instances of material default under Regulation AB 17 CFR 229.1100-1123, with respect to the servicing of any mortgage loans. The Servicer must disclose any instance of material default in the month such default has been deemed to be material, along with a recommendation to the Buyer for correcting the material default.

## A.   Penalties for Late Submission of Reports

A Servicer that fails to provide accurate accounting and servicing reports within the time frame required violates its responsibilities and is subject to the following remedies:

1. For the first late reporting offense in any consecutive 12-month period, a warning letter is sent to the managing officer of the institution, with a copy to the accounting department;

2. For the second late reporting offense in any consecutive 12-month period, the Servicer is charged a $250 late reporting fee, per report;

3. For the third late reporting offense in any consecutive 12-month period, the Servicer is charged a $500 late reporting fee, per report;

4. For the fourth late reporting offense in any consecutive 12-month period, the Servicer will be terminated for cause.

Inaccurate or incomplete reports will be considered the same as late reporting for the purpose of assessing penalties.

Case: 10-05245     Doc# 360-1     Filed: 01/03/14     Entered: 01/07/14 16:02:35     Page 27 of 35

# Section 305.   Reporting to WMMSC

The Buyer reserves the right to change the late reporting fee and all other remedies at any time, at its sole discretion.

## 305.02   Reporting Liquidations

A Liquidation Schedule (WMMSC 4009) must be submitted whenever the principal balance of a loan is reduced to zero. One form is submitted for each loan liquidated. The original form must be received by the Buyer within 48 hours of payoff and be immediately followed by:

1. Statement of Loan Paid-in-Full/Request for Release of Mortgage Documents (WMMSC 4019)

2. Legal document conveying, releasing or satisfying lien

If circumstances prevent the Servicer from providing the conveyance document within five (5) business days, the "liquidation package" should not be held up. At the time the release document is submitted, the Servicer must have a cover letter attached advising the date the "liquidation package" was sent and provide the Buyer loan number.

Each time a loan is paid in full, or otherwise liquidated, the funds must be deposited to the P&I Custodial Account within 24 hours after they are received. The Servicer must remit liquidation funds within 48 hours of receipt to the Buyer's account. The remittance amount must agree to the Liquidation Schedule (WMMSC 4009). Refer to Appendix B for wire instructions when remitting liquidation funds.

Failure to remit funds to the Buyer within these time frames will result in a penalty assessed to the Servicer at a daily rate equal to the greater of 1) the highest prime rate quoted in the *Wall Street Journal* regular column entitled "Money Rate" on the first business day of each month, plus two (2.0%) percent, or 2) the note rate of the liquidating loan. If the prime rate is not published, the rate to be charged will be determined by the Buyer. There is a minimum charge of $50.00 on all penalties assessed.

## 305.03   Monthly Reporting and Remittance Summary

The Buyer will debit the P&I Custodial Account via the ACH network on the 20th calendar day of each month or on the preceding business day if the 20th calendar day falls on a weekend or holiday. These withdrawals begin in the month following the month of purchase of a loan.

The Buyer will send a Notice of Automatic Withdrawal to the Servicer within two business days preceding the withdrawal date. This notice will enable the Servicer to

determine if sufficient funds are available in a P&I Custodial Account and to make any necessary advances.

If the Servicer does not receive a Notice of Automatic Withdrawal, the Servicer must contact the Buyer to obtain the information. The Servicer is responsible for assuring that sufficient funds are available for withdrawal.

For each Servicer, the Notice of Automatic Withdrawal and the actual debit will consist of:

- The total of (1) the aggregate scheduled interest portions (whether or not collected) of the monthly installments due on the first day of the month in which the withdrawal date occurs (this amount is equal to one month's interest calculated at the net rate) and the total of any adjustments affecting the aggregate schedule of principal, and (2) the aggregate unscheduled interest collected on loans in the pool during the month before the month in which a withdrawal date occurs.

- The total of (1) the aggregate scheduled principal portions (whether or not collected) of the monthly installments due on the first day of the month in which the withdrawal date occurs and the total of any adjustments affecting the aggregate schedule of interest, and (2) the aggregate unscheduled principal collected on loans in the pool the month before the month in which a withdrawal date occurs.

