(b) representations, warranties, certifications, or claims made regarding such securities or investments, such as representations, warranties, certifications or claims regarding origination, funding, and underwriting activities, and including the eligibility, characteristics, or quality of the mortgages or the mortgagors;

(c) the transfer, sale, conveyance, or assignment of mortgage loans to, and the purchase and acquisition of such mortgage loans by, the entity creating, forming and issuing the securities, derivatives or other similar investments relating to such mortgage loans;

(d) all servicing-, foreclosure-, and origination-related conduct, but solely to the extent that such claims are based on the offer, sale, or purchase of securities, or other conduct in connection with investors or purchasers in or of securities; and

(e) all Covered Conduct, but solely to the extent that such claims are based on the offer, sale, or purchase of securities, or other conduct in connection with investors or purchasers in or of securities.

For avoidance of doubt, securities and securitization claims based on the offer, sale, or purchase of securities, or other conduct in connection with investors or purchasers in or of securities, that are based on any source of law, including, but not limited to, false claims acts or equivalent laws, securities laws, and common law breach of fiduciary duty, are not released.

2.     Claims against a trustee or custodian or an agent thereof based on or arising out of the conduct of the trustee, custodian or such agent related to the pooling of residential mortgage loans in trusts, mortgage backed securities, collateralized debt obligations, collateralized loan obligations, or structured investment vehicles, including, but not limited to, the performance of trustee or custodial functions in such conduct.

G-7

3. Liability based on the Bank's obligations created by this Consent Judgment.

4. Obligations relating to assurances of voluntary compliance entered into between various states and Wells Fargo, N.A. in 2010, 2011, and 2012 relating to pay option ARMs.

5. Claims raised by the Illinois Attorney General in *Illinois v. Wells Fargo & Co., et al.*, 2009-CH-26434.

6. Claims raised in *State of Connecticut v. Acordia, Inc.*, X10-UNYCV-0704020455-S (currently pending before the Connecticut Supreme Court).

7. Claims raised in *State ex rel. Darrell V. McGraw, Jr. v. Acordia of West Virginia, Inc., et al.* (civil action no. 05-C-115W - circuit court of Hancock County).

8. Claims raised in *State of New York v. JPMorgan Chase Bank, et al.*, Index No. 2768/2012 (N.Y. Sup. Ct.), and any similar claims – relating to the same types of acts, practices, or conduct set forth in that lawsuit – that may be asserted in the future by the Office of the New York State Attorney General against Citigroup, Inc., Citibank, N.A., CitiMortgage, Inc., Ally Financial, Inc., GMAC Mortgage LLC, Residential Capital, LLC, or their parents, subsidiaries, or affiliates.

9. Claims and remedies raised in *State of Delaware v. MERSCORP, Inc. et al.* (CA-NO-6987-CS), currently pending in the Court of Chancery for the State of Delaware, and any similar claims – relating to the same types of acts, practices, or conduct set forth in that lawsuit in connection with mortgages registered in the MERS system and loans secured by such mortgages – that may be asserted in the future by the Delaware Department of Justice against Bank of America, N.A., BAC Home Loans Servicing, LP, JPMorgan Chase Bank, N.A., Chase Home Finance LLC, EMC Mortgage Corporation, Wells Fargo Bank, N.A., Citigroup, Inc.,

Case: 10-05245   Doc# 374-5   Filed: 02/06/14   Entered: 02/07/14 12:52:43   Page 2 of 22

Citibank, N.A., CitiMortgage, Inc., Ally Financial, Inc., GMAC Mortgage LLC, Residential

Capital, LLC, or their parents, subsidiaries, or affiliates.

10.     Claims raised in *Commonwealth of Massachusetts v. Bank of America, N.A., et al.*

(Civ. A. No. 11-4363), currently pending in the Superior Court of Massachusetts, Suffolk

County.

11.     Claims of any kind that the State of Utah has or may have against any person or

entity not released under this Consent Judgment, or any right that State of Utah has or may have

to take law enforcement action of any kind against any person or entity not released under this

Consent Judgment, including any person or entity who is or may be a co-obligor with a person or

entity that is released under this Consent Judgment, all of which claims, rights and actions are

expressly reserved by the State of Utah.

