James M. Kelley
14390 Douglass Lane
Saratoga, CA 95070
jmadisonkelley@gmail.com
Tel: (408) 402-1915

PRO SE

**FILED**

MAR 27 2014

United States Bankruptcy Court
San Jose, California

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA – DIVISION 5

| | |
|---|---|
| In Re:<br>JAMES MADISON KELLEY,<br><br>Debtor | Chapter 11<br><br>Adversary Case No. 10-05245 |
| JAMES MADISON KELLEY<br><br>Plaintiff<br><br>v.<br><br>JPMORGAN CHASE BANK, NA,<br><br>DOES (1-20) | MOTION FOR LEAVE TO AMEND THE<br>SECOND AMENDED COMPLAINT<br><br><br>PROPOSED AMENDED COMPLAINT<br><br><br>(Proof of Service Included) |
| | Honorable Arthur S. Weissbrodt<br><br>Hearing: May 9, 2014<br>Time: 3PM<br>Courtroom: 3020 |

Motion For Leave to Amend the Complaint      1      Adversary Case 10-05245

## SUMMARY

The Plaintiff respectfully requests that the Court grant leave to amend the Second Amended Complaint ("SAC") to bring the complaint pleadings in line with the discovery evidence. In addition, a new claim for discharge of the First loan debt by insurance payments made beginning in 2008 and continuing in 2009, 2010, 2011, 2012 and 2013 is made under the Cal. Commercial Code.

This is motion is made pursuant to FRBP 7015 with incorporates Rule 15 of FRCP. The Proposed Third Amended Complaint ("SAC") is attached as an exhibit to this motion.

## DISCUSSION

The Third Amended Complaint does not alter the contract invalidity and TILA claims that have already passed on motion to dismiss. But where possible the allegations have been updated to include the discovery evidence obtained after the SAC.

Because the proposed changes in Third Amended Complaint are based on the discovery evidence already obtained, it is unlikely to affect the length of these proceedings.

**Conclusion:** For the foregoing reasons, the Plaintiff requests leave to submit the Third Amended Complaint.

Dated: March 27, 2012

PRO SE

*James M. Kelley*
James M. Kelley

14390 Douglass Lane
Saratoga, California 95070
Telephone: (408) 402-1915
jmadisonkelley@gmail.com

Attachment:

(Proposed) Second Amended Complaint

**PROOF OF SERVICE**

I, James Madison Kelley, under penalty of perjury attest that I mailed

MOTION FOR LEAVE TO AMEND
THE SECOND AMENDED COMPLAINT

PROPOSED AMENDED COMPLAINT

By US Priority mail to the following people:

    S. Christopher Yoo, esq.
    John M. Sorich, esq.
    Thomas Van, esq.

    AlvaradoSmith, PC
    1 MacArthur Place, #200
    Santa Ana, CA 92707

Dated at Saratoga, California, this 27$^h$ day of March 2014

                      By: *James Madison Kelley*
                            James Madison Kelley
                            Pro Se

James M. Kelley
14390 Douglass Lane
Saratoga, CA 95070
jmadisonkelley@gmail.com
Tel:    (408) 402-1915

PRO SE

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA – DIVISION 5

| In Re:<br><br>JAMES MADISON KELLEY,<br><br>Debtor | **Adv. Case No. 10-05245**<br><br>Bkr. Case No. 08-55305 ASW<br>Chapter 11 |
|---|---|
| JAMES MADISON KELLEY<br><br>Plaintiff<br><br>v.<br><br>JPMORGAN CHASE BANK, NA,<br><br>DOES (1-19) | PROPOSED<br>THIRD AMENDED COMPLAINT<br>Declaratory Relief<br>1. Statutory Contract Invalidity<br>2. First Loan TILA Rescission<br>3. Second Loan TILA Rescission
4. Objection to Proof of Claim 2
5. Objection to Proof of Claim 3
6. First Loan Payment and Discharge of Debt |

**Third Amended Adversary Complaint**          1                    Adv. Case No. 10-05245

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT............................................................3

