pay Community Association Dues, Fees, and Assessments for which he may be personally liable (but which are not assessed to the collateral).

120. This makes the Adjustable Rate Note subject to terms in the Deed of Trust. Therefore, The Adjustable Rate Note is not negotiable under Cal. Comm. Code 3106(a) and this anomaly is not exempted under 3106 (b) because it does not affect the collateral.

121. Plaintiff is discharged from any possible obligation of First Loan Note by Chase's uttering of the fraudulently altered Note under Calif. Commercial Code 3407 as follows:

> "a) "Alteration" means (1) an unauthorized change in an instrument that purports to modify in any respect the obligation of a party, or (2) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party.
>
> (b) Except as provided in subdivision (c), <u>an alteration fraudulently made discharges a party whose obligation is affected by the alteration</u> unless that party assents or is precluded from asserting the alteration. No other alteration discharges a party, and the instrument may be enforced according to its original terms."
>
> [emphasis added]

122. The purported color copy of the original "wet ink" Note uttered by Chase on January 27, 2012, August 2012 and October 18, 2012 is an altered document under Cal. Comm. Code 3407 (a) that purports to obligate the Plaintiff by simulating actual possession of the Note by Chase.

123. The alteration is fraudulent as made by Chase and the Plaintiff as borrower is discharged as to Chase because the alteration was intended to make Plaintiff liable to Chase under Cal. Comm. Code 3407 (b).

124. Chase has not and cannot prove that the FDIC Receiver transferred the Loans at Bank Close using the P&A because no loan inventory was exchanged between Chase and the FDIC by their own sworn admissions. The P&A required Chase to produce a list of loan assets as follows:

> "In addition, the Assuming Bank <u>is to provide</u> to the Receiver, in a standard data request as defined by the Receiver, an electronic database of all loans, deposits, and

**Third Amended Adversary Complaint**     21     Adv. Case No. 10-05245

subsidiaries and other business combinations owned by the Failed Bank as of Bank Closing. See Schedule 3.1a."
[P&A -Article VIII, page 21 ]

Chase did not execute this clause of the contract.

125.   The Vicki Landis (Chase) in her 30(B)(6) deposition states that Chase never supplied the FDIC Receiver with a list of loans transferred by the Receiver at Bank Closing.[27] This is confirmed by the FDIC as Receiver.

126.   On August 12, 2008, the SOT was filed with the Santa Clara County Recorder. The SOT contains the forged signature of Notary Banaszewski according to document examiner Dr. Laurie Holtzel.

127.   WMB's attempt through "Jodi Sobotta" to name itself the beneficiary of the DOT is a nullity. Section 24 of the DOT clearly states that only the "Lender" may appoint a successor trustee and the original and the only Lender of record is WMBFA not WMB.

**TENDER ALLEGATIONS**

128.   The Truth in Lending Act does not say where the borrower must obtain the property necessary to tender to the creditor. It only says that the borrower must tender either the property or its reasonable value.[28] [29] [30]

129.   Plaintiff can and will tender the amount due on the Adjustable Rate Note and HELOC reduced by the offsets the Court awards in one or more of the following ways:

   a.  by money obtained from the sale of the property;
   b.  by tendering the property itself in return for the return of all moneys paid in making the loans and the RESPA and TILA damages and the assessed;
   c.  by licensing his patents;

---

[27] Landis is not a witness to the Receivership. But was instructed to testify to this.
[28] Section 1635(b) states ".... Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value."
[29] *FDIC v. Hughes Dev. Co.*, 938 F.2d 889, 890 (8th Cir.1991) (district court did not err in conditioning rescission on tender of $100,000 principal within one year)
[30] *Williams*, 968 F.2d at 1141-42 (voiding of creditor's security interest in home may be conditioned on consumer's tender of amount owed to creditor after subtracting all finance charges and penalties)

**Third Amended Adversary Complaint**         22         Adv. Case No. 10-05245

  d. by paying the reasonable value of the property by less the rescission and RESPA and TILA offsets through financial arrangements extrinsic to Chase.

130. A finding of loan contract invalidity does not require a tender allegation. However, the equitable claims can be resolved as in the previous paragraph.

