1      UNITED STATES BANKRUPTCY COURT

2      NORTHERN DISTRICT OF CALIFORNIA

3          (SAN JOSE DIVISION)

4

5  In re:

6  JAMES MADISON KELLEY,            Case No. 08-55305

7                                   Chapter 11

8                                   San Jose, California
                                    December 4, 2014
9                                   4:20 p.m.
          Debtor.
10 _____/

11 JAMES MADISON KELLEY,

12        Plaintiff,

13     v.                          A.P. No. 10-5245

14 JP MORGAN CHASE BANK, N.A.,

15        Defendant.
   _____/

16
                TRANSCRIPT OF PROCEEDINGS
17     a) MOTION TO COMPEL JP MORGAN CHASE BANK, N.A. TO
            PRODUCE DOCUMENTS FILED BY JAMES KELLEY
18     b) OPPOSITION BY JP MORGAN CHASE BANK, N.A.

19
          BEFORE THE HONORABLE ARTHUR S. WEISSBRODT
20             UNITED STATES BANKRUPTCY JUDGE

21 APPEARANCES:

22 For JP Morgan Chase:    ALVARADO SMITH APC
                           BY: S. CHRISTOPHER YOO, ESQ.
23                         1 MacArthur Place #200
                           Santa Ana, California 92707
24
                           (APPEARING TELEPHONICALLY)
25

```
1   APPEARANCES (CONTINUED):

2
    Debtor/Plaintiff,          JAMES MADISON KELLEY
3   in pro per:                14390 Douglass Lane
                               Saratoga, California 95070
4

5
    Court Recorder:            YONG WON
6                              UNITED STATES BANKRUPTCY COURT
                               280 South First Street
7                              San Jose, California 95113

8

9   Transcription Service:     Jo McCall
                               Electronic Court
10                             Recording/Transcribing
                               2868 E. Clifton Court
11                             Gilbert, Arizona 85295
                               Telephone: (480) 361-3790
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

PROCEEDINGS

1

December 4, 2014                          4:20 p.m.

2

-oOo-

3

4          THE COURT: Okay.  <u>Kelley.</u>

5          MR. YOO: Christopher Yoo.  Last name is spelled

6   Y-o-o, appearing for JP Morgan Chase Bank, N.A.

7          MR. KELLEY: James Kelly, Plaintiff.

8          THE COURT: Yes.  Why don't you sit down Mr.

9   Kelley.  So the Court has issued a tentative decision, and

10  if anybody wants to be heard with respect to the tentative

11  decision, take a few minutes and respond.

12         MR. KELLEY: I'd like to respond, just to clarify

13  a few things.  Okay.  I guess the first item is the things

14  on the first page referring to internal accounting code.

15  I'm in particular interested in 030 because that's the

16  original funder of the loan, and I believe that these codes

17  are relevant to the contract and validity claim, part of

18  which is the inability to identify the lender.  And we know

19  that Washington Mutual Bank, F.A. did not exist in 2007 as

20  a corporation of any type.  It ceased to exist in April of

21  2005.  So the name on the first loan is kind of a

22  fictitious name, and that's why I'm asking for that

23  information.

24         Also, Crystal Davis --

25         THE COURT: Wait, wait, wait.  I just want to make

1  sure I understand what you're talking about.

2          MR. KELLEY: Okay.  It would be line 25.

3          THE COURT: So there are 49 document requests at

4  issue.  Which number is this?

5          MR. KELLEY: Oh, I didn't bring the actual number.

6          THE COURT: Well, I need that because that's the

7  way I have it.

8          MR. KELLEY: I'm sorry.  I don't have it with me.

9          THE COURT: You don't have your requests?

10          MR. KELLEY: No, and that's my error.

11          THE COURT: Well, I can't function without it.  I

12  don't know what you're talking about.

13          MR. YOO: Your Honor, this is Christopher Yoo for

14  Chase.  I have the requests as well as the responses and

15  whenever Mr. Kelley is done, I'd like to be heard.

16          THE COURT: Yeah, of course.  But I don't know

17  what he's talking about.

18          MR. YOO: I understand that, Your Honor.

19          THE COURT: Do you know which number it is?

20          MR. YOO: Hold on for a second.

21      (Pause.)

22          I don't, Your Honor.

23          THE COURT: Mr. Kelley, I can't --

24          MR. YOO: I would have to read the entire 49

25  requests all over again.

1        THE COURT: Yeah, I'd have to read all 49.   I

2 don't know what you're talking about.

3        MR. KELLEY: I'm sorry.  This has come up before,

4 but I don't have the specific --

5        THE COURT: I don't have a memory of these

