

Signed and Filed: January 21, 2016

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                          ) Bankruptcy Case
                                               ) No. 08-55305DM
JAMES MADISON KELLEY,                          )
                                               ) Chapter 11
                    Debtor.                    )
_____)
JAMES MADISON KELLEY,                          ) Adversary Proceeding
                                               ) No. 10-5245DM
                    Plaintiff,                 )
                                               )
v.                                             )
                                               )
JPMORGAN CHASE BANK NA, Successor              )
to Washington Mutual Bank,                     )
                                               )
                    Defendant.                 )
_____)

MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

Debtor James Madison Kelley ("Debtor") commenced the underlying chapter 11 case more than seven years ago after defaulting on two loans from Washington Mutual Bank ("WaMu"); the loans were secured by his residence in Saratoga, California (the "Property").  In this adversary proceeding he is attempting to defeat claims and security interests arising from the two WaMu loans.  Debtor has not made any payments on the loans since he filed his chapter 11 petition on September 19, 2008, and defendant

-1-

JP Morgan Chase Bank, N.A. ("Chase"), the assignee of the relevant WaMu notes and security interests, has paid all taxes and insurance on the Property.

In January 2009, Debtor filed a plan of reorganization in which he proposed to sell the Property and hold the proceeds pending resolution of a state court lawsuit between him and WaMu (and, subsequently, the Federal Deposit Insurance Corporation ("FDIC"), as receiver of the failed WaMu). The state court dismissed that action with prejudice on July 19, 2010.

Debtor commenced this adversary proceeding on July 15, 2010, two days after oral argument in the state court action. By that time, Chase had been appointed the successor to WaMu and was named as the defendant. In July 2015, the case was reassigned to this court, which in turn encouraged the parties to move forward with resolution of the matter, either through compromise, dispositive motions, or trial. Both Debtor and Chase filed motions and the court took the matters under submission following a hearing on November 10, 2015. For the reasons set forth below, the court will deny Debtor's motion for partial summary judgment and will grant Chase's motion for summary judgment.

## II. RELEVANT FACTUAL BACKGROUND

A.   <u>The Loans</u>

In June 2005 and November 2005, WaMu made two loans to Debtor and recorded two deeds of trust encumbering the Property (the "2005 Transactions"). Two years later, Debtor obtained the two refinance loans from WaMu that are the subject of this adversary proceeding, and WaMu reconveyed both of the 2005 deed of trusts

-2-

upon execution of new deeds of trust to secure the refinance loans. Exhibits C-F of the Request for Judicial Notice ("RJN") appended to Chase's Opposition to Debtor's Motion for Summary Judgment at Docket Nos. 475-10 through 475-18.

As part of the 2007 refinancing, Debtor executed an adjustable rate note in the original principal amount of $2,992,265.00 ("First Loan") on July 26. Declaration of Joseph G. Devine, Jr. ("Chase Decl.") at ¶2, appended to Chase's Opposition to Debtor's Motion for Summary Judgment at Docket Nos. 475-4 through 475-6. Repayment of the First Loan is secured by a deed of trust recorded against the Property on July 31, 2007 ("First DOT"). RJN, Ex. A; Chase Decl. ¶3.

On or about September 17, 2007, Debtor obtained a home equity line of credit from WaMu in the maximum amount of $250,000.00 ("Second Loan," and together with the First Loan, the "Loans"). Chase Decl. ¶9. The terms of the Second Loan are set forth in the WaMu Equity Plus Agreement and Disclosure dated September 17, 2007, and executed by Debtor ("HELOC Agreement"). Chase Decl. ¶9. Repayment of Second Loan is secured by a deed of trust recorded against the Property on October 3, 2007 ("HELOC DOT," and together with the First DOT, the "Deeds of Trust"). *See* RJN Ex. B; Chase Decl. ¶10. The proceeds from the Loans paid off the 2005 WaMu loans that totaled approximately $2,943,255.76. RJN Ex. C, Ex. D, Ex. E, and Ex. F.

In early 2008, Debtor defaulted on both Loans, and WaMu recorded a notice of default and election to sell with respect to the First Loan on June 30, 2008. RJN Ex. G. On September 25, 2008, the Office of Thrift Supervision closed WaMu and appointed

-3-

the FDIC as receiver.  RJN Ex. H; Chase Decl. ¶16.  On the same
date, Chase entered into a purchase and assumption agreement ("P&A
Agreement") with the FDIC (acting in its corporate capacity as
well as receiver for WaMu) and acquired the Loans.[1]  *Id*.