- Less the aggregate funds previously wire transferred to the Buyer on liquidations and interim remittances.

The table below summarizes the monthly accounting activities, including the Servicer's reporting responsibilities, from the purchase date through the date of the first principal and interest withdrawal. The example dates show what would actually have occurred if the sale had been transacted on November 15, 2002.

| Reporting Responsibility | Time Line | Example Date |
|---|---|---|
| The Buyer purchases loans and forwards the Purchase Advice to the Servicer. | Friday | 11/15/02 |
| The Servicer's first cut-off date. | End of the month | 11/30/02 |
| The Buyer receives the Servicer's monthly accounting package. | 5th business day | 12/06/02 |
| The Servicer receives the Notice of Automatic Withdrawal from the Buyer. | Two business days before withdrawal | 12/18/02 |

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 28 of 35

# Section 305. Reporting to WMMSC

| The Servicer reviews the P&I Custodial Account to ensure that sufficient funds, per the Notice of Automatic Withdrawal, are deposited. | One business day before withdrawal | 12/19/02 |
| The Buyer withdraws the total amount due, per the Notice of Automatic Withdrawal, from the P&I Custodial Account via an ACH transaction. | 20th calendar day or preceding business day | 12/20/02 |

NOTE:  *Notice of any liquidation and liquidation funds must be received by WMMSC on the Liquidation Schedule (WMMSC 4009) within 48 hours of receipt of funds.*

## A. Monthly Accounting Package

If the monthly accounting package is not submitted accurately and on time, the Buyer may not be able to process the unscheduled activity to the loans before the close of the current cycle. This could result in a difference between the amount drafted per the Notice of Automatic Withdrawal and the remittance amount calculated by the Servicer. If this should occur, the unscheduled activity will be applied to the loan in the following cycle. It is the Servicer's responsibility to ensure that the Buyer receives an accurate monthly accounting package by the required due date to avoid loan level discrepancies. Any resulting interest differences will be charged to the Servicer.

## B. Adjustable Rate Mortgages

If the ARM Adjustments Report (WMMSC 4013) is not submitted accurately and on time, the Buyer will make certain assumptions regarding the current interest rate and monthly payment adjustment for all ARM loans due to adjust in the given month. The Notice of Automatic Withdrawal will reflect these assumptions. If our assumptions are incorrect, our withdrawal could result in an overdraft of the Servicer's P&I Custodial Account. It is the Servicer's responsibility to ensure that the Buyer receives the ARM Adjustments Report on a timely basis to avoid such incorrect withdrawals.

## C. Balloon Resets

For Balloon Reset Mortgages with reset options the borrower may reset to a modified fixed rate/ARM loan depending on the original balloon note. Most of the jumbo balloon loans reset into an ARM for an additional 30 years (40 years total). In most cases, 5, 7, and 10 year balloon loans have an option to reset into a fixed rate, fully amortizing payment for the remainder of the 30 years.

It is the Servicer's responsibility to notify the borrower at least 60 calendar days in advance of the balloon maturity date. The Servicer must also deliver to the borrower a description of the historical performance of the applicable index and the maximum interest rate, which may be due under the modification. The borrower must provide acceptable proof of occupancy. At the time of the balloon reset the note holder must remain in first lien status. Overall caps and floors are stated in the original balloon note.

Once the Servicer has received the borrower's notice of intent to reset or not, the Buyer should be notified of the interest-only payment for the maturity month if resetting or the intent to pay in full at the maturity date. In most cases the balloon reset should be completed prior to the maturity date of the balloon. Upon completion of the balloon reset, the Buyer should be provided a completed copy of the balloon modification documents.

## D. Recast Modification

The Servicer must get prior approval from the Buyer for a recast of the monthly principal and interest payment following the borrower's payment of a substantial curtailment. Neither the interest rate nor the maturity date may be altered. When requesting approval, the Servicer should provide the Buyer with the following information: loan number, borrower's name and address of property, amount of curtailment, new principal and interest payment, and the effective date of payment.