12.     Claims against Mortgage Electronic Registration Systems, Inc. or MERSCORP,

INC.

13.     Claims arising out of alleged violations of fair lending laws that relate to

discriminatory conduct in lending.

14.     Claims of state, county and local pension or other governmental funds as

investors (whether those claims would be brought directly by those pension or other

governmental funds or by the Office of the Attorney General as attorneys representing the

pension or other governmental funds).

15.     Tax claims, including, but not limited to, claims relating to real estate transfer

taxes.

16.     Claims of county and local governments and claims of state regulatory agencies

having specific regulatory jurisdiction that is separate and independent from the regulatory and

G-9

enforcement jurisdiction of the Attorney General, but not including claims of Regulators that are released herein.

17. Criminal enforcement of state criminal laws.

18. Claims of county recorders, city recorders, town recorders or other local government officers or agencies (or, for Hawaii only, where a statewide recording system is applicable and operated by the state, claims by Hawaii; and for Maryland, where the recording system is the joint responsibility of the counties or Baltimore City and the state, claims of the counties or Baltimore City and the state), for fees relating to the recordation or registration process of mortgages or deeds of trust, including assignments, transfers, and conveyances, regardless of whether those claims would be brought directly by such local government officers or agencies or through the Office of the Attorney General as attorneys representing such local government officers or agencies.

19. Claims and defenses asserted by third parties, including individual mortgage loan borrowers on an individual or class basis.

20. Claims seeking injunctive or declaratory relief to clear a cloud on title where the Covered Conduct has resulted in a cloud on title to real property under state law; provided, however, that neither the Attorneys General nor Regulators shall otherwise take actions seeking to invalidate past mortgage assignments or foreclosures in connection with loans serviced and/or owned by the Bank. For the avoidance of doubt, nothing in this paragraph 20 releases, waives or bars any legal or factual argument related to the validity of past mortgage assignments or foreclosures that could be made in support of claims not released herein, including, without limitation, all claims preserved under paragraphs 1 through 23 of Section IV of this Release.

21.     Disciplinary proceedings brought by a Regulator against individual employees with respect to mortgage loan origination conduct for misconduct or violations under state law.

22.     Authority to resolve consumer complaints brought to the attention of the Bank for resolution outside of the monitoring process, as described in Section H of the Enforcement Terms (Exhibit E).

23.     Claims against Bank for reimbursement to mortgage borrowers:

(a)   That represent: (i) a fee imposed upon and collected from a mortgage borrower by Bank and retained by Bank which fee is later determined to have been specifically prohibited by applicable state law (an "Unauthorized Fee"), provided that such determination of impermissibility is not predicated, directly or indirectly, on a finding of a violation of any federal law, rule, regulation, agency directive or similar requirement; and (ii) an actual overpayment by a borrower resulting from a clear and demonstrable error in calculation of amounts due from said borrower; and

(b)   That are subject to the following: (i) are identified in the course of a mandatory state regulatory compliance examination commenced after the Effective Date by the Iowa Division of Banking, Nevada Division of Mortgage Lending, New Hampshire Banking Department, Ohio Division of Financial Institutions, or Rhode Island Department of Business Regulation, which examination period is specifically limited to Bank's Covered Conduct beginning on January 1, 2011 and ending on January 1, 2012; or (ii) are part of a state regulatory compliance examination that was open or in process as of the Effective Date; and

G-11

(c)   That are not duplicative of any prior voluntary or involuntary payment to the
affected loan borrower by Bank, whether directly or indirectly, from any State Payment
or other source.

# EXHIBIT H

Case: 10-05245   Doc# 374-5   Filed: 02/06/14   Entered: 02/07/14 12:52:43   Page 7 of 22

**USDOJ Servicemembers Civil Relief Act Settlement Provisions:**

**J.P. Morgan Chase Bank, N.A.**

In exchange for a full release of the United States'[1] potential civil claims under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. app. § 501, *et seq.*, arising prior to the date of this agreement against Servicer[2] with respect to the servicing of residential mortgages, under the provisions of the SCRA related to (a) mortgage foreclosure and (b) the prohibition against charging more than 6% interest on SCRA-covered mortgaged debt after a valid request by a servicemember to lower the interest rate and receipt of orders, Servicer agrees to the provisions set forth below.