JURISDICTION AND VENUE..........................................................3

PARTIES.......................................................................................3

THIRD PARTIES............................................................................4

DEFINITIONS................................................................................4

FACTUAL ALLEGATIONS...............................................................5

ADDITIONAL FACTUAL ALLEGATIONS ..........................................15

TENDER ALLEGATIONS................................................................22

DECLARATORY RELIEF CLAIMS....................................................23

    CLAIM 1: LOAN CONTRACT INVALIDITY..............................23

    CLAIM 2: TILA RESCISSION OF FIRST LOAN........................27

    CLAIM 3: TILA RESCISION OF THE SECOND LOAN ...............28

    CLAIM 4: OBJECTION TO PROOF OF CLAIM 2.......................30

    CLAIM 5: OBJECTION TO PROOF OF CLAIM 3.......................30

    CLAIM 6: FIRST LOAN PAYMENT AND DISCHARGE OF DEBT ......31

PRAYER FOR RELIEF....................................................................33

SIGNATURE.................................................................................33

**PRELIMINARY STATEMENT**

This, the Third amended adversary complaint ("TAC"), asks for declarations of loan contract invalidity under Cal. Civ Code 1550, et seq., and declarations of rescission with respect to a refinancing package consisting of the two loans on the Plaintiff's principle residence at 14390 Douglass Lane Saratoga, CA 95070.

The loans are referred to herein as the First Loan and the Second Loan. The First Loan was made on or about July 26, 2007. The Second Loan was made on or about September 18, 2007.

The factual allegations of the Second Amended Complaint have been supplemented by discovery evidence. The additional Claim

Plaintiff asks the Court to deny the Proofs of Claims 2 and 3. This is a core issue because JP Morgan Chase Bank, NA ("Chase") is claiming to be the real party in interest but they have not and cannot substantiate their standing. Plaintiff alleges that Chase cannot have constitutional standing and that Chase is not a real party in interest. These are core issues.[1]

**JURISDICTION AND VENUE**

2. This adversary proceeding arises out of the Chapter 11 Case: In re James Madison Kelley, Case No. 08-55305 ASW. This adversary proceeding is brought pursuant to Bankruptcy Rule 7001.

3. This Court has subject matter jurisdiction under 28 U.S.C. 1334(b) and 28 U.S.C. 2201. This is a core proceeding under U.S.C. 157(b)(2)(I), F.R.B.P. 7008(a)

4. Venue is proper in this district pursuant to 28 U.S.C. 1408.

**PARTIES**

---

[1] The claim for rescission of the Notice of Default and Substitution of Trustee in the proposed complaint has been dropped because of the jurisdiction issue raised under the Rule 15 order. Plaintiff does not waive the rights to this or any other causes of action under proper jurisdiction.

**Third Amended Adversary Complaint**     3     Adv. Case No. 10-05245

5. The Plaintiff, James M. Kelley, has a Ph.D. in Electrical and Computer Engineering from the University of California. The Plaintiff has employed attorneys in business litigation, and represented himself in a federal securities lawsuit. He has no training in the law. The Plaintiff learned to read and plead the law in the federal securities case. Dr. Kelley is representing himself in this matter for economic reasons after talking to more than 15 attorneys.

6. Defendant JPMorgan Chase Bank, NA ("Chase") is the self-styled acquirer of certain (unspecified) assets and liabilities from the Federal Deposit Insurance Corporation ("FDIC") as Receiver ("Receiver").

7. Does (1-19) including possible assignees and or holders of the notes and deeds of trust and possible securitization trustees

**THIRD PARTIES**

8. Washington Mutual Bank ("WMB) was a federal saving association in 2007 and 2008.

9. Washington Mutual Bank, FA ("WMBFA") ceased to exist as legal corporate entity in April 2005.

10. North American Mortgage Company ("NAMCO") ceased to exist as legal corporate entity in December 2007.

11. Stewart Title of California was the title insurance and escrow company for the First Loan. The Stewart Title office is on Sunnyvale Saratoga Road in Saratoga.