## DECLARATORY RELIEF CLAIMS

### CLAIM 1: STATUTORY CONTRACT INVALIDITY

131. The Plaintiff restates and incorporates herein by reference the allegations contained in foregoing paragraphs especially paragraphs-17-42 and 96-117.

132. In 2007, and thereafter, WMBFA had no legal existence and lacked the capacity to contract. It is undisputed public information that WMBFA did not exist as a legal person and did not exist as federal saving association after April 2005. WMBFA could not be the Lender as stated on the First Loan documents. CCC 1550 (1), CCC 1556

133. There was not the meeting of the minds necessary to form a legally binding contract. Helmonds made affirmative misrepresentations, inaccurate disclosures, did not disclose at the proper time, and concealed critical information that would have alerted the Plaintiff to the enormously increased risk of the default in the refinance. This deceptive conduct prevented any meeting of the minds. [31]CCC 1550(2)

134. The undelivered Commitment Letter on July 26 both shows the objective falsehood of Helmonds' representation to the Plaintiff that without the prepayment fee the loan interest would be higher.

135. The underwriting documents and rate sheets obtained in May 2012 from the FDIC Loan File reveal that Mr. Helmonds misrepresented the terms, conditions and availability of the $500,000 home equity loan. These misrepresentations prevented any meeting of the minds and enormously increased the Plaintiff's risk of default. CCC 1550(2)

---

[31] "...the consent of the parties to a contract must be (1) Free; (2) Mutual; and (3) Communicated by each to the other", Civil Code section 1565

**Third Amended Adversary Complaint**    23    Adv. Case No. 10-05245

136. The Commitment Letter for the $500,000 Second Loan has been removed from the Chase Loan File. However, the Plaintiff retained a copy.

137. There was a failure of sufficient consideration when Plaintiff's refinance was reduced by $250,000.

> "Consideration may be an act, forbearance, change in legal relations, or a promise."[32]
>
> "Consent is not mutual, unless the parties all agree upon the same thing in the same sense."[33]

The $500,000 home equity loan was essential to the refinance. This serious deception increased the Plaintiff's default risk, which was further increased by the deceptive and unnecessary imposition of a 2% prepayment penalty. The prepayment penalty served to chill early efforts to sell the property and further increased the risk of default. CCC 1550(4)

138. The disclosure of Washington Mutual Bank, FA as an affiliate of Washington Mutual Bank in the Affiliated Business Arrangement Disclosure was false and misleading. The disclosure deceptively states that WMB and WMBFA were settlement service providers that could charge each other:

> "…are affiliates and that referral of business between these companies may provide these companies or WMI with a financial or other benefit."

139. The misrepresentation of the non-existent WMBFA as the "creditor" on the First Loan documents was a serious deception likely intended to hide fee splitting between captive WMI subsidiaries and to frustrate litigation.

140. Two escrows were held at the Sunnyvale-Saratoga Road office of Stewart Title of California in Saratoga. The first escrow was held July 25, 2007. The second escrow was held July 26, 2007.

---

[32] Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, 207
[33] Cal. Civil Code section 1580

**Third Amended Adversary Complaint**     24     Adv. Case No. 10-05245

141. On July 25, 2007, Plaintiff was unhappy about the interest rate disclosed at that escrow and was also surprised at the 30-year loan term. This escrow was aborted after a number of loan documents were signed.

142. Mr. Helmonds responded to the interest rate issue by misrepresenting that the interest rate could be reduced upon obtaining a FICO of 690. Helmonds did this to induce the Plaintiff to sign the First Loan papers but had no intention of performing.

143. The Plaintiff agreed to a refinance based on Mr. Helmonds' serious misrepresentations and non-disclosures while Mr. Helmonds sought to maximize his undisclosed commission. Mutual consent cannot exist where there are such serious misrepresentations and non-disclosures. CCC 1550(2)

144. On July 26, 2007, a second escrow was held on a 40-year loan. Mr. Helmonds left the NAMCO disclosure at the escrow and did not stay. Mr. Helmonds gave no explanation for his absence.[34] The disclosure unequivocally states that the loan application was submitted to NAMCO. The disclosure was deceptive because it did not disclose that NAMCO was a wholesale broker. This deception caused a failure of mutual consent. CCC 1550 (1) & (2), CCC 1558