6 numbers.  I can't look at it.  I don't know what you're

7 talking about.

8        MR. KELLEY: Well, I remember the investor I.D.

9 numbers, and that's what we're talking about, so those

10 forms are actually the investor I.D. numbers, and I was

11 just --

12        THE COURT: And I don't think you have a right to

13 find out who the investors are.

14        MR. KELLEY: Well, I think the initial --

15        MR. YOO: Your Honor?

16        MR. KELLEY:  -- the initial investor, 030, is the

17 one that funded the loan, and so that is the one that's

18 most important.  The other ones we can show through other

19 evidence, A01 and A11 (could be 801 and 811), that those

20 are private investor I.D.'s.  So --

21        THE COURT: What did you want to say, Mr. Yoo?

22        MR. YOO: Your Honor, this is Christopher Yoo

23 again for -- I think we've gone through this issue over and

24 over and over again at prior hearings.  It's very simple.

25 The subject loan was made by Washington Mutual Bank, and

1  when Washington Mutual Bank was closed in September of

2  2008, the FDIC sold the subject loan to JP Morgan Chase

3  Bank.  There's no private investor.  The loan was

4  originated by Washington Mutual, and the loan was sold to

5  Chase.  The subject loan was never ever securitized.  At

6  one point, before the loan was sold to Chase by the FDIC,

7  it was pledged as collateral for Federal Home Loan, and

8  that pledging –- the subject loan was removed from the

9  pledging prior to the sale of the loan or assignment of the

10  loan to Chase.

11       So all this information about investor codes,

12  none of that is rally relevant.  It's simple.  The loan was

13  made by Washington Mutual; then it was sold to Chase.  End

14  of story.  We showed him the original note and the deed of

15  trust for both the first loan and the second heloc to Mr.

16  Kelley and to his purported expert, who's been withdrawn.

17  If Chase is not the lender of the loan, it would not have

18  in its possession the original note and the deed of trust.

19       MR. KELLEY: May I respond?

20       THE COURT: Sure.

21       MR. KELLEY: Okay.  First of all, the fact that

22  the loan was pledged to the Federal Home Loan Bank from

23  September through December of 2007 does not mean that Chase

24  owned the loan or that Washington Mutual owned the loan,

25  and in fact, the records show that the loan was sold on

1  December 17th, with a transaction date effective January 1st

2  of 2008.  It was sold.  And it's right in the records which

3  you produced on discovery.  So your interpretation of the

4  effect of pledging is not correct.

5          The other thing is that the heloc -- there is no

6  information on the heloc.  It wasn't pledged as far as we

7  know, and the only document I have that shows who owned the

8  heloc loan has the name Washington Mutual, Inc. on it, and

9  Washington Mutual, Inc. is not a bank; it was a holding

10 company.

11         Okay.  So those investor I.D.'s, 030, is

12 apparently the original lender, and that's why I wanted the

13 information.  I want to know who it is.  Maybe the other

14 ones don't matter so much, but in addition, we have other

15 evidence in the case; it's on file, that shows that the

16 receiver paid $436,000 -- took a $436,000 loss in this

17 loan, and this $436,000 is probably not insurance; it's a

18 guaranty.  You know, it's a guarantor reimbursement to the

19 people who purchased the loan effective January 1st, 2008,

20 and those people -- I have other information indicating

21 that those people are probably -- were European investors

22 because Washington Mutual sold three and a half to four

23 billion dollars of loans in the fourth quarter of 2007.

24 And so -- they were trying to raise money, and they sold

25 everything they could.  They sold them to overseas, to

1  foreign investors, including Saudi Arabia, and I think that
2  what Mr. Yoo has been saying is just completely wrong.

3       I had a couple of other -- just a couple of other
4  little items.  Yeah, and so the documents that Chase has
5  produced show that the loan was two backdated loan
6  transfers jumping from the end of 2008 back to March of
7  2008, and another one jumping from August of 2009 back to
8  March of 2008, and that can only be for the purposes of
9  creating the fiction that Washington Mutual Bank held the
10 loan at the time of the receivership.  There's no other
11 proof.  There's no inventory of loans; there's no records
12 of assignments; there's nothing there.  So I just want to
13 make that clear.  So I was seeking information on that.
14 I'm not asking for 2,000 more pages of the same stuff, but