In October 2008, the FDIC published in several newspapers
(albeit none based in the San Francisco Bay Area apart from the
local edition of the Wall Street Journal) its procedures for the
assertion of claims related to WaMu.  These notices stated that
the deadline for filing WaMu claims was December 30, 2008.  RJN,
Exh. Q.  On February 19, 2009, the FDIC mailed written notice to
Debtor, by and through his then counsel-of-record, explaining the
mandatory procedures under the Financial Institutions Reform,
Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. §§
1821(d)(3)-(d)(10), for asserting a claim against the FDIC as
WaMu's receiver, and permitting Debtor to file a late claim no
later than May 20, 2009.  Debtor never filed any claim with the
FDIC.  RJN, Exh. Q.

    B.    The State Court Action, Letter of Rescission, and
          Bankruptcy

On July 28, 2008, Debtor filed a complaint against WaMu and
Louis Helmonds ("Helmonds"), an employee of WaMu, in the Superior
Court for the State of California, County of Santa Clara, Case No.
2-08-cv-118453 ("State Court Action").  RJN Ex. N.  Chase was not
named as a defendant.  RJN Ex. O.

In the State Court Action, Debtor asserted nearly identical
factual and legal arguments as those pled in this adversary

_____

        [1] The P&A Agreement is available at
www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf.

-4-

proceeding, including contentions that the written commitment that
he received from WaMu regarding the Second Loan contained more
stringent documentation requirements than WaMu had represented in
negotiations and during the execution of the First Loan; that he
had relied on those oral representations and negotiations in
executing the First Loan; that if WaMu had made full disclosure of
the documentation requirements, he would not have obtained the
First Loan or would have otherwise renegotiated terms; that WaMu
knew that Debtor could not meet the more stringent terms of the
Second Loan documentation requirements; that WaMu induced Debtor
by calculated, deliberate misrepresentations and material
omissions to enter into the First Loan at a higher interest rate
and with a pre-payment penalty and then altered the terms of the
commitment on the Second Loan which left Debtor undercapitalized;
that WaMu engaged in bait-and-switch tactics, misrepresentations
and omissions; that at the first attempt at closing the First
Loan, Debtor received a loan package that required substantially
larger monthly payments than had been discussed or disclosed and
Debtor did not sign those documents; that Helmond claimed error
and provided corrected documents the next day, and the two
different loans led to confusion in the disclosures; that
preliminary disclosures made by WaMu did not match the final loan
numbers; and that the Property may have been over-appraised by
WaMu.

        Among other remedies, Debtor sought rescission of the Loans.
RJN Ex. N.  As discussed in section II© below, Debtor sent a
letter of rescission to Chase approximately two years after the
closing of the First and Second Loans.  Debtor mailed the

Case: 10-05245   Doc# 517   Filed: 01/21/16   Entered: 01/21/16 12:03:23   Page 5 of
25

rescission letter on August 28, 2009, more than a year after he commenced the State Court Action and almost a year before the state court dismissed all of his claims (including the rescission claim) with prejudice.

On or about March 25, 2010, the FDIC filed a motion for summary judgment in the State Court Action contending that the state court lacked subject matter jurisdiction as a result of Debtor's failure to exhaust his mandatory administrative remedies under FIRREA. RJN Ex. P. The FDIC noted Debtor's failure to file a timely claim despite bar date notifications and a proffered extended deadline. RJN Ex. Q. On July 19, 2010, the state court entered an order granting the FDIC's motion for summary judgment, ruling that it lacked subject matter jurisdiction because Debtor had not exhausted his mandatory administrative remedies under the process set forth in §§ 1821(d)(3)-(d)(10) of FIRREA. RJN Ex. R. Accordingly, the court dismissed *all* of Debtor's claims, including those for rescission, against the FDIC (as the receiver of WaMu) with prejudice.

On July 15, 2010, Debtor filed this adversary proceeding, against Chase as "successor to Washington Mutual Bank." Chase contends that the state court judgment and the doctrine of issue preclusion bars Debtor's claims here. For the reasons discussed later, this court agrees that Debtor's claims are barred by FIRREA.