After obtaining Buyer's approval, the Servicer will prepare the Modification Agreement and mail to the borrower. The borrower will complete and sign the Modification Agreement and mail it back to the Servicer.

The Servicer will then fax a copy of the completed Modification to the Buyer, which must be received 30 days prior to the effective date of the new principal and interest payment. If not received within 30 days, the change will not become effective until the next cycle and the Servicer will be responsible for the difference in remittance.

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 29 of 35

# Section 401. Representations, Warranties and Obligations of Servicer

All of the representations, warranties and obligations contained in this *Servicer Guide* are made by the Servicer as to each mortgage serviced on behalf of the Buyer, unless expressly waived in writing by the Buyer. All of said representations, warranties and obligations made by the Servicer are made and given to the Buyer with knowledge that the Buyer relies upon such representation, warranties and obligations as continuing consideration for allowing the Servicer to retain the servicing rights to each mortgage serviced for the Buyer. The Servicer makes such representations and warranties and agrees to such obligations with specific knowledge that the Buyer intends to sell each mortgage to third parties in reliance upon the Servicer's representations, warranties and obligations. All representations, warranties, and obligations of the Servicer shall survive any investigation made by or on behalf of the Buyer, its assignee or designee, liquidation of the mortgage, purchase of the loan by the Buyer, its designee or assignee, repurchase of the mortgage or property, termination of the Selling and Servicing Agreement , or other similar event or transfer or sale of servicing, and all such representations, warranties, and obligations shall inure to the benefit of the Buyer, its successors and assigns.

Unless otherwise specified, the representations and warranties contained in this *Servicer Guide* are made with respect to each mortgage as of the date of delivery to the Buyer of any oral or written report or remittance related thereto.

## 401.01 General

### A. Qualification and Authorization

The Servicer is duly qualified, licensed, registered, and otherwise authorized under all applicable federal, state and local laws and regulations to service and enforce loans on behalf of the Buyer in the jurisdiction where the properties securing such loans are located and shall maintain such qualifications, licenses, registrations and authorizations during the term of the Selling and Servicing Agreement. The Servicer is duly authorized to execute, deliver and perform its obligations under the Selling and Servicing Agreement, and such Selling and Servicing Agreement (including the material incorporated by reference therein) is a valid and binding obligation of the Servicer enforceable in accordance with its terms.

### B. WMMSC Forms

The Servicer has completed and transmitted all required reports to the Buyer in the time frame stated in this *Servicer Guide*, in accordance with the instructions provided by the Buyer.

### C. Use of Buyer's Name

The Servicer warrants that it will confine its use of the WMMSC name to those uses specifically authorized by the Buyer in the *Servicer Guide*.

### D. Inspection of Records

The Servicer shall allow the Buyer, or its agent or designee, during normal business hours, to inspect all books and records of the Servicer pertaining to its mortgage operations and to any loans serviced on behalf of the Buyer.

### E. Compliance with Selling and Servicing Agreement and *Servicer Guide*

Servicer has complied and will comply with all the terms, conditions and requirements of the Selling and Servicing Agreement including this *Servicer Guide* as such shall be amended during the time loans are serviced on behalf of the Buyer.

### F. Normal Servicing Procedures Applied

The Servicer's servicing of loans on behalf of the Buyer is in accordance with the standards applied to the Servicer's overall loan servicing portfolio, without discrimination in any manner against loans serviced on behalf of the Buyer and in any event shall be consistent with the servicing practices of loan servicers in good standing in the industry.

### G. No Disqualification or Suspension

The Servicer represents and warrants that its selling or servicing rights or privileges have not been suspended or terminated by any other institution or government agency (including, but not limited to FHA, FNMA, FHLMC, or GNMA) and shall promptly notify the Buyer in writing by certified mail of such suspension or termination.

### H. Integrity of Custodial Accounts

The custodial accounts established hereunder are demand accounts which have not been pledged or encumbered in any manner.

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 30 of 35

# Section 401.  Representations, Warranties and Obligations of Servicer

## I. Eligible Servicer

The Servicer is an institution, whose accounts are insured by the Federal Deposit Insurance Corporation (FDIC), or is an FHA-Approved Mortgagee, and continues to meet the eligibility standards as stated in Section 101 of this *Servicer Guide*.