    I.   Servicer shall comply with all the "Protections for Military Personnel" provisions in the Settlement Agreement ("Article V"). In addition, Servicer shall undertake additional remedial action and agree to the policy changes set forth below.

    II.  Compensation for Servicemembers and Co-Borrowers

        a.  Identification of Violations of Sections 533 and 521 of the SCRA related to completed foreclosures on active duty servicemembers: Servicer will engage an

---

[1] The following claims are specifically reserved and not released: Any action that may be taken by the appropriate Federal Banking Agency (FBA), as defined in 12 U.S.C. § 1813(q), against Servicer, any of its affiliated entities, and/or any institution-affiliated party of Servicer, as defined in 12 U.S.C. § 1813(u), pursuant to 12 U.S.C. § 1818, and any action by the FBA to enforce the Consent Order issued against Servicer by the FBA on April 13, 2011.

[2] For purposes of the agreement in this exhibit, "Servicer" shall mean J.P. Morgan Chase Bank, N.A. (including its parents, subsidiaries, and affiliates), and its successors and assignees in the event of a sale of all or substantially all of the mortgage servicing related assets of (1) J.P. Morgan Chase Bank, N.A., or (2) any of J.P. Morgan Chase Bank, N.A.'s division(s) or major business unit(s) that are engaged in servicing residential mortgages. This agreement does not apply to servicing activities performed by Washington Mutual Bank before certain of its assets and liabilities were acquired by J.P. Morgan Chase Bank, N.A. on September 25, 2008. The United States reserves and does not release any potential claims under the SCRA it may have against Servicer regarding actions taken by Washington Mutual Bank on or before September 25, 2008.

H-2

independent consultant whose duties shall include a review of all completed foreclosures from January 1, 2006 to the present to evaluate whether the completed foreclosures were in compliance with Sections 533 and 521 of the SCRA. Servicer shall propose an independent consultant and submit the independent consultant's proposed methodology to DOJ for approval within 30 days after the entry of this agreement. The independent consultant shall begin its review within 30 days after receiving the above-referenced approvals by DOJ. The independent consultant shall submit the results of its review to DOJ within 150 days after it receives the data necessary for its analysis from the Department of Defense's Defense Manpower Data Center ("DMDC") providing relevant periods of military service of borrowers for completed foreclosures from January 1, 2006 to present. Based on the information gathered by the independent consultant, information submitted by Servicer, and DOJ's independent investigation, DOJ shall make the determination reasonably based on the information it has received and its investigative conclusions whether or not a completed foreclosure was in compliance with the SCRA.

b. General Compensation for Newly Identified Servicemembers and Co-Borrowers:

   i. Where DOJ determines that a foreclosure was not in compliance with the SCRA and the servicemember or co-borrowers were not previously compensated pursuant to the Rowles v. Chase class action settlement (a "newly identified servicemember or co-borrower"):

      1. Servicer shall rescind the foreclosure sale where possible, and forgive the remaining mortgage debt;

H-3

2. if the foreclosure sale was previously rescinded, Servicer will refund any mortgage payments made since the sale was rescinded with interest, and forgive the remaining mortgage debt; and

3. if the foreclosure sale cannot be rescinded, Servicer will pay the borrowers the full value of the home at the time of the sale (at the higher of the sale price to the third party or the appraised value at the time of that sale), waive any deficiency, and forgive any remaining mortgage debt (including any fees associated with the foreclosure).

ii. Within 45 days of receiving the identities of newly identified servicemembers and co-borrowers, the independent consultant shall provide DOJ with a report detailing the calculation of the compensation/remediation described in subsection II.b.i for those individuals, for approval by DOJ.[3] Once approved, Servicer must notify each newly identified servicemember or co-borrower by letter (using best efforts to locate each person) within 45 days of receiving this list. Servicer shall issue and mail compensation checks no later than 21 days after receipt of a signed release from the newly identified servicemember or co-