12. The Federal Deposit Insurance Corporation as Receiver is the successor in interest to WMB but not WMBFA or WMBFSB.

13. LSI Appraisal, LLC was the property appraiser.

**DEFINITIONS**

14. The "First Loan" is Washington Mutual Bank, FA loan number 3018113559.

15. The "Second Loan" is Washington Mutual Bank loan number 0747861714.
The Second Loan is a Home Equity Line of Credit ("HELOC")

Third Amended Adversary Complaint     4     Adv. Case No. 10-05245

# FACTUAL ALLEGATIONS

16. On July 6, 2007, Loan Consultant Louis Helmonds met with the Plaintiff and he prepared a loan application at his office on Saratoga Sunnyvale Road in Saratoga for the refinance of the Plaintiff's existing loans on the residence at 15070 Douglass Lane, Saratoga 95070.

17. At the July 6 meeting, the Plaintiff indicated that he no longer needed the property and intended to sell the property after it was prepared for the market. The Plaintiff stated that he preferred one loan to replace the two existing loans. The refinance was to be stated income, low documentation and asset based 40-year loan because the Plaintiff was self-employed.

18. Mr. Helmonds stated that the refinance should be split into two loans. Mr. Helmonds stated that the Plaintiff could obtain a $500,000 home equity line of credit immediately after the payoff of the existing first and second loans. Mr. Helmonds maintained this misrepresentation until August 14, 2007 when the Plaintiff received a Commitment Letter from Helmonds that changed the terms of the $500,000 HELOC to full documentation.

19. The false representation that the Plaintiff could obtain a $500,000 HELOC on the same refinance terms caused the subsequent failure of the loan because the $500,000 was required to adequately capitalize the refinance and without that amount the risk of the failure was greatly increased.

20. The addition of a 2% prepayment penalty on July 24, 2007 further increased the risk of loan failure. Plaintiff has been seriously harmed by the Helmonds misrepresentations and concealments, which substantially caused this bankruptcy.[2] Mr. Helmonds serially lied to the Plaintiff in order to close the refinance and to make undisclosed commissions.

---

[2] Perlas v. GMAC Mortg., LLC, 187 Cal. App. 4th 429, 434 (2010)

**Third Amended Adversary Complaint**      5      Adv. Case No. 10-05245

21. On July 10, 2007, WMBFA (Helmonds) formally changed the First Loan from a 40-year loan to a 30-year loan at 7.493 % interest according to the Commitment Letter obtained in discovery in August 2011. The Plaintiff was not informed of terms.

22. On or about July 12, 2007, the Plaintiff received the deceptive Good Faith Estimate of Settlement Charges and Settlement Service Provider Disclosure (GFE) print dated 7/9/2007 by mail. The GFE was deceptive because it did not specify the terms and conditions known to Helmonds on July 6 and expressed in the undisclosed July 10 Commitment Letter. The GFE, inter alia, deceptively stated that:

    a. the interest rate was 1.775%;

    b. the COFFI index was 4.293%;

    c. the term 480 months;

    d. the loan origination fee was 1%;

    e. the mortgage loan amount was $2,939,000;

23. Had the Plaintiff known that he was qualified for the lower interest rate of 7.49% he would not have closed the First Loan on July 26, 2007 at an interest rate of 8.08 %. The higher interest rate increased the risk of failure in the refinance by increasing interest payments $17,654 per year and monthly payments by nearly $1,500.

24. On July 16, 2007, LSI Appraisal, LLC completed the property appraisal report showing an appraised value of $4,400,000.

25. Four Commitment Letters were produced in discovery for July 10, 11, 20 and 26. 2007 but they were not given to the Plaintiff during loan origination.

26. On July 24, 2007, Mr. Helmonds told the Plaintiff in a telephone call made to Plaintiff's residence that without a prepayment fee that the interest rate on the loan would be increased. He did not disclose the increase and did not disclose the proposed interest rate.

27. Plaintiff learned in April 2012 that the Commitment Letter for the July 26 loan did not require a prepayment penalty and that there was no effect on the interest rate.[3] The 2% prepayment penalty greatly increased the risk of default by imposing a penalty of $59,845.3 for selling the house in the first year.[4] Mr. Helmonds lied again to the Plaintiff.