145. An undisclosed commission was split between NAMCO, Helmonds, Helmonds' employer and possibly WMI or WMB. These were unearned fee splits between the WMI captive service providers WMBFA (fictitious), NAMCO, and Helmonds in violation Section 8(b) of RESPA.[35]

146. Plaintiff alleges that NAMCO did not perform any substantial work to justify the fees.[36] NAMCO did not make an appearance at the escrows.[37]

---

[34] NAMCO was a mortgage broker. Helmonds was not a licensed broker

[35] "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally regulated mortgage loan shall be referred to any person." 12 U.S.C. § 2601(b)(1) & (2).

[36] Congress did not intend for the controlled business arrangement ("CBA") amendment to be used to promote referral fee payments through sham arrangements or shell entities. H.R. Rep. 123, 98th Cong., 1st Sess. 76 (1983)

[37] Schuetz v. Banc One Mortgage, 292 F.3d 1004 (9 Cir.2003), cert. denied, 537 U.S. 1171 (2004) at 1012

**Third Amended Adversary Complaint**     25     Adv. Case No. 10-05245

147. Helmonds referred the loan to NAMCO when it could not be placed through retail after failure of the July 25 retail escrow. Fees were split including undisclosed "interest rate overage" with Helmonds' employer of at least 0.59%.[38]

148. On July 26, 2007, NAMCO as a broker owed a fiduciary duty to the Plaintiff as specified in Cal. Civ. Code 2923.1.[39] NAMCO breached its fiduciary duty by not informing the Plaintiff of the interest rate overages, the fee splitting, and the lack of a requirement for a prepayment penalty and by not disclosing the Loan Approval and the Commitment Letters.

149. Plaintiff alleges equitable tolling of the RESPA statute of limitations due to Chase's continued concealment.[40]

150. The changes in second loan terms caused a failure of sufficient consideration and demonstrates that there was no meeting of the minds. The Plaintiff thought he was getting a $500,000 Second Loan at the time he signed the First Loan. Helmonds and his employer thought they could change the terms of the refinance to the Plaintiff's great detriment after the First Loan was signed. CCC 1550(2), CCC 1550(4)

151. The First and Second Loan Contracts were adhesion contracts executed pursuant to a single refinance. WMBFA, NAMCO and Helmonds had bargaining power superior to the Plaintiff. The contracts were procedurally unconscionable because of the "surprise" prepayment penalty, surprise interest rate, and surprise terms and the surprise refusal to provide the $500,000 on the same terms as the First Loan. The contracts were substantially unconscionable because they put the Plaintiff at a greatly increased risk of default. If the Plaintiff had been informed prior to escrow of the change in terms, he

---

[38] This information is in the FDIC Loan File produced in April 2012.

[39] A mortgage broker providing mortgage brokerage services to a borrower is the fiduciary of the borrower, and any violation of the broker's fiduciary duties shall be a violation of the mortgage broker's license law. This fiduciary duty includes a requirement that the mortgage broker place the economic interest of the borrower ahead of his or her own economic interest. A mortgage broker who provides mortgage brokerage services to the borrower owes this fiduciary duty to the borrower regardless of whether the mortgage broker is acting as an agent for any other party in connection with the residential mortgage loan transaction.

[40] 12 U.S.C. § 2614

**Third Amended Adversary Complaint**      26      Adv. Case No. 10-05245

could have shopped, refinanced elsewhere and avoided the greatly increased default risk.[41] CCC 1670.5

152. By October 2007, Plaintiff's FICO score reached 690 and the Second Loan amount was not increased and the interest rate on the first loan was not reduced. This was a further failure of sufficient consideration in the refinance.[42]

**CLAIM 2: TILA RESCISSION OF FIRST LOAN**

153. The Plaintiff restates and incorporates herein by reference the foregoing allegations especially paragraphs 17-31, 73, 96-108.

154. The First Loan (WMBFA #30118113559) is a closed end consumer loan secured by Plaintiff's residence. Plaintiff is a consumer.

155. The First Loan is a residential mortgage transaction under 15 USC 1602 which is subject to RESPA under 12 U.S.C. 2601 et seq.