15 just, you know, who are these people.

16      And Mr. Yoo, I believe, mentioned that how could
17 Chase have the note.  Well, you know, of course that's a
18 contested item in this case.  The note -- you know, the
19 evidence we have is the note is counterfeit, and there's a
20 lot of evidence that Washington Mutual Bank destroyed a lot
21 of the notes, but Chase has the servicing records because
22 they bought the servicing business, so they would have
23 access to the digital images of all of their loan
24 origination files which had been scanned by ACS Image
25 Solutions in Texas for them, under contract to Washington

1  Mutual, Inc., not Washington Mutual Bank.  So I just want
2  to make sure that the Court understands that the heloc, as
3  far as I know, was never pledged, just that one, the big
4  loan was pledged for about four months, and that's it.  And
5  so it doesn't prove anything other than that it was pledged
6  and then the other records show that it was sold on
7  December 17th in a transaction effective January 1st, and
8  that's why I'm asking for the original investor
9  information.  And I'm just trying to clear that up.
10        THE COURT: Okay.  I've looked at No. 32, and this
11  says "Business records specifying the business entity
12  corresponding to 030-106 as per JPM002035."  Is that what
13  you're referencing?
14        MR. KELLEY: Yes.
15        THE COURT: All right.  I'll give it to you.  Just
16  business records sufficient to specify the business entity
17  corresponding to 030-106 as per JPM002035, not every record
18  that ever refers to any of that, just business records
19  sufficient to specify the business entity.
20        MR. KELLEY: Oh, that's fine.  I just --
21        THE COURT: I just did it.  It's done.
22        MR. KELLEY: Oh, okay.  Thank you.
23        THE COURT: Okay.  So with that, the decision is
24  final, and --
25        MR. YOO: Your Honor, may I be heard?

1    THE COURT: Yes, of course.  You had asked that; I
2  should have let you speak.

3    MR. YOO: Your Honor, let me just deal with your
4  tentative ruling or request for --

5    THE COURT: I can't hear you, Mr. Yoo.  You
6  apparently have walked away from your mic too much.

7    MR. YOO: The head phone is right next to my
8  mouth.

9    THE COURT: Well, you should have it --

10    MR. YOO: Let me repeat again.

11    THE COURT: Yeah, okay.

12    MR. YOO: The Request No. 1 states: "Business
13  records showing that Chase continues to be the servicer of
14  the two loans at issue," and you are granting it.  Your
15  Honor, Chase -- both of the proponents, the person most
16  knowledgeable, you know, as Ms. Crystal Davis testified --

17    THE COURT: Sir, sir, please talk a little slower
18  and a little louder.

19    MR. YOO: Okay.  Let me speak a little louder.
20  Can you hear me, Your Honor?

21    THE COURT: Are you on a headset?  Are you on a
22  regular land --

23    MR. YOO: I'm on a regular line with the handle
24  next to my mouth.

25    THE COURT: Okay.  Well now I can hear you well.

1       MR. YOO: Okay.  Let me start over again.  The

2  Request No. 1, you granted it.  You're in essence asking

3  Chase to prove that it is the current servicer.  Even Mr.

4  Kelley acknowledges that Chase was the servicer.  Until the

5  servicer changes, I don't understand how Chase can provide

6  the -- you know, absent a declaration that it still is the

7  servicer, to prove that it is the servicer.  If there was a

8  change of servicership, then the new servicer, you know,

9  would inform Mr. Kelley that another entity is the

10 servicer.  In this case, there's no other documentation

11 because Chase acquired the subject loans pursuant to the

12 purchase and assumption agreement.  I don't know what other

13 document which has been --

14       THE COURT: Wait a minute.  Mr. Yoo, Mr. Yoo, are

15 you telling me there's not a single document where Chase

16 identifies itself as the servicer?

17       MR. YOO: Your Honor, we filed the entire

18 servicing file to Mr. Kelley already, so besides what's

19 already been produced -- in essence, we produced over 2,000

20 documents.  I don't know what particular single document

21 that we can additionally produce to show that Chase is the

22 servicer.

23       THE COURT: Does the servicer communicate with

24 respect to this loan?  Was there, for example, a letter

25 written in the last six months or so from the servicer

1  saying, "we as the servicer..."?

2        MR. YOO: Ever since this case has been litigated

3  in 2010, there's a litigation code on it, but Chase doesn't

4  communicate directly with Mr. Kelley, with the exception of