C. The Current Cross-Motions for Summary Judgment

In his motion for partial summary judgment ("Debtor's MSJ"), Debtor asserts that as a matter of law and undisputed fact that he is entitled to rescind the 2007 Loans. In contrast, Chase

-6-

contends that Debtor has no cognizable claim against it, including any claim for rescission. As discussed below, all claims of Debtor against Chase are barred by FIRREA. Even if Debtor's contention that FIRREA excepts rescission claims from its bar were correct, his claims for rescission are time-barred, as they were filed more than three business days after execution of the respective Loans and Debtor has not satisfied the requirements for the three-year extension permitted if a lender has not complied with the disclosure requirements of the Truth in Lending Act ("TILA"). Even if his claims were not barred by FIRREA and were not time-barred under TILA, Debtor has not offered evidence that he would be able to satisfy the conditions for complete and effective tender. In other words, he has not presented an issue of material fact to rebut Chase's contention that effective tender is not possible. Finally, to the extent the proceeds of the First Loan were used to refinance the 2005 Transactions, TILA does not authorize its rescission.

### III.   STANDARDS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 (made applicable by Federal Rule of Bankruptcy Procedure 7056) requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). An issue is "genuine" only if the evidence is such that a reasonable jury could find in favor of the non-moving party. The evidence of the

-7-

non-movant is to be believed, and all justifiable inferences drawn in his favor, but a mere scintilla of evidence will not suffice*. Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "[T]he plain language of rule 56© mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

"[A]t least some 'significant probative evidence'" must be produced. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assn.*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). A "scintilla of evidence" or evidence that is "merely colorable" or "not significantly probative" does not present a genuine issue of material fact." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989). Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003).

## IV. DISCUSSION

A.   Overview of Applicable Law

This court's analysis of Debtor's claims for relief and the

Case: 10-05245    Doc# 517    Filed: 01/21/16    Entered: 01/21/16 12:03:23    Page 8 of 25

motions focuses primarily on the exhaustion of remedies provision of FIRREA (12 U.S.C. § 1821(d)(13)(D)), the rescission remedies of TILA (15 U.S.C. § 1635) and the regulations promulgated to carry out TILA'a purposes, particularly Regulation Z (12 C.F.R. § 226.23).

FIRREA was enacted to "ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of failed banks." *McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1078 (9th Cir. 2003) (internal quotations and citations omitted). TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit[.]" 15 U.S.C. § 1601; *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Congress entrusted "the Federal Reserve Board with implementation of the Act, and the agency has imposed 'even more precise' disclosure requirements via Regulation Z." *Hauk v. JP Morgan Chase Bank* USA, 552 F.3d 1114, 1118 (9th Cir. 2009) (multiple citations omitted). "Courts must defer to the decisions of the Federal Reserve Board and cannot apply '[t]he concept of 'meaningful disclosure' that animates TILA ... in the abstract.'" *Id.* (citations omitted).

Under TILA, as interpreted by the Federal Reserve Board, consumers entering certain credit transactions involving security interests in their principal dwelling have a right to rescind the transaction until midnight on the third business day after the credit transaction, delivery of the rescission notice, or delivery of all material disclosures, whichever is latest. *Beach*, 523 U.S.

-9-

at 412 (citing 15 U.S.C. § 1635(a)). If a borrower does not receive certain disclosures, the right to rescind the transaction extends for three years. *Id.* at 421–22; 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). The three year extension is triggered only if a creditor does not "clearly and conspicuously disclose" the security interest in the principal dwelling, the right to rescind, how to exercise rescission (with a form to exercise rescission designating the creditor's address), the effects of rescission, and the expiration date of rescission. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(1)). The creditor must also make all "material disclosures," which include "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, [and] the payment schedule ...." 12 C.F.R. § 226.23(a)(3) & n. 48.

      B.  <u>Debtor's Causes of Action Fail As a Matter of Law</u>

          **1.  Issue/Claim Preclusion Is Inapplicable**

      As noted in section I(B) above, the state court dismissed all of Debtor's claims for lack of jurisdiction, holding that FIRREA barred each one. Invoking the doctrines of issue and claim preclusion, Chase contends that the judgment against Debtor in the State Court Action bars the claims that Debtor asserts in this adversary proceeding. This court disagrees, as the state court dismissed Debtor's claims with prejudice because it lacked subject matter jurisdiction as Debtor had not exhausted his remedies under FIRREA. That does not satisfy the necessary requirements for issue or claim preclusion. "Although a judgment of dismissal for lack of jurisdiction is valid and final, the judgment does not bar another action by the plaintiff on the same claim." *Segal v. Am.*

-10-

*Tel. & Tel. Co.,* 606 F.2d 842, 844 (9th Cir. 1979)(multiple citations omitted).