## J. Accuracy of Information

Each report and remittance submitted by the Servicer to the Buyer is complete, truthful and accurate in all respects.

## K. Compliance by Others

When an action is performed by a third party for the Servicer, which the Servicer is required to perform under this *Servicer Guide*, the Servicer warrants that such third party has complied with all requirements of this *Servicer Guide*.

## L. Warranties

All representations and warranties made at the time of the sale of the mortgage to the Buyer remain true, correct and complete.  The Servicer is in compliance with, and has taken all necessary action to ensure that it and each mortgage is in compliance with this *Servicer Guide*.

## M. Compliance with Laws

The Servicer has observed and complied, and will observe and comply, with all applicable local, state and federal laws, regulations and orders in servicing each mortgage and has serviced, and will service each mortgage in strict conformity with the terms and conditions of the Note, the Security Instrument and each of the documents relating to the mortgage.  Without limiting the generality of the forgoing, the Servicer warrants that all escrow practices and ARM adjustments have been made and administered, and will be made and administered, in full compliance with the note, security instrument and applicable law and regulation.

## N. No Solicitation of Refinances

The Servicer has not and will not conduct any direct advertising or direct promotional activities, either written or verbal, that have the effect of encouraging a borrower to refinance a loan serviced hereunder.

## O. Conveyance of Servicing Rights to Delinquent Mortgage Loans

The Buyer has the option to acquire from the Servicer, without the payment to Servicer of any compensation therefore, the servicing rights relating to any mortgage loan which is delinquent or otherwise in default for ninety (90) days or more.  Upon the Servicer's receipt of written notice of the Buyer's election to exercise such option, the Servicer shall, within ten (10) business days, notify the applicable mortgagors of the transfer of the servicing rights in accordance with all applicable law.  In addition, the Servicer shall deliver to the Buyer or its designee all documents in the Servicer's possession which relate to the mortgage loan and take such other measures as reasonably requested by the Buyer or its designee in connection with the transfer of the servicing rights.

Case: 10-05245     Doc# 360-1     Filed: 01/03/14     Entered: 01/07/14 16:02:35     Page 31 of 35

# Section 402.  Assignments and Recordations of Mortgages

Any assignment, recordation, or other action regarding loans serviced by the Servicer on behalf of the Buyer, requested by the Buyer or otherwise consistent with prudent servicing practice or local practice or necessary to protect the lien priority of the Buyer, its designee or assignee, shall be completed by the Servicer at the Servicer's expense.  The Servicer shall promptly notify the Buyer in the event the requirements for recording or filing mortgages or assignments in a particular state have materially changed.

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 32 of 35

# Section 403. Remedies for Breach of Representations and Warranties

## 403.01 Repurchase Obligations

Upon discovery by the Servicer of a breach of any representation, warranty or obligation contained in the Selling and Servicing Agreement or this *Servicer Guide*, the Servicer shall give prompt written notice to the Buyer. Upon the Buyer's receipt of notice of the breach or independent discovery of any breach, the Buyer may, in its sole and absolute discretion, without regard to the Servicer's actual or implied knowledge of the breach of such representation, warranty or obligation (except to the extent the representation, warranty or obligation is expressly conditioned upon Servicer's knowledge), and in addition to and without limitation as to any other remedy accruing to the Buyer, require the Servicer to repurchase the affected loans.

The Servicer shall, without adjustment on the basis of fees or charges payable by the Servicer, repurchase said loans upon the Servicer's receipt of a repurchase demand from the Buyer. The repurchase price will represent the outstanding principal balance of the applicable mortgage, as determined by the Buyer, plus interest computed thereon at the net rate up to the first day of the month following the date of repurchase, and any related amounts such as all documentary stamp taxes, recording fees, transfer taxes and all other expenses payable in connection with the transfer of the mortgage loan at the time of repurchase, and any attorney's fees, legal expenses, court costs, or other expenses that may have been incurred by the Buyer in connection with the loan or enforcement of the obligation to repurchase. These funds must be wired to the Buyer within 15 calendar days of the demand, and be accompanied by a Liquidation Schedule (WMMSC 4009) and any documents necessary to convey title.