---

[3] In determining the amount of compensation due to any newly identified servicemember or co-borrower pursuant to Section II, DOJ will credit any monetary compensation or other remediation efforts, including returning the home to the borrower, already provided to any servicemember or co-borrower for alleged compliance issues pursuant to Sections 533 or 521 of the SCRA and arising from the same mortgage. In the event that a servicemember located through the OCC Consent Order Independent Consultant review process elects to receive the return of his or her home in lieu of a flat fee damages payment pursuant to the OCC Consent Order remediation plan for violations of Sections 533 or 521 of the SCRA and arising from the same mortgage, the servicemember shall be compensated pursuant to the terms of the OCC Consent Order remediation plan rather than Sections II.b and II.c of this agreement.

borrower. Any letters returned with forwarding addresses must be promptly mailed to the forwarding address. Every 6 months for a period of two years following entry of this agreement, Servicer shall provide the DOJ with an accounting of all releases received, checks issued (including copies of issued checks), credit entries repaired, and notifications without responses or that were returned as undeliverable.

c.  Additional Compensatory Damages for Newly Identified Servicemembers and Co-Borrowers: In addition, Servicer shall retain a Special Consultant to make recommendations regarding additional compensatory damages for newly identified servicemembers and co-borrowers.[4] In the letter described in subsection II.b.ii, Servicer shall advise each newly identified servicemember and co-borrower of his or her right to apply for additional compensatory damages and inform him or her of how to submit such applications to the independent consultant, who shall then transmit to DOJ and the Special Consultant information regarding the consequential damages incurred by a newly identified servicemember and co-borrower within 15 days after receiving the application. The Special Consultant will recommend additional consequential damages to be awarded in a manner consistent with awards from Fund II of the <u>Rowles</u> v. <u>Chase</u> class action settlement, and transmit this recommendation to DOJ within 30 days after receiving information from the independent consultant regarding a newly idenfied servicemember's or co-borrower's consequential damages.[5]

---

[4] The Special Consultant in this matter shall be retired United States District Court Judge Edward N. Cahn. If Judge Cahn is unable to serve as Special Consultant, Chase shall retain a Special Consultant subject to DOJ's approval.

[5] These amounts shall not be deducted from Fund II of the <u>Rowles</u> v. <u>Chase</u> class action settlement.

H-5

d. DOJ shall have final authority over all contact letter(s) and application forms sent to newly identified servicemembers or co-borrowers pursuant to section II, the identities of newly identified servicemembers and co-borrowers pursuant to subsection II.a, relief awarded pursuant to subsection II.b, as well as amounts due pursuant to subsection II.c for additional consequential damages based on applications by newly identified servicemembers and co-borrowers. In the event Servicer disagrees with the DOJ's determinations, Servicer shall be afforded 30 days to produce additional evidence of why DOJ's determination was clearly erroneous, which DOJ shall consider in good faith. Servicer shall have 10 days after DOJ's final determination that a foreclosure was not in compliance with the SCRA to seek judicial review on the ground that DOJ made a clearly erroneous factual determination.

e. Concurrent with providing the relief to the newly identified servicemembers pursuant to subsection II.b.ii, Servicer must request that all three major credit bureaus remove negative entries for the servicemember(s) and any co-borrower(s) attributable specifically to the wrongful foreclosure or interest overcharges and Servicer shall not pursue, and must indemnify the servicemember and his or her co-borrower(s) against any third-party pursuing, any deficiency that was remaining after a foreclosure was completed in violation of the SCRA on the servicemember's SCRA-protected mortgage.

III. SCRA Compliance Policies

a. Servicer shall submit SCRA mortgage foreclosure-related policies to DOJ for review and approval. If the Servicer decides to make a material modification to

H-6

these policies, Servicer will provide the modified policies for review and approval. DOJ will advise Servicer of the results of DOJ's review within 60 days of receipt of a complete submission of all SCRA mortgage foreclosure-related policies and any subsequent material modifications. In addition to the areas covered under the "Protection of Military Personnel" provisions in the attached document, these policies must address:

i.   Prior to referring a loan to foreclosure, the Servicer shall review any orders[6] it has received from borrowers and check borrowers' names and social security numbers against the DMDC website as provided in the "Protections of Military Personnel" provisions in the Settlement Agreement.