28. On July 25, 2007, the first escrow was held at Stewart Title of California at their Saratoga Sunnyvale Road office. The Plaintiff was surprised that the loan presented was a 30-year loan instead of the 40-year loan and the interest rate was higher than the loan it was to replace. The monthly payments were also significantly greater. The Plaintiff expressed his concerns to Mr. Helmonds. Mr. Helmonds further misrepresented that the Plaintiff could get a lower interest rate when his FICO score increased to 690 or more. The Plaintiff aborted the July 25 escrow.

29. On July 26, 2007, the second escrow was held at Stewart Title of California in Saratoga and the Plaintiff for a 40-year loan. Mr. Helmonds dropped off a disclosure that states that North American Mortgage Company processed the Loan. The escrow was completed with only the escrow agent and the Plaintiff present.

30. The Plaintiff was not given the Loan Approval or Commitment Letter for the July 26 escrow as required by the Escrow Agreement and Notification, and the Lenders closing Instructions. 15 USC 1638(b), Reg. Z 226.17

31. On August 1, 2007, the escrow closed with the payoff by wire of the two existing loans and their replacement by the new WMBFA loan. The Plaintiff was overcharged interest on the paid off loans through August 3, 2007.

32. On or about August 14, 2007, Plaintiff received a Commitment Letter from Mr. Helmonds for a $500,000 home equity line of credit. The Commitment Letter discloses a full documentation loan requiring tax returns, and other documentation. This was a shock

---

[3] None of the underwriting documents require a prepayment penalty.
[4] Furthermore, prepayment penalties facilitate kickbacks by lenders to brokers (yield-spread premiums) for placing borrowers in loans at a higher interest than the borrower could otherwise qualify for. , Why Prepayment Penalties are Abusive in Subprime Home Loans, Center for Responsible Lending, CRL Policy Paper No. 4, April 2, 2003

**Third Amended Adversary Complaint**        7        Adv. Case No. 10-05245

to the Plaintiff. The Plaintiff immediately called Mr. Helmonds. Mr. Helmonds advised Plaintiff not to accept the altered loan terms. Helmonds indicated that he could get a $250,000 home equity line of credit and then later increase it to $500,000 when the FICO score increased to 690 or above.

33. The Plaintiffs reliance on the $500,000 Second Loan was the main reason the Plaintiff signed the First Loan on July 26. The increased interest rate and the 2% prepayment penalty greatly increased the risk of failure without the $500,000 second.

34. Mr. Helmonds lied to the Plaintiff about the $500,000 second loan, the prepayment penalty and the reduction in the interest rate payment just as he had lied to the Plaintiff on the GFE. Mr. Helmonds concealed the disclosures that would have revealed the lies.

35. Mr. Helmonds was a Senior Loan Consultant and the Plaintiff had no reason to doubt Helmonds authority to speak for WMBFA. The Plaintiff had no knowledge that WMBFA did not exist and was a "straw man" lender name and no reason to investigate.

36. On August 20, 2007 the First Loan Origination file was shipped to Sonia Martinez. Martinez performed a due diligence audit of the First Loan qualify it for securitization.

37. The FHLB_SF states that on or about August 28, 2007, the First Loan was pledged by WMB under a "blanket lien" to the Federal Home Loan Bank of San Francisco ("FHLB_SF") for money advanced.

38. On September 12, Helmonds and Silva initiated a second loan for $250,000. Plaintiff made no application for this loan.

39. On or about September 18, 2007, documents for the home equity line of credit for $250,000 were signed at the Washington Mutual office on Sunnyvale-Saratoga Road in Saratoga, California. Only Rosalie Silva and the Plaintiff were present.

40. On September 20, 2007, a new set of Second Loan documents was printed out because Rosalie Silva did not follow the Signing Instructions.

41. In early October 2007, the $250,000 Second Loan was sold to WMI as indicated by the FISERV title insurance policy that lists WMI as the creditor.

**Third Amended Adversary Complaint**     8     Adv. Case No. 10-05245