156. The loan origination disclosures were not clear and conspicuous but were often contradictory and grossly inaccurate as alleged herein.[43]

157. The Plaintiff was given two incomplete Notices of Right to Cancel at escrow on July 26, 2007 that did not state the "date the rescission period expires" or any other date thereby giving rise to the 3 year extended right of rescission.[44]

158. The Finance Charge was understated by more than $35 on the Truth in Lending Disclosure Statement as detailed herein giving rise to the 3 year extended right of rescission as alleged in detail herein.[45]

159. The Truth in Lending Disclosure Statement is deceptive, unclear and misleading in light of the Truth in Lending Worksheet attached thereto. The Worksheet, which has a

---

[41] Gentry V. Circuit City Stores, Inc., In the Supreme Court of California, S141502, Filed 8/30/2007
[42] Sufficient consideration would have been the $500,000 as previously agreed.
[43] 15 USC § 1632(a); Reg. Z § 226.5(a)(1), 226.17(a)
[44] Reg. Z 226.23(a)(3), 226.23(b)(1)(v)
[45] 15 USC 1635, 226.18(d)(i)

Third Amended Adversary Complaint     27     Adv. Case No. 10-05245

1 misleading, unclear and incorrect itemization of the finance charge, was given to the Plaintiff.

160. The identity of the actual creditor was not disclosed.[46]

161. The Plaintiff timely and properly rescinded the First Loan.[47]

162. Chase failed to take the required rescission actions within 20 days after notice of cancellation giving rise to statutory liability.[48]

---

[46] 15 USC 1638 (a)(1), U.S.C. 1602(f); Reg. Z. 226.2(a)(17).
[47] Reg. Z 226.23 (a)(2)
[48] 15 USC 1635(b); Reg. Z 226.15(d)(2), 226.23(d)(2)

**CLAIM 3: TILA RESCISION OF THE SECOND LOAN**

163. The Plaintiff restates and incorporates herein by reference the foregoing allegations, especially 32-42, 70-73, and 109-117.

164. The Second Loan is an open-ended consumer loan under USC1602. Plaintiff is a consumer.

165. Helmonds initiated the Second Loan without application from the Plaintiff violating the procedures required by 15 USC 1637 and Reg. Z 226.5(b).

166. The Second Loan was signed on 9/18/07 but the loan closing violated the Signing Instructions and new loan documents were printed on 9/20/07. The new disclosures were not given to the Plaintiff and the right of rescission was extended to 3 years. [49]

167. The Second Loan revisions made 9/20/07 caused the expiration date on the Notices of Right to Cancel to be 9/24/07. The Plaintiff was not given new Notices of Right to Cancel extending thereby the right of rescission to 3 years.

168. The dates on specific Second Loan documents were admittedly altered by Silva after signing. The Plaintiff's signature was altered on the Credit Agreement and Deed of Trust after signing from "James M. Kelley" to "James Kelley".

169. The Deed of Trust was not notarized in the presence of the Plaintiff and Rosalie Silva will not or cannot produce her Notary Journal and has declared it missing.

170. On June 24, 2010, the Plaintiff rescinded the Second Loan within the 3-year statute of repose.

171. Chase failed to take the required rescission action within 20 days after notice of cancellation giving rise to statutory liability. [50]

---

[49] Reg. 226.23(a)(3)
[50] 15 USC 1635(b); Reg. Z 226.15(d)(2), 226.23(d)(2)

**Third Amended Adversary Complaint**   29   Adv. Case No. 10-05245

Case: 10-05245   Doc# 384-2   Filed: 03/27/14   Entered: 03/28/14 13:36:00   Page 9 of 12

## CLAIM 4: OBJECTION TO PROOF OF CLAIM 2

172. The Plaintiff restates and incorporates herein by reference the foregoing allegations, especially paragraphs 43-47, 56-62, 73, 85, 90-93, and 118-133.

173. Chase is not the real party in interest of the First Loan. The First Loan was sold/pledged prior to Receivership. The $436 K Loss confirms this.

174. Chase has not borne its burden to prove its standing as a real party in interest.

175. Chase can not show that it is the "person entitled to enforce " enforce the Note.

176. Chase lacks constitutional standing because it can never have injury from non-payment of the loan. Chase did not originate the loan, did not fund the loan, and did not pay the FDIC Receiver for the loan.