5  maybe monthly, you know, certain statements that he may

6  receive.  But Mr. Kelley must have --

7        THE COURT: Well, wait.  Stop.  Stop.  Stop.  Is

8  there a statement that they send Mr. Kelley that identifies

9  them as the servicer on the loan?

10        MR. YOO: I don't know, Your Honor, whether such a

11  document specifically says that Chase is the servicer, but

12  there's nothing -- Mr. Kelley --

13        THE COURT: Okay.  So you have two choices, Mr.

14  Yoo.  It's easy; it's not hard.  I'm not going to make this

15  hard for you.  If there is such a document that identifies

16  Chase as the servicer, provide it, and if not, provide a

17  declaration from a competent person identifying Chase as

18  the servicer for both loans currently.  I don't want to

19  make this hard.  I want to make it easy.

20        MR. YOO: It's just frustrating on my part because

21  it seems like we've been through this over and over again,

22  and yet --

23        THE COURT: I've taken 49 requests, and I've

24  granted a few, and you'll take care of these, and that will

25  take care of it, Mr. Yoo.

1          MR. YOO: Your Honor, I have a sneaking suspicion

2    this is not the end of this.  But let me go to No. 14.

3    "Business records specifying the original owner

4    conditions."  Your decision states that "The Court

5    interprets this request to be limited to documents to

6    identify the original owner of the loan."  Your Honor, we

7    produced the originating file.  I don't know what more we

8    an produce.  We filed the originating file.  We showed to

9    Mr. Kelley the original note and deed of trust which

10   identified Washington Mutual Bank as the original owner of

11   the loan.  I don't know what more we can show than what's

12   already been produced.

13          THE COURT: I understand.  Mr. Kelley, what else

14   could they possibly do if you got the original loan file?

15          MR. KELLEY: Well, the information that they gave

16   me in that loan file doesn't establish that Chase is --

17          THE COURT: No, that WAMU was the original owner

18   of the loan.

19          MR. KELLEY: Well, actually, the problem is, is

20   that the main loan, the big loan, was in the name of

21   Washington Mutual Bank, F.A., which didn't exist.  And so

22   what was it?  Was that a proxy for Washington Mutual, Inc.?

23   It may have been, but it wasn't a proxy for Washington

24   Mutual Bank.  If Washington Mutual Bank was going to make a

25   loan, they just put their name on it.  But that's not what

1 the name on the loan is. It's Washington Mutual Bank, F.A.

2 THE COURT: Which doesn't exist, which didn't

3 exist.

4 MR. KELLEY: Which does not exist and --

5 THE COURT: So Mr. Yoo, could you please respond

6 to that?

7 MR. YOO: That's a different question than what,

8 you know, what was granted. What was requested was the

9 original -- who the original lender was. We produced a

10 copy of the origination file. I don't know what more --

11 THE COURT: Wait. Mr. Yoo, answer Mr. Kelley's

12 point, please.

13 MR. YOO: Washington Mutual Bank, F.A. was just a,

14 you know, was a -- it's my understanding -- was a

15 predecessor to Washington Mutual Bank, Henderson, Nevada.

16 I don't know what he's asking.

17 THE COURT: Well, I do. He's saying Washington

18 Mutual Bank, F.A. was not a bank and did not exist and

19 couldn't have originated the loan, and so he wants to know

20 who originated the loan, if it wasn't Washington Mutual

21 Bank, F.A. If Washington Mutual Bank, F.A. wasn't a bank,

22 and was just a name that was used, then it was a name used

23 for somebody else, and he wants to know who it was. Look,

24 it's not hard. You just have to answer it, Mr. Yoo. And

25 if Washington Mutual Bank, F.A. was a bank, then you say,

1  Washington Mutual Bank, F.A. originated the loan and Mr.

2  Kelley is wrong; they were a bank.

3          MR. YOO: Your Honor, this is something that Mr.

4  Kelley is stating today.  That's not what the request No.

5  14.  The Request No. 14 states --

6          THE COURT: Well, we'll interpret it that way.  We

7  want to make it straightforward and simple, Mr. Yoo.  We'll

8  interpret it that way.

9          MR. YOO: All right.

10          THE COURT:  Next?

11          MR. YOO: Request No. 17 statess: "A copy of the

12  FFIEC right as specified as JPM2000."  FFIEC stands for

13  Federal Financial Institution Examination Council.  That's

14  what FFIEC stands for.  In essence, it's a federal agency

15  that's set up to determine uniform principles of

16  supervising financial institutions.  I don't understand how