The state court's determination of its own jurisdiction has no preclusive effect here, as this court's own jurisdiction was not (and could not have been) litigated or decided by the state court. *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548 (9th Cir. 2003). More importantly, this court must independently determine its own jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (a court must always decide for itself its own jurisdiction).

## 2. FIRREA Bars Debtor's Claims

As set forth above, Chase acquired WaMu's assets from the FDIC, the appointed receiver after WaMu failed. The FDIC as receiver "steps into the shoes" of the failed lending institution. *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 86 (1994). The FDIC as receiver also has broad powers under FIRREA to determine claims asserted against failed banks. *Rundgren v. Washington Mut. Bank, F.A.*, 760 F.3d 1056, 1061-62 (9th Cir. 2014), *cert. denied,* 135 S.Ct. 1560 (2015). To facilitate the FDIC's mandate, FIRREA "provides detailed procedures to allow the FDIC to consider certain claims against the receivership estate." *Id.* (quoting *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1211 (9th Cir. 2012)). "The comprehensive claims process allows the FDIC to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of the failed bank without unduly burdening the District Courts." *Id.* (quoting *Benson*, 673 F.3d at 1211, and *Henderson v. Bank of New*

-11-

*Eng.*, 986 F.2d 319, 320 (9th Cir. 1993)) (internal citations and quotations omitted).

FIRREA "strips courts of jurisdiction over claims that have not been exhausted" through the FDIC's comprehensive claims process. *Rundgren*, 760 F.3d at 1060. This jurisdictional bar is set forth in FIRREA:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
>> (I) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>>
>> (ii) any *claim relating to any act or omission of such institution or the [FDIC] as receiver*.

12 U.S.C. § 1821(d)(13)(D) (emphasis added).

The Ninth Circuit has consistently applied FIRREA's jurisdictional bar when a plaintiff sues a subsequent purchaser of a failed financial institution based solely on the misconduct of the failed institution. *Rundgren*, 760 F.3d at 1064; *Benson,* 673 F.3d at 1214. In *Rundgren,* the borrowers (individually and as trustees of their respective self-settled trusts) obtained loans from WaMu, repayment of which was secured by their residence. Chase acquired the borrowers' loans from the FDIC pursuant to the P&A Agreement. Like Debtor here, the Rundgrens sued Chase for damages and non-monetary relief, including rescission,[2] based

---

[2]The Rundgrens sought rescission under both TILA and Hawaii state law. The district court dismissed all claims except for the TILA rescission claim. *Rundgren v. Washington Mut. Bank, F.A.*, 2010 WL 4960513 at *5 (D. Haw. Nov. 30, 2010). The Rundgrens and Chase thereafter stipulated to dismissal of the TILA rescission claim. *See* Stipulation for Dismissal Without Prejudice as to

-12-

solely on the conduct of WaMu and its employee. *Rundgren,* 760
F.3d at 1059. Chase removed the state court action to federal
district court, which dismissed the case against Chase for lack of
jurisdiction because the borrowers had failed to exhaust their
claims with the FDIC prior to bringing the suit as required by
FIRREA. *Id.* at 1060-62. The Ninth Circuit affirmed, as simply
joining the successor in interest as a defendant does not overcome
FIRREA's jurisdictional hurdle:

> Although the Rundgrens named Chase as well as WaMu in
> their complaint, all claims in the complaint rest on the
> theory that WaMu took deceptive and fraudulent actions
> to induce them to enter into a loan agreement, and their
> mortgage and note are therefore unenforceable. The
> complaint makes no independent claims against Chase. *A
> claimant cannot circumvent the exhaustion requirement by
> suing the purchasing bank based on the conduct of the
> failed institution.* "Where a claim is functionally,
> albeit not formally, against a depository institution
> for which the FDIC is receiver, it is a 'claim' within
> the meaning of FIRREA's administrative claims process."
> Accordingly, we conclude that the Rundgrens' claims
> relate to WaMu's acts or omissions for purposes of §
> 1821(d)(13)(D).