If a third party purchases a loan or any interest in a loan from the Buyer which is serviced by the Servicer, the Buyer may, at its option, exercise any rights or remedies at law or in equity on behalf of such party to the extent that such third party does not affirmatively do so. If the Buyer must repurchase a mortgage it has sold to a third party because the Servicer has failed to comply with the terms, representations and warranties of the Selling and Servicing Agreement and this *Servicer Guide*, the Servicer must repurchase the mortgage from the Buyer at an amount equal to the price at which the Buyer was required to repurchase the mortgage, plus any attendant cost or expense incurred by the Buyer in the course of repurchasing such mortgage.

## 403.02 Indemnity and Hold Harmless Agreement

The Servicer shall indemnify the Buyer and hold the Buyer and its successors and assigns harmless against all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses resulting from any claim, demand, defense or assertion based or grounded upon, or resulting from a breach of any representation, warranty or obligation contained in or made pursuant to the Selling and Servicing Agreement , including this *Servicer Guide*, or from any claim, demand, defense or assertion against or involving the Buyer based or grounded upon, or resulting from such breach or a breach of a representation, warranty or obligation made by the Buyer in reliance upon any representation, warranty or obligation contained in the Selling and Servicing Agreement or this *Servicer Guide*.

The Servicer also agrees to indemnify and hold harmless each of the Buyer, each Person, if any, who "controls" the Buyer within the meaning of the Securities Act of 1933, as amended, and their respective officers and directors against any and all losses, penalties, fines, forfeitures, legal fees and related costs, judgments and any other costs, fees and expenses that such Person may sustain arising out of third party claims based on (i) the failure of the Servicer to deliver or cause to be delivered when required the Annual Certification, an Annual Statement of Compliance and the Accountants' Statement required pursuant to Section 101.05 of this *Servicer Guide*, or (ii) any material misstatement or omission in any certification pursuant to Section 302(a) of the Sarbanes-Oxley Act of 2002 and Rules 13a-14 and 15d-14 promulgated by the Securities and Exchange Commission thereunder made in reliance on any material misstatement or omission contained in the Annual Certification (WMMSC 1007) or an Annual Statement of Compliance (WMMSC 31477) required under this *Servicer Guide*.

The Servicer shall also indemnify the Buyer and hold it harmless against all court costs, reasonable attorneys' fees and any other costs, fees and expenses incurred by the Buyer in enforcing the provisions of the Selling and Servicing Agreement or this *Servicer Guide*.

The obligations of the Servicer under this Section shall survive the delivery and purchase of the mortgage, foreclosure, liquidation or repurchase of the mortgage and suspension or termination of the Selling and Servicing Agreement.

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 33 of 35

# Section 403.  Remedies for Breach of Representations and Warranties

## 403.03   Right of Offset

To protect the Buyer's interests, the Buyer reserves the right to offset against the purchase price for any mortgage delivered for purchase by the Servicer (or any amount otherwise owned by the Buyer to the Servicer) to recover any outstanding past-due fees owed to the Buyer by the Servicer resulting from circumstances including, but not limited to:

1. Fees, penalties or expenses incurred from failure to deliver any required final documentation for mortgages previously purchased;

2. Notice that a secured interest does not exist when, in fact, a secured interest does exist;

3. Penalties for failure to properly service loans on behalf of the Buyer; and

4. Situations where the Buyer has reason to believe the Servicer is unable to continue to operate under the terms and conditions set forth in the Selling and Servicing Agreement and this *Servicer Guide*, and specifically the representations and warranties contained in Section 401.  Events evidencing such situations would include, without limitation:

   - Substantial cancellation of warehouse lines without a viable replacement warehouse facility,
   - Regulatory authority suspension or cancellation,
   - Pending voluntary or involuntary bankruptcy, or
   - Excessive fallout.