ii.  If Servicer pursues a foreclosure action in court and the borrower fails to answer the action, Servicer and/or its agent will file a military affidavit with the court as required by Section 521(b)(1)(A). After the borrower fails to answer and prior to seeking entry of default, Servicer and/or its agent will (a) query the DMDC, and (b) review information in its possession or control for orders to determine if the borrower is on active duty. If Servicer and/or its agent learns that the borrower is on active duty or was on active duty at the time of his or her failure to answer, Servicer and/or its agent will file an affidavit stating that "the defendant is in military service" or "was in military service at the time of his or her failure

---

[6] For the purposes of locating orders to be reviewed pursuant to Sections III.a.i and III.a.ii of this agreement, it shall be sufficient for the Servicer to flag or code accounts upon receipt of orders and rely on that system.

to answer" prior to seeking default judgment and attaching the most recent certificate of service from the DMDC or a copy of the military orders.

    iii.  If Servicer initiates and pursues a waiver under a written agreement as provided in Section 517 of the SCRA, Servicer must initiate the waiver process with the servicemember at least 30 days in advance of any anticipated foreclosure sale date by sending a notice and a copy of the proposed waiver to the servicemember. To the extent Servicer exercises this right, Servicer shall utilize a notice and proposed waiver in the form attached as Exhibit 1. This provision may be modified based on changes in servicing requirements from government-sponsored entities or the Department of Housing and Urban Development.

  b.  Servicer shall submit SCRA mortgage loan interest rate-related policies to DOJ for review and approval. If the Servicer decides to make a material modification to these policies, Servicer will provide the modified policies for review and approval. DOJ will advise Servicer of the results of DOJ's review within 60 days of receipt of a complete submission of all SCRA mortgage loan interest rate-related policies and any subsequent material modifications. In addition to the areas covered under Article V of the Settlement Agreement, these policies must address:

    i.  Servicer shall accept servicemembers' requests for reduced mortgage interest rates pursuant to the SCRA via electronic mail, facsimile, U.S. Mail, Federal Express or other overnight/express delivery to facsimile numbers and addresses designated by the Servicer. Within six months after

H-8

entry of this agreement, Servicer shall also accept servicemembers' requests for reduced mortgage interest rates pursuant to the SCRA via in person delivery at the Servicer's full-service branch locations, should the Servicer maintain branch locations.

ii. When a servicemember requests interest rate relief under the SCRA, Servicer shall accept orders as defined in the Settlement Agreement or any other document that the DOD shall deem sufficient as a substitute for official orders.

iii. Servicer shall seek only orders identifying the beginning date of the applicable period of military service from the requesting servicemember and may not condition providing SCRA benefits on the servicemember submitting orders that include an end date.

iv. Before concluding that the SCRA permits raising the interest rate on the servicemember's loan higher than six percent, the Servicer shall access the DMDC website to determine the dates, where available, of active duty military service of those servicemembers who request reduced interest rates pursuant to the SCRA. If DMDC indicates that the individual is still on active duty, the Servicer must continue to limit the charges pursuant to Section 527 of the SCRA.

v. For those servicemembers who request a reduced interest rate pursuant to the SCRA, but are determined not to be eligible for the reduced rate, Servicer shall notify the servicemembers in writing of the reasons for the

Case: 10-05245    Doc# 374-5    Filed: 02/06/14    Entered: 02/07/14 12:52:43    Page 15 of 22

denial and that they may provide additional documentation or information to establish eligibility for the reduced interest rate.

c. In the event that DOJ requires a change or modification pursuant to this agreement that is in conflict with a policy required by the appropriate Federal Banking Agency (FBA), as defined in 12 U.S.C. § 1813(q), under the Consent Order issued against the Servicer by the FBA on April 13, 2011, and the FBA will not consent to the change, DOJ shall meet and confer with the FBA to resolve the conflict. Nothing in this agreement prevents DOJ from requiring Servicer to adopt policies that provide additional protections beyond the policies required by the FBA.