177. There is no evidence Receiver transferred the loan to Chase on September 25, 2008 through PAA.

178. The purported original Adjustable Rate Note produced by Chase is fraudulent because the blank endorsement of Cynthia A. Riley is fraudulent.

179. The two paper versions of purported original Adjustable Rate Note produced by Chase are fraudulent because the signatures are fraudulent.

## CLAIM 5: OBJECTION TO PROOF OF CLAIM 3

180. The Plaintiff restates and incorporates herein by reference the foregoing allegations, especially paragraphs 19, 63,70-72,73,90,93, and 142.

181. Chase is not the real party in interest of the Second Loan. There is evidence that the Second Loan was sold to WMI in October 2007.

182. Chase has not borne its burden to prove its standing as a real party in interest. Chase cannot produce the original collateral file for this loan.

183. Chase lacks constitutional standing and can never have injury from non-payment of the Second Loan because Chase did not originate the loan, did not fund the loan, did not pay anything for the loan and did not receive the loan from the Receiver.

Third Amended Adversary Complaint        30        Adv. Case No. 10-05245

Case: 10-05245    Doc# 384-2    Filed: 03/27/14    Entered: 03/28/14 13:36:00    Page 10 of 12

184. The Second Loan was sold prior to receivership to WMI in October 2008 as alleged and could not have been transferred by the Receiver to Chase.

185. The purported original Credit Agreement produced by Chase is counterfeit because the blank endorsement of Cynthia A. Riley is fraudulent.

186. The purported original Credit Agreement produced by Chase fraudulent because the signature thereon is fraudulent.

187. The Signature on the Deed of Trust produced by Chase fraudulent because the signature thereon is fraudulent.

**CLAIM 6: FIRST LOAN PAYMENT AND DISCHARGE OF DEBT**

188. The amount due on the Adjustable Rate Note for the First Loan has been reduced by at least $2.75 million or eliminated by the partial or complete payment of the Adjustable Rate Note.

189. Chase can have no standing with respect the First Loan if it has been paid off because the Note is extinguished and the Deed of Trust becomes void by payment in full.

190. Any tender amount is reduced by at least an additional $2.76 million in insurance payments upon rescission.

191. There is specific evidence of a series of large cash payments made into the account of loan #3018113559 commencing after the Notice of Default was filed June 30, 2008 and before the receivership September 25, 2008 as follows:

| | |
|---|---|
| 2008 $ 436, 503.26 | $436,503.26 |
| 9/23/2009 $ 435,734.43 insurance payment 2009 | $435,734.43 |
| 9/24/2009 $ 435,734.43 insurance payment 2009 | $435,734.43 |
| 9/23/2009 $ 435,734.43 insurance payment 2009 | $435,734.43 |
| 9/27/2010 $ 282,719.91 Insurance payment 2010 | $282,719.91 |
| 3/25/2011 $ 127,250.00 Insurance payment 2011 | $127,250.00 |
| 4/24/2012 $ 59,950.00 Insurance payment 2012 | $59,950.00 |
| 9/25/2012 $ 543,370.00 Insurance payment 2012 | $543,370.00 |
| Total | $2,756,996.46 |

192. The payments were made on anniversary dates in 2009, 2010, 2011 and 2012. Chase has not disclosed payments made in 2013 in discovery.

193. The payments were made into tranches of a private mortgage backed securities trust.[51] (See JPM000970, JPM000971, JPM00115, JPM00116, JPM001181, JPM002000, JPM002001, JPM002003, JPM002004, JPM002005, etc.

194. Evidence from the Quality Loan Service Corporation indicates that these payments are loan insurance payments. The Quality Loan Service Corporation discovery classifies the type of insurance on the loan as "OTHER" (see QLS-000099).

195. PRAYER FOR RELIEF

Wherefore Plaintiff prays for the following relief that:

1. the First and Second Loans to be declared void ab initio; and /or

---

[51] It is likely that "Portfolio Pool" was securitized as a private mortgage backed securities trust.

**Third Amended Adversary Complaint**     32     Adv. Case No. 10-05245