17  that's possibly relevant to the subject matter of this

18  litigation?

19          THE COURT: How is it relevant, Mr. Kelley?

20          MR. KELLEY: Well, I believe it is relevant,

21  because the FFIEC monitors foreign money, you know, foreign

22  investors basically, money going to foreign investors.  So

23  I believe that the FFIEC report rule is auditing some

24  transfer of money overseas, and that goes and proves my --

25  goes to prove the fact that the loan was sold to foreign

1  investors.

2          THE COURT: There's nothing confidential about it.

3  It's of marginal relevance, but you should provide it.  If

4  you have it, you provide it.  I'm going to interrupt, and I

5  want to take care of the Melcher matter.  Is everybody on

6  call and live, including Ms. Melcher.  She's on listen

7  only.  Brook?

8      (Whereupon, extraneous matters are heard, and this

9  matter is recalled at 4:41 p.m.)

10          THE COURT: Back to Kelley.  Mr. Kelley, your

11  appearance again.

12          MR. KELLEY: James Kelley.

13          THE COURT: Mr. Yoo?

14          MR. YOO: Christopher Yoo, the last name is

15  spelled Y-o-o.

16          THE COURT: Thank you.  All right.  So just

17  provide that.  Now, do you want to talk -- you seem to want

18  to talk about every single one of these, Mr. Yoo, although

19  I've given him about five or six documents.  What do you

20  want to --

21          MR. YOO: Your Honor, I'm just -- I'm just

22  frustrated because Request No. 18 --

23          THE COURT: I understand you're frustrated, but we

24  could make this much simpler because there are only a few

25  documents out of 49 categories of documents that he asked

1  for.

2          MR. YOO: Those documents are in essence asking

3  for the same documents that, you know, that's been

4  testified to under oath and that's been produced already.

5  Request No. 18 identifies or requests business records

6  showing when the X99 pool was created.  X99 is a code word

7  for Chase.  So, you know, two employees and representatives

8  of Chase have testified that the subject loan is owned by

9  Chase, and then testified that X99 is a code, investor

10 code, for Chase.  I don't know what additional information

11 or documentation is needed.

12         THE COURT: So what are you talking about?

13         MR. KELLEY: Well, first of all, X99 according to

14 their own documents refers to what they call the WAMU Loan

15 Portfolio.

16         THE COURT: But what do you want?  You want to

17 know a date.  You want to know when something was created.

18 Well, you certainly don't want to know when Chase was

19 created.  What do you want to know?

20         MR. KELLEY: No, no, no.  I just want to know when

21 they created -- I just wanted to know --

22         THE COURT: Mr. Kelley, what do you want to know

23 exactly?

24         MR. KELLEY: I want to know when the X99 was

25 created.

1    THE COURT: But X99 is a code word for Chase.
2  They just told you that.
3    MR. KELLEY: No, but it's not.  It's a code name
4  for WAMU Loan Portfolio, and --
5    THE COURT: You want to know when the WAMU Loan
6  Portfolio was created?
7    MR. KELLEY: Well, I'm just correlating the
8  evidence that I've seen, and what I've seen --
9    MR. YOO: Your Honor, the subject loan was never
10  securitized.
11    MR. KELLEY: That's irrelevant.  The loan could
12  have been --
13    THE COURT: I don't know what you're -- you're not
14  making sense.  What exactly do you want?
15    MR. KELLEY: I just asked for when the X99
16  designation was --
17    THE COURT: We're going in circles.
18    MR. KELLEY:  -- created.  I mean what they --
19    THE COURT: You didn't ask when the X99
20  designation was created?  You asked --
21    MR. KELLEY: Well, that's a lender I.D., and I
22  just wanted to know when they created it, when Chase
23  created it, because before it was created, there was
24  nothing in there.  It didn't exist, and then I asked for
25  what categories of loans that they were going to put in the

1  X99 loan portfolio.

2          THE COURT: I don't understand what you're saying.

3  You don't have to respond to Request 18.  I don't

4  understand what Mr. Kelly is saying.  Do you have a problem

5  with 46?

6          MR. YOO: Let me -- yes, Your Honor.  Let me

7  repeat 46.  "Business transaction records for each transfer

8  of the deed of trust for the first loan between July 26,

9  2007 and the present.  You know, we've declared under oath

10 in our discovery response that Chase is the present owner

11 of the loan.  The subject deed of trust was executed and

12 made in 2007, and there is no assignment of deed of trust