*Id.* (emphasis added), quoting *Benson*, 673 F.3d at 1214; *see also
Prior v. Tri Counties Bank (In re Prior),* 521 B.R. 353 (Bankr.
E.D. Cal. 2015) (even though a bankruptcy court has subject matter
jurisdiction to determine the amount of a lender's claim, it lacks
jurisdiction to consider defenses and counterclaims barred by
FIRREA).

    The Ninth Circuit observed that section 1821(d)(13)(D) of
FIRREA strips courts of jurisdiction over any claim, including

---

Plaintiffs' Remaining Claim Against Defendant JPMorgan Chase, N.A.
and Order, Case No. 1:09-cv-00495-JMS-KSC in the U.S. District
Court for the District of Hawaii, filed on January 3, 2012 at
Docket No. 61.

-13-

those claims for equitable relief and rescission asserted by the
Rundgrens, relating to any act or omission of any depository
institution for which the FDIC has been appointed receiver. "A
'claim' is a cause of action or the aggregate of facts that gives
rise to a right to payment or an equitable remedy." *Id.* at 1061.
"Given this general meaning of the word claim in normal legal
usage, the Rundgrens' complaint [which included rescission claims]
clearly raises 'claims' against WaMu and Chase for monetary and
nonmonetary relief." *Id.* "We have held that FIRREA bars judicial
review of any non-exhausted claim, monetary or nonmonetary, which
is 'susceptible of resolution through the claims procedure.'"
*Id.*

Even though the Ninth Circuit affirmed the dismissal of
rescission and other claims in *Rundgren* because FIRREA barred
them, those rescission claims arose from Hawaii state law.[3] Here,
Debtor asserts a rescission claim arising under TILA. TILA
provides that rescission claims arising from transactions in which
the debt is secured may be brought against any assignee of the
obligation. 15 U.S.C. § 1641©.[4] Several courts have cited that

_____

[3]As noted in footnote 2 above, the district court did not
dismiss the TILA rescission claim, although the parties stipulated
to its dismissal well before the Ninth Circuit issued its decision
affirming dismissal of the Hawaiian law rescission claim, the
other TILA claims, and all other claims.

[4]Section 1641 of TILA provides in relevant part:

(a) Prerequisites

    Except as otherwise specifically provided in this
    subchapter, any civil action for a violation of this
    subchapter or proceeding under section 1607 of this
    title which may be brought against a creditor may be
    maintained against any assignee of such creditor only if

-14-

1 section in holding that FIRREA that does not bar TILA rescission

2 claims against assignees of loans originated by WaMu or other

3 ──────────────

4          the violation for which such action or proceeding is
         brought is apparent on the face of the disclosure
5        statement, except where the assignment was involuntary.
         For the purpose of this section, a violation apparent on
6        the face of the disclosure statement includes, but is
         not limited to (1) a disclosure which can be determined
7        to be incomplete or inaccurate from the face of the
         disclosure statement or other documents assigned, or (2)
8        a disclosure which does not use the terms required to be
         used by this subchapter.
9
(b) Proof of compliance with statutory provisions
10
         Except as provided in section 1635© of this title, in any
11       action or proceeding by or against any subsequent assignee of
         the original creditor without knowledge to the contrary by
12       the assignee when he acquires the obligation, written
         acknowledgment of receipt by a person to whom a statement is
13       required to be given pursuant to this subchapter shall be
         conclusive proof of the delivery thereof and, except as
14       provided in subsection (a) of this section, of compliance
         with this part. This section does not affect the rights of
15       the obligor in any action against the original creditor.

16 © Right of rescission by consumer unaffected

17       Any consumer who has the right to rescind a transaction
         under section 1635 of this title may rescind the
18       transaction as against any assignee of the obligation.

19 (d)(1) [Rights upon assignment of certain mortgages -- In general

20       Any person who purchases or is otherwise assigned a
         mortgage referred to in section 1602(aa) of this title
21       shall be subject to all claims and defenses with respect
         to that mortgage that the consumer could assert against
22       the creditor of the mortgage, unless the purchaser or
         assignee demonstrates, by a preponderance of the
23       evidence, that a reasonable person exercising ordinary
         due diligence, could not determine, based on the
24       documentation required by this subchapter, the
         itemization of the amount financed, and other disclosure
25       of disbursements that the mortgage was a mortgage
         referred to in section 1602(aa) of this title. The
26       preceding sentence does not affect rights of a consumer
         under subsection (a), (b), or © of this section or any
27       other provision of this subchapter.