## 403.04   Remedies Cumulative

All rights and remedies provided to the Buyer in this *Servicer Guide* are in addition to any other right or remedy available to the Buyer under the Selling and Servicing Agreement or afforded by law or equity, and may be exercised concurrently with, independently of, or in succession to, and such rights and remedies shall inure to the benefit of the Buyer, its successors and assigns. The failure of the Buyer to exercise any of its remedies does not constitute a waiver of use of that remedy in the future in connection with the same or any other breach or default by the Servicer.

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 34 of 35

# Appendix A.  Glossary of Terms

**accountants statement**: A statement by a firm of independent public accountants that is a member of the American Institute of Certified Public Accountants to the effect that such firm has examined certain documents and records relating to the mortgage servicing operations of the Servicer substantially in compliance with the Uniform Single Attestation Program for Mortgage Bankers and that, on the basis of such examination, nothing has some to such firm's attention that would indicate that such servicing has not been conducted in compliance therewith, except for (i) such exceptions as such firm shall believe to be immaterial and (ii) such other exceptions as shall be set forth in such statement.

**accrued interest** – The interest earned for the period of time that has elapsed since interest was last paid.

**adjustable rate mortgage (ARM)** – A mortgage in which the interest rate is periodically adjusted based on the movement of a pre-selected index.

**amortization** – Payment of a debt by equal periodic installments to retire principal at the end of a fixed period and to pay accrued interest on the outstanding balance.

**appraisal** – A report which sets forth an estimate or opinion of value.

**assumption** – Agreement by a buyer to assume the liability for payment of an existing mortgage or deed of trust. The original borrower remains liable unless specifically released by the Servicer.

**automated clearing house (ACH)** – The network through which WMMSC electronically debits the principal and interest custodial account for the total amount due each month as stated on the Notice of Automatic Withdrawal.

**buydown** – Money advanced by a seller or builder to reduce the borrower's monthly payments on a mortgage either during the entire term of the mortgage or for the first few years.

**buydown account** – An account in which funds are held for application as part of the monthly mortgage payment when each payment comes due during the term of the buydown.

**Buyer loan number** – The identification number assigned by WMMSC to each loan purchased.

**calendar month-end** – The accounting period cutoff for reporting to WMMSC. The date of the cutoff will always be the last business day of the month.

**certified copy** – A copy of a document with a signed endorsement stating that the copy is a true and correct copy of the original document.

**closing costs** – Money paid by the buyers and sellers to effect the closing of a mortgage. This normally includes an origination fee, discount points, title insurance, survey, attorney's fee, and such prepaid items as taxes and insurance escrow payments.

**condominium** – A unit of real property to which title is given, usually to the interior surfaces and a proportionate interest in certain common areas. Title to the common areas is in terms of percentages and refers to the entire condominium project less the separately owned units.

**curtailment** – An additional amount of money paid by the borrower which is applied to the outstanding principal balance, but which does not reduce the outstanding principal balance to zero.

**custodial account** – A bank account established by the Servicer for deposit of borrower's funds. This account may be for principal and interest, taxes and insurance or buydown funds.

**debt** – Borrowed money, the repayment of which may be either secured or unsecured with various possible repayment schedules.

**debt-to-income ratios** – Ratios used to qualify a borrower by comparing the borrower's total monthly housing expense and total monthly debt to gross income.

**delinquency** – The failure to make timely payments under a loan agreement.

**delinquency advances** – Funds advanced by the Servicer to cover any deficit in the principal and interest custodial account on the withdrawal date due to delinquent installments.

**due-on-sale clause** – The clause found in the security instrument that requires the payment of the entire loan balance upon sale or transfer of ownership of the secured property.

**equity** – The difference between fair market value and the owner's indebtedness on the mortgage.

**escrow account** – A trust account which is established to hold funds allocated for the payment of real estate taxes, hazard or mortgage insurance premiums as they are received each month and until such time as they are disbursed to pay related bills.

**escrow holdback** – Funds held in escrow for the completion of postponed improvements or repairs.

**FDIC** – A term used to refer to the Federal Deposit Insurance Corporation which is a federally-sponsored corporation who insures deposits in national banks and other subscribing financial institutions.

Case: 10-05245    Doc# 360-1    Filed: 01/03/14    Entered: 01/07/14 16:02:35    Page 35 of 35