IV. Training and Monitoring Program

a. Within 45 days after entry of this agreement, Servicer shall provide its proposed training on the SCRA and this settlement to DOJ for approval. After receiving DOJ's approval, Servicer shall provide and require training on SCRA and this settlement for employees (including management officials): (1) providing customer service to servicemembers, (2) involved in relevant aspects of mortgage servicing,[7] including adjusting interest rates for mortgage loans, or (3) with significant involvement in the foreclosure process, within 60 days of DOJ's approval (if already employed in such a position), or within 30 days of his or her hiring, promotion, or transfer. Servicer shall also obtain confirmation from third-party vendors, law firms, and/or trustee companies involved in conducting foreclosures that their employees who are involved in the foreclosure process

---

[7] This includes employees in Chase's Special Loans/SCRA unit, employees in Chase's Foreclosure group involved in SCRA compliance, employees in the Customer Care centers, and employees in the Military Default group.

Case: 10-05245    Doc# 374-5    Filed: 02/06/14    Entered: 02/07/14 12:52:43    Page 16 of 22

have been trained on their obligations to comply with this settlement and the SCRA.

b.   Servicer shall implement a monitoring program approved by DOJ designed to ensure compliance with this settlement and the SCRA.  At a minimum, monitoring will include a quarterly report to be submitted to DOJ[8] within 60 days after the end of each quarter containing an analysis of a sample of foreclosures and a sample of mortgages where a borrower or mortgagor submitted orders seeking protection under Section 527 of the SCRA to determine compliance with the SCRA and this settlement.  If Servicer learns that despite the policies required by Section III a violation of Section 521 or 533 has occurred, Servicer will take corrective action as set forth in Section II of this agreement.  If Servicer learns that despite the policies required by Section III a violation of Section 527 has occurred, Servicer shall submit its proposed remediation plan to DOJ for approval along with the quarterly report.

V.  Term of Agreement

This agreement shall retain full force and effect for three and one-half years from the date it is entered (the "Term").  Servicer's obligation pursuant to Section III to submit quarterly reports and DOJ's review of the same shall continue for the six months following the Term, after which time Servicer shall have no further obligations under this agreement.

---

[8]  All materials required by this Order to be sent to the Department of Justice shall be sent by commercial overnight delivery service addressed as follows: Chief, Housing and Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, 1800 G Street NW, Washington, D.C.  20006, Attn: DJ 216-16-3.

H-11

# EXHIBIT H-1

H-12

**IMPORTANT NOTICE AFFECTING MILITARY SERVICEMEMBERS**

**WAIVER OF RIGHTS AND PROTECTIONS AFFORDED UNDER
THE SERVICEMEMBERS CIVIL RELIEF ACT**

Attached to this notice you will find a waiver of rights and protections that may be applicable to you and your dependents pursuant to the Servicemembers Civil Relief Act, 50 App. U.S.C. § 501, et seq. (the "SCRA"). The SCRA provides military personnel and their dependents with a wide range of legal and financial protections. Among other benefits and protections, the SCRA:

- Upon request by the servicemember, imposes a maximum rate of interest that may be charged on debt obligations incurred by an eligible servicemember before the servicemember began his or her current military service.
- May restrict or prohibit the sale, foreclosure, or seizure of real estate pursuant to a pre-service debt obligation, except where the lender has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
- May prohibit a landlord or lender from evicting a servicemember or the servicemember's dependents from his/her residence, except where the lender has obtained a valid court order approving the eviction.
- May, in a court action, give the servicemember the right to postpone the case under certain conditions.
- May, in a court action, give the servicemember the right to have the terms of the mortgage obligation adjusted under certain conditions.

[Judicial State / Non-Judicial State Paragraph - Insert Applicable Paragraph]

[Judicial State] If you choose to sign the waiver, the bank will have the option to proceed with a foreclosure, sale and eviction without the protections of the SCRA. If you do not sign this waiver, the Bank will be required to provide you the protections of the SCRA. You may be able to seek a postponement of any foreclosure or eviction action, and, in the case of foreclosure, an adjustment of the mortgage obligation. Additionally, the court should take steps to ensure that a judgment is not entered against you if you are unable to appear.