13 to Chase because the purchase and assumption agreement

14 between the FDIC and Chase indicates that all loans of

15 Washington Mutual Bank were sold to Chase.  We've already

16 produced the purchase and assumption agreement.  In

17 essence, we've provided response to this request before.  I

18 don't know what more we can produce.

19          MR. KELLEY: This isn't true.  There is no

20 inventory of loans showing that Chase was sold any loan by

21 the receiver.  There's no record of that.

22          MR. YOO: He's simply --

23          MR. KELLEY: It's just a bare assertion without

24 any factual support, and in fact, there's no evidence that

25 any money was paid for any loans by Chase that they could

1    have gotten from the receiver.  And there's also good

2    evidence that the loan portfolio which the reason that

3    there is no inventory of loans is because the loan

4    portfolio, the WAMU loan portfolio, was actually owned by

5    Washington Mutual, Inc., the parent holding company, not

6    Washington Mutual Bank.  And that's why there's no list of

7    loans, inventory of loans in the purchase and assumption

8    agreement.  So they paid for nothing because there was

9    nothing there.  I mean Washington Mutual, Inc. had it.

10            MR. YOO: Your Honor, he's simply disagreeing with

11   what, you know, the contention of Chase.  In essence, he's

12   asking us to prove the negative, in essence.  He's asking

13   us to prove the negative of what's already been produced.

14            THE COURT: So tell me again what you think the

15   fact is with respect to -- are you saying there would be no

16   transfer of the deed of trust for the first loan between

17   July 26th, 2007 and the present?  There is no such document?

18            MR. YOO: There is, Your Honor.  That's been

19   produced.  The subject deed of trust was made in favor of

20   Washington Mutual Bank.  All loans and loan commitments of

21   Washington Mutual Bank were sold via FDIC to Chase pursuant

22   to an agreement entitled "Purchase and Assumption Agreement

23   Between FDIC and Chase" dated September 25th, 2008.  That

24   document shows that all loans owned by Washington Mutual

25   Bank were sold to Chase, and we've already produced that.

1           THE COURT: Okay.  Okay.

2           MR. YOO:  There's nothing more.

3           THE COURT: So Mr. Yoo -- Mr. Yoo, there is no

4   other document other than the one you've produced that

5   would show a transfer of the deed of trust for the first

6   loan between July 26th, 2007 and the present.

7           MR. YOO: Yes, Your Honor.

8           THE COURT: You're making the representation in

9   court that there is no such document.

10          MR. YOO: That's right, Your Honor.

11          THE COURT: That's fine.  Put it in writing.

12          MR. YOO: And all documents --

13          THE COURT: Wait.  Be quiet.  Put it in writing.

14  Put it in writing in declaration form.  There is no such

15  document other than the one document that we've produced.

16  Identify it and be done with it.

17          MR. KELLEY: I'd just like to comment on a couple

18  things.  First of all, he keeps saying that the loan was

19  made by Washington Mutual Bank, but Washington Mutual

20  Bank's name is not on that loan.  It's not on the deed of

21  trust.  It's Washington Mutual Bank, F.A., which didn't

22  exist.

23          THE COURT: Well, we've talked about that.

24          MR. KELLEY: Yes.  So I'll just leave it at that.

25          MR. YOO: We're going to prove -- yeah.

1          MR. KELLY: We've talked about it.  Thank you.
2   We've resolved all issues, but Mr. Yoo, you have to do what
3   I said with no fudging, and you can prepare a form of order
4   on this.
5          MR. YOO: I will prepare it, Your Honor.
6          THE COURT: All right.  But make sure you do what
7   I said and no fudging.  I'm not saying you would, but I
8   want to make sure this is very, very clean and clear.
9          MR. YOO: Your Honor, we've gone beyond --
10          THE COURT: I'm not asking you to go back.  I want
11  you to do exactly what I've said pursuant to today's
12  hearing.  Thank you.  Court is adjourned.
13          MR. KELLEY: Thank you, Judge.
14     (Whereupon, the proceedings are concluded at 4:48
15  p.m.)
16
17
18
19
20
21
22
23
24
25

1

2

3

4

5                   CERTIFICATE OF TRANSCRIBER

6

7

8          I certify that the foregoing is a correct

9  transcript from the digital sound recording of the

10 proceedings in the above-entitled matter.

11

12 DATED: January 16, 2015

13

14                      By:___/s/ Jo McCall_____

15

16

17

18

19

20

21

22

23

24

25