28 15 U.S.C.A. § 1641.

                                -15-

failed banks. *See Long v. JP Morgan Chase Bank, N.A.,* 848
F.Supp.2d 1166, 1175 (D. Haw. 2012) ("Any remedy of rescission [a
borrower] may have must be invoked against the current holder of
the mortgage loan."); *King v. Long Beach Mortg. Co.*, 672
F.Supp.2d 238, 246–47 (D. Mass. 2009) ("Rescission in the TILA
context . . . only makes sense if exercised by the consumer . . .
against the current creditor[.]"); *Paatalo v. JPMorgan Chase Bank*,
--- F.Supp.3d ---, 2015 WL 7015317 (D. Ore. Nov. 15, 2015).
This court disagrees with the courts in *Long, King,* and *Paatalo*
and instead holds, under controlling Ninth Circuit law, that
FIRREA bars all rescission claims. Those cases rely on the
language of TILA section 1641© allowing borrowers to assert
rescission claims against assignees. Subsection (a) of 1641 also
allows borrowers to seek monetary or other relief against
assignees. The Ninth Circuit has clearly held in *Rundgren* and
*Benson*, however, that FIRREA bars claims for damages asserted
under section 1641(a) of TILA notwithstanding its language
providing that "any civil action for a violation" of TILA "may be
maintained against any assignee of such creditor" if the violation
is apparent on the face of the disclosure statement. If FIRREA
bars claims for damages against the FDIC and its assignees
notwithstanding subsection (a) of section 1641, it likewise bars
claims for rescission under subsection (d) of section 1641.

    Stated otherwise, in view of the very broad definition of
"claim" in FIRREA, *Rundgren's* dismissal of a state law rescission
claim must apply with equal force to compel dismissal of a TILA
rescission claim. This is so despite the TILA language permitting
rescission claims against assignees. With a failed bank, FIRREA

-16-

trumps TILA.

This court has no choice but to adhere to the Ninth Circuit's holding in *Rundgren* that FIRREA "bars judicial review of any non-exhausted claim, monetary or nonmonetary, which is 'susceptible of resolution through the claims procedure'" (*Rundgren*, 760 F.3d at 1061-62). The FDIC provided Debtor with repeated opportunities to assert his claims through its claims administration process. He did not do so and thus all of Debtor's claims initially assertable against WaMu prior to its failure and now asserted against Chase are barred by FIRREA as a matter of law. Chase is therefore entitled to summary judgment and Defendant's motion for partial summary judgment must be denied.

### 3. Debtor's Rescission Claims Are Untimely

Even if Debtor's demand for rescission claims were not barred by FIRREA, they were not timely. TILA provides special rescission rights for loans secured by a borrower's principal dwelling. 15 U.S.C. § 1635(a). *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986). TILA's "buyer's remorse" provision grants buyers the right to rescind within three days of either "the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later[.]" 15 U.S.C. § 1635(a). Debtor concedes that he did not send the rescission letter within three days of the closing of either loan.

If a borrower does not receive certain disclosures, the right to rescind the transaction extends for three years. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). When the rescission is sought

-17-

against an assignee, however, the violation must be "apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a) (governing liability of assignees as to TILA violations of predecessor). In particular, the three year extension is triggered if a creditor does not "clearly and conspicuously disclose" the security interest in the principal dwelling, the right to rescind, how to exercise rescission (with a form to exercise rescission designating the creditor's address), the effects of rescission, and the expiration date of rescission. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(1))

   The notices of the right to rescind provided to Debtor contain this information, and Debtor executed an acknowledgment of his receipt of two copies of this notice on July 26, 2007. Chase Decl. at ¶¶4-5; Expert Decl. at ¶¶9-11. His uncorroborated and self-serving declaration that he did not receive two copies of the rescission notice, contrary to his signed acknowledgment of receipt of such, is insufficient to overcome the rebuttable presumption of receipt set forth in 15 U.S.C. § 1635©. *Villiarimo*, 281 F.3d at 1061 (a respondent cannot establish a genuine issue of material fact sufficient to defeat summary judgment where the only evidence presented is uncorroborated and self-serving testimony).