[Non-Judicial State] If you choose to sign the waiver, the bank will have the option to proceed with a foreclosure, sale and eviction without going to court. If you do not sign this waiver, the bank will be required to obtain a court order in order to foreclose (if you incurred your debt before you went into military service) or to evict you from your home. You may be able to seek a postponement of any foreclosure or eviction action, and, in the case of foreclosure, an adjustment of the mortgage obligation. Additionally, the court should take steps to ensure that a judgment is not entered against you if you are unable to appear.

**Before waiving these important statutory rights, you should consult an attorney regarding how best to exercise your rights or whether it is in your interest to waive these rights under the conditions offered by the bank.**

As an alternative to foreclosure, the bank may offer its borrowers the options of pursuing a short sale of their property or executing a deed in lieu of foreclosure. Borrowers in default may find these options to be preferable to foreclosure. Any negotiation for a short sale or deed in lieu of foreclosure is not a threat of current or future litigation, and should not be considered as such.

**For More Information:**

- CONSULT AN ATTORNEY: To fully understand your rights under the law, and before waiving your rights, you should consult an attorney.
- JAG / LEGAL ASSISTANCE: Servicemembers and their dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php
- MILITARY ONESOURCE: "Military OneSource" is the U.S. Department of Defense's information resource. Go to www.militaryonesource.com

H-14

## WAIVER OF RIGHTS UNDER
## SERVICEMEMBERS CIVIL RELIEF ACT

I _____(NAME)_____ am a [servicemember] [dependent of _____(NAME)_____, a servicemember], and I am aware that I have protections available to me under the Servicemembers Civil Relief Act (SCRA).  This includes, but is not limited to, legal rights relating to the property securing my mortgage loan, including protection against a sale, foreclosure, seizure, eviction or unlawful detainer action related to the property listed below.

### [ADDRESS OF PROPERTY]

I acknowledge that:

- By signing this waiver, I am waiving the SCRA protections related to the property listed above, including any protections against a sale, foreclosure, seizure, eviction or unlawful detainer action, as well as relating to the right of redemption.

- This waiver applies to any form of proceeding or transaction through which someone else receives ownership and/or possession of the property securing my loan, including a foreclosure short sale, deed-in-lieu of foreclosure, cash-for-keys, etc.  This waiver applies not only to any such proceedings or transactions that are in process at the time I sign this waiver, but also to proceedings or transactions that are started after I sign this waiver.

- The above described property secures my mortgage loan, account number: _____.

- In exchange for waiving my SCRA rights with respect to this property, the Bank has agreed to provide _____ (insert one - a short sale, cash for keys agreement, deed-in-lieu of foreclosure, or other valuable consideration).  This waiver does not become effective until _____ (insert item listed above) is executed and completed.  If for any reason, the _____ (insert item listed above) is not executed and completed, this waiver shall become null and void.

Subject to the above provisions, I hereby waive and give up the right to these protections under the SCRA with respect to the above listed property and any right I may have had to a stay of proceedings or adjustment of the mortgage obligation in a foreclosure action.

_____          Date:_____
        (Signature)


_____
        Printed Name

H-15

USPS TRACKING #
& CUSTOMER
RECEIPT

9114 9011 5981 8298 9253 21

For Tracking or Inquiries go to USPS.com
or call 1-800-222-1811

```
Campbell Post Office
Campbell, California
95008998
0568370100 -0096
(800)275-8777      01:57:48 PM
02/06/2014

        Sales Receipt
Product              Sale  Unit    Final
Description          Qty   Price   Price
_____

@@ ~~~ SANTA ANA CA 92707 Zone-4
Priority Mail 2-Day By Weight
3 lb.  0.00 oz.                    $8.60
Expected Delivery: Sat 02/08/14
USPS Tracking #:
9114901159818298925321
Includes $50 insurance

Issue PVI:                         $8.60
                                ==========

Total:                             $8.60
                                ==========

Paid by:
Debit Card                         $8.60
Account #:        XXXXXXXXXXXXX7817
Approval #:       439
Transaction #:    23 903460129
Receipt#:         001553

****************************************
****************************************
@@ For tracking or inquiries go to
USPS.com or call 1-800-222-1811.
****************************************
****************************************
BRIGHTEN SOMEONE'S MAILBOX. Greeting cards
available for purchase at select Post
Offices.
****************************************
****************************************
```