   TILA also requires a creditor to make all "material disclosures," which include "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, [and] the payment schedule ...." 12 C.F.R. § 226.23(a)(3) & n. 48. Here, at least on the face of the First Loan documents (in particular the Truth in Lending Disclosure

-18-

Statement executed by Debtor on July 26, 2007), WaMu satisfied these requirements. Chase Decl. at ¶¶4-5; Expert Decl. at ¶¶9-11.

Because the documentation appears proper on its face and the receipt was acknowledged in writing by Debtor, the extended three-year deadline does not apply as against Chase, the assignee. The rescission notice as to the First Loan is ineffective. Moreover, even if the disclosures for the Second Loan were adequate, which the court is not deciding, the principal amount of the First Loan ($2,992,265.00) is more than ten times the amount of the Second Loan ($250,000). Rescission of the Second Loan would not prevent Chase from collecting all principal, interest and charges owed on the First Loan. In any event, as discussed previously, rescission of the First and Second Loans is barred by FIRREA.

### 4. TILA Does Not Permit Rescission of Refinancing Loans Like These

Debtor seeks more rescission rights than TILA permits. Even if FIRREA did not bar all of his claims and the rescission claim had been timely, Debtor could rescind only as to the "new money amount" obtained through the Loans. Any funds used to pay off an existing loan (or a "refinance") cannot be rescinded. Section 1635 of TILA exempts from its coverage "a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property." 15 U.S.C. § 1635. The regulation implementing this provision of TILA provides:

> The right to rescind does not apply to ... a
> refinancing or consolidation by the same

-19-

> creditor of an extension of credit already
> secured by the consumer's principal dwelling
> [except] to the extent the new amount financed
> exceeds the unpaid principal balance, any
> earned unpaid finance charge on the existing
> debt, and amounts attributed solely to the
> costs of the refinancing or consolidation.

12 C.F.R. § 226.23(f)(2).

Here, Debtor had pre-existing secured loans with WaMu arising out of the 2005 Transactions. The proceeds of the 2007 Loans were used to pay off the pre-existing debts and WaMu recorded releases of the 2005 deeds of trust. Chase has established as a matter of undisputed fact that only $456,506.74 from the Loans is new money and subject to rescission (assuming other conditions for rescission are satisfied). The balance (plus accrued interest and charges) cannot be rescinded as a matter of law.

### 5. Debtor Has Not Demonstrated that He Can Tender An Amount Necessary to Rescind The Loans

Even if the rescission were not barred by FIRREA, time-barred, or subject to other defenses, Debtor has not demonstrated that rescission could be completed here. As the Ninth Circuit noted in *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1030-31 (9th Cir. 2014), a rescission under 15 U.S.C. § 1635 occurs automatically upon the debtor's notice of intent to rescind. At that point, the creditor should ordinarily tender the security interest to the debtor. Upon the performance of the creditor's obligations, the borrower should tender the amount received (less interest and finance charges). *Id.* Only at that point is the

-20-

rescission completed.[5]

That said, courts can modify the sequence of events in this rescission process. *Id.* The Ninth Circuit has done so, requiring borrowers to produce evidence of ability to tender as a condition for denial of a summary judgment motion filed by the lender. *Id., citing Yamamoto v. Bank of New York*, 329 F.3d 1167, 1171-73 (9th Cir. 2003). The Ninth Circuit concluded in *Yamamoto* that where "it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after," i.e., refuse to enforce rescission. *Id.* at 1173.

Here, Debtor's own schedules and monthly operating reports demonstrate that he has no current ability to pay back the amount

---

[5]Debtor suggested at oral argument that *Jesinoski v. Countrywide Home Loans, Inc.,* 135 S.Ct. 790 (2015) (Scalia, J.), supports his contention that rescission was completed and irrevocable when Chase did not respond to his rescission letter within twenty days of receipt. *Jesinoski,* however, resolved a different issue than those presented here. The borrowers there gave their rescission notice within the three-year period but did not file suit until after the three-year period. The lender argued that the rescission was therefore time-barred and that the failure of the borrowers to tender the required amounts rendered the notice ineffective. The Supreme Court disagreed, holding that tender was not required at the time of the notice of rescission for such notice to be effective, and that the borrowers therefore did not have to file suit within three years to satisfy the limitations period of TILA's rescission provision. It did not hold, as Debtor appears to contend, that a loan is rescinded on notice and borrowers have no further obligation to perform if the lender does not respond. At some point after giving notice of rescission, borrowers must make the appropriate rescission payment to obtain the unencumbered property. As discussed above, Chase has demonstrated in its summary judgment motion that Debtor is unable to make such a payment, given his monthly operating reports and inability to sell the Property during the lengthy pendency of his bankruptcy case. Debtor has not submitted any evidence or argument that would raise a material issue of fact or law as to his ability to tender.

-21-

he received to achieve complete rescission.  And while a borrower
may be able to sell or refinance the liened property to obtain the
funds for tender, Debtor has not been able to do so over the 7+
years that this case has been pending.  He has not set forth
evidence to establish that a material issue of fact exists as to
his ability to tender.  Therefore, even if his rescission claims
were not barred on other grounds, the court would grant Chase's
motion for summary judgment.  *Yamamoto*, 329 F.2d at 1172-73.

### 6.    Debtor's Other Defenses Are Unavailing

Debtor argues that the Loans are unenforceable because the
documents identified the lender as "Washington Mutual Bank, F.A."
even though that entity changed its name to Washington Mutual Bank
on April 4, 2005.  The court rejects this theory.  Nothing
supports Debtor's implication that the bank's change of name meant
that Washington Mutual Bank, F.A. itself ceased to exist.  *Mut.*
*Bldg. & Loan Ass'n of Long Beach v. Corum*, 220 Cal. 282, 292, 30
P.2d 509 (1934) ("A change in name does not affect the identity of
a corporation ....."); *see also Lanini v. JP Morgan Chase Bank,*
2014 WL 1347365 (E.D. Cal. Apr. 4, 2014) ("The court rejects any
claim that the name change [from Washington Mutual Bank, F.A. to
Washington Mutual Bank] somehow precludes Chase's authority to
foreclose."; *United States v. Abakporo*, 2013 WL 6188260  (S.D.N.Y.
Nov. 25, 2013) (rejecting a motion to dismiss because there was no
evidence the change of name meant the bank ceased to dismiss or
lost its FDIC status); *Haynes v. JPMorgan Chase Bank, N.A.*,  2011
WL 2581956 (M.D. Ga. 2011), *aff'd*, 466 F. App'x. 763 (11th Cir.
2011) (finding that an "assignment was not invalid simply because
it listed 'Washington Mutual Bank, FA' as the assignee rather than

-22-

1  'Washington Mutual Bank.'").

2      Debtor further contends that Chase is not the holder of the
3  notes underlying the First and Second Loans, nor is the assignee
4  of the deeds of trust securing those loans.  Chase has
5  demonstrated that its counsel has custody of the original note on
6  the First Loan as well as the HELOC Agreement on the Second Loan.
7  Chase Decl. at ¶¶ 6,8,13, and 15.  In addition, through the P&A
8  Agreement, Chase acquired all of WaMu's loans and loan commitments
9  by operation of law; no endorsement is required.  Finally, Chase
10  (as assignee of the FDIC acting as receiver of WaMu), and no other
11  entity or securitized trust, owns the notes memorializing the
12  First and Second Loans.  *Id.* at ¶¶ 7 and 14.

13      Debtor also contends that the signatures on the underlying
14  loan documents are not his, but has not submitted admissible
15  probative evidence.  In contrast, Chase has provided admissible
16  expert evidence that the signatures on the loan documents are
17  Debtor's.  Debtor has not introduced any admissible probative
18  evidence to raise an issue of material fact as to the genuineness
19  of his signatures on the relevant documents.

20                        **V. CONCLUSION**

21      As a matter of law, FIRREA bars all of the claims asserted
22  against Chase.  Even if it did not, Debtor has not set forth
23  timely, cognizable claims against Chase.  For the reasons set
24  forth in this memorandum decision, the court will GRANT the motion
25  for summary judgment filed by Chase and will DENY the motion for
26  partial summary judgment filed by Debtor.  Counsel for Chase
27  should upload an order granting its motion for summary judgment, a
28  separate order denying Debtor's motion, and a judgment dismissing

                              -23-

Debtor's claims against it.  Counsel should serve a copy of the
proposed judgment and orders on Debtor in accordance with B.L.R.
9021-1©.

**\*\*\* END OF MEMORANDUM DECISION \*\*\***

| | COURT SERVICE LIST |
|---|---|
| 1 | |

James Madison Kelley
14390 Douglass Lane
Saratoga, CA 95070

-25-